## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **CRYSTAL HOWARD, PAUL GALLOWAY, ROBERT NEWSON and ALVAN YOUNG Individually, and on Behalf of All Others Similarly Situated,** | ) ) ) ) ) | |
| | ) | **Case No. 08 C 2746** |
| **Plaintiffs,** | ) | |
| | ) | **Judge Gottschall** |
| v. | ) | **Magistrate Judge Valdez** |
| | ) | |
| **SECURITAS SECURITY SERVICES, USA INC.,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO CONDITIONALLY CERTIFY THE CLASS AND ISSUE NOTICE

Plaintiffs, Crystal Howard, Paul Galloway, Robert Newson, and Alvin Young, worked as hourly non-exempt uniformed security guards for Defendant, Securitas USA, Inc. Like other similarly situated Securitas guards, they were subjected to Securitas' common scheme to deprive them of wages and overtime pay. They bring this action on behalf of themselves and other employees similarly situated ("Plaintiffs") alleging that Securitas denied them overtime compensation in willful violation of the Fair Labor Standards Act ("FLSA").

To date, seven guards who worked for Securitas have filed signed consent-to-join forms to become plaintiffs in this collective action. (See Group Exhibit 1). Plaintiffs, through this motion, move for an Order: (1) granting them permission to proceed collectively under Section 216(b) of the FLSA; (2) requiring Securitas to produce, within three days of the Court's Order, a computer-readable data file containing the names, addresses and telephone numbers of all guards so that notice of this lawsuit may be given; and, (3) authorizing notice by U.S. first class mail, and by posting notice in all Securitas' branches in Illinois, to all of the putative class members at

any time since May 12, 2005, and who have not already had their federal claim for unpaid

overtime wages previously adjudicated, to inform them of their right to opt-in to this lawsuit

    A court should conditionally certify a class and facilitate notice to potential class

members where plaintiffs present a modest factual showing for their claim that potential class

members are similarly situated. *Vazquez v. Tri-State Management Company, Inc.*, 2002 WL

58718, *3 (N.D. Ill. Jan. 14, 2002). Conditional certification and court-facilitated notice are

warranted here because Plaintiffs and Class Members are "similarly situated" to an extent

substantially exceeding the lenient standard applied at this stage of litigation.  These individuals

perform nearly identical duties and are all subject to Securitas' centralized scheme that requires

them to work unpaid time off-the-clock including training, performing work before and after

their scheduled shift times and maintaining their uniforms each week.  Plaintiffs submit in

support of this motion Defendant's own policies, additional documents and the declarations of

the four named Plaintiffs.  This evidence provides more than a modest showing that Plaintiffs are

similarly situated and were subject to Defendant's common plan or policy encouraging and

permitting them to work off the clock without compensation.

## STATEMENT OF FACTS

**A.  The Parties**

    Securitas USA, Inc, provides security services to hundreds of businesses

throughout the state of Illinois and is an "employer" within the meaning of 29 U.S.C.

§203(d) of the FLSA.  Named Plaintiffs worked as hourly non-exempt uniformed security guards

for Defendant in the State of Illinois, during the applicable statute of limitations period.  The four

named Plaintiffs commenced this action on May 12, 2008, and bring this case on behalf of

themselves and other similarly situated employees, as defined by 29 U.S.C. §201, sec. 3(e), who

currently work, or who worked for the Defendant as an hourly paid non-exempt uniformed security guard at any time during the three-years immediately preceding the filing of the Complaint (hereinafter "Violation Period"). Since the filing of this lawsuit, three additional security guards have joined this lawsuit by filing signed consent-to-join forms.

Plaintiffs allege that Securitas had a scheme to encourage and permit its guards to work off-the-clock without proper compensation in violation of federal law. (See Complaint at ¶¶13-15 & 30-34). Specifically, guards worked unpaid time off-the-clock attending training courses, preparing for work before their shifts at the employer's place of business, and spending at least an additional hour per week maintaining their uniforms pursuant to Securitas uniform policies and requirements. (Id.). At times, guards also remained on duty after their shifts and worked off-the-clock without compensation until Securitas deemed their replacements ready to relieve them. (Id.). Securitas furthered its unlawful scheme by failing to record all time worked as required by the FLSA, e.g., 29 C.F.R. § 516.2(a)(7)-(9). (See Complaint at ¶¶14 & 34). Relief is sought pursuant to Fair Labor Standards Act, 29 U.S.C. §201.

**B. Security Guards Are Similarly Situated**

Plaintiffs are individuals who were employed by Defendant as uniformed security guards during the three-year statute of limitations period. (Exhibit 2, Declaration of Crystal Howard at ¶2; Exhibit 3, Declaration of Paul Galloway at ¶2; Exhibit 4, Declaration of Robert Newson at ¶2; Exhibit 5, Declaration of Alvan Young at ¶2). They were classified by Defendant as non-exempt under the FLSA and paid an hourly rate. (Id.) Plaintiffs all shared similar, if not identical, job titles, training, uniform requirements, compensation plans, job descriptions and job requirements. In furtherance of their law enforcement duties, all of them conducted inspections, performed surveillance, patrolled job locations and prepared incident

reports. (Exhibit 2 at ¶4; Exhibit 3 at ¶4; Exhibit 4 at ¶4; Exhibit 5 at at ¶4).

Defendant directed and supervised all aspects of Plaintiffs' work, including training, uniform and appearance requirements, number of hours worked, time reporting policies, and compensation paid. (Exhibit 2 at ¶¶5-17; Exhibit 3 at ¶¶5-17; Exhibit 4 at ¶¶5-21; Exhibit 5 at ¶¶5-17). Pursuant to Defendant's common practices, Plaintiffs were required to complete training which was directly related to the Plaintiffs' jobs and not voluntary. (Exhibit 3 at ¶¶5-9; Exhibit 4 at ¶¶5-9 & 20). Defendant required security guards to complete this training within 30 days of being hired or face discipline up to and including termination. Nonetheless, Defendant failed to properly compensate Plaintiffs and the Class for all of their time worked. (Exhibit 2 at ¶¶11-12 & 19; Exhibit 3 at ¶¶9, 13 & 19; Exhibit 4 at ¶¶8, 15-16 & 23; Exhibit 5 at ¶¶10-11 & 18).

Defendant also required security guards to report for work before their shifts and at times, remain at work past their shifts until relieved by another guard. (Exhibit 2 at ¶¶6, 9 & 12; Exhibit 3 at ¶¶11 & 13; Exhibit 4 at ¶¶11, 14 & 16; Exhibit 5 at ¶¶7, 9 &11). Before the start of their shifts, Plaintiffs retrieved and examined their equipment and prepared for work. (Exhibit 2 at ¶6; Exhibit 3 at ¶11; Exhibit 4 at ¶11; Exhibit 5 at ¶7). Guards whose duties included handling security dogs had to get the dogs, and work with the dogs to establish their relationship and verify the dogs' health and condition before their shift began. (Exhibit 2 at ¶6 ; Exhibit 3 at ¶11; Exhibit 4 at ¶11; Exhibit 5 at ¶7). Indeed, the requirement that Plaintiffs and the Class report for work early is implicitly contained in Defendant's employee manual, which specifies that guards must be ready to perform their guard duties at the moment their shifts begin, despite the fact that they have to perform the above mentioned tasks at Defendant's place of business to prepare for work and their

guard duties (See Exhibit 6). Moreover, at times guards were required to work past their scheduled shifts until formally relieved. (Exhibit 2 at ¶9 ; Exhibit 4 at ¶14; Exhibit 5 at ¶9). While Defendant required security guards to be at its place of business both before and after their shifts performing work related duties, it failed to properly compensate Plaintiffs and the Class for all their time worked. (Exhibit 2 at ¶¶11-12 & 19; Exhibit 3 at ¶¶9, 13 & 19; Exhibit 4 at ¶¶8, 15-16 & 23; Exhibit 5 at ¶¶10-11 & 18).

Due to the nature of its security business, Defendant has invested millions of dollars in security guard uniforms and appearance. In its own handbook Defendant states, "in order to provide the best possible service for our clients, we must present ourselves in a manner that displays professionalism and commands respect." (See Exhibit 7). Pursuant to Defendant's security guard dress code and appearance policy, Plaintiffs and the Class were required to obtain and wear a Securitas uniform consisting of uniform pants, shirt, boots, jacket, duty belt, badge and other items (See Exhibit 7). Moreover, Plaintiffs were required to maintain their uniforms in a clean and <u>unwrinkled</u> condition and ensure that their boots or other approved footwear be cleaned and <u>shined</u> at all times. (Exhibit 2 at ¶¶16-17; Exhibit 3 at ¶¶16-17; Exhibit 4 at ¶¶20-21; Exhibit 5 at ¶¶15-16). Even belts and brims of caps needed to be polished and shined. (Exhibit 2 at ¶¶16-18; Exhibit 3 at ¶¶16-18; Exhibit 4 at ¶¶20-21; Exhibit 5 at ¶¶15-18). Work performed by security guards maintaining their uniform was not voluntary but rather "an ongoing requirement of employment." (See Exhibit 7). Typically employees spent 1-2 hours each week on their uniforms, but none of this time was compensated by Defendant. (Exhibit 2 at ¶¶16-20; Exhibit 3 at ¶¶16-20; Exhibit 4 at ¶¶20-24; Exhibit 5 at ¶¶15-19).

Given these requirements, many of which had to be performed at Defendant's place of business, Defendant encouraged and permitted Plaintiffs to work during periods for which they were not paid, including hours worked in excess of 40 hours per week. Nonetheless, Defendant failed to properly pay its uniformed security guards for all hours actually worked, including overtime compensation as required by the FLSA.

## ARGUMENT

### A. This Court Should Certify This Collective Action and Issue Notice To All Those Similarly Situated

Section 216(b) authorizes representative actions such as this suit. *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007). In order to join a "collective action," the FLSA requires that each employee gives his consent in writing to become a participant. 29 U.S.C. § 216(b); *Vazquez v. Tri-State Management Company, Inc.*, 2002 WL 58718, *2 (N.D. Ill. Jan. 14, 2002). Until an employee does so, the statute of limitations on his claims continues to run. *See Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996).

The United States Supreme Court has authorized district courts to certify a collective action and facilitate notice to potential plaintiffs under 29 U.S.C. § 216(b). *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Woods v. New York Life Ins. Corp.*, 686 F.2d 578, 580 (7th Cir. 1982). To create an "opt-in" class under Section 216(b), an employee need only satisfy two basic requirements: 1) class members must be "similarly situated"; and 2) class members must affirmatively consent to join the action or "opt-in." *Sperling v. Hoffman-La Roche, Inc.*, 862 F.2d 439, 444 (3rd Cir. 1988); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001); *Chowdhury v. Duane Reade, Inc.*, 2007 WL 2873929, at *2 (S.D.N.Y. Oct. 2, 2007) (citations omitted); *see also Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir.1996).

In order for notice to be issued to similarly-situated persons under Section 216(b), a plaintiff need only make a "modest factual showing sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Vazquez v. Tri-State Management Co.,* 2002 WL 58718, *3 (N.D. Ill. 2002). The FLSA's "similarly situated" analysis proceeds in two stages. *Gonzalez, supra*; *Gambo,* 2005 U.S. Dist. LEXIS 37998, at *12; *Persin,* 2005 U.S. Dist. LEXIS 29727, at *4-5.

At the initial stage, the court determines whether the potential plaintiffs are sufficiently likely to be similarly situated to justify mailing the *Hoffmann-La Roche* notice. "The modest factual showing requirement is not a stringent standard; a plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." *Gonzalez,* supra, citing *Gambo,* 2005 U.S. Dist. LEXIS 37998, at *13. "The plaintiffs in a §216(b) class action, however, need not show that their positions are identical, but only that they are similar." *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 443 (N.D. Ill. 1982). Notably, the fact that the employees work at many different locations or in different jobs does *not* defeat the mailing of notice. *Bontempo* v. *Metro Networks,* No. 01 C 8969, 2002 U.S. Dist. LEXIS 11810 (N.D. Ill. 2002).

This standard is considerably "less stringent" than the proof required under Rule 23 of the Federal Rules of Civil Procedure regarding traditional class certification. *Patton v. Thomson Corp.,* 364 F.Supp.2d 263, 267 (E.D.N.Y. 2005); *Grayson v. K-Mart Corp.,* 79 F.3d at 1096.

> Under § 216(b), class actions under the FLSA can only be maintained when and if potential claimants opt in. *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 441 (N.D.Ill.1982). In contrast, class actions under Rule 23 bind all members of the class unless they opt out. This difference between Rule 23 and § 216(b) means that Rule 23's class certification requirements do not apply to FLSA class actions. *King v. General Elec. Co.*, 960 F.2d 617, 621 (7th Cir.1992); *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir.1982).
>
> Rather, under the FLSA, the representative need only show that the plaintiffs are similarly situated, 29 U.S.C. § 216(b). However, the FLSA and its

> regulations do not define similarly situated. One court defined similarly situated as "perform[ing] the same type of duties as" the named plaintiff. *Pfahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000). Other courts have held that a named plaintiff can show that the potential claimants are similarly situated "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Realite v. Ark Rests. Corp.*, 7 F.Supp.2d 303, 306 (S.D.N.Y.1998) (citations omitted).

*Vazquez v. Tri-State Management Company, Inc.*, 2002 WL 58718, *2 (N.D. Ill. Jan. 14, 2002).

Once notice has been issued, the opt-in period has expired, and discovery has been completed, courts often make a second-stage, final determination (usually prompted by a motion by the defendant for decertification of the collective action) whether the opt-ins are "similarly situated." *Gonzalez, supra,* citing *Flores,* 289 F. Supp. 2d at 1045.

This motion does not involve a determination on the merits of Plaintiffs' claims. *Lynch v. United Services Auto Ass'n,* 491 F.Supp.2d 357, 367-68 (S.D.N.Y. 2007); *Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 262 (S.D.N.Y. 1997). At this initial stage of the litigation, Plaintiffs need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *E.g., Doucoure v. Matlyn Food, Inc.,* 2008 WL 1771771, *2 (E.D.N.Y. April 15, 2008) (citations omitted); *Realite v. Ark Rests Corp.,* 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998).

## B.  Plaintiffs Are "Similarly-Situated" and Subjected to Defendant's Common Scheme

Notice should be issued in this case because Plaintiffs are similarly situated and were all subject to Defendant's illegal scheme encouraging and permitting Plaintiffs to work unpaid time off the clock. As Judge Darrah has held, "plaintiffs are similarly situated if they 'were victims of a common policy or plan that violated the law.'" *Vazquez,* 2002 WL 58718, at *3 (quoting *Realite,* 7 F.Supp.2d at 306). The *Vazquez* court noted how liberally this standard was applied

in *Realite* with approval:

> In *Realite,* thirty-seven hourly paid non-managerial employees of fifteen restaurants owned by the defendant sued defendant for violations of the FLSA. 7 F.Supp.2d at 303. Even though the plaintiffs held different positions, such as waiters, dishwasher, busboy, bartender, etc., at the restaurants, the court held that because the conduct that violated the law occurred no matter which position they held, the proper definition of the scope of the plaintiff class was "all hourly-paid, non-managerial employees ... who work or worked at one or more [of the defendant's restaurants] ... during the past six years, and who (i) worked overtime during that period, (ii) did not receive minimum cash wages for all hours worked, (iii) did not have working time properly recorded" among other class descriptors. *Realite,* 7 F.Supp.2d at 304-05. The *Realite* court based its ruling on the allegations in the complaint and affidavits of ten of the named plaintiffs indicating the unlawful conduct. 7 F.Supp.2d at 307.

*Vazquez*, 2002 WL 58718, at *3.

Plaintiffs have submitted the declarations of four Plaintiffs and Defendant's own documents which establish that:

- All Plaintiffs worked unpaid time off-the-clock  (Exhibit 2 at ¶¶8, 10-14 & 19-20; Exhibit 3 at ¶¶8-9, 13-15; Exhibit 4 at ¶¶5, 13-18 & 23; Exhibit 5 at ¶¶7,9-13 *18-20);

- Plaintiffs worked off-the-clock by arriving early and preparing for work before their scheduled shift (Exhibit 2 at ¶¶6 & 11-12; Exhibit 3 at ¶¶11 & 13; Exhibit 4 at ¶¶11 & 15-16; Exhibit 5 at ¶¶7 & 11);

- Plaintiffs routinely worked off-the-clock by remaining on duty past their scheduled shifts (Exhibit 2 at ¶¶9 & 12; Exhibit 4 at ¶¶14-15; Exhibit 5 at ¶¶9-11);

- Plaintiffs worked off-the-clock attending mandatory training (Exhibit 3 at ¶¶5-9; Exhibit 4 at ¶¶5-8);

- Plaintiffs routinely worked off-the-clock maintaining their uniforms pursuant to Securitas' policy and requirements (Exhibit 2 at ¶¶16-20; Exhibit 3 at ¶¶16-20; Exhibit 4 at ¶¶20-24; Exhibit 5 at ¶¶15-19);

- Defendant knew that Plaintiffs and other security guards regularly worked off the clock (Exhibit 2 at ¶¶12, 14 & 20; Exhibit 3 at ¶¶13, 15 & 20; Exhibit 4 at ¶¶16, 18 & 24; Exhibit 5 at ¶¶11, 13 & 19);

- Defendant failed to record all hours actually worked by Plaintiffs and other Class Members (Exhibit 2 at ¶¶8, 10 & 13; Exhibit 3 at ¶¶8 &14; Exhibit 4 at ¶¶13 & 17; Exhibit 5 at ¶¶8 & 12); and,

- Defendant failed to properly compensate Plaintiffs for all the time they worked off-the-clock (Exhibit 2 at ¶¶8, 10-14 & 19-20; Exhibit 3 at ¶¶8-9, 13-15; Exhibit 4 at ¶¶5, 13-18 & 23; Exhibit 5 at ¶¶7,9-13 *18-20).

In short, Plaintiffs have come forward with evidence equally or more persuasive than Plaintiffs in similar off-the-clock cases where FLSA certification was granted. *See, e.g, Heckler v. DK Funding, LLC,* 502 F.Supp.2d 777, 780-81 (N.D.Ill. 2007); *Belbis v. County of Cook*, 2002 WL 31600048, at *5 (N.D. Ill. Nov. 18, 2002) (granting conditional and Rule 23 class certification in case alleging unpaid off-the-clock work); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091, at *4-5 (N.D. Ill. Dec. 1, 2000) (certifying class action for alleged unlawful failure to pay employees for certain categories of off-the-clock work); *Spoerle v. Kraft Foods Global, Inc.*, 2008 WL 2002221, at *7 (W.D. Wis. May 6, 2008) (granting conditional certification and Rule 23 certification in case alleging unpaid wages from employees that participated in certain work activities); *Mowdy v. Beneto Bulk Transp.*, 2008 WL 901546, at *12 (N.D. Cal. Mar. 31, 2008) (granting conditional certification in case alleging unpaid off-the-clock work despite alleged individual issues); *Brennan v. Qwest Commc'ns Int'l*, 2008 WL 819773, at *2 (granting conditional certification in multi-facility case alleging unpaid off-the-clock work and unpaid work; "Court-facilitated notice is necessary in order to prevent the expiration of claims based on the running of the statute of limitations and because of the size of the class and its geographic scope (numerous garages throughout Minnesota"); *Beauperthuy v. 24 Hour Fitness USA*, 2008 WL 793838 (N.D. Cal. Mar. 24, 2008) (granting conditional certification to an additional subclass in unpaid overtime case); *Musarra v. Digital Dish, Inc.*, 2008 WL 818692, at *7 (S.D. Ohio Mar. 24, 2008) (granting conditional certification in case for unpaid overtime on behalf of employees working at multiple locations based on evidence and allegations of overtime work and company policy causing overtime not to be reported); *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp.2d 1181, 1187 (D. Minn. 2007) (granting conditional

certification in multi-facility case alleging unpaid overtime where plaintiff submitted 19 declarations from other employees who claim they have unpaid off-the-clock work); *Crawford v. Lexington-Fayette Urban County*, 2007 U.S. Dist. LEXIS 6711, at *13-21 (E.D. Ky. Jan. 26, 2007) (conditionally certifying class where there was some evidence that actual practices contradicted written policy); *Allen v. McWane, Inc.*, 2006 WL 3246531, at *2-5 (E.D. Tex. Nov. 7, 2006) (conditionally certifying class of workers at different facilities for unpaid off-the-clock work); *Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039, at *2 (S.D.N.Y. Sept. 28, 2006) (granting conditional certification and Rule 23 class certification in case alleging unpaid off-the-clock work at various stores); *Mendez v. Radec Corp.*, 232 F.R.D. 78, 91-95 (W.D.N.Y. 2005) (denying motion to decertify and certifying Rule 23 class for claims alleging off-the-clock unpaid work); *Hill v. Muscogee County Sch. Dist.*, 2005 U.S. Dist. LEXIS 35725, at *4-5 (M.D. Ga. Dec. 20, 2005) (denying motion for decertification in case alleging off-the-clock unpaid work by employees in different schools); *Velez v. Majik Cleaning Serv., Inc.*, 2005 WL 106895 (W.D.N.Y Jan. 19, 2005) (granting conditional certification in case alleging unpaid off-the-clock work despite alleged individual issues); *Garner v. Regis Corp.*, 2004 U.S. Dist. LEXIS 29167 (W.D. Mo. Aug. 5, 2004) (conditionally certifying class where there was some evidence, even though contradicted by defendant's evidentiary submissions, that actual practices were known to management).

Like the plaintiffs in the above-cited cases, Plaintiffs here are victims of Defendant's common scheme that violates the FLSA. That policy required non-exempt employees to work time off-the-clock, including overtime, without pay. *See* 29 C.F.R. §541, et seq. Plaintiffs are clearly similarly situated to other security guards and notice should be granted.

**C.  Plaintiffs Have Demonstrated a Reasonable Basis for a Collective Action**

At this initial stage, discovery is not necessary regarding the issue of Section 216(b) notice. *Lynch,* 491 F.Supp.2d at 367; *Mooney,* 54 F.3d at 1213. Rather, a motion to proceed as a collective action and the right to issue notice should be granted because the Plaintiffs have demonstrated a "reasonable basis" for their collective action allegations. *Grayson v. K-Mart,* 79 F.3d at 1097.

The "lenient" standard can be satisfied in "off-the-clock" cases by the submission of declarations from Plaintiffs. *See, e.g., Burch*, 500 F. Supp.2d at 1186-88; *Dege*, 2007 WL 586787, at *2; *Frank*, 2005 WL 2240336, at *3; *see also Douglass v. GE Energy Reuter Stokes*, 2007 WL 1341779 (N.D. Ohio, April 20, 2007) (holding that two affidavits stating that overtime was not paid were sufficient to grant conditional certification); *Boyle v. Barber & Sons, Co.*, Case No. 03-0574-CV-W-FJG (W.D. Mo. 2004) (granting conditional certification based on the affidavit of one former employee).

Through their declarations, Defendant's own documents and detailed allegations in their Complaint, Plaintiffs have met and exceeded the "reasonable basis" standard required to proceed as a collective class action. *See Lynch,* 491 F.Supp.2d at 3697 (granting plaintiffs' motion for notice under Section 216(b) where the plaintiffs, as here, submitted declarations and noting that "[c]ourts have routinely authorized notice to putative class members on far more modest records than present in this case.").

**D.  Class Members Should Be Notified Of This Case Immediately**

Notice to potential "opt-in" plaintiffs in this case should be expedited to protect their rights and prevent their statutes of limitation from running. *Woods v. New York Life Ins. Corp.,* 686 F.2d 578, 580 (7th Cir. 1982). The statute of limitations for an FLSA claim is two years

after the cause of action has accrued, unless a willful violation is alleged, in which case the Plaintiff has three years to bring a lawsuit. *Herman v. RSR Security Services, Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999); *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 40 (2d Cir. 1995) (citing 29 U.S.C. §255(a)). Where as here, Plaintiffs have alleged a willful violation, notice is disseminated to potential "opt-in" plaintiffs covered under a three (3) years statute of limitations; a "merits" determination is not made at this time. *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 445 (N.D. Ill. 1982; *Kautsch v. Premier Communications*, 504 F. Supp.2d 685, 690 (W.D. Mo. 2007); *Mowdy v. Beneto Bulk Transp.*, 2008 WL 901546, at *11 (N.D. Cal. Mar. 31, 2008).

The statute of limitations on claims of potential collective action members are not stayed or tolled by the filing of the complaint by the named plaintiffs. *Threatt v. Residential CRF, Inc.*, No. 05-117, 2005 U.S. Dist. LEXIS 22509, at *11-12 (N.D. Ind. Oct. 5, 2005), *quoting Wertheim*, 1993 U.S. Dist. LEXIS 21292, at *8. Rather, those persons are not deemed to have commenced their action, and the statute of limitations on their claims continues to run, until their written consents to become party plaintiffs have been filed with the court. 29 U.S.C. §256(b); *Threatt*, 2005 U.S. Dist. LEXIS 22509, at *13.

While the Court granted Plaintiffs' request to toll the statute of limitations during the period of the Defendant's deadline to answer the Complaint, that period will end soon. For each passing day that notice is not provided to potential opt-in plaintiffs, security guards' claims are slipping away. Plaintiffs' proposed notice is therefore essential to inform security guards of the requirements necessary to protect their interests.

**E. Plaintiffs' Proposed Notice Is Fair And Adequate**

Collective opt-in actions depend on "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about

whether to participate." *Hoffman-LaRoche,* 493 U.S. at 170. Court-authorized notice also prevents "misleading communication." *Id.* at 172; *Garner,* 802 F. Supp. at 422.

Plaintiffs' proposal for court-approved notice to potential opt-in plaintiffs (attached hereto as Exhibit 8) meets the requirements of "timeliness, accuracy and information." *Hoffman-LaRoche,* 493 U.S. at 172. The proposed notice accurately informs class members of this case and gives them the opportunity to opt-in before the statute of limitations extinguishes their claims. And it instructs them how to opt-in to the lawsuit while also informing them that Securitas is prohibited from discriminating or retaliating against them for participation in this FLSA action.

Plaintiffs propose that Notice and Opt-In Consent Forms be sent via first class U.S. mail to all current and former security guards employed by Securitas within the past three years. Plaintiffs further requests that potential opt-in plaintiffs interested in participating in this lawsuit be provided with ninety days from the date of mailing to "opt-in" to this case. This request is consistent with established practice under the FLSA. *See, e.g., Hoffman-LaRoche,* 493 U.S. at 172; *Hipp v. Liberty National Life Ins. Co.,* 164 F.R.D. 574, 576 (M.D. Fla. 1996) (120 day filing period); *Belcher v. Shoney's Inc.,* 927 F. Supp. 249, 252-55 (M.D. Tenn. 1996) (exemplar of company-wide notice). Since Plaintiffs' proposed notice is fair and accurate, it should be approved for distribution.

### F. Defendant Should Be Ordered to Provide The Names and Addresses of Potential Class Members

In order to facilitate the giving of notice, Defendant should be ordered to provide the names and addresses of potential class members. *Woods v. New York Life Insurance Co.,* 686 F.2d 578, 580 (7th Cir. 1982). Defendant has all of this information in computerized form and could easily provide it. In contrast, Plaintiffs neither have this information, nor have any means of recreating it.

## CONCLUSION

For all the reasons stated above, Plaintiffs request that this Court grant their Motion and:

a.     Designate this case as a Section 216(b) collective action;

b.     Require Securitas to produce a computer-readable data file containing the names, addresses and telephone numbers of such potential opt-in members so that notice may be implemented; and,

c.     authorize notice be sent by U.S. first class mail and by posting notice in all Securitas' branches in Illinois, to all of the putative class members at any time since May 12, 2005, and who have not already had their federal claim for unpaid overtime wages previously adjudicated, to inform them of their right to opt-in to this lawsuit

June 23, 2008                          Respectfully Submitted,


                                       James B. Zouras
                                       Ryan F. Stephan
                                       Stephan Zouras, LLP
                                       205 N. Michigan Avenue, Suite 2560
                                       Chicago, Illinois 60601
                                       312-233-1550
                                       312-233-1560 f
                                       lawyers@stephanzouras.com

                                       Marvin A. Miller
                                       Matthew E. VanTine
                                       MILLER LAW LLC
                                       115 S. LaSalle Street
                                       Suite 2910
                                       Chicago, IL  60603
                                       312.332.2400

                                       Thomas M. Ryan
                                       Law Offices of Thomas M. Ryan, P.C.
                                       205 N. Michigan Ave., Suite 2560
                                       Tel: 312-233-1553
                                       Cell: 312-545-9096
                                       Fax: 312-233-1560
                                       tom@tomryanlaw.com

                                       **Attorneys for the Plaintiffs**

## CONSENT TO BECOME PARTY PLAINTIFF

### Howard et al v. Securitas USA Inc. et al.,

Complete and Mail To:
ATTN: SECURITAS ACTION
Stephan Zouras, LLP
205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Fax to: (312) 233-1550
Email to: lawyers@stephanzouras.com

By signing below, I state that I have been employed by Securitas USA, Inc. or one of its subsidiaries or affiliates as a uniformed security guard or other similarly titled position within the past three (3) years and that I hereby consent to join this lawsuit seeking unpaid wages and overtime based on Securitas' violations of the Fair Labor Standards Act, 29 U.S.C. Sec. 201 *et. seq.*

I hereby designate the law firm Stephan Zouras, LLP and other attorneys with whom they may associate to represent me for all purposes of this action.

I also designate the Class Representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

| | |
|---|---|
| 6/9/08 | *Khanita Nevilles* |
| Date | Signature |
| | Khanita Nevilles |
| | Print Name |
| | 6083 S. Francisco Ave. |
| | Address |
| | Chicago IL, 60629-2921 |
| | City, State, Zip Code |
| | (773) 414-1873 (cell) |
| | Telephone Number |
| | khanitan@yahoo.com |
| | Email Address |

**\*Statute of Limitations concerns mandate that you return
this form as soon as possible to preserve your rights.**



PLAINTIFF'S
EXHIBIT
1

## CONSENT TO BECOME PARTY PLAINTIFF

### Howard et al v. Securitas USA Inc. et al..

Complete and Mail To:
ATTN: SECURITAS ACTION
Stephan Zouras, LLP
205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Fax to: (312) 233-1550
Email to: lawyers@stephanzouras.com

By signing below, I state that I have been employed by Securitas USA, Inc. or one of its subsidiaries or affiliates as a uniformed security guard or other similarly titled position within the past three (3) years and that I hereby consent to join this lawsuit seeking unpaid wages and overtime based on Securitas' violations of the Fair Labor Standards Act, 29 U.S.C. Sec. 201 *et. seq.*

I hereby designate the law firm Stephan Zouras, LLP and other attorneys with whom they may associate to represent me for all purposes of this action.

I also designate the Class Representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_5·7·08_
Date

_Robin Roberson_
Signature

_Robin Roberson_
Print Name

_14914 Center Ave_
Address

_Harvey IL 60426_
City, State, Zip Code

_(c) 7737592539, 708 825 9204/Home_
Telephone Number

_Robinkroberson16@cyphon.com_
Email Address

**\*Statute of Limitations concerns mandate that you return
this form as soon as possible to preserve your rights.**

## CONSENT TO BECOME PARTY PLAINTIFF

### Howard et al v. Securitas USA Inc. et al.,

Complete and Mail To:
ATTN: SECURITAS ACTION
Stephan Zouras, LLP
205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Fax to: (312) 233-1550
Email to: lawyers@stephanzouras.com

By signing below, I state that I have been employed by Securitas USA, Inc. or one of its subsidiaries or affiliates as a uniformed security guard or other similarly titled position within the past three (3) years and that I hereby consent to join this lawsuit seeking unpaid wages and overtime based on Securitas' violations of the Fair Labor Standards Act, 29 U.S.C. Sec. 201 *et. seq.*

I hereby designate the law firm Stephan Zouras, LLP and other attorneys with whom they may associate to represent me for all purposes of this action.

I also designate the Class Representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

6-10-08
_____
Date

_____
Signature

Marcus A. Long
_____
Print Name

4122 W. 191st Pl
_____
Address

Country Club Hills IL 60478
_____
City, State, Zip Code

(773) 263-4375
_____
Telephone Number

_____
Email Address

**\*Statute of Limitations concerns mandate that you return
this form as soon as possible to preserve your rights.**

## CONSENT TO BECOME PARTY PLAINTIFF

### Howard et al v. Securitas USA Inc. et al.,

Complete and Mail To:
ATTN: SECURITAS ACTION
Stephan Zouras, LLP
205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Fax to: (312) 233-1550
Email to: lawyers@stephanzouras.com

By signing below, I state that I have been employed by Securitas USA, Inc. or one of its subsidiaries or affiliates as a uniformed security guard or other similarly titled position within the past three (3) years and that I hereby consent to join this lawsuit seeking unpaid wages and overtime based on Securitas' violations of the Fair Labor Standards Act, 29 U.S.C. Sec. 201 *et. seq.*

I hereby designate the law firm Stephan Zouras, LLP and other attorneys with whom they may associate to represent me for all purposes of this action.

I also designate the Class Representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

5 - 07 - 2008
Date

Crystal Howard.
Signature

Crystal Howard
Print Name

1009 N. Lavergne Ave 2ndFl
Address

Chicago IL, 60651
City, State, Zip Code

773 626-5953
Telephone Number

hcrystal8922 @ yahoo.com
Email Address

**\*Statute of Limitations concerns mandate that you return
this form as soon as possible to preserve your rights.**

## CONSENT TO BECOME PARTY PLAINTIFF

### Howard et al v. Securitas USA Inc. et al.,

Complete and Mail To:
ATTN: SECURITAS ACTION
Stephan Zouras, LLP
205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Fax to: (312) 233-1550
Email to: lawyers@stephanzouras.com

By signing below, I state that I have been employed by Securitas USA, Inc. or one of its subsidiaries or affiliates as a uniformed security guard or other similarly titled position within the past three (3) years and that I hereby consent to join this lawsuit seeking unpaid wages and overtime based on Securitas' violations of the Fair Labor Standards Act, 29 U.S.C. Sec. 201 *et. seq.*

I hereby designate the law firm Stephan Zouras, LLP and other attorneys with whom they may associate to represent me for all purposes of this action.

I also designate the Class Representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

03-01-2008
_____
Date

_Paul D. Galloway_
_____
Signature

PAUL D. GALLOWAY
_____
Print Name

7100 S. SHORE DR #1008
_____
Address

CHICAGO, IL 60649
_____
City, State, Zip Code

(773) 587-1392 / 437-4111
_____
Telephone Number

PL-GALLOWAY @ YAHOO
_____
Email Address

**\*Statute of Limitations concerns mandate that you return this form as soon as possible to preserve your rights.**

## CONSENT TO BECOME PARTY PLAINTIFF

### Howard et al v. Securitas USA Inc. et al.,

Complete and Mail To:
ATTN: SECURITAS ACTION
Stephan Zouras, LLP
205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Fax to: (312) 233-1550
Email to: lawyers@stephanzouras.com

By signing below, I state that I have been employed by Securitas USA, Inc. or one of its subsidiaries or affiliates as a uniformed security guard or other similarly titled position within the past three (3) years and that I hereby consent to join this lawsuit seeking unpaid wages and overtime based on Securitas' violations of the Fair Labor Standards Act, 29 U.S.C. Sec. 201 *et. seq.*

I hereby designate the law firm Stephan Zouras, LLP and other attorneys with whom they may associate to represent me for all purposes of this action.

I also designate the Class Representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

12 May 2008
Date

Robert D. Newson
Signature

Robert D. Newson
Print Name

7731 S. Hermitage
Address

Chicago, IL. 60620
City, State, Zip Code

(w)(773)873-2657  (c)(773)726-8181
Telephone Number

robertdnewson@yahoo.com
Email Address
robert.newson@us.army.mil

**\*Statute of Limitations concerns mandate that you return
this form as soon as possible to preserve your rights.**

## CONSENT TO BECOME PARTY PLAINTIFF

### Howard et al v. Securitas USA Inc. et al.,

Complete and Mail To:
ATTN: SECURITAS ACTION
Stephan Zouras, LLP
205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Fax to: (312) 233-1550
Email to: lawyers@stephanzouras.com

By signing below, I state that I have been employed by Securitas USA, Inc. or one of its subsidiaries or affiliates as a uniformed security guard or other similarly titled position within the past three (3) years and that I hereby consent to join this lawsuit seeking unpaid wages and overtime based on Securitas' violations of the Fair Labor Standards Act, 29 U.S.C. Sec. 201 *et. seq.*

I hereby designate the law firm Stephan Zouras, LLP and other attorneys with whom they may associate to represent me for all purposes of this action.

I also designate the Class Representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

| | |
|---|---|
| 5/2/2008 | *(signature)* |
| Date | Signature |
| | Alvan Young |
| | Print Name |
| | 1182 S. Cuyler |
| | Address |
| | Oak Park IL 60304 |
| | City, State, Zip Code |
| | 312-965-7481 |
| | Telephone Number |
| | Bigdole@sbcglobal.net |
| | Email Address |

**\*Statute of Limitations concerns mandate that you return
this form as soon as possible to preserve your rights.**

IN THE UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL HOWARD, ROBERT GALLOWAY, ROBERT NEWSON AND ALVAN YOUNG, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | Hon. Joan B. Gottschall |
| Plaintiffs, | ) ) | Magistrate Judge Maria Valdez |
| v. | ) ) | Case No. 08 C 2746 |
| SECURITAS SECURITY SERVICES, USA INC., | ) ) ) ) | |
| Defendant. | ) | |

## DECLARATION OF CRYSTAL HOWARD

I, CRYSTAL HOWARD, hereby declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the following is true and correct:

1.    I worked for Securitas Security Services, USA Inc. ("Securitas") between 1998 to approximately the beginning of 2005 and again from July 2005 through August 2007.

2.    I worked for Securitas as a uniformed security guard from July 2005 though August 2007 and was originally paid approximately $9.50 per hour and then $10.50 per hour.

3.    I worked out of the Securitas branch located at 500 N. Pulaski Rd., Chicago, Illinois, 60624 and reported to my supervisors, including Margaret Brown, Robin Roberson and others.

4.    I, along with other security guards, performed the following duties:

   a.  Conducted inspections and surveillance at various CTA stations and platforms to check for irregularities and to prevent criminal activity;

   b.  Patrolled CTA stations and platforms for purposes of preserving order, preventing unlawful activity and enforcing rules, laws and directives;

   c.  Prepared logs or incident reports as required; and

   d.  Protected evidence or scene of incidents in the event of accidents, emergencies or security investigations until the police arrived.


**PLAINTIFF'S EXHIBIT**
_1_

5.     I was typically scheduled to work approximately 5 days per week. Between 2005 and 2006, my regular shift was from 6:00 a.m. to 2:00 p.m. Between 2006 and 2007, my regular shift was from 10:00 p.m. to 6:00 a.m.  From July 2005 through August 2007, I regularly worked at least 40 hours per week.

6.     As part of its policy, Securitas required that I and other security guards arrive at its branch office 15 minutes prior to my scheduled shift so that I could prepare for work by retrieving my radio, inspecting my dog to make sure it was healthy, and otherwise preparing for my shift.

7.     Securitas provided me and other security guards with a TOCO wand which allowed us to hit sensors on our security badges to record the start of our scheduled shift, hit sensors located throughout our route which indicated our time and location and hit our badge at the end of our scheduled shift.

8.     Securitas supervisors also recorded the starts of our shift on a handwritten sheet before we left the branch office to start our patrol, although frequently the supervisors would not record our start time and end time on the handwritten sheets.

9.     Often times, the nature of my job required me to work past my scheduled shift.  I also worked past my scheduled shift covering a missed shift of another guard.

10.    Securitas did not accurately record all the time I spent preparing before my scheduled shift or all the time I spent working beyond my scheduled shift.

11.    Securitas did not properly pay me for all the time I spent preparing for work or all the time I worked past my scheduled shift, including unpaid overtime.

12.    Securitas caused me and other security guards to work "off the clock", such as when we arrived on-site 15 minutes prior to the time Securitas began paying me and when we worked past out shift while not being paid, which no doubt resulted savings in labor costs and payroll for the company.

13.    The Securitas schedule and time records sent to its corporate payroll department did not all the time I worked each week.

14.    The Supervisors I worked under during my employment with Securitas knew that I and other security guards were regularly working "off-the-clock."

15.    Between July 2005 and August 2007, I observed the daily activities of many of Securitas' security guards, including the number of hours they were scheduled, the hours they generally worked and the manner in which their hours were recorded.  In addition to me, these persons included, but were not limited to Paul Galloway, Robert Newson, Alvan Young, Margaret Brown, and Robin Roberson.

16.     Pursuant to Securitas' security guard dress code and appearance policy, I and other security guards were required to purchase and wear a Securitas uniform consisting of pants, shirt, boots, jacket, duty belt, badge and other items.

17.     I and other security guards were required to maintain our uniforms in a clean and unwrinkled condition and ensure that our boots and duty belt be cleaned and shined at all times.

18.     Consistent with Securitas' uniform policy, I spent at least one hour, and frequently two hours, each week making sure that my uniform was cleaned and pressed and that my boots were cleaned and shined.

19.     I and other security guards worked off the clock each week to comply with Defendant's uniform appearance requirements.

20.     Defendant was aware that I and other security guards often worked more than 40 hours each week as a result of following Securitas' dress code policy and the extra time I and other security guards spent maintaining our uniforms.

Dated: May 29, 2008          *Crystal Howard.*          Sign Name

                             *CRYSTAL HOWARD*          Print Name
                             CRYSTAL HOWARD

IN THE UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL HOWARD, PAUL GALLOWAY, ROBERT NEWSON AND ALVAN YOUNG, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| | ) | Hon. Joan B. Gottschall |
| Plaintiffs, | ) ) | Magistrate Judge Maria Valdez |
| v. | ) ) | Case No. 08 C 2746 |
| SECURITAS SECURITY SERVICES, USA INC., | ) ) ) | |
| Defendant. | ) ) | |

## DECLARATION OF PAUL GALLOWAY

I, PAUL GALLOWAY, hereby declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the following is true and correct:

1.    I worked as a K-9 Handler for Securitas Security Services, USA Inc. ("Securitas") from approximately July 2006 until approximately October 2006.

2.    I worked for Securitas as a uniformed security guard and was paid approximately $9.50 per hour.

3.    I worked out of the Securitas branch located at 500 N. Pulaski Rd., Chicago, Illinois, 60624 and reported to various supervisors.

4.    I, along with other security guards, performed the following duties:

      a.  Conducted inspections and surveillance at various CTA stations and platforms to check for irregularities and to prevent crime and criminal conduct;

      b.  Patrolled CTA stations and platforms for purposes of preserving order, preventing unlawful activity and enforcing rules, laws and directives;

      c.  Prepared logs or incident reports as required;  and

      d.  Responded to incidents of fire, medical emergency, CTA platform emergencies, and other incidents or conditions following procedures established for the site and location.



PLAINTIFF'S
EXHIBIT
3

5.      Securitas required that I undergo extensive training.   Specifically, I was required to complete the following courses:

      a.  K-9 handler's course that took two weeks and approximately 90 - 100 hours to complete and included classroom and extensive dog handling instruction; and

      b.  Securitas' Act Certification Training ("ACT") which consisted of three courses, ACT 1, 2 and 3 that dealt with different aspects of security.

6.      The above mentioned training was directly related to my job duties as a security guard and was not voluntary.

7.      The above mentioned training was conducted by Securitas personnel.

8.      Securitas did not accurately record all the time I spent training.

9.      Securitas did not pay me for any of the time I spent training, including overtime hours worked in excess of 40 hours per week.

10.     I was typically scheduled to work approximately 5 days per week. My regular shift was from 10:00 p.m. to 6:00 a.m. and I regularly worked at least 40 hours per week.

11.     As part of its policy, Securitas required that I and other security guards arrive at its branch office 15 minutes prior to my scheduled shift so that I could prepare for work by inspecting the dogs, verifying the dogs were healthy and otherwise preparing for my shift.

12.     Securitas provided me and other security guards with a TOCO wand which allowed us to hit sensors on our security badges to record the start of our scheduled shift, hit sensors located throughout our route which indicated our time and location and hit our badge at the end of our scheduled shift.

13.     Securitas caused me and other security guards to work "off the clock", such as when we arrived on-site 15 minutes prior to the time Securitas began paying me and when we worked through our breaks while not getting paid, which no doubt resulted savings in labor costs and payroll for the company.

14.     The Securitas schedule and time records sent to its corporate payroll department did not include all the time I worked each week.

15.     The Supervisors I worked under during my employment with Securitas knew that I and other security guards were regularly working "off-the-clock."

16.     Pursuant to Securitas' security guard dress code and appearance policy, I and other security guards were required to purchase and wear a Securitas uniform consisting of pants, shirt, boots, jacket, duty belt, badge and other items.

17.    I and other security guards were required to maintain our uniforms in a clean and unwrinkled condition and ensure that our boots and duty belt be cleaned and shined at all times.

18.    Consistent with Securitas' uniform policy, I spent approximately 2 hours each week cleaning and ironing my uniform and cleaning and shining my boots.

19.    I and other security guards worked off the clock each week to comply with Defendant's uniform appearance requirements.

20.    Defendant was aware that I and other security guards often worked more than 40 hours each week as a result of following Securitas' dress code policy and the extra time I and other security guards spent maintaining our uniforms.

Dated: May 26, 2008                          _Paul C. Galloway_ Sign Name

                                             _PAUL D. GALLOWAY_ Print Name
                                             PAUL GALLOWAY

3

IN THE UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL HOWARD, PAUL GALLOWAY, ROBERT NEWSON AND ALVAN YOUNG, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) | Hon. Joan B. Gottschall |
| | ) | |
| Plaintiffs, | ) ) | Magistrate Judge Maria Valdez |
| v. | ) ) | Case No. 08 C 2746 |
| | ) | |
| SECURITAS SECURITY SERVICES, USA INC., | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF ROBERT NEWSON

I, ROBERT D. NEWSON, hereby declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the following is true and correct:

1.    I worked for Securitas Security Services, USA Inc. ("Securitas") from July 6, 2006 until October 31, 2007.

2.    I worked for Securitas as a uniformed security guard, initially earning $9.50 per hour and then $10.00 per hour.

3.    I worked out of the Securitas branch located at 500 N. Pulaski Rd., Chicago, Illinois, 60624 and reported to various supervisors during the time I worked for Securitas.

4.    I, along with other security guards, performed the following duties:

   a.  Conducted inspections and surveillance at various CTA stations and platforms to check for irregularities and to prevent criminal activity;

   b.  Patrolled CTA stations and platforms for purposes of preserving order, preventing unlawful activity and enforcing rules, laws and directives;

   c.  Prepared logs or incident reports as required; and

   d.  Protected evidence or scene of incidents in the event of accidents, emergencies or security investigations until the police arrived.



PLAINTIFF'S
EXHIBIT
4

5.     Securitas required that I undergo extensive training consisting of approximately 80 hours of work, none of which was paid.  Specifically, I was required to complete the "Basic 80-Hour K9 Handler Course" and Securitas' Act Certification Training ("ACT") which consisted of three courses, ACT 1, 2 and 3 that dealt with different aspects of security.

6.     The above mentioned training was directly related to my job duties as a security guard and was not voluntary.

7.     The above mentioned training was conducted by Securitas personnel.

8.     Securitas did not pay me for any of the time I spent undergoing Securitas' "Basic 80-Hour K9 Handler Course."

9.     Securitas maintained handwritten time sheets that contained the start time and the end time of my and other security guards' shifts.

10.     I was typically scheduled to work approximately 5 days per week. My regular shift was from 10:00 p.m. to 6:00 a.m. and I regularly worked over 40 hours per week.

11.     As part of its policy, Securitas required that I and other security guards arrive at its branch office 15 minutes prior to my scheduled shift so that I could prepare for work by retrieving my radio, inspecting my dog to make sure it was healthy, and otherwise preparing for my shift.

12.     Securitas provided me and other security guards with a TOCO wand which allowed us to hit sensors located throughout our route at different sites which indicated our time and location.

13.     Securitas supervisors also recorded the start time and end time of our shift on a handwritten sheet before we left the branch office to start our patrol and when we returned to the branch, although frequently the supervisors would not record our start time and end time on the handwritten sheets.

14.     Securitas required me to work past my scheduled shift during the majority of the shifts that I worked.  Frequently, I also worked past my scheduled shift covering a missed shift of another guard.

15.     Securitas did not pay me for all the time I spent preparing for work or all the time I worked past my scheduled shift, including unpaid overtime and regular wages.

16.     Securitas caused me and other security guards to work "off the clock", such as when we arrived on-site 15 minutes prior to the time Securitas began paying me and when we worked past our shift while not being paid, which no doubt resulted in savings in labor costs and payroll for the company.

17.     The Securitas schedule and time records sent to its corporate payroll department did not include all the time I worked each week.

2

18.     The Supervisors I worked under during my employment with Securitas knew that I and other security guards were regularly working "off-the-clock."

19.     During the time I worked for Securitas, I observed the daily activities of many of Securitas' security guards, including the number of hours they were scheduled, the hours they generally worked and the manner in which their hours were recorded. In addition to me, these persons included, but were not limited to Paul Galloway, Crystal Howard, Alvan Young and Mark Ward.

20.     Pursuant to Securitas' security guard dress code and appearance policy, I and other security guards were required to purchase and wear a Securitas uniform consisting of pants, shirt, boots, jacket, duty belt, badge and other items.

21.     I and other security guards were required to maintain our uniforms in a clean and unwrinkled condition and ensure that our boots and duty belt be cleaned and shined at all times.

22.     Consistent with Securitas' uniform policy, I spent at least one hour each week making sure that my uniform was cleaned and pressed and that my boots were cleaned and shined.

23.     I and other security guards worked "off the clock" each week to comply with Defendant's uniform appearance requirements.

24.     Defendant was aware that I and other security guards often worked more than 40 hours each week as a result of following Securitas' dress code policy and the extra time I and other security guards spent maintaining our uniforms.

Dated: June 2, 2008                     _Robert D. Newson_____ Sign Name

                                        _Robert D. Newson_____ Print Name
                                        ROBERT D. NEWSON

3

IN THE UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CRYSTAL HOWARD, PAUL                          )
GALLOWAY, ROBERT NEWSON                        )
AND ALVAN YOUNG, Individually, and            )
on Behalf of All Others Similarly Situated,   )    Hon. Joan B. Gottschall
                                              )
              Plaintiffs,                      )    Magistrate Judge Maria Valdez
                                              )
        v.                                    )    Case No. 08 C 2746
                                              )
SECURITAS SECURITY SERVICES,                   )
USA INC.,                                      )
                                              )
              Defendant.                       )

## DECLARATION OF ALVAN YOUNG

I, Alvan Young, hereby declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the following is true and correct:

1.     I worked for Securitas Security Services, USA Inc. ("Securitas") from approximately November 2004 through November 2006.

2.     I worked as an hourly employee for Securitas as a uniformed security guard, initially earning $9.50 per hour and then $9.75 per hour.

3.     I worked out of the Securitas branch located at 500 N. Pulaski Rd., Chicago, Illinois, 60624 and reported to various supervisors during the time I worked for Securitas, including Commander Barraza, Sergeant Sanchez, Sergeant Mike Davis and Sergeant Ortiz.

4.     I, along with other security guards, performed the following duties:

   a.   Conducted inspections and surveillance at various CTA stations and platforms to check for irregularities and to prevent criminal activity;

   b.   Patrolled CTA stations and platforms for purposes of preserving order, preventing unlawful activity and enforcing rules, laws and directives;

   c.   Prepared logs or incident reports as required; and

   d.   Protected evidence or scene of incidents in the event of accidents, emergencies or security investigations until the police arrived.



PLAINTIFF'S
EXHIBIT
5

5.      Securitas maintained handwritten time sheets that contained the scheduled start time and end time of my and other security guards' shifts. Neither I nor other security guards recorded the time at which we began our work for each shift. Rather, Securitas' supervisors would record a start time and end time on a handwritten sheet.

6.      I was typically scheduled to work approximately 5 days per week. My regular shift was from 10:00 p.m. to 6:00 a.m. and I regularly worked over 40 hours per week.

7.      As part of its policy, Securitas required that I and other security guards arrive at its branch office 15 minutes prior to my scheduled shift so that I could prepare for work by retrieving my radio, inspecting my dog to make sure it was healthy, and otherwise preparing for my shift. Securitas did not compensate me for these 15 minutes of work.

8.      Securitas provided me and other security guards with a TOCO wand which allowed us to hit sensors on our security badges to record the start of our scheduled shift. The TOCO wands also allowed security guards to hit sensors located throughout our route at different sites which indicated our time and location. The TOCO wands frequently malfunctioned and did not work properly.

9.      Securitas required me to work past my scheduled shift during the majority of the shifts that I worked. Frequently, I worked past my scheduled shift covering a missed shift of another guard. Securitas did not properly pay me for this extra time worked.

10.     Securitas did not properly pay me for all the time I worked past my scheduled shift.

11.     Securitas caused me and other security guards to work "off the clock", such as when we arrived on-site 15 minutes prior to the time Securitas began paying me and when we worked past our shift while not being paid, which no doubt resulted in savings in labor costs and payroll for the company.

12.     The Securitas schedule and time records sent to its corporate payroll department did not include all the time I worked each week.

13.     The Supervisors I worked under during my employment with Securitas knew that I and other security guards were regularly working "off-the-clock."

14.     During the time I worked for Securitas, I observed the daily activities of many of Securitas' security guards, including the number of hours they were scheduled, the hours they generally worked and the manner in which their hours were recorded. In addition to me, these persons included, but were not limited to Paul Galloway, Crystal Howard, Felicia Carr, Corey Griffin, James Hill, and Marcus Long.

15.     Pursuant to Securitas' security guard dress code and appearance policy, I and other security guards were required to purchase and wear a Securitas uniform consisting of pants, shirt, boots, jacket, duty belt, badge and other items.

2

16.    I and other security guards were required to maintain our uniforms in a clean and unwrinkled condition and ensure that our boots and duty belt be cleaned and shined at all times.

17.    Consistent with Securitas' uniform policy, I spent at least one hour each week making sure that my uniform was cleaned and ironed and that my boots were cleaned and shined.

18.    I and other security guards worked "off the clock" each week to comply with Defendant's uniform appearance requirements.

19.    Defendant was aware that I and other security guards often worked more than 40 hours each week as a result of following and complying with Securitas' dress code policy and the extra time I and other security guards spent maintaining our uniforms.

20.    I trained a Securitas security dog approximately fours each week for approximately two months, yet Securitas did not pay me regular wages or overtime for the time I spent training their dog.

Dated: June 10, 2008                    _____ Sign Name

                                        _____ Print Name
                                        ALVAN YOUNG

## Political Activity and Contributions

No contributions of Company funds, property or services for political purposes shall be made directly or indirectly by or on behalf of the Company.

This policy statement relates only to contributions made by or on behalf of the Company and is not intended to discourage employees from making contributions of their own resources or time to the candidates or political parties or issues of their choice. The Company will not reimburse employees directly or indirectly for such contributions.

No employee will solicit political contributions while on Company or client premises.

## Attendance Standards

Employees work as a team and depend on each other to provide the best customer service. Due to the critical nature of your job, and the need to staff security posts at all times, you are to report to work as scheduled at your post at the exact time. You will be notified of the starting and ending times of your workday and break periods, if applicable. You are to be ready to begin work at your scheduled start time.



PLAINTIFF'S EXHIBIT
6

If you do not report for duty or call to report an absence or late arrival, you will unfairly inconvenience a fellow employee, create scheduling problems or leave a client facility unprotected. You are considered late if you are not at your work area at the starting time of your shift.

You are expected to notify your supervisor and/or the scheduler *personally* as far in advance as possible, but in any event, not less than four (4) hours in advance of the start of your shift when you know that you will be late, or must leave work early, in order to allow for the necessary replacement. *To avoid mistakes and misunderstandings, you should personally place the call.* If your supervisor is unavailable, notification should be made to the next level of authority within your branch office. Leaving a voice mail message is not considered acceptable notification. Your branch office and/or client site reserves the right to establish more stringent attendance and/or call off policies in which case you will receive written notification.

If your absence is due to illness, the Company may request that you furnish a doctor's certification.

When requesting a day off, you will be required to follow the guidelines established by your branch

Securitas Proprietary

management. Failure to report to work or notify your supervisor of your absence within the proper timeframe ("No call, no show") is a serious violation of Company policy. Failure to show up or call for three consecutive days will be considered an automatic voluntary resignation.

FROM :                          FAX NO. : _____     Jan. 26 2008 02:53PM  P4



# SECURITAS SECURITY AND INVESTIGATION APPEARANCE PROGRAM

**PROGRAM STATEMENT:** It is essential that Securitas security officers maintain a high standard of appearance at all times. Following is the company's program on appropriate and acceptable appearance standards.

Uniform Requirements:

1. All uniforms will be maintained in a clean and unwrinkled condition when worn.
2. Only company-issued equipment may be worn while an officer is in uniform. This shall include, but is not limited to, belts, hats, and ties. Unauthorized pins, patches, or devices may not be worn.
3. Shoes will be cleaned and shined at all times. Required footwear permitted to be worn: black low quarters or dress boots. Tennis shoes are not permitted.
4. Socks must be either navy blue or black.
5. Area management shall determine if a tie should be worn with a long-sleeved shirt or jacket.
6. Securitas badges and patches are the only acceptable insignia. When jackets are worn, the breast badge will be visible and located on the outer garment.
7. Only jackets, coats or raincoats issued and/or approved by Securitas are to be worn over the uniform.
8. Uniforms will be worn when an officer is off duty, except in travel to and from his/her residence.
9. Undershirts with logos or colors that show through the uniform shirts are not permitted.

Hair:

All uniformed security personnel shall appear on duty with a clean, neat hairstyle at all times. Shaggy, unkempt, or non-traditionally colored hair is not permissible, regardless of length. Long hair shall be worn up by all officers and shall not exceed the top edge of the collar. Hair accessories must be neat and clean and present a professional appearance. Sideburns shall not exceed the middle of the ear.

Facial Hair:

All security officers reporting to work must be clean shaven, with the exception of mustaches, and maintain a professional image. Mustaches will be neatly trimmed and shall not extend below the parallel of the lower lip. Goatees and beards are **not** permitted.



PLAINTIFF'S EXHIBIT
7

## Safety

Prevention of accidents is a Company goal and requires your cooperation. Please make it a part of your job to work safely and assist in the prevention of accidents to yourself, client employees and co-workers. Familiarize yourself with all safety regulations and report any unsafe work condition or injury to yourself and/or any other individual by contacting your supervisor immediately or document-ing it on an Incident Report. Do not let any unsafe or unhealthy situations go unreported. Immediate action on your part could prevent an accident or injury to a co-worker, a client employee or yourself.

Supervisors are responsible for helping you understand and comply with Company and client safety rules, emergency plans, regulations and procedures.

## Uniforms and Appearance

In the security business, your appearance is a reflection of your professionalism. The public responds positively to an authoritative presence. Therefore, in order to provide the best possible

service for our clients, we must present ourselves in a manner that displays professionalism and commands respect.

Acceptable personal appearance is an ongoing requirement of employment. You will be provided with the appropriate uniform, but it is your responsibility to make sure that the uniform is kept clean and neat. Contact your supervisor immediately if your uniform becomes damaged or unwearable.

1.    You must wear prescribed Company uniforms Only conventional belt buckles may be worn Unauthorized pins, patches or devices may not be worn. Absolutely no political, religious or other organizational symbols of any kind may be worn while on duty or in the work area.

2.    We recommend that you wear appropriate undergarments under your uniform.

3.    All leather goods, including cap visor, belt, holster and shoes are to be shined.

4.    Your hairstyle must be neat and combed in a natural style that is appropriate in the work environment. Unconventional or extreme colors of hair and/or hairstyles are not acceptable. For example corn rows or mohawks are not an acceptable form of hair style. Fingernails are to

n

be clean, neat and not extreme in length or color.

ig

5. Beards are not permitted. Mutton chops, handlebar mustaches, goatees and Vangoghs are not acceptable. Facial hair on men is limited to mustaches neatly trimmed above the lower lip.

ely

6. For female employees, one earring per ear is acceptable and should be small in size and conservative in style and color. Over-sized earrings are not acceptable. For male employees, earrings may not be worn while working. Excessive jewelry may not be worn unless previously authorized by your branch management. Visible body piercing accessories or tatoos are not permitted.

s

ıot

y

7. Securitas shoulder patches or client-furnished patches are the only acceptable insignia while on duty or in the work area.

a

8. When you wear an issued jacket, the breast badge must be on the outer garment and visible. Only jackets, coats or raincoats issued and  approved by the Company may be worn over your uniform during work hours.

lors
For

9. Where required, caps must be worn at all times

e to

except when you are inside a vehicle or facility, or when special safety headgear is required.

10. You may not wear your uniform off-duty except when you are directly traveling to and from your assigned post.

11. When in uniform, you must not enter bars, lounges, taverns, casinos or other places where alcoholic beverages are served, unless you are assigned to such an establishment while on duty.

You are not authorized to substitute personal items of clothing for Securitas uniform issue. If you do not meet the standards of this policy, you will be required to take corrective action, which may include leaving the premises. You will not be compensated for any work time missed because of failure to comply with this policy.

Reasonable accommodations will be made for those employees whose religious beliefs or medical conditions require deviations from this policy.

## NOTICE OF COLLECTIVE ACTION LAWSUIT

*Howard et al v. Securitas Security Services, United States District Court for the Northern District of Illinois, Case Docket No. 08 C 2746*

**To:**   **All current or former Security Guards employed by Securitas in the State of Illinois at any time between May 12, 2005 and the present date.**

**RE:**   **Fair Labor Standards Act ("FLSA") Collective Action Lawsuit Seeking Unpaid Wages and Overtime Compensation**

### INTRODUCTION

### PLEASE READ THIS NOTICE CAREFULLY AS IT MAY AFFECT YOUR RIGHTS

The purpose of this notice is to: 1) inform you that a lawsuit exists that you might join, 2) advise you of how your rights may be affected by this lawsuit, and 3) instruct you on the procedure for participating in this lawsuit, should you choose to do so.

### DESCRIPTION OF LAWSUIT

On May 12, 2008 Crystal Howard, Paul Galloway, Robert Newson and Alvin Young ("Plaintiffs") brought a lawsuit against Securitas Security Services ("Securitas") on behalf of themselves and all other Security Guards who were not compensated for all the time they worked. Plaintiffs allege that Securitas required them to work off-the-clock without proper compensation. Specifically, Plaintiffs allege that they worked unpaid time pre-shift, post-shift and/or maintaining their uniforms pursuant to Securitas' common policy and scheme. Plaintiffs seek to recover unpaid wages, double damages, interest, costs of the suit, and attorneys' fees.

### COMPOSITION OF CLASS

Plaintiffs sue on behalf of all individuals who were employed by Securitas after May 12, 2005 as Security Guards and did not receive proper compensation for all the time they actually worked.

### YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT

If you fit the definition above, you may join in the FLSA claim raised in this lawsuit by completing and sending a signed copy of the attached "Consent to Join" form to Plaintiffs' lawyers via email, facsimile or U.S. mail to the following:

Securitas Overtime Action c/o
Stephan Zouras, LLP
205 N. Michigan Avenue
Suite 2560



PLAINTIFF'S EXHIBIT
8

Chicago, Illinois 60601
Telephone: 312-233-1550
Fax: 312-233-1560
lawyers@stephanzouras.com
www.stephanzouras.com

Your Consent to Join form must be postmarked by no later than [ninety days from mailing]. A first class self-addressed and stamped envelope is included for your convenience. Plaintiffs' lawyers will file with the Court all "Consent to Join" forms that have been filled out, signed and postmarked on or before [ninety days from mailing]. If you file a "Consent to Join" form, your continued right to participate in the case may depend upon a later decision by the Court that you are an appropriate participant in accordance with federal law.

<u>EFFECT OF JOINING OR NOT JOINING THIS LAWSUIT</u>

If you choose to join the lawsuit, you will be bound by any ruling, judgment or settlement, favorable or unfavorable. While the lawsuit is proceeding, you may be required to provide information or otherwise participate in the action. If you choose not to join the lawsuit, you will not be bound by any ruling, judgment or settlement entered in the case, favorable or unfavorable. If you choose not to join this lawsuit, you will retain any rights you may have under the FLSA.

<u>STATUTE OF LIMITATIONS</u>

Plaintiffs' claims in this action are limited to a three-year statute of limitations. If you choose to join this action, you may be able to recover damages if you were improperly denied overtime compensation only for overtime hours worked within the two or three years prior to the date you file your consent form. If you choose not to join this action or choose to bring your own action, some or all of your potential claims may later be barred by the applicable statute of limitations.

<u>NO RETALIATION PERMITTED</u>

The law prohibits retaliation against employees for exercising their rights under the FLSA. Therefore, Securitas is specifically **prohibited from discharging you or retaliating against you** in any other manner because you choose to participate in this action.

<u>YOUR LEGAL REPRESENTATION IF YOU JOIN</u>

If you choose to join the lawsuit, your interests will be represented by counsel for Plaintiffs. Plaintiffs' counsel are:

Ryan F. Stephan                    Marvin A. Miller
James B. Zouras                    Matthew E. VanTine

Stephan Zouras, LLP
205 N. Michigan Avenue
Suite 2560
Chicago, Illinois 60601
Telephone: 312-233-1550
Fax: 312-233-1560
jzouras@stephanzouras.com
rstephan@stephanzouras.com

MILLER LAW LLC
115 S. LaSalle Street
Suite 2910
Chicago, Illinois  60603
Telephone: 312-332-2400
mmiller@millerlawllc.com

Thomas M. Ryan
Law Offices of Thomas M. Ryan, P.C.
205 N. Michigan Ave., Suite 2560
Tel: 312-233-1553
Cell: 312-545-9096
Fax: 312-233-1560
tom@tomryanlaw.com

Plaintiffs' attorneys are being paid on a contingency basis, which means that if there is no recovery, there will be no attorneys' fees.  If there is a recovery, the attorneys will receive a part of any settlement obtained or money judgment entered in favor of all members of the class.  Any payment of attorneys' fees will require approval of the court.

Plaintiffs' attorneys will advance necessary costs and out-of-pocket disbursements and expenses on your behalf in this litigation.  In the event that necessary costs and out-of-pocket disbursements are not separately approved by the court or paid by Securitas, you will have no obligation to reimburse Plaintiffs' attorneys for such costs.

FURTHER INFORMATION

Further information about the lawsuit or this notice may be obtained by contacting Plaintiffs' attorneys at the addresses or phone numbers provided above.

THIS NOTICE AND ITS CONTENT HAVE BEEN AUTHORIZED BY THE FEDERAL DISTRICT COURT, THE HONORABLE JUDGE JOAN GOTTSCHALL. THE COURT TAKES NO POSITION REGARDING THE MERITS OF THE PLAINTIFFS' CLAIMS OR DEFENDANT'S DEFENSES.

**DO NOT CONTACT THE CLERK OF COURT REGARDING THIS NOTICE.**

## CONSENT TO BECOME PARTY PLAINTIFF

### <u>Howard et al v. Securitas USA Inc. et al.,</u>

Complete and Mail To:
ATTN: SECURITAS ACTION
Stephan Zouras, LLP
205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Fax to: (312) 233-1550
Email to: lawyers@stephanzouras.com

By signing below, I state that I have been employed by Securitas USA, Inc. or one of its subsidiaries or affiliates as a uniformed security guard or other similarly titled position within the past three (3) years and that I hereby consent to join this lawsuit seeking unpaid wages and overtime based on Securitas' violations of the Fair Labor Standards Act, 29 U.S.C. Sec. 201 *et. seq.*

I hereby designate the law firm Stephan Zouras, LLP and other attorneys with whom they may associate to represent me for all purposes of this action.

I also designate the Class Representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____
Date

_____
Signature

_____
Print Name

_____
Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Email Address

**\*Statute of Limitations concerns mandate that you return
this form as soon as possible to preserve your rights.**