UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL HOWARD, PAUL GALLOWAY ROBERT NEWSON and ALVAN YOUNG | ) ) ) | |
| Plaintiffs | ) ) | Case No. 08 C 2746 |
| v. | ) ) | Judge Gottschall |
| SECURITAS SECURITY SERVICES USA, INC. | ) ) ) ) | Magistrate Judge Valdez |
| Defendant | ) | |

DEFENDANT SECURITAS SECURITY SERVICES USA, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, Securitas Security Services USA, Inc. (hereinafter "Securitas" or "Securitas K-9"), pursuant to Local Rule 56.1(a)(2), hereby submits this Memorandum of Law in Support of its Motion for Partial Summary Judgment.

PRELIMINARY STATEMENT

Plaintiffs, a group of former Chicagoland Securitas K-9 Branch employees who each were terminated for cause, now bring this action purporting to represent a class of all Illinois-based Securitas security guards. Plaintiffs attempt to allege claims under the Fair Labor Standards Act ("FLSA") for training pay, uniform maintenance pay, and overtime pay due to shift holdovers. Plaintiffs' training pay and shift-holdover overtime pay claims lack legal merit under well established precedent.[1]

---

[1] This motion for partial summary judgment does not address the uniform maintenance pay claims contained in Plaintiffs' Complaint. Defendant has filed its Answer which denies these allegations. On June 24, 2008, Plaintiffs filed their Motion to Conditionally Certify Class and Issue Notice, which purports to allege additional FLSA claims for uncompensated pre-shift work. These allegations -- which Securitas denies -- are not contained in the Complaint, and thus are not addressed in the present partial summary judgment motion.

Securitas provides pre-employment training to prospective job candidates which meets the Department of Labor's test for noncompensable training. Moreover, two of the Plaintiffs improperly attempt to bootstrap untimely training pay claims dating back to 2002 and 2004, which are well outside of the recovery period permitted under the FLSA. Additionally, notwithstanding Plaintiffs' blanket allegations to the contrary, Securitas' time records clearly establish that Plaintiffs were regularly paid for regular and overtime work hours.

Based on this Memorandum, as well as the Motion, Statement of Facts and Compendium of Materials filed by Securitas, it is clear that Plaintiffs have failed to establish the existence of any material issues of fact on the training pay and shift-holdover overtime pay claims contained in their FLSA action, and that Securitas is entitled to partial summary judgment as a matter of law.

## JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR TRAINING PAY CLAIMS

The core issue involved in Plaintiffs' training pay claims is the 120 hours of unpaid pre-employment training that Securitas K-9 provides to all job applicants prior to considering them for employment as Securitas K-9 security guards. Stmt. of Facts Pars. 5, 7-9; Tab "1" -- Aff. of D. Reese at pp. 4-5, Pars. 11-13. Because "the issue of whether a given set of facts constitutes work under the FLSA is a question of law," *Chao v. Tradesmen International, Inc.*, 310 F.3d 904, 907 (6th Cir. 2002), FLSA claims such as this one are well-suited to summary judgment motions. Since 1947, Supreme Court precedent has held that job applicants who participate in pre-employment training programs are trainees -- they are not employees under the Fair Labor Standards Act. *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152-53 (1947). As a result, the FLSA does not require employers to compensate trainees for time spent in pre-employment training. *Id.*; *see also Bienkowski v. Northeastern University*, 285 F.3d 138, 141 (1st Cir. 2002).

2

In *Walling*, the Court held that a railroad was not required to compensate brakeman trainees for pre-employment training because the railroad "receive[d] no 'immediate advantage' from any work done by the trainees." *Walling*, 330 U.S. at 153. The *Walling* Court found the following facts particularly dispositive -- brakeman trainees did not displace regular employees, they did not anticipate to be paid for their efforts, they were not automatically hired to active positions at the close of the training, and the training provided was similar to what they would have received at a vocational school. *Id*. at 150-53.

Identical facts exist in the present case. Plaintiffs participated in 120 hours of mandatory pre-employment training to become Securitas K-9 security guards. Stmt. of Facts Pars. 36-38; Tab "1" -- Aff. of D. Reese at pp. 8-9, Pars. 24-25; Tab "2" -- Supplemental Aff. of D. Reese at p. 2, Par. 5. At the time that they entered the training program, Plaintiffs were told that they would not be paid. Stmt. of Facts Pars. 8-9; Tab "1" -- Aff. of D. Reese at p. 5, Par. 13. Securitas K-9 does not automatically hire every applicant that successfully completes its pre-employment training. Stmt. of Facts Pars. 34-35; Tab "1" -- Aff. of D. Reese at p. 9, Par. 23. The length and content of 20 hours of the Securitas pre-employment training is mandated by Illinois law, and is readily available from outside vocational or trade schools. Stmt. of Facts Pars. 10-11, 17; Tab "1" -- Aff. of D. Reese at pp. 5-6, Pars. 14, 16. Securitas in turn acts in a manner similar to a vocational school and provides its 100-Hour Basic K9 Handler Course to both job applicants and members of local law enforcement agencies. Stmt. of Facts Pars. 24, 31; Tab "1" -- Aff. of D. Reese at pp. 7-8, Pars. 20-22.

Relying on *Walling*, the United States Department of Labor subsequently developed and consistently applies six criteria to determine whether pre-employment trainees are employees

under the FLSA. *Op., Administrator, Dep't of Labor*, FLSA 2004-16 (Oct. 19, 2004), sets forth the criteria as follows:

1. The training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school.

2. The training is for the benefit of the trainees.

3. The trainees do not displace regular employees, but work under their close observation.

4. The employer that provides the training derives no immediate advantage from the activities of the trainees; and on occasion operations may actually be impeded.

5. The trainees are not necessarily entitled to a job at the conclusion of the training period.

6. The employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.

*See also Op., Administrator, Dep't of Labor*, FLSA 2001 WL 1558755 (Jan. 30, 2001) (applying the six criteria to determine that pre-employment trainees who undertook 18 1/2 hours of telemarketing training were not employees and were not entitled to training compensation); *see also Reich v. Parker Fire Protection District*, 992 F.2d 1023 (10th Cir. 1993) (applying six criteria to determine 10-week pre-employment training program did not make trainees employees or 10-week training period compensable). When the DOL criteria are applied to the present case, it is clear that Plaintiffs are not entitled to compensation for their participation in Securitas K-9's pre-employment training program.

*Securitas' Pre-Employment Training Program*
*Is Similar to Vocational School Courses*

Securitas' 20-hour pre-employment training session is mandated under Illinois law for all security guards providing security services in Illinois. 225 ILCS 447/25-20; Stmt. of Facts Pars. 10-11; Tab "1" -- Aff. of D. Reese at p. 5, Par. 14. Course length and topics are dictated by the

4

statute. *Id.* The same course content is available through vocational and trade schools in the Chicago area. Stmt. of Facts Par. 17; Tab "1" -- Aff. of D. Reese at p. 6, Par. 16. As *Walling* aptly stated, "The Fair Labor Standards Act was not intended to penalize railroads for providing, free of charge, the same kind of instruction [as a vocational school] at a place and in a manner which would most greatly benefit the trainees." 330 U.S. at 641; *see also Reich*, 992 F.2d at 1027 ("it is uncontradicted that defendant's training curriculum overlapped significantly with what would be taught in any fire fighting academy").

Similarly, Securitas K-9 acts in the manner of a vocational school by providing its 100-Hour Basic K9 Handler Course to persons not seeking employment with Securitas K-9, such as police officers from the Yorkville Police Department, and sheriffs from the DuPage County Sheriff's Department, who pay fees to attend the course. Stmt. of Facts Par. 31; Tab "1" -- Aff. of D. Reese at p. 8, Par. 22. Because the 100-Hour Basic K9 Handler course teaches skills that are fungible within the arena of canine security, it is akin to a vocational school under the DOL criteria and applicable case law. *See Reich*, 992 F.2d at 1028.

*Securitas' Pre-Employment Training Program<br>Is for The Benefit of Its Trainees*

Training benefits trainees when it provides them with fungible industry skills through an educationally valid training program. *Reich*, 992 F.2d at 1028; *see also Op., Administrator, Dep't of Labor*, FLSA 2001 WL 1558755 at p. 2 ("the [trainees] learn computer skills, keyboard skills, telephone skills and sales techniques that qualify them for telemarketing and other telephone and/or sales-related jobs at any telemarketing agency and many other retail outlets. The skills taught are transferable skills beneficial to the trainees"). Securitas K-9's 20-hour mandated course is presumptively educationally valid because it is conducted pursuant to Illinois statute,

by state-certified trainers, who teach the topics required by Illinois law.  Stmt. of Facts Pars. 10-11, 13; Tab "1" -- Aff. of D. Reese at pp. 5-6, Pars. 14-15.

Moreover, when a Securitas K-9 trainee successfully completes the 20-hour state mandated training, the trainee is provided with a Certificate of Completion to use to apply to the State of Illinois for a Permanent Employment Registration Card (PERC).  Stmt. of Facts Par. 18; Tab "1" -- Aff. of D. Reese at p. 6, Par. 17.  Once an applicant files a PERC card application, he or she is eligible to work as a security guard for any employer of security guards within Illinois.  The PERC application and resulting PERC are not limited to employment with Securitas.  Stmt. of Facts Par. 19; Tab "1" -- Aff. of D. Reese at p. 6, Par. 17.  Securitas' competitors have hired former Securitas security guards who obtained their PERC status through Securitas' pre-employment training programs.  Stmt. of Facts Par. 20; Tab "1" -- Aff. of D. Reese at p. 7, Par. 18.

Similarly, Securitas has a nationally-recognized canine handling program in which it enrolls trainees.  Stmt. of Facts Pars. 11, 31; Tab "1" -- Aff. of D. Reese at p. 5, Par. 14 and p. 8, Par. 22.  External agencies such as local police departments have recognized the educational validity of the 100-Hour Basic K9 Handling Course, and send their employees to the training.  *Id.* The skills obtained in the 100-hour training are fungible.  Securitas employees who took the 100-Hour K9 training course as non-employee trainees are subsequently able to apply the training and obtain jobs with Securitas' competitors as canine security officers.  Stmt. of Facts Par. 32; Tab "1" -- Aff. of D. Reese at pp. 8-9, Par. 22.

Securitas provides the entire 120-hour pre-employment training program to applicants free of charge.  Stmt. of Facts Pars. 17, 30; Tab "1" -- Aff. of D. Reese at p. 6, Par. 16 and p. 8, Par. 21.  This factor alone carries weight with the DOL and courts in determining the benefits

6

trainees receive from training. *See Op., Administrator, Dep't of Labor*, FLSA 2001 WL 1558755 at p. 2 (applying the employee benefit criteria, opinion notes that the training is provided at "no cost to the candidates"); *see also Walling*, 330 U.S. at 641 (noting that the railroad provided brakeman training "free of charge").

*Securitas Trainees Do Not Displace Regular Employees*

The third DOL criteria is satisfied when trainees perform only a limited amount of closely-supervised work for an employer, and do not assume the full panoply of duties performed by employees. *Reich*, 992 F.2d at 1028. In *Reich*, firefighter trainees at defendant's firefighting academy were not assigned to shifts and did not maintain actual firefighting equipment. *Id.* Additionally, all of their training was closely supervised, and any actual productive work performed was *de minimis* in nature. *Id.* at 1028-29.

The pre-employment trainees in the Securitas 120-hour program do not perform *any* work for Securitas clients, nor do they perform *any* of the duties of Securitas' K-9 security guards. Stmt. of Facts Pars. 14-16, 24-28; Tab "1" -- Aff. of D. Reese at p. 6, Par. 15 and pp. 7-8, Par. 20. Apart from a one hour observation period at a nearby locale, where trainees merely observe Securitas employees and guard dogs navigate CTA stations and trains but themselves perform no work, the entire training period is spent exclusively in classroom and dog handling training at the Securitas K-9 Branch. Stmt. of Facts Pars. 14, 24, 28; Tab "1" -- Aff. of D. Reese at p. 6, Par. 15 and pp. 7-8, Par. 20. Trainees are not even permitted to handle the canine guard dogs outside of the Securitas K-9 premises. Stmt. of Facts Par. 26; Tab "1" -- Aff. of D. Reese at pp. 7-8, Par. 20. Finally, they attend the training in street clothes, and are not provided with the standard uniform worn by Securitas K-9 security officers. Stmt. of Facts Pars. 16, 27; Tab "1" -- Aff. of D. Reese at p. 6, Par. 15 and pp. 7-8, Par. 20.

*Securitas Derives No Immediate Benefit from Its Trainees*

A prospective employer derives no immediate benefit from trainees when the trainees provide little or no actual work for the prospective employer until they complete the training period. *Bienkowski*, 285 F.3d at 138. In *Bienkowski*, plaintiffs were required, as a condition of employment, to receive emergency medical technician ("EMT") training during their probationary periods of employment, and performed no EMT services prior to completing training and obtaining their EMT certifications. *Id.* at 139-140. The *Bienkowski* court held that the employer should not be liable for overtime pay for time the probationary employees spent as students rather than workers, because the training was "not continuing education relating to existing job duties, but instead a pre-condition for employment which the employer tolerantly allow[ed] to be satisfied while the employee [was] working on a probationary basis." *Id.* at 141*; accord*, *Chao*, 310 F.3d at 910 (time spent at OSHA course required as condition of employment not compensable when trainees provided no work for employer); *see also Op., Administrator, Dep't of Labor*, FLSA 2001 WL 1558755 (pre-employment trainees provided a *de minimis* amount of actual work to prospective employer -- most training was in classroom setting away from company work area).

Securitas trainees do not perform *any* work for Securitas K-9 or even have *any* client contact during the training period. Stmt. of Facts Pars. 14-15, 25; Tab "1" -- Aff. of D. Reese at p. 6, Par. 15 and p. 7, Par. 20. They attend training in a classroom setting in their street clothes, and are not permitted to handle dogs outside of the Securitas K-9 facility. Stmt. of Facts Pars. 16, 26-27; Tab "1" -- Aff. of D. Reese at p. 6, Par. 15 and pp. 7-8, Par. 20. As a result, the Securitas pre-employment training program satisfies this DOL criterion.

*Securitas Trainees Are Not Guaranteed Employment*

Evidence that trainees are not guaranteed employment further bolsters the conclusion that they are not employees. *Walling*, 330 U.S. at 640 (brakemen trainees placed in qualified work pool for employment when needed); *see also Op., Administrator, Dep't of Labor*, FLSA 2001 WL 1558755 at pp. 2-3 (successful graduates of training program not employed on occasions where there were no vacancies). Even when trainees historically are hired upon completion of training, or expect to be hired, they generally remain trainees, not employees. *Id*. (even though successful trainees usually hired, they are not employees where they are not obligated to accept employment and company is not obligated to hire); *see also Reich*, 992 F.2d at 1029 (even though trainees fully expected to be hired after successfully completing training, the "totality of the circumstances" warranted finding that trainees were not employees).[2]

Securitas job applicants are not guaranteed employment simply because they complete the 120-hour pre-employment training. Applicants also must complete a variety of pre-employment prerequisites that are separate and apart from pre-employment training, such as pre-employment background checks and drug screenings. Stmt. of Facts Par. 33; Tab "1" -- Aff. of D. Reese at p. 9, Par. 23. Moreover, it is difficult to conclude that trainees anticipate being hired while undergoing Securitas' Basic K9 Handling Course, because a full 50% of the trainees drop out of the course and do not become Securitas K-9 employees. Stmt. of Facts Par. 29; Tab "1" -- Aff. of D. Reese at p. 8, Par. 21. There have also been occasions where trainees successfully complete the 120 hours of pre-employment training and are not hired because no canine security

---

[2]     Although the DOL's trainee criteria are not conclusive, courts customarily find them instructive when considering claims for pre-employment training under the FLSA, along with the "totality of the circumstances" presented, and will disallow allegations of employee status where, as is the case here, the facts in their totality clearly indicate otherwise. *Reich*, 992 F.2d at 1029.

guard positions are available. Stmt. of Facts Pars. 34-35; Tab "1" -- Aff. of D. Reese at p. 9, Par. 23.

### *Securitas Trainees Understand That Training Is Unpaid*

Plaintiffs make no allegations that they were promised pay for pre-employment training, or otherwise erroneously expected to be paid for the training, because they cannot do so. Since February 2005, Securitas has informed applicants during their initial employment interview that the 120 hours of pre-employment training will be unpaid. Stmt. of Facts Pars. 8-9; Tab "1" -- Aff. of D. Reese at p. 5, Par. 13. Therefore, Securitas' pre-employment training program satisfies this DOL criteria, because Securitas never undertook to pay the trainees during the time period at issue in this lawsuit, and trainees never expected to receive such pay. *Walling*, 330 U.S. at 150 (employer never paid trainees, and they never expected pay until hired); *see also Reich*, 992 F.2d at 1029 (firefighter trainees "fully understood that they would not be paid until [hired]").

### PLAINTIFFS HOWARD AND YOUNG DO NOT HAVE TIMELY TRAINING PAY CLAIMS IN ANY EVENT

The Fair Labor Standards Act establishes a timeframe of at most three years from an alleged FLSA violation in which to bring a claim. 29 U.S.C. Sec. 255(a). Plaintiffs filed this action on May 12, 2008, so any FLSA-related claims Plaintiffs may allege prior to approximately May 12, 2005 clearly cannot be brought before this court. Plaintiff Crystal Howard received her 120 hours of pre-employment training prior to her rehire in January 2003. Stmt. of Facts. Par. 38; Tab "2" -- Supplemental Aff. of D. Reese at p. 2, Par. 5. Plaintiff Alvan Young received his 120 hours of training in December 2004-January 2005. Stmt. of Facts Par. 37; Tab "1" -- Aff. of D. Reese at p. 9, Par 25. Put simply, these claims are outside the FLSA's maximum limitations period, and cannot be brought as a matter of law.

JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS
ON THEIR SHIFT-HOLDOVER OVERTIME PAY CLAIMS

An employee who brings a suit for unpaid overtime compensation has the burden of proving that he or she performed work for which he or she was not properly compensated. *Bjornson v. Daido Metal U.S.A., Inc.*, 12 F.Supp.2d 837, 840 (N.D. Ill. 1998) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  To meet this burden, the employee must first show that the employer's time records are either "inaccurate or inadequate." *Id.*  Until this showing is met, an employer has no burden to provide evidence of actual hours worked or other evidence negating the employee's FLSA claims. *Marchman v. Advocate Bethany Hospital*, No. 04 C 6051, 2006 U.S. Dist. LEXIS 50889 at *14-15 (N.D. Ill. 2006) (citing *Bjornson*); *see also Turner v. The Saloon, Ltd.*, 491 F.Supp.2d 767, 770 (N.D. Ill. 2007).

Conclusory allegations that overtime is not paid or recorded are not sufficient to preclude summary judgment.  *Turner*, 491 F.Supp.2d at 769-770; *Marchman*, 2006 U.S. Dist. LEXIS 50889 at *19.  This is particularly true when an employer produces time records that show it consistently recorded and paid overtime hours. *See Bjornson*, 12 F.Supp.2d at 840-41 (summary judgment for employer when plaintiff's blanket claims that overtime was discouraged and not recorded were belied by the fact that he consistently recorded, requested and was paid a substantial number of overtime hours); *see also Turner*, 491 F.Supp.2d at 769 (summary judgment for employer when plaintiff's blanket claim that Sunday overtime was discouraged and unpaid was contradicted by time records showing plaintiff either received Sunday overtime payments, or was not eligible to receive overtime payments because he had worked far fewer than 40 hours in the workweek).

Plaintiffs have presented no evidence to support their claim for uncompensated overtime hours, other than their conclusory allegations that they were not paid overtime wages for work-

11

ing past their scheduled shifts (Complaint Pars. 14, 21), and that Securitas failed to keep accurate time records (Complaint Par. 14). Even though the *Marchman* and *Turner* cases establish that Securitas is not obligated to provide any rebuttal evidence to these unsupported allegations, Securitas has described its timekeeping and payroll procedures and processes in detail, and has included demonstrative copies of its time, payroll, and client billing records reflecting hours worked and amounts paid, as well as corrections to Plaintiffs' pay. Stmt. of Facts Pars. 39-57; Tab "1" -- Aff. of D. Reese at pp. 10-16, Pars. 30-42, Exs. H-R.

As in the *Turner*, *Marchman*, and *Bjornson* cases, Securitas' detailed time and payroll summaries are sufficient to establish appropriate timekeeping and pay under the FLSA, casting serious doubt on Plaintiffs' cursory claims to the contrary. The summaries are rife with instances where Plaintiffs received overtime payments, some of them significant. Plaintiff Paul Galloway received overtime pay on 40% of the paychecks he received from Securitas; while Plaintiff Alvan Young received overtime pay in 26.47% of the workweeks he worked for Securitas. Stmt. of Facts Pars. 58-59; Tab "1" -- Aff. of D. Reese Exs. K, N. For a 15-week period from late July-early November 2005, Plaintiff Crystal Howard recorded overtime hours and was paid overtime hours in *every single workweek*. Stmt. of Facts Par. 60; Tab "1" -- Aff. of D. Reese Ex. L. Ms. Howard also received significant overtime payments for substantial overtime hours ranging from 12 to 33 hours during the course of her employment. Stmt. of Facts Par. 61; Tab "1" -- Aff. of D. Reese Ex. L.

The records also show instances where Securitas undertook efforts to correct records to ensure that Plaintiffs were paid at the correct wage rate, for the correct number of hours, which has been deemed relevant in other cases to show that time records are accurate. Stmt. of Facts Pars. 57, 62-63; Tab "1" -- Aff. of D. Reese at pp. 13-14, Pars. 38, 42, Exs. M, R. *See Bjornson*,

12 F.Supp.2d at 837 ("[defendant] actually corrected [plaintiff] when he had mistakenly under-calculated the hours recorded in his book").

Perhaps most importantly, Securitas has explained that it billed the straight time and overtime hours worked by Plaintiffs directly to the client, the CTA. Stmt. of Facts Par. 53; Tab "1" -- Aff. of D. Reese at p. 13, Par. 35. The more overtime hours Plaintiffs worked, the more hours Securitas billed and collected for itself from the CTA. Stmt. of Facts Par. 54; Tab "1" -- Aff. of D. Reese at p. 13, Par. 35. Plaintiffs have proffered no explanation as to why Securitas would choose to deprive itself of profits by denying them overtime pay. Such a claim, like those in *Turner* and *Bjornson*, is nonsensical.

Plaintiffs' Complaint is curiously silent as to why they never filed grievances on their overtime pay claims. Few claims could be more evident than working extra hours after a shift ended, and not being paid for these hours. Plaintiffs would have this Court believe that, on a daily or weekly basis, they were deprived of shift holdover pay, at an overtime rate, and never thought to raise this issue with their Union representatives. The Collective Bargaining Agreement between Securitas and Plaintiffs' representative union clearly provided for overtime pay after 40 hours. Stmt. of Facts Pars. 64-65; Tab "1" -- Aff. of D. Reese at pp. 16-17, Par. 44, Ex. S. One can assume that Plaintiffs were familiar with the grievance procedures, since two of the Plaintiffs filed grievances contesting their terminations for cause. Stmt. of Facts Pars. 68-69; Tab "1" -- Aff. of D. Reese at p. 17, Par. 45, Exs. T-U. When viewed in their entirety, Plaintiffs' overtime claims are not supported by extant time and pay records, which show continuous overtime payments to the Plaintiffs, and ongoing attempts to ensure time and pay accuracy. Plaintiffs' failure to ever file any pay-related grievances, at any time, serves to cast further doubt on the validity of their conclusory claims.

CONCLUSION

For the reasons set forth herein and in the accompanying materials, partial judgment should be entered against Plaintiffs on the training pay and shift-holdover overtime pay claims contained in their Complaint.

Dated: July 9, 2008                                             Respectfully submitted,

                                                                            SECURITAS SECURITY SERVICES USA, INC.

                                                                            By:    s/David M. Novak
                                                                                          One of Its Attorneys

David M. Novak
John T. Roache
Melissa A. Siebert
Edward M. Graham
BELL, BOYD & LLOYD LLP
Three First National Plaza
70 W. Madison, Suite 3100
Chicago, Illinois 60602
(312) 372-1121

CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing Defendant Securitas Security Services USA, Inc.'s Memorandum of Law in Support of Its Motion for Partial Summary Judgment was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing, on this 9th day of July 2008, to the following:

> James B. Zouras
> Ryan F Stephan
> Stephan Zouras, LLP
> 205 N. Michigan, Suite 2560
> Chicago, Illinois  60601
>
> Marvin A. Miller
> Matthew E. Van Tine
> Miller Law LLC
> 115 S. LaSalle, Suite 2910
> Chicago, Illinois  60603
>
> Thomas M. Ryan
> Law Offices of Thomas M. Ryan, P.C.
> 205 N. Michigan, Suite 2560
> Chicago, Illinois  60601

s/David M. Novak
David M. Novak
