UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRYSTAL HOWARD, PAUL GALLOWAY ) <br> ROBERT NEWSON and ALVAN YOUNG ) <br> ) <br> Plaintiffs ) <br> ) <br> v. ) <br> ) <br> SECURITAS SECURITY SERVICES ) <br> USA, INC. ) <br> ) <br> Defendant ) | Case No. 08 C 2746 <br><br> Judge Gottschall <br><br> Magistrate Judge Valdez |

## DEFENDANT SECURITAS SECURITY SERVICES USA, INC.'S
## STATEMENT OF MATERIAL FACTS

Defendant Securitas Security Services USA, Inc. (hereinafter "Securitas" or "Securitas K-9"), pursuant to Local Rule 56.1(a)(3), hereby submits this Statement of Material Facts upon which Securitas relies and about which Securitas believes there is no dispute in support of its Motion for Partial Summary Judgment:

1. Venue is proper in this District because Securitas' K-9 Branch, which provides trained security guards accompanied by trained guard dogs, is located in Chicago and does business in the District. Tab "1" -- Affidavit of David Reese at p. 2, Par. 3.

2. This Court has subject matter jurisdiction and federal question jurisdiction because Plaintiffs purport to allege claims under the Fair Labor Standards Act ("FLSA"). See Complaint Count I.

3. At various times during 2003-2007, Plaintiffs Crystal Howard, Paul Galloway, Robert Newson, and Alvan Young were employed at the Securitas K-9 Branch as K-9 security guards. Tab "1" -- Affidavit of David Reese at p. 2, Par. 4.

4. Each of the Plaintiffs was terminated for cause by Securitas. Tab "1" -- Affidavit of David Reese at pp. 2-4, Pars. 5-8, Exs. A, B, D.

5. Since February 2005, Securitas' K-9 Branch has required that job applicants successfully complete the following processes prior to becoming employed as Securitas K-9 security guards: an interview; pre-employment background check; pre-employment drug testing; and 120 hours of pre-employment training. Tab "1" -- Affidavit of David Reese at pp. 4-5, Pars. 11-12.

6. Securitas K-9 job applicants must also successfully pass the certification tests provided during the training period and apply for a Permanent Employment Registration Card (PERC), which is required for private security guards by the State of Illinois. Tab "1" -- Affidavit of David Reese at p. 5, Par. 11.

7. Since February 2005, applicants have not been considered employees, and are not allowed to perform any job duties, until they pass the background and drug tests, and have successfully completed all pre-employment training. Tab "1" -- Affidavit of David Reese at p. 5, Par. 12.

8. Since February 2005, Securitas K-9 has informed job applicants during the initial interview process that the 120 hours of pre-employment training are unpaid. Tab "1" -- Affidavit of David Reese at p. 5, Par. 13.

9. Since 2006, Securitas K-9 Branch Manager David Reese has participated in many applicant interviews, and has orally informed all such applicants of the unpaid nature of the 120-hour, pre-employment training period. Tab "1" -- Affidavit of David Reese at p. 5, Par. 13.

10. Illinois law requires all security guards who provide private security-related functions to complete 20 hours of training in specified areas of law enforcement and safety-related functions. 225 ILCS 447/25-20; Tab "1" -- Affidavit of David Reese at p. 5, Par. 14.

11. Securitas K-9 complies with 225 ILCS 447/25-20 by requiring job applicants for K-9 security guard positions to complete successfully a 20-hour pre-employment training period covering the topics mandated by Illinois law. Tab "1" -- Affidavit of David Reese at p. 5, Par. 14.

12. The 20-hour pre-employment training described in the previous paragraph is included in the 120-hour pre-employment training program Securitas provides to job applicants. Tab "1" -- Affidavit of David Reese at p. 5, Par. 14.

13. Securitas' 20-hour pre-employment training is conducted at Securitas K-9 by Securitas K-9 employees who are properly certified by the State of Illinois to provide such training, and typically lasts for approximately 3 days. Tab "1" -- Affidavit of David Reese at pp. 5-6, Pars. 14-15.

14. During the 20-hour training session, trainees remain in a classroom setting, and do not provide any work for Securitas K-9. Tab "1" -- Affidavit of David Reese at p. 6, Par. 15.

15. During the 20-hour training session, trainees do not have any contact with Securitas clients, and are not involved in any manner in Securitas' operations, including the provision of guard services. Tab "1" -- Affidavit of David Reese at p. 6, Par. 15.

16. During the 20-hour training session, trainees wear street clothes, not the Securitas uniforms worn by Securitas K-9 security guards. Tab "1" -- Affidavit of David Reese at p. 6, Par. 15.

17. The 20-hour pre-employment training that Securitas provides also is available through vocational programs and trade schools for fees ranging from $100-125, but Securitas provides this training free of charge to job applicants. Tab "1" -- Affidavit of David Reese at p. 6, Par. 16, Ex. E.

18.     Provided that a job applicant successfully completes the legally mandated, 20-hour pre-employment training, Securitas prepares a Certificate of Completion that the applicant may use to apply for a Permanent Employment Registration Card (PERC) with the State of Illinois.  Tab "1" -- Affidavit of David Reese at p. 6, Par. 17, Ex. F.

19.     Once an applicant files a PERC card application or receives a PERC card, he or she is eligible to work as a security guard for any employer of security guards within the State of Illinois -- the PERC application and PERC card are not limited to potential employment with Securitas.  Tab "1" -- Affidavit of David Reese at p. 6, Par. 17.

20.     Securitas K-9 Branch Manager David Reese is aware of Securitas employees who have left Securitas' employment and have gone to work with competitors using the PERC card or PERC application pending, which they obtained through pre-employment training at Securitas. Tab "1" -- Affidavit of David Reese at p. 7, Par. 18.

21.     Job applicants who complete the 20-hour mandated training are not guaranteed employment with Securitas K-9.  At the Securitas K-9 Branch, job applicants also must successfully complete a 100-hour, unpaid canine handling course.  Tab "1" -- Affidavit of David Reese at p. 7, Par. 19.

22.     Securitas' 100-hour Basic K9 Handler Course lasts for approximately 10 days, during which time applicants are taught proper dog handling, reporting requirements, basic legal training regarding state criminal laws and city ordinances, and how to handle dogs in different security-related situations.  Tab "1" -- Affidavit of David Reese at p. 7, Par. 19.

23.     Copies of the 100-hour Basic K9 Handler Course contents are signed by each applicant, and were signed by Plaintiffs Paul Galloway and Robert Newson.  Tab "1" -- Affidavit of David Reese at p. 7, Par. 19, Ex. G.

24.     The 100-hour Basic K9 Handler Course, which is offered to job applicants free of charge, takes place in the same classroom setting as Securitas K-9's 20-hour mandated course. Tab "1" -- Affidavit of David Reese at pp. 7-8, Pars. 20-21.

25.     Job applicant trainees do not perform any job duties for Securitas during the 100-Hour Basic K9 Handler Course, nor do they provide guard services of any type to any Securitas clients.  Tab "1" -- Affidavit of David Reese at p. 7, Par. 20.

26.     During the 100-Hour Basic K9 Handler Course, job applicants do not handle patrol dogs on clients' property, or otherwise handle patrol dogs outside of the Securitas Branch facility.  Tab "1" -- Affidavit of David Reese at pp. 7-8, Par. 20.

27.     Job applicants attend the 100-Hour Basic K9 Handler Course in street clothes, not the Securitas uniforms worn by Securitas K-9 security guards.  Tab "1" -- Affidavit of David Reese at pp. 7-8, Par. 20.

28.     During the 100-hour Basic K9 Handler Course, the only time that the trainees leave the Securitas K-9 Branch is to walk briefly to a Chicago Transit Authority elevated train station and observe as Securitas employees demonstrate how to navigate safely CTA stations and trains with patrol dogs; trainees do not handle the patrol dogs during this observation.  Tab "1" -- Affidavit of David Reese at p. 8, Par. 20.

29.     Approximately 50% of trainees do not complete the 100-hour Basic K9 Handler Course, some due to failure to appear at the course, but mostly due to the inability to become comfortable working with trained guard dogs.  Tab "1" -- Affidavit of David Reese at p. 8, Par. 21.

30. Securitas K-9 does not charge trainees for the 100-Hour Basic K9 Handler Course, even if the trainees fail to complete the entire course. Tab "1" -- Affidavit of David Reese at p. 8, Par. 21.

31. Securitas K-9 is recognized as a leader in patrol dog training, and external agencies such as the Yorkville Police Department and the DuPage County Sheriff's Department pay a contract fee to send their officers to the 100-hour Basic K9 Handler Course. Tab "1" -- Affidavit of David Reese at p. 8, Par. 22.

32. Securitas K-9 Branch Manager David Reese is aware of Securitas employees who have left employment with Securitas K-9 and have gone to work as canine security guards for its competitors using the 100-Hour Basic K9 Hander Training provided by Securitas. Tab "1" -- Affidavit of David Reese at pp. 8-9, Par. 22.

33. Upon successful completion of the 120-hour pre-employment training, Securitas K-9 job applicants are still not presumed to be employees, since they must still pass or have passed pre-employment drug testing and background checks, and not have made any false statements on their resumes. Tab "1" -- Affidavit of David Reese at p. 9, Par. 23.

34. There is no guarantee that applicants who successfully complete the 120-hour training will be employed by Securitas K-9 -- canine security officer work must also be available. Tab "1" -- Affidavit of David Reese at p. 9, Par. 23.

35. There have been occasions where Securitas K-9 was not in need of canine security guards, and thus did not hire applicants who successfully completed the 120 hours of pre-employment training. Tab "1" -- Affidavit of David Reese at p. 9, Par. 23.

36. Plaintiffs Paul Galloway and Robert Newson completed Securitas K-9's pre-employment requirements, including the 120-hour training period, in June-July 2006, and subse-

quently became employed by Securitas K-9 on July 10, 2006. Tab "1" -- Affidavit of David Reese at p. 9, Par. 24.

37. Plaintiff Alvan Young completed Securitas K-9's training requirements, including the 120-hour training period, in December 2004–January 2005. Tab "1" -- Affidavit of David Reese at p. 9, Par. 25.

38. Plaintiff Crystal Howard completed Securitas K-9's pre-employment requirements, including the 120-hour training period, prior to her rehire in January 2003. Tab "2" -- Supplemental Affidavit of David Reese at p. 2, Par. 5.

39. Securitas K-9's workweek is Friday-Thursday. There are three work shifts: 6:00 a.m.–2:00 p.m., 2:00 p.m.–10:00 p.m., and 10:00 p.m.–6:00 a.m. The workweek ends on Thursday at 12 midnight on the 3rd shift -- the remaining hours on this shift (until 6:00 a.m.) are worked on Friday, and fall within the next workweek. Tab "1" -- Affidavit of David Reese at pp. 10-11, Par. 30.

40. Each Securitas K-9 shift is 8 hours long, and includes a 30-minute paid lunch. Tab "1" -- Affidavit of David Reese at p. 11, Par. 30.

41. Securitas K-9 employees are not required or expected to report prior to the start of their scheduled shifts, or to perform any job duties or activities prior to the start of their scheduled shifts. Tab "1" -- Affidavit of David Reese at p. 11, Par. 30.

42. Employees are scheduled to work 40 hours per week (including their 30-minute paid lunch) at their regular rate of pay; any time worked in excess of 40 hours per week by an employee is considered overtime and is paid at one and one-half times the employee's regular rate of pay. Tab "1" -- Affidavit of David Reese at pp. 10-11, Par. 30.

43. Since February 2005, Securitas K-9 shifts have normally operated in the following manner: (a) at the beginning of a shift, the employee comes to the Branch, and either the employee or a supervisor writes the employee's time of arrival on a document called the Sign-In Sheet; (b) the employee then picks up his or her guard dog, which is brought to him or her by a supervisor; and (c) the employee then proceeds to the assigned work location, and works the assigned shift. Tab "1" -- Affidavit of David Reese at p. 11, Par. 31.

44. At the end of their shift, Securitas K-9 employees normally return their dogs to the Branch, and either the employee or a supervisor writes the time that the employee returned to the Branch and completed work on the Sign-In Sheet. Tab "1" -- Affidavit of David Reese at p. 11, Par. 31.

45. Since February 2005 there have been special assignment occasions where employees meet their shift supervisor or the employee working the following shift in the field, at either the beginning or end of their shift, and the shift supervisor completes sign-in and sign-out process. Tab "1" -- Affidavit of David Reese at pp. 11-12, Par. 32.

46. Plaintiff Crystal Howard's Sign-In Sheet for the workweek ending July 28, 2005 is included in the Compendium of Exhibits, has her sign-in and sign-out times indicated for each workday of the workweek, and is signed by her. Tab "1" -- Affidavit of David Reese at p. 12, Par. 33, Ex. H.

47. Plaintiff Crystal Howard's Sign-In Sheet for the workweek ending July 28, 2005 indicates that Ms. Howard worked 73 hours for the week. Tab "1" -- Affidavit of David Reese at p. 12, Par. 33, Ex. H.

48. Securitas K-9 uses the sign-in and sign-out times on the Sign-In Sheets described above to determine an employee's hours worked. Tab "1" -- Affidavit of David Reese at p. 12, Par. 34.

49. Every hour Securitas K-9 employees place on their Sign-In sheets is added to determine that total hours are correct, and is entered into the company's payroll system, which generates a Payroll Register to create employees' paychecks. Tab "1" -- Affidavit of David Reese at p. 12, Par. 34, Ex. I.

50. The Payroll Register related to Plaintiff Crystal Howard for the week ending July 28, 2005 is included in the Compendium of Exhibits, and indicates that she is to be paid for 40 hours at her regular rate of pay, and 33 hours at her overtime rate of pay, for a total of 73 hours for the week. Tab "1" -- Affidavit of David Reese at p. 12, Par. 34, Ex. I.

51. When all of the Sign-In Sheets are entered into Securitas' payroll system, the system also automatically generates a bill to the appropriate Securitas K-9 client. Tab "1" -- Affidavit of David Reese at p. 13, Par. 35, Ex. J.

52. Securitas K-9 clients are invoiced weekly for all regular and overtime worked by Securitas K-9 employees. Tab "1" -- Affidavit of David Reese at p. 13, Par. 35.

53. The CTA, the client for whom the Plaintiffs worked while at Securitas K-9, has a contract with Securitas based on hours billed -- it is not a flat fee contract. Tab "1" -- Affidavit of David Reese at p. 13, Par. 35.

54. Because Securitas K-9's contract with the CTA is based on hours billed, the more hours Securitas K-9 employees worked and billed to the CTA, the more money Securitas K-9 made from the CTA. Tab "1" -- Affidavit of David Reese at p. 13, Par. 35.

55.     An example of a Securitas K-9 client billing report, called a Confirmed Time by Contract Detail Report, is included in the Compendium of Exhibits, and shows that for the workweek ending July 28, 2005, Plaintiff Crystal Howard worked 40 straight time hours, and 33 overtime hours, for a total of 73 hours billed to the client.  Tab "1" -- Affidavit of David Reese at p. 13, Par. 36, Ex. J.

56.     Securitas K-9 has provided summaries of its records of all of straight time and overtime hours worked by Plaintiffs Crystal Howard, Robert Newson, Paul Galloway, and Alvan Young for Securitas K-9 during the time period relevant to this lawsuit, and the gross pay received for those hours.  Tab "1" -- Affidavit of David Reese at pp. 13-16, Pars. 37-42, Exs. K, L, N, Q.

57.     Securitas K-9 has described instances with regard to some of the Plaintiffs in the present lawsuit where any corrections to Plaintiffs' pay were made.  Tab "1" -- Affidavit of David Reese at pp. 13-14, Pars. 38, 42, Exs. M, R.

58.     As an example of its timekeeping and payment practices, Securitas has provided a summary of Plaintiff Paul Galloway's hours worked and pay received, which reflects that he received 5 paychecks from Securitas during his employment; forty percent (40%) -- 2 out of 5 of these paychecks -- reflect overtime hours worked by Mr. Galloway and paid to him as overtime pay.  Tab "1" -- Ex. K to Affidavit of David Reese.

59.     As an example of its timekeeping and payment practices, Securitas has provided a summary of Plaintiff Alvan Young's hours worked and pay received, which reflect overtime hours recorded and paid to him on 26.47% of the workweeks -- 9 of the 34 workweeks -- he worked for Securitas.  Tab "1" -- Ex. N to Affidavit of David Reese.

10

60. As an example of its timekeeping and payment practices, Securitas has provided a summary of Plaintiff Crystal Howard's hours worked and pay received, which reflects overtime hours worked by Ms. Howard and paid to her as overtime pay in each of the workweeks during the time period 7/28/05 (week ending) through 11/03/05 (week ending). Tab "1" -- Ex. L to Affidavit of David Reese.

61. As examples, Plaintiff Crystal Howard's pay and hours records also reflect overtime hours worked by her and paid to her as overtime pay during the following week-ending time periods: 7/28/05 (33 hours); 3/1/07 and 3/8/07 (24 hours each); 8/24/06 (20 hours); and 5/11/06 (12 hours), in addition to other overtime paid to her during her employment. Tab "1" -- Ex. L to Affidavit of David Reese.

62. Securitas K-9's review of records has revealed that on November 1, 2005, Ms. Howard worked an 8 hour shift that did not appear on the sign-in sheet, and thus was not paid for 8 hours worked, but that the error subsequently was discovered and rectified, and Ms. Howard was paid 8 additional straight time hours in a check dated December 22, 2005. Tab "1" -- Affidavit of David Reese at pp. 13-14, Par. 38, Ex. M.

63. Based on the total hours Ms. Howard worked for the week ending November 3, 2005, the 8 hours described above should have been paid as overtime hours, so Ms. Howard is owed 8 hours of halftime pay. Tab "1" -- Affidavit of David Reese at pp. 13-14, Par. 38, Ex. M.

64. During the time period covered by this lawsuit, Crystal Howard, Alvan Young, Robert Newson, and Paul Galloway were covered by the terms of a Collective Bargaining Agreement between Securitas Security Services USA, Inc. and Service Employees International Union (SEIU) Local 1, which governed K-9 security guards' wages, hours, and other conditions

of employment ("the Collective Bargaining Agreement"). Tab "1" -- Affidavit of David Reese at p. 16, Par. 43, Ex. S.

65.     Article XX Section 2 of the parties' Collective Bargaining Agreement provides that "work in excess of forty (40) hours in any one workweek shall be paid for at one and one-half (1-1/2) times the regular rate of pay. . . ." Tab "1" -- Affidavit of David Reese at pp. 16-17, Par. 44, Ex. S.

66.     Article XII of the Collective Bargaining Agreement which is titled "Grievance and Arbitration Procedure," sets forth the process for K-9 security guards to follow to pursue any disputes they may have regarding Securitas' K-9's policies and practices. Tab "1" -- Affidavit of David Reese at pp. 16-17, Par. 44, Ex. S.

67.     Securitas K-9 employees file approximately one grievance per month. Tab "1" -- Affidavit of David Reese at p. 17, Par. 45.

68.     In November 2006, Plaintiff Alvan Young filed a grievance pursuant to the procedure set forth in the Collective Bargaining Agreement, alleging that he was terminated without just cause; it did not include any of the allegations contained in the present lawsuit. Tab "1" -- Affidavit of David Reese at p. 17, Par. 45, Ex. T.

69.     In August 2007, Plaintiff Crystal Howard filed a grievance pursuant to the procedure set forth in the Collective Bargaining Agreement, alleging that she was terminated without just cause; it did not include any of the allegations contained in the present lawsuit. Tab "1" -- Affidavit of David Reese at p. 17, Par. 45, Ex. U.

70.     Securitas K-9 Branch Manager David Reese cannot recall any Union grievances being filed about unpaid overtime, training pay, or uniform or shoe maintenance pay. Tab "1" -- Affidavit of David Reese at p. 17, Par. 46.

Dated:  July 9, 2008 Respectfully submitted,

SECURITAS SECURITY SERVICES USA, INC.

By: s/David M. Novak
One of Its Attorneys

David M. Novak
John T. Roache
Melissa A. Siebert
Edward M. Graham
BELL, BOYD & LLOYD LLP
Three First National Plaza
70 W. Madison, Suite 3100
Chicago, Illinois  60602
(312) 372-1121

13

CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing Defendant Securitas Security Services USA, Inc.'s Statement of Material Facts was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing, on this 9th day of July 2008, to the following:

>James B. Zouras
>Ryan F Stephan
>Stephan Zouras, LLP
>205 N. Michigan, Suite 2560
>Chicago, Illinois  60601
>
>Marvin A. Miller
>Matthew E. Van Tine
>Miller Law LLC
>115 S. LaSalle, Suite 2910
>Chicago, Illinois  60603
>
>Thomas M. Ryan
>Law Offices of Thomas M. Ryan, P.C.
>205 N. Michigan, Suite 2560
>Chicago, Illinois  60601

                                                    s/David M. Novak
                                                       David M. Novak