UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL HOWARD, PAUL GALLOWAY ROBERT NEWSON and ALVAN YOUNG | ) ) ) | |
| Plaintiffs | ) ) | Case No. 08 C 2746 |
| v. | ) ) | Judge Gottschall |
| SECURITAS SECURITY SERVICES USA, INC. | ) ) ) ) | Magistrate Judge Valdez |
| Defendant | ) ) | |

COMPENDIUM OF AFFIDAVITS AND OTHER MATERIALS
RELIED UPON BY DEFENDANT IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Tab 1    Affidavit of David Reese executed July 2, 2008 with accompanying Exhibits A-U;

Tab 2    Supplemental Affidavit of David Reese executed July 3, 2008 with accompanying Exhibit A; and

Tab 3    Courtesy copies of Department of Labor Wage and Hour Division Opinions.

Dated: July 9, 2008

Respectfully submitted,

SECURITAS SECURITY SERVICES USA, INC.

By:      s/David M. Novak
                    One of Its Attorneys

David M. Novak
John T. Roache
Melissa A. Siebert
Edward M. Graham
BELL, BOYD & LLOYD LLP
Three First National Plaza
70 W. Madison, Suite 3100
Chicago, Illinois  60602
(312) 372-1121

CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing Compendium of Affidavits and Other Materials Relied Upon by Defendant in Support of Its Motion for Partial Summary Judgment was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing, on this 9th day of July 2008, to the following:

James B. Zouras
Ryan F Stephan
Stephan Zouras, LLP
205 N. Michigan, Suite 2560
Chicago, Illinois  60601

Marvin A. Miller
Matthew E. Van Tine
Miller Law LLC
115 S. LaSalle, Suite 2910
Chicago, Illinois  60603

Thomas M. Ryan
Law Offices of Thomas M. Ryan, P.C.
205 N. Michigan, Suite 2560
Chicago, Illinois  60601

s/David M. Novak
David M. Novak

# TAB 1
# AFFIDAVIT OF DAVID REESE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CRYSTAL HOWARD, PAUL GALLOWAY,     )
ROBERT NEWSON and ALVAN YOUNG      )
                                   )
            Plaintiffs             )      Case No. 08 C 2746
                                   )
        v.                         )      Judge Gottschall
                                   )
SECURITAS SECURITY SERVICES        )      Magistrate Judge Valdez
USA, INC.                          )
                                   )
            Defendant              )

STATE OF ILLINOIS   )
                    )  SS
COUNTY OF COOK      )

### AFFIDAVIT OF DAVID REESE

David Reese, being first duly sworn on oath, deposes and states as follows:

1. Since Spring 2005, I have been the Chicagoland Branch Manager for the Securitas K-9 Branch ("Securitas K-9"), managing Securitas' canine security services and canine security officers in the greater Chicago area.  From April 2004 through Spring 2005, I was the Director of Operations for the Securitas K-9 Branch, a position I had briefly held in February 2003 before transferring to field supervisory and project manager roles for approximately 14 months.  I have personal knowledge of the matters sworn to herein.

2. I became affiliated with Securitas in December 2002, when it purchased the assets of Specialized Canine Services, a company I invested in and provided with security dogs and dog-handling training.  In this role, I sourced guard dogs and trained them for use in starting the Chicagoland Securitas K-9

Branch.  From 1998-2003, I was the owner of Canine Consultants, a company that provided police, private and corporate dog handler training.  I am a nationally recognized dog handler.

3.    The Securitas K-9 Division Branch that I manage provides trained security officers accompanied by trained guard dogs to clients throughout Chicago.  These are specialized services, and are the only types of security guard services the Branch provides.  The Branch also provides canine handling training to external clients such as the Yorkville Police Department and the DuPage County Sheriff's Department.

4.    At various times during 2003-2007, Crystal Howard, Paul Galloway, Robert Newson and Alvan Young were employed at the Branch as K-9 security officers, and were directly and or indirectly supervised by me.

5.    According to the Company's records, which I have reviewed, July 10, 2006 was Paul Galloway's first day of work with Securitas K-9.  Mr. Galloway was terminated on August 28, 2006 because he encouraged and allowed his guard dog to fight with another Securitas employee's guard dog while on duty at a Chicago Transit Authority ("CTA") elevated train station, in close proximity to CTA commuters.  Exhibits A and B hereto are copies of the Incident Report and Personnel Action Form related to Mr. Galloway's termination.

6.    According to the Company's records, which I have reviewed, July 10, 2006 was Robert Newson's first day of work with Securitas K-9.  His last day worked was October 18, 2007.  He

was terminated on January 11, 2008 for excessive absenteeism, in violation of the Company's no show-no call policies.

7. According to the Company's records, which I have reviewed, Alvan Young was hired by Securitas K-9 on December 20, 2004, when the Branch's operations were located in Downers Grove, Illinois. In January 2005, I met with Mr. Young at my office in Chicago because I was informed that he was resigning due to difficulty using proper commands with his canine guard dog. I attempted to convince Mr. Young to remain with the Company, but he resigned via a letter dated January 21, 2005, which is attached hereto as Exhibit C. In March 2006, Mr. Young again sought employment with Securitas, was hired, and his first day of work with Securitas K-9 occurred in March 2006. Mr. Young's last day of work was November 2, 2006. He was terminated on November 24, 2006 for leaving his trained guard dog unattended and tied to a doorknob at Securitas K-9 instead of having the dog safely kenneled away from other guard dogs and employees.

8. According to the Company's records, which I have reviewed, Crystal Howard previously was employed by Securitas K-9, resigned in February 2004, and sought reemployment with Securitas K-9 in July 2005. Ms. Howard was rehired by Securitas K-9 as a K-9 security officer on July 18, 2005. Ms. Howard's last day of work was August 5, 2007. In my role as Branch Manager, I terminated Ms. Howard on August 10, 2007, after she was captured on videotape while on duty with a guard dog on CTA property, where she was purchasing CTA fare cards from an individual who had purchased the cards using a stolen credit card. Exhibit D

hereto details the circumstances surrounding Ms. Howard's termination.

9.  From April 2004-Spring 2005, my job duties as Director of Operations included employee scheduling, hiring, payroll preparation and approval, client invoicing, reviewing employee sign-in and sign-out sheets, developing and conducting pre-employment and post-employment training, and overseeing employee discipline and termination.

10.  Since Spring 2005 my job duties as a Securitas K-9 Branch Manager include, but are not limited to, interviewing job applicants, developing and conducting pre-employment and post-employment training, providing canine handling training to external clients, overseeing daily operations and activities, ensuring compliance with company policies and procedures, approving payroll and client invoices, and overseeing employee discipline and termination.  I also have ultimate responsibility for Securitas K-9's Chicago-area client relationships, including billing and invoicing for Securitas K-9's services.  I am also responsible for product research and development, and industry standards and legislation.  In 2006 and 2007, I was A Top Ten Securitas Branch Manager of the Year.

11.  Since February 2005, when Securitas moved to its current facility at 500 N. Pulaski in Chicago, Illinois, we have required that Securitas K-9 job applicants successfully complete several processes prior to becoming employed as Securitas K-9 security officers.  These processes include an interview, pre-employment background check, pre-employment drug testing, and

120 hours of pre-employment training. During the time period covered by this lawsuit, a portion of the training was mandated by Illinois law. Securitas K-9 job applicants must also successfully pass the certification tests provided during the training period and apply for a Permanent Employment Registration Card (PERC) card, which is required for private security guards by the State of Illinois.

12. Since February 2005, applicants have not been considered employees, and are not allowed to perform any job duties, until they pass the background and drug tests, and have successfully completed all pre-employment training.

13. Since February 2005, Securitas K-9 job applicants are informed during the pre-employment interview that the 120 hours of pre-employment training are unpaid. In 2006, when Paul Galloway and Robert Newson applied for employment, I participated in many applicant interviews, and orally informed all such applicants of the unpaid nature of the 120-hour, pre-employment training period.

14. Since February 2005, once Securitas K-9 job applicants pass the interview portion of the application process, they are placed in the first portion of the pre-employment training, which is a 20-hour training course, the content and duration of which are mandated by Illinois law. The training course is conducted at Securitas K-9 by Securitas K-9 employees who are properly certified by the state of Illinois to provide such training.

15. Securitas K-9's 20-hour training course lasts for approximately three days. During this time period, job applicant trainees remain in a classroom setting, and do not provide any work for Securitas K-9. Trainees do not have any contact with Securitas clients, and are not involved in any manner in Securitas' operations, including the provision of guard services. Trainees wear street clothes, not the Securitas uniforms worn by all Securitas K-9 officers.

16. Although Securitas chooses to provide trainees with the 20-hour state mandated training free of charge, and assists trainees with the PERC application process, the same training is also available to prospective job seekers for a fee through outside training sources. For instance, Chicago's Discovery Center and the PTC Security Training Company in Chicago offer the same 20-hour training course and PERC application process for fees ranging from $100-$125. Securitas Exhibit E attached hereto contains information about external training programs.

17. Once a trainee successfully completes the 20-hour training course, Securitas K-9 prepares a Certification of Completion for the trainee to use to apply to the State of Illinois for a PERC card. Certifications of Completion for Alvan Young, Paul Galloway and Robert Newson are attached hereto as Exhibit F. Once the trainee applies for a PERC he or she can work as a security guard for any other employer of security guards within the state of Illinois for up to two years. By then, the State normally has issued a PERC card to him or her.

18.  The PERC application and or PERC card can provide trainees with a competitive edge for positions at other security companies.  I am aware of Securitas employees who have left our employment and have gone to work with competitors using the PERC card or PERC application pending, which they obtained through pre-employment training at Securitas.

19.  Since February 2005, immediately upon successful completion of the 20-hour state mandated training, trainees are placed in the second portion of training -- the 100-Hour Basic K9 Handler Course.  The K9 Handler Course is conducted at Securitas K-9 by experienced trainers.  I personally conduct a portion of each K9 class session, generally speaking about professional development and company values.  The training lasts for approximately ten days, and covers key topics such as proper dog handling, reporting requirements, basic legal training regarding state criminal laws and city ordinances, and how to handle dogs in different security-related situations.  Copies of the course contents are signed by each applicant.  Attached hereto as Exhibit G are signed copies of the K9 Handler Course contents, which were signed by Paul Galloway and Robert Newson.

20.  Since February 2005, trainees do not perform any job duties for Securitas during the 100-Hour Basic K9 Handler Course, nor do they provide guard services of any type to any Securitas clients.  The training is in a classroom setting at the Securitas K-9 Branch.  Trainees do not handle patrol dogs on clients' property or otherwise handle patrol dogs outside of the Securitas K-9 Branch, and are not permitted to do so until they

successfully complete the 100-Hour Basic K9 Handler course and become employed by Securitas K-9.   Trainees attend the 100-hour course in street clothes, not the Securitas uniforms worn by all Securitas K-9 officers.   The only training outside of Securitas' building is a CTA field training period of less than one hour, when a group of trainees walks to the local CTA elevated train station and watches Securitas employees demonstrate how to walk patrol dogs through CTA stations, and how to safely board CTA trains.   During the field training, none of the trainees handles the dogs.

21.   Approximately 50% of trainees do not complete the 100-Hour Basic K9 Handler Course.   Some trainees fail to appear at training after a few days.   Most of the failures are due to the inability to become comfortable working with trained guard dogs. Securitas K-9 does not charge trainees for the 100-Hour Basic K9 Handler Course, even if the trainees fail to complete the entire course.

22.   The 100-Hour Basic K9 Handler Course provides skills that are applicable to settings other than employment with Securitas.   Other employers and entities contract with Securitas to provide the 100-Hour Basic K9 Handler Course to their employees, for a contract fee.   Our Branch is recognized as a leading expert in patrol dog training by law enforcement organizations, which send their officers to us for this training course, such as the Yorkville Police Department and the DuPage County Sheriff's Department.   I am aware of Securitas employees who have left our employment and have gone to work as canine security of-

ficers for our competitors using the 100-Hour Basic K9 Hander Training provided by Securitas.

23. Upon successful completion of the Basic K9 Handler Course, and provided that the job applicants have also passed drug testing and background checks, and have not made any false statements on their resumes, they are then eligible for employment with Securitas K-9. However, even these successful applicants are not necessarily entitled to a Securitas K-9 position or hired at my Branch. There have been occasions since I became Branch Manager where applicants successfully completed all of the above pre-employment procedures, including pre-employment training, and were not hired because they were not needed. In these situations, I have attempted to transfer these employees to other Securitas branches to work as non-canine security officers.

24. Paul Galloway and Robert Newson successfully completed the 120-hour pre-employment training described in the previous paragraphs in June-July 2006, and subsequently became employed by Securitas K-9.

25. Alvan Young completed the 20-hour general security guard training in December 2004. In December 2004-January 2005, Mr. Young also completed the 100-Hour Basic K9 Handler Course.

26. Once job applicants complete the abovementioned criteria and become Securitas employees, they are sent to a local uniform company and are issued the following equipment: 3-5 pairs of uniform pants, 3-5 uniform shirts, a pair of boots, a jacket, and a nylon duty belt.

27.    During the time period when Robert Newson and Paul Galloway were hired, and Crystal Howard and Alvan Young were re-hired, it was our practice to issue 3-5 uniform shirts and pants to each new employee.    Securitas uniforms are wash and wear, can be washed with other clothes in a regular washing machine cycle, dried in a regular dryer, and worn to work.    Employees are not charged for the total cost of all uniform items, which cost about $600 per employee.    Pursuant to a collective bargaining agreement provision, employees agree to pay a $150 uniform deposit, which is deducted from their paychecks over a period of time, and is refunded as long as the employee returns the issued equipment.

28.    As Branch Manager of Securitas K-9, I expect all employees to maintain a professional appearance, in accordance with Company policies and practices.    In practice, the appearance policy is applied on an employee-by-employee basis.    If I or a supervisor see an employee who looks unkempt or unclean, we will suggest that the employee wash his or her uniform or shine his or her shoes.    The Branch does not have any requirements that uniforms be washed at specific intervals, or that shoes be shined a certain number of times in a given time period.

29.    Shoe shining equipment is available at Securitas.    I routinely have seen employees signing in for work, and then shining their shoes while waiting for their dogs.

30.    Securitas K-9's workweek is Friday-Thursday.    There are three work shifts:    6:00 a.m.-2:00 p.m., 2:00 p.m.-10:00 p.m., and 10:00 p.m.-6:00 a.m.    The workweek ends on Thursday at

12 midnight on the 3rd shift -- the remaining hours on this shift (until 6:00 a.m.) are worked on Friday, and fall within the next workweek.  Each of these shifts is 8 hours long, and includes a 30-minute paid lunch.  Employees are not required or expected to report prior to the start of their scheduled shifts, or to perform any job duties or activities prior to the start of their scheduled shifts.  Employees are scheduled to work 40 hours per week, at their regular rate of pay.  Any time worked in excess of 40 hours per week by an employee is considered overtime and is paid at one and one-half times the employee's regular rate of pay.

31.  Since February 2005, Securitas K-9 shifts have normally operated in the following manner:  At the beginning of a shift, the employee comes to the Branch, and either the employee or a supervisor writes the employee's time of arrival on a document called the Sign-In Sheet.  The employee then picks up his or her guard dog, which is brought to him or her by a supervisor.  The employee then proceeds to the assigned work location, and works the assigned shift.  Upon completing the workday, Securitas K-9 employees normally return their dogs to the Branch, and either the employee or a supervisor writes the time that the employee returned to the Branch and completed work on the Sign-In Sheet.  The sign in and sign out times on the Sign-In Sheet are then used to determine an employee's hours worked.

32.  Since February 2005 there have been special assignment occasions where employees meet their shift supervisor or the employee working the following shift in the field, at either the

beginning or end of their shift.  On such occasions, the shift supervisor completes sign-in and sign-out process described in Paragraph 31 above.

33.  An example of Securitas' Sign-In Sheet for Crystal Howard for the workweek ending July 28, 2005 is attached hereto as Exhibit H.  The Sign-In Sheet indicates that Ms. Howard worked 73 hours for the week.  Her sign-in time and sign-out time is indicated for each workday.  Ms. Howard's signature appears on the left-hand side of the document, underneath her name.

34.  In 2005-2006, there were many occasions where I personally prepared and approved payroll and client invoices for Securitas K-9.  Since 2006, payroll has been primarily prepared by administrative employees supervised by me.  I review payroll records and the resulting client invoices on a periodic basis. Payroll is performed on a weekly basis.  Every hour employees place on their sign in sheets is added to determine that total hours are correct, and is entered into the payroll system.  Payroll hours and checks are calculated, and a Payroll Register is generated, which is used to create employee paychecks.  Attached hereto as Exhibit I is the Payroll Register for the week ending July 28, 2005, summarizing Crystal Howard's hours of work.  The Payroll Register matches Ms. Howard's Sign-In Sheet entries, and indicates that she is to be paid for 40 hours at her regular rate of pay, and 33 hours at her overtime rate of pay, for a total of 73 hours for the week.

35.   When all of the timesheets are entered into Securitas'
payroll system, the system also automatically generates a bill
to the appropriate Securitas K-9 client.   Clients are invoiced
weekly for all regular and overtime worked by Securitas K-9 em-
ployees.   The CTA, the client for whom the Plaintiffs worked
while at Securitas K-9 has a contract with Securitas based on
hours billed -- it is not a flat fee contract.   As a result, the
more hours these Securitas K-9 employees worked and billed, the
more money Securitas K-9 made.

36.   An example of a client billing report, called a Con-
firmed Time by Contract Detail report, is attached hereto as Ex-
hibit J.   This document covers the workweek ending July 28,
2005, and shows that Ms. Howard worked 40 straight time hours,
and 33 overtime hours, for a total of 73 hours billed to the
client.

37.   Securitas also maintains records of all hours worked
by employees for each workweek, throughout their employment.
Attached hereto as Exhibit K are summaries of all regular and
overtime hours worked by Paul Galloway for the time period rele-
vant to the present lawsuit, and the gross pay received for
these hours.   To my knowledge, these records accurately reflect
all regular and overtime hours worked by Mr. Galloway, and all
regular and overtime pay he received, during the relevant time
period.

38.   Attached hereto as Exhibit L is a summary of all regu-
lar and overtime hours worked by Crystal Howard for the time pe-
riod relevant to the present lawsuit, and the gross pay received

for these hours.  In the course of my review, I located one pay-
ment discrepancy.  On November 1, 2005, Ms. Howard worked an 8
hour shift but did not appear on the sign-in sheet, and thus was
not paid for 8 hours worked.  The error subsequently was discov-
ered and rectified, and Ms. Howard was paid 8 additional
straight time hours in a check dated December 22, 2005.  A copy
of the document requesting the corrective pay is attached hereto
as Exhibit M.  However, based on the total hours worked for the
week ending November 3, 2005, these hours should have been paid
as overtime hours.  To the best of my knowledge, apart from the
foregoing exception, these records accurately reflect all other
regular and overtime hours worked by Ms. Howard, and all regular
and overtime pay she received, during the relevant time period.

39.  Attached hereto as Exhibit N are summaries of all
regular and overtime hours worked by Alvan Young for the time
period relevant to the present lawsuit, and the gross pay re-
ceived for these hours.  To my knowledge, these records accu-
rately reflect all regular and overtime hours worked by Mr.
Young, and all regular and overtime pay he received, during the
relevant time period.

40.  One portion of Mr. Young's pay history warrants addi-
tional explanation.  For the week ending September 7, 2006 Mr.
Young was paid for 41 hours at a straight time rate.  Mr. Young
actually worked only 9 hours during this workweek, as evidenced
by the sign-in sheet for this date, which is attached hereto as
Exhibit O.  The additional 32 hours reflect time paid to Mr.
Young while he was out on a suspension from work pending an in-

14

vestigation of his alleged conduct toward CTA patrons.   During these 32 hours, and for 40 hours the following workweek ending September 14, 2006, Mr. Young was not working or performing any duties or services for Securitas K-9.   Once the investigation was completed, Mr. Young was paid for this time away from work. A copy of the suspension with pay documentation is attached hereto as Exhibit P.

41.   Attached hereto as Exhibit Q are summaries of all regular and overtime hours worked by Robert Newson for the time period relevant to the present lawsuit, and the gross pay re- ceived for these hours.   In the course of my review, I located one payment discrepancy.   For the workweek ending August 31, 2006 Robert Newson was paid for 24 hours of straight time worked, but his sign-in sheet recorded 26 straight time hours worked.   Because I can find no justification for this discrep- ancy, I can only conclude that it is the result of a one-time payroll keying error.   To the best of my knowledge, apart from the foregoing exception, these records accurately reflect all other regular and overtime hours worked by Mr. Newson, and all regular and overtime pay he received, during the relevant time period.

42.   There are several instances where negative amounts are indicated Mr. Newson's pay history, which warrant additional ex- planation.   For the workweek ending March 1, 2007 Securitas K-9 subsequently deducted 6 hours of overtime pay from Robert Newson's pay when it discovered that Mr. Newson had not in fact worked these 6 hours.   The client's bill was also adjusted to

15

eliminate the 6 hours of unworked overtime charges. For the
workweeks ending July 19, 2007, July 26, 2007, and October 18,
2007, Securitas K-9 realized that Mr. Newson had been paid a
rate for straight time hours worked that was 25 cents per hour
lower than he should have been paid. To correct this error, Se-
curitas K-9 issued a payment to Mr. Newson for the 25 cent per
hour difference to Mr. Newson at the time of his employment ter-
mination. Copies of the correction sheets I approved for these
additional payments are attached as Exhibit R.

43. During the time period covered by this lawsuit, Crys-
tal Howard, Alvan Young, Robert Newson, and Paul Galloway were
covered by the terms of a Collective Bargaining Agreement be-
tween Securitas Security Services USA, Inc. and Service Employ-
ees International Union (SEIU) Local 1, which governed K-9 secu-
rity officers' wages, hours, and other conditions of employment
("the Collective Bargaining Agreement"), which is attached
hereto as Exhibit S.

44. Article XX Section 2 of the parties' Collective Bar-
gaining Agreement provides: "work in excess of forty (40) hours
in any one workweek shall be paid for at one and one-half (1-
1/2) times the regular rate of pay. No hours shall be included
in any calculation under this Section unless the employee has
actually worked such hours, and hours paid for at any of the
premiums provided for in this section shall be excluded from any
further calculation of premium pay." Article XII of the Collec-
tive Bargaining Agreement, which is attached hereto as Exhibit
S, is titled "Grievance and Arbitration Procedure," clearly sets

forth the process for K-9 security officers to follow to pursue any disputes they may have regarding Securitas' K-9's policies and practices.

45.    Securitas K-9 employees are well aware of the Collective Bargaining Agreement's grievance procedure, as evidenced by the fact that I receive about one grievance per month from Securitas K-9 employees.    In November 2006, Alvan Young filed a grievance pursuant to the procedure set forth in the Collective Bargaining Agreement, alleging that he was terminated without just cause.    The grievance made no mention of any of the allegations contained in the present lawsuit.    A copy of Mr. Young's grievance is attached hereto as Exhibit T.    In August 2007, Ms. Howard filed a grievance pursuant to the procedure set forth in the Collective Bargaining Agreement, alleging that she was terminated without just cause.    The grievance made no mention of any of the allegations contained in the present lawsuit.    A copy of Ms. Howard's grievance is attached hereto as Exhibit U.

46.    I have searched my records and my memory, and I cannot recall any Union grievances ever being filed about unpaid overtime, training pay, uniform or shoe maintenance pay, or any grievances about any topic referenced in the lawsuit filed by Crystal Howard, Paul Galloway, Robert Newson, and Alvan Young.

Further sayeth affiant not.

David Reese

Subscribed and sworn to me
this 2nd day of July 2008

Notary Public

OFFICIAL SEAL
SALLY BOETTCHER
Notary Public - State of Illinois
My Commission Expires Dec 3, 2009

17

# EXHIBIT A



# INCIDENT REPORT

**SECURITAS**

Date of Incident: 08·28·06
Time of Incident: 03·20

| 1. Client: CTA | Address: 15 W 95TH | Post: RED LINE (CITYWIDE) |
|---|---|---|

2. Client Notified: ☐ Yes ☐ No   Time:         Name:            Title:

3. Securitas Office Notified: ☐ Yes ☐ No   Time:      Name:       Title:

4. Police / Fire Department Notified: ☐ Yes ☐ No   Time:    Officer's Name:      RPT#/Badge #

5. Persons Involved/Witnesses (insert category of relationship letter opposite name in * column)  **A.** Employee  **B.** Client Employee  **C.** Other

| * | Name / Position Title | Phone Number | Organization Name and Address |
|---|---|---|---|
| A | LANCE SHAVIERS | 773-826-0500 | 500 N PULASKI |
| A | PAUL GALLOWAY | 773-826-0500 | 500 N PULASKI |
| A | ARMANDO BARRAZA | 773-826-0500 | 500 N PULASKI |

6. Description of Property / Equipment ( example: Brand, Model, License or Serial #, Color, Year )

D N/A

7. Description of Incident / Injury (**WHO**, **WHAT**, **WHERE**, **WHEN**, and **HOW**. Include all information in detail and attach statement if required.)

AT APPROXIMATELY 0330 HRS COMMANDER A BARRAZA WAS PATROLING THE 95TH ST STATION I OBSERVED S/O L SHAVIERS AND S/O P GALLOWAY ALLOWING THEIR DOGS TO FIGHT ON THE PLATFORM VARIOUS TIMES NEITHER OFFICER HAD A SAFETY LEASH S/O SHAVIERS ALLOWED HIS K9 TO BE ON A FULL LEAN SO HIS K-9 COULD STARE DOWN THE OTHER OFFICERS K9 OFFICER GALLOWAY DID THE SAME THING AS OFFICER SHAVIERS BOTH THEIR K9S WERE WITHIN A FOOT FROM EACH OTHER'S FACE THEY CONTINUED DOING THIS VARIOUS TIMES THE K-9s GOT INTO A FIGHT 3 TIMES IN TOTAL ON THE PLATFORM WITH CUSTOMERS SITTING ON THE BENCH WATCHING THE OFFICERS THEY ALSO HAD BOTH DOGS IN A DOWN POSITION WHICH IS AGAINST COMPANY POLICY ALSO ANY FORM OF DOG FIGHTING IS A TERMINATION AUTOMATICALLY.

Officer Name ARMANDO BARRAZA     Signature              Date & Time of Report 08·28·06

  © 2004 Securitas Security Services USA, Inc.



# COUNSELING
# AND CORRECTIVE
# ACTION REPORT

*Verbal Action: Complete Parts A and B, sign and obtain manager's approval.*
*Written Action: Complete all parts except for Part D, prior to meeting with employee. Have employee sign document after you have completed dis-*
*cussion. If he/she refuses to sign, document the refusal.*

☐ VERBAL  ☐ WRITTEN    ☐ 1ˢᵗ  ☐ 2ⁿᵈ  ☒ FINAL

## PART A                              EMPLOYEE INFORMATION

Date of Incident: ___08·28·06___          Date of Counseling: _____

___PAUL GALLOWAY___          ___K-9___          ___K-9 HANDLER /CTA___
Employee's Name          Branch          Job Title/Site

_____          _____          ___COMMANDER A. BARRAZA___
Date of Hire          Employee Number          Supervisor

## PART B                              ACTION TAKEN

☐ Removal from assignment/client site  ☐ Counseling  ☐ Demotion  ☐ Transfer  ☒ Other ___TERMINATION___

## PART C                      REASON FOR ACTION (*Check all that Apply*)

☐ Unreported Absence                                        ☐ Insubordination
☐ Abusive and/or Threatning Behavior                        ☐ Sleeping on Duty
☐ Failure to Complete Required Reports                      ☐ Tardiness
☐ Smoking on Post or in Non Smoking Areas                   ☐ Reporting Under the Influence
☐ Leaving Post Without Permission                           ☐ Reporting Out of Uniform
☐ Failure to Do Necessary Rounds                            ☐ Failure to Follow Post Orders
☐ Other Unacceptable Behavior/Violation of Company Policy _____
                                                              (specify)

**Description of Incident and Corrective Measures** *(Include dates and times of incidents, reason for counseling. Improvement required or correc-*
*tive action taken, timeframe for improvement, consequences of reported failure.*

___S/OP GALLOWAY CREATED A DANGEROUS ENVIRONMENT BY ALLOWING___
___HIS K-9 TO FIGHT HIS PARTNERS K-9 PUTTING THE CLIENT, CUSTOMERS___
___AND K9'S AT RISK OF SERIOUS INJURY___

**Notice to Employee:** *It is expected that the conditions noted above will be corrected immediately. In the event this condition is not corrected, or if*
*another offense occurs, you may be subject to further disciplinary action up to and including termination of your employment. Nothing in this*
*report is intended to amend or alter your status as an "at-will" employee.*

## PART D                      EMPLOYEE COMMENTS *(attach additional sheet if necessary)*
*(The absence of any statement on the part of the EMPLOYEE indicates his/her agreement with the report as stated.)*

_____

_____

_____

_____

| I have read this report and the above has been discussed with me. | Prepared by: |
| --- | --- |
| | ___COMMANDER A. BARRAZA___  / ___08·28·06___ |
| | Supervisor Name        Date |
| | Approved by: |
| _____ / _____ | _____  / ___08·28·06___ |
| Employees Signature        Date | Manager Name        Date |

# EXHIBIT B



# PERSONNEL ACTION FORM

**SECURITAS**

Employee Name: _PAUL GALLOWAY_    Social Security No: _ON FILE_    Location No: _D4 6 MO_

Street Address: _ON FILE_    City/State/Zip Code: _____

Job Title: _K9 HANDLER_    Date of Hire: _1/7/06_    Last Rate Pay: _____

## REASON FOR ACTION

| TERMINATION | LEAVE OF ABSENCE | |
|---|---|---|
| ☐ Voluntary Termination | ☐ FMLA      ☐ Personal | ☐ State-specific LOA _____ |
| ☒ Involuntary Termination | ☐ Non FMLA Medical   ☐ Military | ☐ Other: _____ |
| Effective Date: _8/28/06_ | Effective Date of Leave of Absence: _____ | Expected Date of Return: _____ |
| Separation Code: _____ | Medical Certification Received (if medical LOA)   ☐ Yes   ☐ No   Date: _____ | |

## PAYROLL INFORMATION

Last Date Worked: _8/28/06_    Last Date Paid: _____    Last Pay Rate: _____

Refunds/Deductions: $ _____    Reason: _____

I am requesting a leave of absence. I understand that if granted I am required to comply with the following conditions as defined by Company policy and applicable state and/or federal law:

1. If the reason for leave is for my medical condition, I am required to submit a physician's certification before my leave of absence and upon release to return to work.
2. Any request for leave extension must be submitted in writing to management at least 48 hours prior to scheduled return date.
3. I am required to continue payment of health insurance premium contributions, if applicable. Lack of payment will result in cancellation of benefits.
4. I may be required to use accrued vacation and/or accrued sick time.
5. I voluntarily resign my employment if I fail to return to work on agreed date of return, unless otherwise agreed upon in writing by management.

Start Date: _/ /_    Expected Return Date: _/ /_    Reason: _____

Employee Signature _____

## LEAVE OF ABSENCE RETURN TO WORK

☐ Returned to work on: _____    Medical certification received (if medical LOA)   ☐ Yes   ☐ No
          Date

☐ Failed to return to work. Follow up contact with employee  ☐ Yes   ☐ No   Date: _____   ☐ Telephone   ☐ Letter

**Comments:** _Violations of Company Policy - Disobeying General Orders_

Misrepresentation of facts surrounding need for leave of absence will be grounds for discipline, up to and including termination.

| I have received a copy of this notice. | |
|---|---|
| _Paul W. Galloway_   09-07-06 | _[signature]_ |
| Employee Signature          Date | Manager/ Supervisor Signature          Date |

SSER 0007 (6/03)

© 2003 Securitas Security Services USA, Inc.

# EXHIBIT C

To the management of Securitas and C.T.A. / K – 9 security on Friday, January 21, 2005;

This letter is to announce the resignation from Securitas and C.T.A. / K – 9 security of myself, Alvan Young. It is my belief that my being uncomfortable with corrective discipline for the canines will cause me to be unproductive in my daily duties as a canine officer. I have been given all the training needed to perform these duties and at one time thought I would be able to handle the everyday activities of a canine officer, but to the contrary, I have come to realize that the job of a canine officer takes more dedication that at this point in time I do not have. My fellow officers as well as supervisors and management have been totally supportive in my training and especially guiding me through my dilemma with corrective discipline for the canines. I do wish all of the canine division well and success and I wish that I could be part of that success as you forge into the rest of this year! I know that I can rest easy riding the train system throughout Chicago knowing that the canine officers are patrolling them. These officers are truly top notch and show true dedication to their jobs as well as the security industry. To be associated with them in so brief of a time as I was, I consider it to be a privilege and honor!

Former Securitas C.T.A. / K – 9 Officer;

Alvan Young

# EXHIBIT D

August 7, 2007

August 6th, our client, CTA requested that the following employees be removed from the entire CTA contract for misconduct and integrity issues. There is video evidence that clearly showed                    and Ms. Crystal Howard purchasing fare cards that were purchased in their presence of an individual using a stolen credit card on CTA property. Ms. Norman witnessed a gentleman (now subject to a police investigation) purchasing fare cards with a stolen credit card and when the individual saw her approaching the fare machine, he fled. Ms. Norman then walked up to the machine looked around, took the fare card placed it into her pocket then left the scene. These employees compromised their integrity, jeopardized our clients trust and our company policy of serious misconduct.

Their actions warrant immediate termination.

David Reese
Branch Manager

# EXHIBIT E

Updated: 06/02/08    Call (773) 348-8120 to Register!



**Discovery Center**
*Chicago's Lifelong Learning Center*

Home    Back

# 2426 SECURITY TRAINING CERTIFICATE COURSE

Security is an ever growing field. Anyone interested in entering the Security Field must complete a certified 20-hour training program as the first step toward obtaining their Permanent Employment Registration Card (PERC) which is required by the State of Illinois for all persons employed as a registered employee of a private detective, private alarm company, or private security agency. This 20-Hour Certificate Training program will cover all the subject matter mandated by the State of Illinois, including:

o Civil Law
o Criminal Law
o Illinois Private Detective, Security Contractors & Alarm Act
o Fire Control
o Key Code Systems
o Equipment
o Ethics
o Fire Arm Laws
o As well as employment and resume preparing

Successful graduates will receive their 20-Hour Certificate. The instructor, Don Haworth, will also assist them with their application for their Permanent Employment Registration Card (PERC) through the State of Illinois. *Don C. Haworth LPD, CFE, CII, (see class 2417)is a licensed private investigator. He has conducted over 20,000 private investigations since 1975. He has held operations, marketing and management positions for several national private investigation companies. The 20-hour class will consist of a 4-hour Thursday evening session plus 8 hours each day on the following Saturday and Sunday Mat Fee: $45 (cash - no checks accepted)*

| | | | | | |
|---|---|---|---|---|---|
| Add One to Basket | Sec I Thu | Jul 10 | 6:00pm — 10:00pm | | |
| | to Jul 13 | 10:00am — 6:00pm | | | |
| Add One to Basket | Sec J Mon | Jul 14 | 9:00am — 5:00pm | | |
| | to Jul 16 | 9:00am — 1:00pm | | | |
| Add One to Basket | Sec K Mon | Jul 21 | 9:00am — 4:00pm | | |
| | to Jul 23 | 9:00am — 1:00pm | | | |
| Add One to Basket | Sec L Mon | Aug 11 | 9:00am — 4:00pm | | |
| | to Aug 13 | 9:00am — 1:00pm | | | |
| Add One to Basket | Sec M Mon | Aug 18 | 9:00am — 4:00pm | | |
| | to Aug 20 | 9:00am — 1:00pm | | | |

Class Fee: $125

Location: 2940 N Lincoln

Material Fee: $45.00

Case 1:08-cv-02746    Document 38-2    Filed 07/09/2008    Page 30 of 59

**Please Call (773) 348-8120 to Register for Classes or
to get a FREE subscription to our catalog!**

**Please Mention that "I saw it on the Web"**





# *PTC Security Training Academy*

Tue. June 10, 2008      PTC Security Training Academy      8754 S. Ashland Chicago I

**Specialized
Training**

**CPR & First Aid**

**Registration
Forms**

**Public Speaking
Engagements
& Consulting**

**Contact Us**

## *"Preparation Through Proper Training"*

Train to be a security Professional

### Statement of purpose

Our mission is to provide superior security training for individuals looking to enter the security industry or those seeking to advance in their current position.

Professional security training

### 20-hour basic security

This course meets the requirements of the department of professional regulation as outline in the detective act. It covers security fundamentals for new officers and provides a review for experience employees, who want to earn state certification in this course. Student will received a PERC (permanent employee registration card) which is needed for employment with private security agencies.

Topics Include:

- Security code of ethics
- Public relations, human relation and civil rights
- Illinois criminal code ( related to protection of person and property )
- Fire and accident prevention; fire safety
- Patrol procedures
- Liability issues
- Use of force
- Arrest and control techniques
- Laws regarding arrest, search and seizure
- Report writing and service process

- The law on private security/reporting to law enforcement agencies

Course Fee: $55.00 (Course Materials Included)

20 hour firearms

Armed officers in Illinois need 40 hours of instruction in order to be certified by the department of professional regulation to carry a firearm in the line of duty. After completing 20 hour basic course student enrolls in a 20 hour firearm class to become state certified. Class room instruction is followed by a written test, firing range practice and final qualification.

A current Illinois Firearm Owner's Identification card (FOID) is a prerequisite to receiving firearm training at PTC. Your FOID card must be presented to the instructor at the beginning of the first day of class. Out of state student are exempt from this requirement. (Attendees must be 21 years or older for this course).

Topics include:

- Legal use of firearm
- Ethic of firearm use
- Firearm safety and maintenance
- Search /seizure / arrest procedure while armed
- Liability while armed
- Use of deadly force

Course Fee: $100.00 (include Range Fees, Ammo or Firearm Rental)

Also offering Revolver/ Semi-Automatic/ Shot Gun/ Rifle upgrades for $30.00 per weapon in conjunction with the 40 hour security course.

A $60.00 fee will apply to attendees not currently enrolled in a course and looking to upgrade their current weapon statue.

The department of professional regulation requires a $55.00 registration fee to be license as a security officer in the State of Illinois.

Blue card certification Information_1 (217) 782 0458
Firearm certification Information_1 (217) 782-8556

# EXHIBIT F

IMPORTANT: Notice to trainee; if this form is necessary for consideration to become a licensee under 225 ILCS 446/1 et seq. (Illinois Compiled Statutes). Disclosure of this information is VOLUNTARY. However, failure to comply may result in this form not being processed.

**CERTIFICATION OF COMPLETION OF BASIC AND/OR REFRESHER TRAINING AS REQUIRED BY THE ILLINOIS PRIVATE DETECTIVE, PRIVATE ALARM, PRIVATE SECURITY, AND LOCKSMITH ACT OF 2004.**

**TRAINEE:** This is your permanent record of training - A duplicate will not be issued.

NAME (LAST, FIRST, MIDDLE INITIAL)

Young　Alvan

| HOME STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 1182 S. Cuyler | Oak Park | IL. | 60304 |

| DATE OF BIRTH | SOCIAL SECURITY NUMBER | WEIGHT | HEIGHT | HAIR COLOR | EYE COLOR |
|---|---|---|---|---|---|
| 5/17/72 | 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 | 345 | 6'3 | BLK | BRN |

I hereby certify that I have completed the basic training checked below as required by the Illinois Private Detective, Private Alarm, Private Security, and Locksmith Act of 2004.

Signature of Trainee: _____　Date: 12/15/04

**INSTRUCTOR:**　This form is to be returned to the trainee after completion. This serves as the trainee's permanent record of completion of 20-hour basic and or refresher training.

Check one of the following that apply to the basic training or refresher training that has been completed by the applicant listed above in compliance with the guidelines outlined in the Illinois Private Detective, Private Alarm, Private Security, and Locksmith Act of 2004.

**20-Hour Basic Training**

☐ Completed Basic Training under Section 15-25 for a Detective Agency

☐ Completed Basic Training under Section 20-20 for an Alarm Contractor Agency

☑ Completed Basic Training under Section 25-20 for a Security Contractor Agency

☐ Completed Basic Training under Section 30-20 for a Locksmith Agency

☐ Completed Basic Training under Section 35-45 for a Proprietary Security Force

**8-Hour Training Courses**

☐ Completed 8-Hour Site-Specific Training under Section 25-20 for a Security Contractor Agency
OR
☐ Completed 8-Hour Refresher Training under Section 25-20 for a Security Contractor Agency

NAME OF ENTITY OFFERING TRAINING

Securitas USA

| STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 1333 Butterfield RD. Ste 420 | Downers Grove | IL | 60515 |

| DATE TRAINING COMPLETED | NAME OF INSTRUCTOR |
|---|---|
| 12/20/04 | Tina Hobbs |

I hereby certify that the above-named trainee successfully completed the training checked above as required by the Illinois Private Detective, Private Alarm, Private Security, and Locksmith Act of 2004.

Signature of Instructor: _Tina Hobbs_　　Date: 12/20/04

IL486-0486 12/03 (DE)

| IMPORTANT NOTICE: Completion of this form is necessary for consideration for licensure under 225 ILCS 446/1 et.seq. (Illinois Compiled Statutes). Disclosure of this information is VOLUNTARY. However, failure to comply may result in this form not being processed. | CERTIFICATION OF COMPLETION OF BASIC AND/OR REFRESHER TRAINING AS REQUIRED BY THE ILLINOIS PRIVATE DETECTIVE, PRIVATE ALARM, PRIVATE SECURITY, AND LOCKSMITH ACT OF 2004. |
|---|---|

**TRAINEE:** This is your permanent record of training - A duplicate will not be issued.

NAME (LAST, FIRST, MIDDLE INITIAL)

*Galloway Paul D*

| HOME STREET ADDRESS *443 E. 80TH ST CHGO IL 60619* | CITY *CHGO* | STATE *IL* | ZIP CODE *60619* |
|---|---|---|---|
| DATE OF BIRTH *03-06-65* | SOCIAL SECURITY NUMBER *336 56 6696* | WEIGHT *220* | HEIGHT *6'* | HAIR COLOR *BLK* | EYE COLOR *BRN* |

I hereby certify that I have completed the basic training checked below as required by the Illinois Private Detective, Private Alarm, Private Security, and Locksmith Act of 2004.

Signature of Trainee: *Paul D Galloway*    Date: *07-07-06*

**INSTRUCTOR:** This form is to be returned to the trainee after completion. This serves as the trainee's permanent record of completion of 20-hour basic and or refresher training.

Check one of the following that apply to the basic training or refresher training that has been completed by the applicant listed above in compliance with the guidelines outlined in the Illinois Private Detective, Private Alarm, Private Security, and Locksmith Act of 2004.

### 20-Hour Basic Training

☐ Completed Basic Training under Section 15-25 for a Detective Agency

☐ Completed Basic Training under Section 20-20 for an Alarm Contractor Agency

☑ Completed Basic Training under Section 25-20 for a Security Contractor Agency

☐ Completed Basic Training under Section 30-20 for a Locksmith Agency

☐ Completed Basic Training under Section 35-45 for a Proprietary Security Force

### 8-Hour Training Courses

☐ Completed 8-Hour Site-Specific Training under Section 25-20 for a Security Contractor Agency

**OR**

☐ Completed 8-Hour Refresher Training under Section 25-20 for a Security Contractor Agency

NAME OF ENTITY OFFERING TRAINING

Securitas K-9 Unit

| STREET ADDRESS 500 N. Pulaski Suite 102 | CITY Chicago | STATE Illinois | ZIP CODE 60624 |
|---|---|---|---|
| DATE TRAINING COMPLETED *7/7/06* | NAME OF INSTRUCTOR *VANETTA LOGAN* |

I hereby certify that the above-named trainee successfully completed the training checked above as required by the Illinois Private Detective, Private Alarm, Private Security, and Locksmith Act of 2004.

Signature of Instructor: *Vanetta L*    Date: *7/7/06*

IL486-0486 12/03 (DE)

| IMPORTANT NOTICE: Completion of this form is necessary for consideration for licensure under 225 ILCS 446/1 et.seq. (Illinois Compiled Statutes). Disclosure of this information is VOLUNTARY. However, failure to comply may result in this form not being processed. | CERTIFICATION OF COMPLETION OF BASIC AND/OR REFRESHER TRAINING AS REQUIRED BY THE ILLINOIS PRIVATE DETECTIVE, PRIVATE ALARM, PRIVATE SECURITY, AND LOCKSMITH ACT OF 2004. |
|---|---|

**TRAINEE:** This is your permanent record of training - A duplicate will not be issued.

NAME (LAST, FIRST, MIDDLE INITIAL)
NEWSON, Robert D.

| HOME STREET ADDRESS | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 7731 S. HERmitage | | Chicago | IL | 60620 |

| DATE OF BIRTH | SOCIAL SECURITY NUMBER | WEIGHT | HEIGHT | HAIR COLOR | EYE COLOR |
|---|---|---|---|---|---|
| 8-27-64 | 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 | 162 | 5'6 | BLK | BRN |

I hereby certify that I have completed the basic training checked below as required by the Illinois Private Detective, Private Alarm, Private Security, and Locksmith Act of 2004.

Signature of Trainee: Robert D. Newson     Date: 7/4/06

**INSTRUCTOR:** This form is to be returned to the trainee after completion. This serves as the trainee's permanent record of completion of 20-hour basic and/or refresher training.

Check one of the following that apply to the basic training or refresher training that has been completed by the applicant listed above in compliance with the guidelines outlined in the Illinois Private Detective, Private Alarm, Private Security, and Locksmith Act of 2004.

### 20-Hour Basic Training

☐ Completed Basic Training under Section 15-25 for a Detective Agency

☐ Completed Basic Training under Section 20-20 for an Alarm Contractor Agency

☒ Completed Basic Training under Section 25-20 for a Security Contractor Agency

☐ Completed Basic Training under Section 30-20 for a Locksmith Agency

☐ Completed Basic Training under Section 35-45 for a Proprietary Security Force

### 8-Hour Training Courses

☐ Completed 8-Hour Site-Specific Training under Section 25-20 for a Security Contractor Agency
OR
☐ Completed 8-Hour Refresher Training under Section 25-20 for a Security Contractor Agency

NAME OF ENTITY OFFERING TRAINING
Securitas K9 Unit

| STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 500 N. Pulaski Ste 102 | CHICAGO | IL | 60624 |

| DATE TRAINING COMPLETED | NAME OF INSTRUCTOR |
|---|---|
| 7/4/06 | Vanetta Cozart |

I hereby certify that the above-named trainee successfully completed the training checked above as required by the Illinois Private Detective, Private Alarm, Private Security, and Locksmith Act of 2004.

Signature of Instructor: Vanetta Lg     Date: 7/4/06

IL486-0486 12/03 (DE)

# EXHIBIT G

# Completion Training Form

Introduction
Safety Procedures
Kennel Maintenance And Sanitation Requirements
Maintaining your working dog
Working dog first aid
Introduction to police dog psychology and selection
Principles of conditioning
Obedience
Legal guidelines
Radio Procedures
Detainments
Professionalism
10 Codes
Report writing
K9 Sick/Injured Reports
Practical Test
Performance Evaluation
Field training on CTA property

I, *PAUL D. GALLOWAY* have been trained in all of the above procedures and
    (Print Name)
understand them.

*Paul D. Galloway* Date  07 - 06 - 06
   (Signature of student)

# Completion Training Form

Introduction
Safety Procedures
Kennel Maintenance And Sanitation Requirements
Maintaining your working dog
Working dog first aid
Introduction to police dog psychology and selection
Principles of conditioning
Obedience
Legal guidelines
Radio Procedures
Detainments
Professionalism
10 Codes
Report writing
K9 Sick/Injured Reports
Practical Test
Performance Evaluation
Field training on CTA property


I, Robert D. Newson _____ have been trained in all of the above procedures and
      (Print Name)
understand them.


Robert D. Newson _____ Date  7-6-06
   (Signature of student)

# EXHIBIT H

**EMPLOYEE SIGN-IN REGISTER (TAGSS)**

SECURITAS

Account name: CTA

Address: K-9 Officers

Job #: _____

Week ending date: 7/28/2005
Page: 2    Of: 5

| Date | Day | | 7/22 Friday | Hrs | 7/23 Saturday | Hrs | 7/24 Sunday | Hrs | 7/25 Monday | Hrs | 7/26 Tuesday | Hrs | 7/27 Wednesday | Hrs | 7/28 Thursday | Hrs | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Print: | | In | 1400 | | 1400 | | 1400 | | | | | | 1400 | | 1000 | | |
| Sign: | | Out | 2200 | 8 | 2200 | 8 | 2200 | 8 | | | | | 2400 | 8 | 2200 | 12 | 44 |
| Print: | | In | | | | | | | | | | | | | | | |
| Sign: | | Out | | | | | | | | | | | | | | | |
| Print: | | In | 0800 | | 0600 | | 0800 | | 0800 | | | | | | | | |
| Sign: | | Out | 1400 | 8 | 1700 | | 1600 | 8 | 1600 | 4 | | | | | | | 21 |
| Print: | | In | | | | | | | | | | | | | | | |
| Sign: | | Out | | | | | | | | | | | | | | | |
| Print: | | In | | | | | | | | | | | 0600 | | 0600 | | |
| Sign: | | Out | | | | | 1700 | | | | | | 1400 | 8 | 1400 | 8 | 16 |
| Print: Howard, Crystal | | In | 0600 | | 1600 | | 2200 | | | | 0600 | | 1900 | | 2200 | | |
| Sign: Crystal Howard | | Out | 1600 | 10 | 2200 | | 1500 | | | | 2000 | | 1900 | 8 | 2200 | | 73 |
| Print: Howard, Crystal | | In | 2200 | 2 | 2200 | 2 | 2200 | 2 | | | | | | | | | |
| Sign: Crystal Howard | | Out | 0600 | | 0600 | | 0000 | | | | 2000 | 2 | 2000 | 2 | | | 10 |
| Print: | | In | 0000 | | 0000 | | 0000 | | 0000 | | 0000 | | 0000 | | 0000 | | |
| Sign: | | Out | 0600 | 6 | 0600 | 6 | 0600 | 6 | 0600 | 6 | 0600 | 6 | 0600 | 6 | 0600 | 6 | 34 |
| | **Total:** | | 46 | | 29 | | 93 | | 10 | | 16 | | | | 14 | | |

TIME VERIFIED BY: _____

C 2003 Securitas Security Services USA, Inc

# EXHIBIT I

```
DATE:  07/30/2005  17:49:42                                                      PAGE: 187
PROGRAM: PRTPR586
Pay End Date: 07/24/2005                                                         PAGE: 1323
                                                                                 OPERATOR: GRHOGES
```

--- WSB, Inc.

Securitas Security Svc USA Inc
Payroll Register - Guards
10 06MO - CHICAGO K-9 - BURNS

| Employee Name/ID Dept.ID SSN | Form ID Chk Dt Check # | REGULAR Hours | Earnings | OVERTIME Hours | Earnings | OTHER Type Hours | Earnings | Gross Pay | Taxes Type | Deductions Code | Net |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 69698 6MO | CHECK 08/04/2005C 8077778 JC 5100 | 36.00 21.00 | 351.00 199.50 | | | | | 550.50 | 34.13 OASDI 7.99 MEDI 11.90 ILSWT | 99.58 00-GARNSH 34.20 00-UDN | 362. |
| 69696 6MO | ADVICE 08/04/2005 AA2941232 JC 5100 | 24.00 16.00 | 240.00 160.00 | | | VAC 24.00 VAC 16.00 | 240.00 160.00 | 800.00 | 49.60 OASDI 11.60 MEDI 54.04 FWT 19.38 ILSWT | 83.56 00-GARNSH 34.20 00-UDN | 547.62 |
| 30426 6MO | CHECK 08/04/2005C 8077779 JC 5100 | 8.00 32.00 15.00 25.00 | 120.00 480.00 225.00 375.00 | 23.00 | 517.50 | | | 1,717.50 | 106.48 OASDI 24.90 MEDI 186.88 FWT 46.91 ILSWT | 15.00 00-UNF | 1,337. |
| WARD, CRYSTAL R 10812 6MO 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 | CHECK 08/04/2005C 8077780 JC 5100 | 40.00 40.00 | 390.00 390.00 | 33.00 | 482.63 | | | 1,262.63 | 78.28 OASDI 18.31 MEDI 49.59 FWT 24.03 ILSWT | 15.00 00-UNF | 1,077.42 |
| 1131 6MO | CHECK 08/04/2005C 8082361 JC 5100 | 40.00 40.00 | 390.00 390.00 | 4.00 4.00 | 58.50 58.50 | | | 897.00 | 55.61 OASDI 13.00 MEDI 92.05 FWT 24.60 ILSWT | 34.20 00-UDN | 677. |
| 7267 6MO | CHECK 08/04/2005C 8077781 JC 5100 | 40.00 40.00 | 380.00 380.00 | 12.00 12.00 | 171.00 171.00 | | | 1,102.00 | 68.32 OASDI 15.98 MEDI 136.26 FWT 33.06 ILSWT | 15.00 00-UNF | 833.35 |
| 3860 5MO | CHECK 08/04/2005C 8077782 JC 5100 | 40.00 16.00 | 600.00 240.00 | | | | | 840.00 | 52.08 OASDI 12.18 MEDI 96.96 FWT 25.20 ILSWT | | 653.58 |
| 3687 MO | CHECK 08/04/2005C 8077783 JC 5100 | 40.00 40.00 | 400.00 400.00 | 5.50 | 82.50 | | | 882.50 | 54.72 OASDI 12.80 MEDI 103.34 FWT 26.48 ILSWT | 34.20 00-UDN | 650.96 |
| 1700 MO | CHECK 08/04/2005C 8077784 JC 5100 | 40.00 16.00 | 460.00 188.00 | | | VAC 16.00 VAC 24.00 | 184.00 276.00 | 1,108.00 | 68.70 OASDI 16.06 MEDI 100.24 FWT 28.62 ILSWT | 34.20 00-UDN | 860.18 |
| 588 MO | ADVICE 08/04/2005 AA2941234 JC 5100 | 40.00 40.00 | 600.00 600.00 | 44.00 44.00 | 990.00 990.00 | | | 3,180.00 | 194.47 OASDI 45.48 MEDI 578.64 FWT | 33.44 10-VMED 10.00 11-VDBN | 2,225.87 |

# EXHIBIT J


SECURITAS
SAFES

## Department: 066M0 - CHICAGO K-9

**CTA K-9 - 0194441001**

| Bill Cat | Fri | Sat | Sun | Mon | Tue | Wed | Thu | ST | OT | OT | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **WEEKLY Thursday End Date** | | | | | | | | **Wage Hours** | | | |

**Week of 07/28/2005**

| 010 | 0.00 | 2.00 | 8.00 | 8.50 | 8.00 | 8.00 | 6.00 | 40.00 | 0.50 | 0.00 | 40.50 |
| Totals | 0.00 | 2.00 | 8.00 | 8.50 | 8.00 | 8.00 | 6.00 | 40.00 | 0.50 | 0.00 | 40.50 |

**Week of 07/28/2005**

| 010 | 8.00 | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 12.00 | 40.00 | 12.00 | 0.00 | 52.00 |
| Totals | 8.00 | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 12.00 | 40.00 | 12.00 | 0.00 | 52.00 |

**Week of 07/28/2005**

| 010 | 8.00 | 8.00 | 0.00 | 0.00 | 8.00 | 8.00 | 8.00 | 40.00 | 0.00 | 0.00 | 40.00 |
| Totals | 8.00 | 8.00 | 0.00 | 0.00 | 8.00 | 8.00 | 8.00 | 40.00 | 0.00 | 0.00 | 40.00 |

**Week of 07/28/2005**

| 006 | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 0.00 | 8.00 |
| Totals | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 0.00 | 8.00 |

**Week of 07/28/2005**

| 006 | 8.00 | 8.00 | 8.00 | 0.00 | 0.00 | 8.00 | 12.00 | 40.00 | 4.00 | 0.00 | 44.00 |
| Totals | 8.00 | 8.00 | 8.00 | 0.00 | 0.00 | 8.00 | 12.00 | 40.00 | 4.00 | 0.00 | 44.00 |

**Week of 07/28/2005**

| 006 | 8.00 | 1.00 | 8.00 | 4.00 | 0.00 | 0.00 | 0.00 | 21.00 | 0.00 | 0.00 | 21.00 |
| Totals | 8.00 | 1.00 | 8.00 | 4.00 | 0.00 | 0.00 | 0.00 | 21.00 | 0.00 | 0.00 | 21.00 |

**Week of 07/28/2005**

| 010 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 | 16.00 | 0.00 | 0.00 | 16.00 |
| Totals | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 | 16.00 | 0.00 | 0.00 | 16.00 |

**HOWARD, CRYSTAL R - 2090017504**
**Week of 07/28/2005**

| 008 | 16.00 | 8.00 | 9.00 | 0.00 | 16.00 | 8.00 | 16.00 | 40.00 | 33.00 | 0.00 | 73.00 |
| Totals | 16.00 | 8.00 | 9.00 | 0.00 | 16.00 | 8.00 | 16.00 | 40.00 | 33.00 | 0.00 | 73.00 |

**Week of 07/28/2005**

| 008 | 8.00 | 12.00 | 8.00 | 6.00 | 0.00 | 2.00 | 8.00 | 40.00 | 4.00 | 0.00 | 44.00 |
| Totals | 8.00 | 12.00 | 8.00 | 6.00 | 0.00 | 2.00 | 8.00 | 40.00 | 4.00 | 0.00 | 44.00 |

**Week of 07/28/2005**

| 006 | 14.00 | 8.00 | 8.00 | 12.00 | 8.00 | 0.00 | 2.00 | 40.00 | 12.00 | 0.00 | 52.00 |
| Totals | 14.00 | 8.00 | 8.00 | 12.00 | 8.00 | 0.00 | 2.00 | 40.00 | 12.00 | 0.00 | 52.00 |

**Week of 07/28/2005**

| 010 | 8.00 | 6.00 | 0.00 | 2.00 | 8.00 | 8.00 | 8.00 | 40.00 | 0.00 | 0.00 | 40.00 |
| Totals | 8.00 | 6.00 | 0.00 | 2.00 | 8.00 | 8.00 | 8.00 | 40.00 | 0.00 | 0.00 | 40.00 |

**Week of 07/28/2005**

| 010 | 0.00 | 0.00 | 8.00 | 8.00 | 8.00 | 0.00 | 0.00 | 24.00 | 0.00 | 0.00 | 24.00 |
| Totals | 0.00 | 0.00 | 8.00 | 8.00 | 8.00 | 0.00 | 0.00 | 24.00 | 0.00 | 0.00 | 24.00 |

**Week of 07/28/2005**

| 006 | 2.00 | 8.00 | 8.00 | 8.50 | 16.00 | 6.00 | 0.00 | 40.00 | 8.50 | 0.00 | 48.50 |
| Totals | 2.00 | 8.00 | 8.00 | 8.50 | 16.00 | 6.00 | 0.00 | 40.00 | 8.50 | 0.00 | 48.50 |

**Week of 07/28/2005**

| 006 | 0.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 0.00 | 40.00 | 0.00 | 0.00 | 40.00 |

# EXHIBIT K

PAUL GALLOWAY PAY HISTORY

| Name | Check Dt | Pay Period End | Earns Begin | Earns End | Hrs. Type * | Hours | Rate | Earns |
|---|---|---|---|---|---|---|---|---|
| GALLOWAY,PAUL | 2006-07-17 | 2006-07-20 | 2006-07-07 | 2006-07-13 | BST | 38.00 | 9.50 | 361.00 |
| GALLOWAY,PAUL | 2006-08-03 | 2006-07-27 | 2006-07-14 | 2006-07-20 | BST | 40.00 | 9.50 | 380.00 |
| GALLOWAY,PAUL | 2006-08-03 | 2006-07-27 | 2006-07-21 | 2006-07-27 | BST | 40.00 | 9.75 | 390.00 |
| GALLOWAY,PAUL | 2006-08-17 | 2006-08-10 | 2006-07-28 | 2006-08-03 | BST | 40.00 | 9.75 | 390.00 |
| GALLOWAY,PAUL | 2006-08-17 | 2006-08-10 | 2006-07-28 | 2006-08-03 | BOT | 1.00 | 9.75 | 14.63 |
| GALLOWAY,PAUL | 2006-08-17 | 2006-08-10 | 2006-08-04 | 2006-08-10 | BST | 40.00 | 9.75 | 390.00 |
| GALLOWAY,PAUL | 2006-08-31 | 2006-08-24 | 2006-08-11 | 2006-08-17 | BST | 22.25 | 9.75 | 216.94 |
| GALLOWAY,PAUL | 2006-08-31 | 2006-08-24 | 2006-08-18 | 2006-08-24 | BST | 40.00 | 9.75 | 390.00 |
| GALLOWAY,PAUL | 2006-08-31 | 2006-08-24 | 2006-08-18 | 2006-08-24 | BOT | 4.00 | 9.75 | 58.50 |
| GALLOWAY,PAUL | 2006-09-07 | 2006-08-31 | 2006-08-25 | 2006-08-31 | BST | 24.00 | 9.75 | 234.00 |

\*  BOT = Billable Overtime
   BST = Billable Straight Time

# EXHIBIT L

CRYSTAL HOWARD PAY HISTORY

| Name | Check Dt | Pay Period End | Earns Begin | Earns End | Hrs Type * | Hours | Rate | Earns |
|------|----------|----------------|-------------|-----------|------------|-------|------|-------|
| HOWARD,CRYSTAL R | 2005-08-04 | 2005-07-28 | 2005-07-15 | 2005-07-21 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-08-04 | 2005-07-28 | 2005-07-22 | 2005-07-28 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-08-04 | 2005-07-28 | 2005-07-22 | 2005-07-28 | BOT | 33.00 | 9.75 | 482.63 |
| HOWARD,CRYSTAL R | 2005-08-18 | 2005-08-11 | 2005-07-29 | 2005-08-04 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-08-18 | 2005-08-11 | 2005-07-29 | 2005-08-04 | BOT | 8.00 | 9.75 | 117.00 |
| HOWARD,CRYSTAL R | 2005-08-18 | 2005-08-11 | 2005-08-05 | 2005-08-11 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-08-18 | 2005-08-11 | 2005-08-05 | 2005-08-11 | BOT | 6.00 | 9.75 | 87.75 |
| HOWARD,CRYSTAL R | 2005-09-01 | 2005-08-25 | 2005-08-12 | 2005-08-18 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-09-01 | 2005-08-25 | 2005-08-12 | 2005-08-18 | BOT | 12.00 | 9.75 | 175.50 |
| HOWARD,CRYSTAL R | 2005-09-01 | 2005-08-25 | 2005-08-19 | 2005-08-25 | BST | 36.00 | 9.75 | 351.00 |
| HOWARD,CRYSTAL R | 2005-09-01 | 2005-08-25 | 2005-08-19 | 2005-08-25 | BOT | 8.00 | 9.75 | 117.00 |
| HOWARD,CRYSTAL R | 2005-09-01 | 2005-08-25 | 2005-08-19 | 2005-08-25 | TST | 4.00 | 9.75 | 39.00 |
| HOWARD,CRYSTAL R | 2005-09-15 | 2005-09-08 | 2005-08-26 | 2005-09-01 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-09-15 | 2005-09-08 | 2005-08-26 | 2005-09-01 | BOT | 10.00 | 9.75 | 146.25 |
| HOWARD,CRYSTAL R | 2005-09-15 | 2005-09-08 | 2005-09-02 | 2005-09-08 | BST | 34.00 | 9.75 | 331.50 |
| HOWARD,CRYSTAL R | 2005-09-15 | 2005-09-08 | 2005-09-02 | 2005-09-08 | BOT | 2.00 | 9.75 | 29.25 |
| HOWARD,CRYSTAL R | 2005-09-15 | 2005-09-08 | 2005-09-02 | 2005-09-08 | BDT | 6.00 | 9.75 | 117.00 |
| HOWARD,CRYSTAL R | 2005-09-29 | 2005-09-22 | 2005-09-09 | 2005-09-15 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-09-29 | 2005-09-22 | 2005-09-09 | 2005-09-15 | BOT | 0.50 | 9.75 | 7.31 |
| HOWARD,CRYSTAL R | 2005-09-29 | 2005-09-22 | 2005-09-16 | 2005-09-22 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-09-29 | 2005-09-22 | 2005-09-16 | 2005-09-22 | BOT | 21.00 | 9.75 | 307.13 |
| HOWARD,CRYSTAL R | 2005-10-13 | 2005-10-06 | 2005-09-23 | 2005-09-29 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-10-13 | 2005-10-06 | 2005-09-23 | 2005-09-29 | BOT | 8.00 | 9.75 | 117.00 |
| HOWARD,CRYSTAL R | 2005-10-13 | 2005-10-06 | 2005-09-30 | 2005-10-06 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-10-13 | 2005-10-06 | 2005-09-30 | 2005-10-06 | BOT | 5.50 | 9.75 | 80.44 |
| HOWARD,CRYSTAL R | 2005-10-27 | 2005-10-20 | 2005-10-07 | 2005-10-13 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-10-27 | 2005-10-20 | 2005-10-07 | 2005-10-13 | BOT | 4.00 | 9.75 | 58.50 |
| HOWARD,CRYSTAL R | 2005-10-27 | 2005-10-20 | 2005-10-14 | 2005-10-20 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-10-27 | 2005-10-20 | 2005-10-14 | 2005-10-20 | BOT | 4.00 | 9.75 | 58.50 |
| HOWARD,CRYSTAL R | 2005-11-10 | 2005-11-03 | 2005-10-21 | 2005-10-27 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-11-10 | 2005-11-03 | 2005-10-21 | 2005-10-27 | BOT | 5.00 | 9.75 | 73.13 |

CRYSTAL HOWARD PAY HISTORY

| Name | Check Dt | Pay Period End | Earns Begin | Earns End | Hrs Type * | Hours | Rate | Earns |
|------|----------|----------------|-------------|-----------|------------|-------|------|-------|
| HOWARD,CRYSTAL R | 2005-11-10 | 2005-11-03 | 2005-10-28 | 2005-11-03 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-11-10 | 2005-11-03 | 2005-10-28 | 2005-11-03 | BOT | 8.00 | 9.75 | 117.00 |
| HOWARD,CRYSTAL R | 2005-12-22 | 2005-12-23 | 2005-10-28 | 2005-11-03 | BST | 8.00 | 9.75 | 78.00 |
| HOWARD,CRYSTAL R | 2005-11-23 | 2005-11-17 | 2005-11-04 | 2005-11-10 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-11-23 | 2005-11-17 | 2005-11-11 | 2005-11-17 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-11-23 | 2005-11-17 | 2005-11-11 | 2005-11-17 | BOT | 24.00 | 9.75 | 351.00 |
| HOWARD,CRYSTAL R | 2005-12-08 | 2005-12-01 | 2005-11-18 | 2005-11-24 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-12-08 | 2005-12-01 | 2005-11-25 | 2005-12-01 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-12-22 | 2005-12-15 | 2005-12-02 | 2005-12-08 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2005-12-22 | 2005-12-15 | 2005-12-02 | 2005-12-08 | BOT | 24.00 | 9.75 | 351.00 |
| HOWARD,CRYSTAL R | 2005-12-22 | 2005-12-15 | 2005-12-09 | 2005-12-15 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-01-05 | 2005-12-29 | 2005-12-16 | 2005-12-22 | BST | 32.00 | 9.75 | 312.00 |
| HOWARD,CRYSTAL R | 2006-01-05 | 2005-12-29 | 2005-12-23 | 2005-12-29 | BST | 32.00 | 9.75 | 312.00 |
| HOWARD,CRYSTAL R | 2006-01-05 | 2005-12-29 | 2005-12-23 | 2005-12-29 | BDT | 8.00 | 9.75 | 156.00 |
| HOWARD,CRYSTAL R | 2006-01-19 | 2006-01-12 | 2005-12-30 | 2006-01-05 | BST | 32.00 | 9.75 | 312.00 |
| HOWARD,CRYSTAL R | 2006-01-19 | 2006-01-12 | 2005-12-30 | 2006-01-05 | BDT | 8.00 | 9.75 | 156.00 |
| HOWARD,CRYSTAL R | 2006-01-19 | 2006-01-12 | 2006-01-06 | 2006-01-12 | BST | 32.00 | 9.75 | 312.00 |
| HOWARD,CRYSTAL R | 2006-01-19 | 2006-01-12 | 2006-01-06 | 2006-01-12 | BST | 8.00 | 9.75 | 78.00 |
| HOWARD,CRYSTAL R | 2006-02-02 | 2006-01-26 | 2006-01-13 | 2006-01-19 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-02-02 | 2006-01-26 | 2006-01-20 | 2006-01-26 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-02-16 | 2006-02-09 | 2006-01-27 | 2006-02-02 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-02-16 | 2006-02-09 | 2006-02-03 | 2006-02-09 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-03-02 | 2006-02-23 | 2006-02-10 | 2006-02-16 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-03-02 | 2006-02-23 | 2006-02-17 | 2006-02-23 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-03-16 | 2006-03-09 | 2006-02-24 | 2006-03-02 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-03-16 | 2006-03-09 | 2006-03-03 | 2006-03-09 | BST | 36.00 | 9.75 | 351.00 |
| HOWARD,CRYSTAL R | 2006-03-30 | 2006-03-23 | 2006-03-10 | 2006-03-16 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-03-30 | 2006-03-23 | 2006-03-17 | 2006-03-23 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-03-30 | 2006-03-23 | 2006-03-17 | 2006-03-23 | BOT | 4.00 | 9.75 | 58.50 |
| HOWARD,CRYSTAL R | 2006-04-13 | 2006-04-06 | 2006-03-24 | 2006-03-30 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-04-13 | 2006-04-06 | 2006-03-31 | 2006-04-06 | BST | 38.00 | 9.75 | 370.50 |

CRYSTAL HOWARD PAY HISTORY

| Name | Check Dt | Pay Period End | Earns Begin | Earns End | Hrs Type * | Hours | Rate | Earns |
|------|----------|----------------|-------------|-----------|------------|-------|------|-------|
| HOWARD,CRYSTAL R | 2006-04-27 | 2006-04-20 | 2006-04-07 | 2006-04-13 | BST | 39.50 | 9.75 | 385.13 |
| HOWARD,CRYSTAL R | 2006-04-27 | 2006-04-20 | 2006-04-14 | 2006-04-20 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-05-11 | 2006-05-04 | 2006-04-21 | 2006-04-27 | BST | 36.00 | 9.75 | 351.00 |
| HOWARD,CRYSTAL R | 2006-05-11 | 2006-05-04 | 2006-04-28 | 2006-05-04 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-05-25 | 2006-05-18 | 2006-05-05 | 2006-05-11 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-05-25 | 2006-05-18 | 2006-05-05 | 2006-05-11 | BOT | 12.00 | 9.75 | 175.50 |
| HOWARD,CRYSTAL R | 2006-05-25 | 2006-05-18 | 2006-05-12 | 2006-05-18 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-06-08 | 2006-06-01 | 2006-05-19 | 2006-05-25 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-06-08 | 2006-06-01 | 2006-05-19 | 2006-05-25 | BOT | 3.00 | 9.75 | 43.88 |
| HOWARD,CRYSTAL R | 2006-06-08 | 2006-06-01 | 2006-05-26 | 2006-06-01 | BST | 32.00 | 9.75 | 312.00 |
| HOWARD,CRYSTAL R | 2006-06-08 | 2006-06-01 | 2006-05-26 | 2006-06-01 | BOT | 8.00 | 9.75 | 117.00 |
| HOWARD,CRYSTAL R | 2006-06-08 | 2006-06-01 | 2006-05-26 | 2006-06-01 | BDT | 8.00 | 9.75 | 156.00 |
| HOWARD,CRYSTAL R | 2006-06-22 | 2006-06-15 | 2006-06-02 | 2006-06-08 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-06-22 | 2006-06-15 | 2006-06-09 | 2006-06-15 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-06-22 | 2006-06-15 | 2006-06-09 | 2006-06-15 | BOT | 8.00 | 9.75 | 117.00 |
| HOWARD,CRYSTAL R | 2006-07-06 | 2006-06-29 | 2006-06-16 | 2006-06-22 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-07-06 | 2006-06-29 | 2006-06-16 | 2006-06-22 | BOT | 16.00 | 9.75 | 234.00 |
| HOWARD,CRYSTAL R | 2006-07-06 | 2006-06-29 | 2006-06-23 | 2006-06-29 | BST | 40.00 | 9.75 | 390.00 |
| HOWARD,CRYSTAL R | 2006-07-20 | 2006-07-13 | 2006-06-30 | 2006-07-06 | BST | 32.00 | 9.75 | 312.00 |
| HOWARD,CRYSTAL R | 2006-07-20 | 2006-07-13 | 2006-06-30 | 2006-07-06 | BOT | 4.00 | 9.75 | 58.50 |
| HOWARD,CRYSTAL R | 2006-07-20 | 2006-07-13 | 2006-06-30 | 2006-07-06 | BDT | 8.00 | 9.75 | 156.00 |
| HOWARD,CRYSTAL R | 2006-07-20 | 2006-07-13 | 2006-07-07 | 2006-07-13 | BST | 32.00 | 9.75 | 312.00 |
| HOWARD,CRYSTAL R | 2006-08-03 | 2006-07-27 | 2006-07-14 | 2006-07-20 | BST | 16.00 | 9.75 | 156.00 |
| HOWARD,CRYSTAL R | 2006-07-24 | 2006-07-27 | 2006-07-14 | 2006-07-27 | VAC | 40.00 | 10.00 | 400.00 |
| HOWARD,CRYSTAL R | 2006-08-03 | 2006-07-27 | 2006-07-21 | 2006-07-27 | BST | 40.00 | 10.00 | 400.00 |
| HOWARD,CRYSTAL R | 2006-08-17 | 2006-08-10 | 2006-07-28 | 2006-08-03 | BST | 32.00 | 10.00 | 320.00 |
| HOWARD,CRYSTAL R | 2006-08-17 | 2006-08-10 | 2006-08-04 | 2006-08-10 | BST | 39.67 | 10.00 | 396.70 |
| HOWARD,CRYSTAL R | 2006-08-31 | 2006-08-24 | 2006-08-11 | 2006-08-17 | BST | 40.00 | 10.00 | 400.00 |
| HOWARD,CRYSTAL R | 2006-08-31 | 2006-08-24 | 2006-08-18 | 2006-08-24 | BST | 40.00 | 10.00 | 400.00 |
| HOWARD,CRYSTAL R | 2006-08-31 | 2006-08-24 | 2006-08-18 | 2006-08-24 | BOT | 20.00 | 10.00 | 300.00 |
| HOWARD,CRYSTAL R | 2006-09-14 | 2006-09-07 | 2006-08-25 | 2006-08-31 | BST | 40.00 | 10.00 | 400.00 |

CRYSTAL HOWARD PAY HISTORY

| Name | Check Dt | Pay Period End | Earns Begin | Earns End | Hrs Type * | Hours | Rate | Earns |
|---|---|---|---|---|---|---|---|---|
| HOWARD,CRYSTAL R | 2006-09-14 | 2006-09-07 | 2006-09-01 | 2006-09-07 | BST | 38.00 | 10.00 | 380.00 |
| HOWARD,CRYSTAL R | 2006-09-28 | 2006-09-21 | 2006-09-08 | 2006-09-14 | BST | 32.00 | 10.00 | 320.00 |
| HOWARD,CRYSTAL R | 2006-09-28 | 2006-09-21 | 2006-09-15 | 2006-09-21 | BST | 40.00 | 10.00 | 400.00 |
| HOWARD,CRYSTAL R | 2006-09-28 | 2006-09-21 | 2006-09-15 | 2006-09-21 | BOT | 6.00 | 10.00 | 90.00 |
| HOWARD,CRYSTAL R | 2006-10-12 | 2006-10-05 | 2006-09-22 | 2006-09-28 | BST | 26.00 | 10.00 | 260.00 |
| HOWARD,CRYSTAL R | 2006-10-12 | 2006-10-05 | 2006-09-29 | 2006-10-05 | BST | 40.00 | 10.00 | 400.00 |
| HOWARD,CRYSTAL R | 2006-10-12 | 2006-10-05 | 2006-09-29 | 2006-10-05 | BOT | 12.00 | 10.00 | 180.00 |
| HOWARD,CRYSTAL R | 2006-10-26 | 2006-10-19 | 2006-10-06 | 2006-10-12 | BST | 36.00 | 10.00 | 360.00 |
| HOWARD,CRYSTAL R | 2006-10-26 | 2006-10-19 | 2006-10-13 | 2006-10-19 | BST | 40.00 | 10.00 | 400.00 |
| HOWARD,CRYSTAL R | 2006-11-09 | 2006-11-02 | 2006-10-20 | 2006-10-26 | BST | 38.75 | 10.00 | 387.50 |
| HOWARD,CRYSTAL R | 2006-11-09 | 2006-11-02 | 2006-10-27 | 2006-11-02 | BST | 30.00 | 9.50 | 285.00 |
| HOWARD,CRYSTAL R | 2006-11-09 | 2006-11-02 | 2006-10-27 | 2006-11-02 | BST | 10.00 | 10.00 | 100.00 |
| HOWARD,CRYSTAL R | 2006-11-22 | 2006-11-16 | 2006-11-03 | 2006-11-09 | BST | 40.00 | 10.00 | 400.00 |
| HOWARD,CRYSTAL R | 2006-11-22 | 2006-11-16 | 2006-11-10 | 2006-11-16 | BST | 40.00 | 9.50 | 380.00 |
| HOWARD,CRYSTAL R | 2006-11-22 | 2006-11-16 | 2006-11-10 | 2006-11-16 | BOT | 8.00 | 9.50 | 114.00 |
| HOWARD,CRYSTAL R | 2006-12-07 | 2006-11-30 | 2006-11-17 | 2006-11-23 | BST | 32.00 | 9.50 | 304.00 |
| HOWARD,CRYSTAL R | 2006-12-07 | 2006-11-30 | 2006-11-17 | 2006-11-23 | BOT | 9.50 | 9.50 | 135.38 |
| HOWARD,CRYSTAL R | 2006-12-07 | 2006-11-30 | 2006-11-17 | 2006-11-23 | BDT | 8.00 | 9.50 | 152.00 |
| HOWARD,CRYSTAL R | 2006-12-07 | 2006-11-30 | 2006-11-24 | 2006-11-30 | BST | 40.00 | 9.50 | 380.00 |
| HOWARD,CRYSTAL R | 2006-12-07 | 2006-11-30 | 2006-11-24 | 2006-11-30 | BOT | 16.00 | 9.50 | 228.00 |
| HOWARD,CRYSTAL R | 2006-12-21 | 2006-12-14 | 2006-12-01 | 2006-12-07 | BST | 40.00 | 9.50 | 380.00 |
| HOWARD,CRYSTAL R | 2006-12-21 | 2006-12-14 | 2006-12-08 | 2006-12-14 | BST | 40.00 | 9.50 | 380.00 |
| HOWARD,CRYSTAL R | 2007-01-04 | 2006-12-28 | 2006-12-15 | 2006-12-21 | BST | 40.00 | 10.00 | 400.00 |
| HOWARD,CRYSTAL R | 2007-01-04 | 2006-12-28 | 2006-12-22 | 2006-12-28 | BST | 40.00 | 10.00 | 400.00 |
| HOWARD,CRYSTAL R | 2007-01-18 | 2007-01-11 | 2006-12-29 | 2007-01-04 | BST | 28.00 | 10.25 | 287.00 |
| HOWARD,CRYSTAL R | 2007-01-18 | 2007-01-11 | 2006-12-29 | 2007-01-04 | BOT | 12.00 | 10.25 | 184.50 |
| HOWARD,CRYSTAL R | 2007-01-18 | 2007-01-11 | 2006-12-29 | 2007-01-04 | UCS | 6.00 | 10.00 | 60.00 |
| HOWARD,CRYSTAL R | 2007-01-18 | 2007-01-11 | 2006-12-29 | 2007-01-04 | UCS | 6.00 | 10.25 | 61.50 |
| HOWARD,CRYSTAL R | 2007-01-18 | 2007-01-11 | 2007-01-05 | 2007-01-11 | BST | 8.00 | 10.00 | 80.00 |
| HOWARD,CRYSTAL R | 2007-01-18 | 2007-01-11 | 2007-01-05 | 2007-01-11 | BST | 32.00 | 10.00 | 320.00 |
| HOWARD,CRYSTAL R | 2007-02-01 | 2007-01-25 | 2007-01-12 | 2007-01-18 | BST | 40.00 | 10.00 | 400.00 |

CRYSTAL HOWARD PAY HISTORY

| Name | Check Dt | Pay Period End | Earns Begin | Earns End | Hrs Type * | Hours | Rate | Earns |
|------|----------|----------------|-------------|-----------|-----------|-------|------|-------|
| HOWARD,CRYSTAL R | 2007-02-01 | 2007-01-25 | 2007-01-19 | 2007-01-25 | BST | 40.00 | 10.00 | 400.00 |
| HOWARD,CRYSTAL R | 2007-02-15 | 2007-02-08 | 2007-01-26 | 2007-02-01 | BST | 36.00 | 10.25 | 369.00 |
| HOWARD,CRYSTAL R | 2007-02-15 | 2007-02-08 | 2007-02-02 | 2007-02-08 | BST | 40.00 | 10.00 | 400.00 |
| HOWARD,CRYSTAL R | 2007-02-15 | 2007-02-08 | 2007-02-02 | 2007-02-08 | BOT | 20.00 | 10.00 | 300.00 |
| HOWARD,CRYSTAL R | 2007-03-01 | 2007-02-22 | 2007-02-09 | 2007-02-15 | BST | 28.00 | 10.25 | 287.00 |
| HOWARD,CRYSTAL R | 2007-03-01 | 2007-02-22 | 2007-02-16 | 2007-02-22 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-03-01 | 2007-02-22 | 2007-02-16 | 2007-02-22 | BOT | 4.00 | 10.25 | 61.50 |
| HOWARD,CRYSTAL R | 2007-03-15 | 2007-03-08 | 2007-02-23 | 2007-03-01 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-03-15 | 2007-03-08 | 2007-02-23 | 2007-03-01 | BOT | 24.00 | 10.25 | 369.00 |
| HOWARD,CRYSTAL R | 2007-03-15 | 2007-03-08 | 2007-03-02 | 2007-03-08 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-03-15 | 2007-03-08 | 2007-03-02 | 2007-03-08 | BOT | 24.00 | 10.25 | 369.00 |
| HOWARD,CRYSTAL R | 2007-03-29 | 2007-03-22 | 2007-03-09 | 2007-03-15 | BST | 37.00 | 10.25 | 379.25 |
| HOWARD,CRYSTAL R | 2007-03-29 | 2007-03-22 | 2007-03-16 | 2007-03-22 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-04-12 | 2007-04-05 | 2007-03-23 | 2007-03-29 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-04-12 | 2007-04-05 | 2007-03-30 | 2007-04-05 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-04-26 | 2007-04-19 | 2007-04-06 | 2007-04-12 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-04-26 | 2007-04-19 | 2007-04-13 | 2007-04-19 | BST | 30.00 | 10.25 | 307.50 |
| HOWARD,CRYSTAL R | 2007-04-26 | 2007-04-19 | 2007-04-13 | 2007-04-19 | SIS | 10.00 | 10.25 | 102.50 |
| HOWARD,CRYSTAL R | 2007-05-10 | 2007-05-03 | 2007-04-20 | 2007-04-26 | BST | 34.00 | 10.25 | 348.50 |
| HOWARD,CRYSTAL R | 2007-05-10 | 2007-05-03 | 2007-04-20 | 2007-04-26 | SIS | 6.00 | 10.25 | 61.50 |
| HOWARD,CRYSTAL R | 2007-05-10 | 2007-05-03 | 2007-04-27 | 2007-05-03 | BST | 39.00 | 10.25 | 399.75 |
| HOWARD,CRYSTAL R | 2007-05-10 | 2007-05-03 | 2007-04-27 | 2007-05-03 | BOT | 1.00 | 10.25 | 15.38 |
| HOWARD,CRYSTAL R | 2007-05-10 | 2007-05-03 | 2007-04-27 | 2007-05-03 | PTS | 1.00 | 10.25 | 10.25 |
| HOWARD,CRYSTAL R | 2007-05-24 | 2007-05-17 | 2007-05-04 | 2007-05-10 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-05-24 | 2007-05-17 | 2007-05-04 | 2007-05-10 | BOT | 4.00 | 10.25 | 61.50 |
| HOWARD,CRYSTAL R | 2007-05-24 | 2007-05-17 | 2007-05-11 | 2007-05-17 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-06-07 | 2007-05-31 | 2007-05-18 | 2007-05-24 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-06-07 | 2007-05-31 | 2007-05-18 | 2007-05-24 | BOT | 2.00 | 10.25 | 30.75 |
| HOWARD,CRYSTAL R | 2007-06-07 | 2007-05-31 | 2007-05-25 | 2007-05-31 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-06-21 | 2007-06-14 | 2007-06-01 | 2007-06-07 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-06-21 | 2007-06-14 | 2007-06-08 | 2007-06-14 | BST | 40.00 | 10.25 | 410.00 |

CRYSTAL HOWARD PAY HISTORY

| Name | Check Dt | Pay Period End | Earns Begin | Earns End | Hrs Type * | Hours | Rate | Earns |
|------|----------|----------------|-------------|-----------|------------|-------|------|-------|
| HOWARD,CRYSTAL R | 2007-06-21 | 2007-06-21 | 2007-06-08 | 2007-06-21 | VAC | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-07-05 | 2007-06-28 | 2007-06-15 | 2007-06-21 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-07-05 | 2007-06-28 | 2007-06-15 | 2007-06-21 | BOT | 0.25 | 10.25 | 3.84 |
| HOWARD,CRYSTAL R | 2007-07-05 | 2007-06-28 | 2007-06-22 | 2007-06-28 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-07-19 | 2007-07-12 | 2007-06-29 | 2007-07-05 | BST | 32.00 | 10.25 | 328.00 |
| HOWARD,CRYSTAL R | 2007-07-19 | 2007-07-12 | 2007-06-29 | 2007-07-05 | BOT | 2.00 | 10.25 | 30.75 |
| HOWARD,CRYSTAL R | 2007-07-19 | 2007-07-12 | 2007-06-29 | 2007-07-05 | BDT | 8.00 | 10.25 | 164.00 |
| HOWARD,CRYSTAL R | 2007-07-19 | 2007-07-12 | 2007-07-06 | 2007-07-12 | BST | 37.50 | 10.25 | 384.38 |
| HOWARD,CRYSTAL R | 2007-08-02 | 2007-07-26 | 2007-07-13 | 2007-07-19 | BST | 40.00 | 10.25 | 410.00 |
| HOWARD,CRYSTAL R | 2007-08-02 | 2007-07-26 | 2007-07-13 | 2007-07-19 | BOT | 0.75 | 10.25 | 11.53 |
| HOWARD,CRYSTAL R | 2007-08-02 | 2007-07-26 | 2007-07-20 | 2007-07-26 | BST | 6.00 | 10.25 | 61.50 |
| HOWARD,CRYSTAL R | 2007-08-02 | 2007-07-26 | 2007-07-20 | 2007-07-26 | VAC | 26.00 | 10.25 | 266.50 |
| HOWARD,CRYSTAL R | 2007-08-23 | 2007-08-09 | 2007-07-27 | 2007-08-02 | BST | 18.00 | 10.50 | 189.00 |
| HOWARD,CRYSTAL R | 2007-08-23 | 2007-08-09 | 2007-08-03 | 2007-08-09 | BST | 24.00 | 10.50 | 252.00 |

\*   BDT = Billable Double Time
    BOT = Billable Overtime
    BST = Billable Straight Time
    PTS = Patrol Straight Time
    SIS = Sick Straight Time
    TST = Training Straight Time
    UCS = Non-Billable Client Accomodation -- Straight Time
    VAC = Vacation

# EXHIBIT M

# SAFES WEEKLY TIME RECORD

**SECURITAS**

☒ OFFCYCLE REQUEST - Email to : WOC PAYROLL OCR (WOCPAYROLL.OCR@SECURITASINC.COM)

☐ ONCYCLE REQUEST - Email to: MARY HARPRING (MARY.HARPRING@SECURITASINC.COM)

Contract # 0194441001    Client Name CTA    Region NORTH/CENTRAL    Period Covered 10/28/2005    Through 11/3/05

| NAME - LAST, FIRST | 1st LINE | Straight Time Hourly Rate | DATE | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2nd LINE Code | | 28 FRIDAY | 29 SATURDAY | 30 SUNDAY | 31 MONDAY | 1 TUESDAY | 2 WEDNESDAY | 3 THURSDAY |
| HOWARD, CRYSTAL | | 9.75 | | | | | 8.00 | 8.00 | |
| SSN # 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 | | | | | | | | | |

**SSN #** 0194441001

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Payroll Only | | | | | | | | |
| Use Only | | | | | | | | |

| UNBILLABLE TRNG/BRK-IN | | | | | | | | |
| UNBILLABLE SUPERVISION | | | | | | | | |
| SERVICE HOURS | | | | | | | | |
| NUMBER OF MILES PER DAY | 0.405 | | | | | | | |
| UNIFORM AMOUNT PER DAY | $ | | | | | | | |

| | SAFES BILL CAT | BILL RATE | ST | OT | DT | | |
|---|---|---|---|---|---|---|---|
| Complete this area and email to your Billing Rep. ONLY if you require a manual billing adjustment. | 008-k9 | 9.75 | 8 | | | | |

**TOTAL BILLABLE HOURS** 8.00 | 0.00

**TOTAL WEEKLY HOURS**

| | S.T. | T&1/2 | DT | DT & 1/2 |
|---|---|---|---|---|
| | 8.00 | | | |

| | | AMOUNT |
|---|---|---|
| On-cycle Holiday | | $ |
| Correction Only | | $78.00 |
| | | $0.00 |
| | | $0.00 |
| | | $0.00 |
| | | $0.00 |
| | | $0.00 |
| | | $0.00 |
| | | $0.00 |
| | | $0.00 |
| MOT / IF WRONG RATE PAID | | $0.00 |
| TOTAL AMOUNT | | $78.00 |
| MIN | | $0.00 |
| UAN | | $0.00 |

Total Mileage $
Total Uniform Allowance $

CLIENT INFORMATION - Type of hours: cta billed hours  contact no# 019441001

SERVICE CENTER INFORMATION – reason for request/explanation of issue/special mailing instructions

OFFICER CRYSTAL HOWARD WAS NOT SIGNED IN ON PAYROLL SHEEEE BUT SHE WAS SIGNED IN ON THE DAILY SHIFT REPORT.

| Prepared By | | Phone No. | Date |
|---|---|---|---|
| Amando Barraza | 0.00 | 1-773-826-0500 | 12/20/05 |
| Branch Manager Approval | | | DAVID REESE |

Dept. 066MO

OW990 MO66 DEPT

SAFES Weekly Time Record 06_27_05 (3).xls

Revision A  3:36 PM 6/30/2008

# EXHIBIT N

ALVAN YOUNG PAY HISTORY

| Name | Check Dt | Pay Period End | Earns Begin | Earns End | Hrs Type * | Hours | Rate | Earns |
|------|----------|----------------|-------------|-----------|------------|-------|------|-------|
| YOUNG,ALVAN | 2006-03-30 | 2006-03-23 | 2006-03-10 | 2006-03-16 | BST | 24.00 | 9.50 | 228.00 |
| YOUNG,ALVAN | 2006-03-30 | 2006-03-23 | 2006-03-17 | 2006-03-23 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-04-13 | 2006-04-06 | 2006-03-24 | 2006-03-30 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-04-13 | 2006-04-06 | 2006-03-31 | 2006-04-06 | BST | 39.00 | 9.50 | 370.50 |
| YOUNG,ALVAN | 2006-04-27 | 2006-04-20 | 2006-04-07 | 2006-04-13 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-04-27 | 2006-04-20 | 2006-04-14 | 2006-04-20 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-05-11 | 2006-05-04 | 2006-04-21 | 2006-04-27 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-05-11 | 2006-05-04 | 2006-04-28 | 2006-05-04 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-05-25 | 2006-05-18 | 2006-05-05 | 2006-05-11 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-05-25 | 2006-05-18 | 2006-05-05 | 2006-05-11 | BOT | 8.00 | 9.50 | 114.00 |
| YOUNG,ALVAN | 2006-05-25 | 2006-05-18 | 2006-05-12 | 2006-05-18 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-06-08 | 2006-06-01 | 2006-05-19 | 2006-05-25 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-06-08 | 2006-06-01 | 2006-05-19 | 2006-05-25 | BOT | 8.00 | 9.50 | 114.00 |
| YOUNG,ALVAN | 2006-06-08 | 2006-06-01 | 2006-05-26 | 2006-06-01 | BST | 32.00 | 9.50 | 304.00 |
| YOUNG,ALVAN | 2006-06-08 | 2006-06-01 | 2006-05-26 | 2006-06-01 | BDT | 8.00 | 9.50 | 152.00 |
| YOUNG,ALVAN | 2006-06-22 | 2006-06-15 | 2006-06-02 | 2006-06-08 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-06-22 | 2006-06-15 | 2006-06-02 | 2006-06-08 | BOT | 2.00 | 9.50 | 28.50 |
| YOUNG,ALVAN | 2006-06-22 | 2006-06-15 | 2006-06-09 | 2006-06-15 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-06-22 | 2006-06-15 | 2006-06-09 | 2006-06-15 | BOT | 6.00 | 9.50 | 85.50 |
| YOUNG,ALVAN | 2006-07-06 | 2006-06-29 | 2006-06-16 | 2006-06-22 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-07-06 | 2006-06-29 | 2006-06-16 | 2006-06-22 | BOT | 2.00 | 9.50 | 28.50 |
| YOUNG,ALVAN | 2006-07-06 | 2006-06-29 | 2006-06-23 | 2006-06-29 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-07-20 | 2006-07-13 | 2006-06-30 | 2006-07-06 | BST | 34.00 | 9.50 | 323.00 |
| YOUNG,ALVAN | 2006-07-20 | 2006-07-13 | 2006-06-30 | 2006-07-06 | BOT | 1.00 | 9.50 | 14.25 |
| YOUNG,ALVAN | 2006-07-20 | 2006-07-13 | 2006-06-30 | 2006-07-06 | BDT | 6.00 | 9.50 | 114.00 |
| YOUNG,ALVAN | 2006-07-20 | 2006-07-13 | 2006-07-07 | 2006-07-13 | BST | 40.00 | 9.50 | 380.00 |
| YOUNG,ALVAN | 2006-08-03 | 2006-07-27 | 2006-07-14 | 2006-07-20 | BST | 37.00 | 9.50 | 351.50 |
| YOUNG,ALVAN | 2006-08-03 | 2006-07-27 | 2006-07-21 | 2006-07-27 | BST | 40.00 | 9.75 | 390.00 |
| YOUNG,ALVAN | 2006-08-17 | 2006-08-10 | 2006-07-28 | 2006-08-03 | BST | 32.00 | 9.75 | 312.00 |
| YOUNG,ALVAN | 2006-08-17 | 2006-08-10 | 2006-08-04 | 2006-08-10 | BST | 31.83 | 9.75 | 310.34 |
| YOUNG,ALVAN | 2006-08-31 | 2006-08-24 | 2006-08-11 | 2006-08-17 | BST | 40.00 | 9.75 | 390.00 |

ALVAN YOUNG PAY HISTORY

| Name | Check Dt | Pay Period End | Earns Begin | Earns End | Hrs Type * | Hours | Rate | Earns |
|------|----------|----------------|-------------|-----------|------------|-------|------|-------|
| YOUNG,ALVAN | 2006-08-31 | 2006-08-24 | 2006-08-11 | 2006-08-17 | BOT | 1.00 | 9.75 | 14.63 |
| YOUNG,ALVAN | 2006-08-31 | 2006-08-24 | 2006-08-18 | 2006-08-24 | BST | 40.00 | 9.75 | 390.00 |
| YOUNG,ALVAN | 2006-08-31 | 2006-08-24 | 2006-08-18 | 2006-08-24 | BOT | 1.00 | 9.75 | 14.63 |
| YOUNG,ALVAN | 2006-09-14 | 2006-09-07 | 2006-08-25 | 2006-08-31 | BST | 40.00 | 9.75 | 390.00 |
| YOUNG,ALVAN | 2006-09-14 | 2006-09-07 | 2006-09-01 | 2006-09-07 | BST | 9.00 | 9.75 | 87.75 |
| YOUNG,ALVAN | 2006-10-02 | 2006-10-05 | 2006-09-01 | 2006-09-07 | BST | 32.00 | 9.75 | 312.00 |
| YOUNG,ALVAN | 2006-10-02 | 2006-10-05 | 2006-09-08 | 2006-09-14 | BST | 40.00 | 9.75 | 390.00 |
| YOUNG,ALVAN | 2006-09-28 | 2006-09-21 | 2006-09-15 | 2006-09-21 | BST | 32.00 | 9.75 | 312.00 |
| YOUNG,ALVAN | 2006-10-12 | 2006-10-05 | 2006-09-22 | 2006-09-28 | BST | 36.00 | 9.75 | 351.00 |
| YOUNG,ALVAN | 2006-10-12 | 2006-10-05 | 2006-09-29 | 2006-10-05 | BST | 32.00 | 9.75 | 312.00 |
| YOUNG,ALVAN | 2006-10-26 | 2006-10-19 | 2006-10-06 | 2006-10-12 | BST | 40.00 | 9.75 | 390.00 |
| YOUNG,ALVAN | 2006-10-26 | 2006-10-19 | 2006-10-13 | 2006-10-19 | BST | 40.00 | 9.75 | 390.00 |
| YOUNG,ALVAN | 2006-11-09 | 2006-11-02 | 2006-10-20 | 2006-10-26 | BST | 40.00 | 9.75 | 390.00 |
| YOUNG,ALVAN | 2006-11-09 | 2006-11-02 | 2006-10-20 | 2006-10-26 | BOT | 9.50 | 9.75 | 138.94 |
| YOUNG,ALVAN | 2006-11-09 | 2006-11-02 | 2006-10-27 | 2006-11-02 | BST | 32.00 | 9.75 | 312.00 |

\*    BDT = Billable Double Time
     BOT = Billable Overtime
     BST = Billable Straight Time

# TAB 1
# AFFIDAVIT OF DAVID REESE

# CONTINUED

# EXHIBIT O

# EMPLOYEE SIGN-IN REGISTER



**SECURITAS**

Week ending date: _____
Page: _____ 1 _____ Of: _____ 1

## CTA

Address: _____

| Employee Name | Date Day | | Friday | Hrs | Saturday | Hrs | Sunday | Hrs | Monday | Hrs | Tuesday | Hrs | Wednesday | Thursday | Hrs | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Print: | | In | | | 1400 | | 1430 | | 1400 | 950 | 1400 | 8 | | | | |
| Sign: | | Out | | | 2200 | 8 | 2200 | | 06 | | 2200 | | | | | |
| Print: | | In | | | | | | | 1000 | | 0000 | 2 | | | | |
| Sign: | | Out | | | | 2 | | | 1000 | 6 | 0200 | | | | | |
| Print: Young, Alvan | | In | | | 2200 | | | | | | | | | | | |
| Sign: | | Out | | | 0000 | | | | | | | | | | | |
| Print: Young, Alvan | | In | | | | | 0000 | 8 | | | | | | | | |
| Sign: | | Out | | | | | 0800 | | | | | | | | | |
| Print: | | In | | | 1400 | 5 | | | | | 0600 | 8 | | | | |
| Sign: | | Out | | | 1900 | | | | | | 1400 | | | | | |
| Print: | | In | | | 2200 | 2 | | | | | 1400 | 8 | | | | |
| Sign: | | Out | | | 0000 | | | | | | 2200 | | | | | |
| Print: | | In | | | | | 0000 | 6 | | | | | | | | |
| Sign: | | Out | | | | | 0600 | | | | | | | | | |
| Print: | | In | | 2200 | 2200 | 2 | 2200 | | 2200 | 2 | | | | 2200 | 2 | |
| Sign: | | Out | | 0000 | 0000 | | 0000 | | 0000 | | | | | 0000 | | |
| Print: | | In | | 0000 | 0000 | 6 | 0000 | | 0000 | 6 | 0000 | | | | | |
| Sign: | | Out | | 0600 | 0600 | | 0600 | | 0600 | | 0600 | | | | | |

**Total:** _____

TIME VERIFIED BY: _____

© 2003 Securitas Security Services USA, Inc

# EXHIBIT P

# SAFES WEEKLY TIME RECORD

**SECURITAS**

[X] OFFCYCLE REQUEST - Email to : WOC PAYROLL OCR (WOCPAYROLL.OCR@SECURITASINC.COM)

[ ] ONCYCLE REQUEST - Email to: MARY HARPRING (MARY.HARPRING@SECURITASINC.COM)

Contract # 209000097  Client Name fixed Admin  Dept. 066mo  Region North Central

Period Covered 9/1/2006  Through 9/7/06

| | 1st LINE | Straight Time Hourly Rate | | DATE | | | | | | | TOTAL WEEKLY HOURS | | | On-cycle Holiday | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NAME - LAST, FIRST | | | | | | | | | | | | | | Correction Only | AMOUNT |
| SSN # | 2nd LINE Code | | 1 FRIDAY | 2 SATURDAY | 3 SUNDAY | 4 MONDAY | 5 TUESDAY | 6 WEDNESDAY | 7 THURSDAY | S.T. | T&1/2 | DT | DT & 1/2 | $ |
| Young, Alvan | | 9.75 | | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 32.00 | | | | $312.00 |
| SSN# 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 | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | $0.00 |

| | | ST | OT | DT | | | | | | | | | MOT / IF WRONG RATE PAID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| UNBILLABLE TRNG/BRK-IN | | | | | | | | | | | | | |
| UNBILLABLE SUPERVISION | | | | | | | | | | | | | TOTAL AMOUNT |
| SERVICE HOURS | | | | | | | | | | | | | |
| NUMBER OF MILES PER DAY | 0.405 | | | | | | | | | | Total Mileage $ | | $312.00 |
| UNIFORM AMOUNT PER DAY | $ | | | | | | | | | | Total Uniform Allowance $ | MIN | $0.00 |
| | | | | | | | | | | | | UAN | $0.00 |

| | SAFES BILL CAT | BILL RATE | ST | OT | DT | CLIENT INFORMATION - Type of hours | SERVICE CENTER INFORMATION - reason for request/explanation of issue/special mailing instructions |
|---|---|---|---|---|---|---|---|
| Complete this area | | | | | | | A. Young suspended for investigation. |
| and email to your | | | | | | | |
| Billing Rep. | | | | | | | |
| ONLY if you require | | | | | | | |
| a manual billing | | | | | | | |
| adjustment. | | | | | | | |
| TOTAL BILLABLE HOURS | | | 0.00 | | | | |

Prepared By Armando Barraza  Phone No. 1-773-826-0500  Date 09/28/06 Dave Reese

Branch Manager Approval

066mo  DEPT

Revision A  10:03 AM 7/1/2008

A. Young Payroll Correction.xls

# SAFES WEEKLY TIME RECORD

**SECURITAS**

☒ OFFCYCLE REQUEST - Email to : WOC PAYROLL OCR (WOCPAYROLL.OCR@SECURITASINC.COM)

☐ ONCYCLE REQUEST - Email to: MARY HARPRING (MARY.HARPRING@SECURITASINC.COM)

Contract # 209000097
Client Name: fixed Admin
Dept. 066mo
Region: North Central
Period Covered: 9/8/2006 Through 9/14/06

| NAME - LAST, FIRST | | 1st LINE | Straight Time Hourly Rate | | DATE | | | | | | | | TOTAL WEEKLY HOURS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2nd LINE | | Code | 8 FRIDAY | 9 SATURDAY | 10 SUNDAY | 11 MONDAY | 12 TUESDAY | 13 WEDNESDAY | 14 THURSDAY | | S.T. | T&1/2 | DT | On-cycle Holiday Correction Only DT & 1/2 | AMOUNT $ |
| SSN # | | | 9.75 | | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | | 40.00 | | | | $390.00 |
| Young, Alvan | | | | | | | | | | | | | | | | | $0.00 |
| SSN# 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 | | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | | $0.00 |

| | BILL RATE | ST | OT | | | | | | | MOT / IF WRONG RATE PAID | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UNBILLABLE TRNG/BRK-IN | | | | | | | | | | | |
| UNBILLABLE SUPERVISION | | | | | | | | | TOTAL AMOUNT | |
| SERVICE HOURS | | | | | | | | | | $390.00 |
| NUMBER OF MILES PER DAY | 0.405 | | | | | | Total Mileage $ | | MIN | $0.00 |
| UNIFORM AMOUNT PER DAY | $ ▓▓▓ | | | | | | Total Uniform Allowance $ | | UAN | $0.00 |

| | SAFES BILL CAT | BILL RATE | ST | OT | DT | CLIENT INFORMATION – Type of hours | SERVICE CENTER INFORMATION – reason for request/explanation of issue/special mailing instructions |
|---|---|---|---|---|---|---|---|
| Complete this area | | | | | | | |
| and email to your | | | | | | | A. Young suspended for investigation. |
| Billing Rep. | | | | | | | |
| **ONLY if you require** | | | | | | | |
| a manual billing | | | | | | | |
| adjustment. | | | | | | | |
| TOTAL BILLABLE HOURS | | 0.00 | | | | | |

Prepared By: Armando Barraza
Phone No.: 1-773-826-0500
Date: 09/28/06 Dave Reese
Branch Manager Approval

066mo

DEPT

A Young Payroll Correction2.xls

Revision A  10:03 AM/7/1/2008

# EXHIBIT Q

ROBERT NEWSON PAY HISTORY

| Name | Check Dt | Pay Period End | Earns Begin | Earns End | Hrs Type * | Hours | Rate | Earns |
|---|---|---|---|---|---|---|---|---|
| NEWSON,ROBERT D | 2006-07-17 | 2006-07-20 | 2006-07-07 | 2006-07-13 | BST | 32.00 | 9.50 | 304.00 |
| NEWSON,ROBERT D | 2006-08-03 | 2006-07-27 | 2006-07-14 | 2006-07-20 | BST | 40.00 | 9.50 | 380.00 |
| NEWSON,ROBERT D | 2006-08-03 | 2006-07-27 | 2006-07-21 | 2006-07-27 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-08-17 | 2006-08-10 | 2006-07-28 | 2006-08-03 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-08-17 | 2006-08-10 | 2006-08-04 | 2006-08-10 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-08-17 | 2006-08-10 | 2006-08-04 | 2006-08-10 | BOT | 8.00 | 9.75 | 117.00 |
| NEWSON,ROBERT D | 2006-09-14 | 2006-09-07 | 2006-08-25 | 2006-08-31 | BST | 24.00 | 9.75 | 234.00 |
| NEWSON,ROBERT D | 2006-09-14 | 2006-09-07 | 2006-09-01 | 2006-09-07 | BST | 32.00 | 9.75 | 312.00 |
| NEWSON,ROBERT D | 2006-09-14 | 2006-09-07 | 2006-09-01 | 2006-09-07 | BDT | 8.00 | 9.75 | 156.00 |
| NEWSON,ROBERT D | 2006-09-28 | 2006-09-21 | 2006-09-08 | 2006-09-14 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-09-28 | 2006-09-21 | 2006-09-08 | 2006-09-14 | BOT | 6.00 | 9.75 | 87.75 |
| NEWSON,ROBERT D | 2006-09-28 | 2006-09-21 | 2006-09-15 | 2006-09-21 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-09-28 | 2006-09-21 | 2006-09-15 | 2006-09-21 | BOT | 8.00 | 9.75 | 117.00 |
| NEWSON,ROBERT D | 2006-10-12 | 2006-10-05 | 2006-09-22 | 2006-09-28 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-10-12 | 2006-10-05 | 2006-09-22 | 2006-09-28 | BOT | 20.00 | 9.75 | 292.50 |
| NEWSON,ROBERT D | 2006-10-12 | 2006-10-05 | 2006-09-29 | 2006-10-05 | BST | 34.00 | 9.75 | 331.50 |
| NEWSON,ROBERT D | 2006-10-26 | 2006-10-19 | 2006-10-06 | 2006-10-12 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-10-26 | 2006-10-19 | 2006-10-06 | 2006-10-12 | BOT | 4.00 | 9.75 | 58.50 |
| NEWSON,ROBERT D | 2006-10-26 | 2006-10-19 | 2006-10-13 | 2006-10-19 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-10-26 | 2006-10-19 | 2006-10-13 | 2006-10-19 | BOT | 4.00 | 9.75 | 58.50 |
| NEWSON,ROBERT D | 2006-11-09 | 2006-11-02 | 2006-10-20 | 2006-10-26 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-11-09 | 2006-11-02 | 2006-10-20 | 2006-10-26 | BOT | 2.00 | 9.75 | 29.25 |
| NEWSON,ROBERT D | 2006-11-09 | 2006-11-02 | 2006-10-27 | 2006-11-02 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-11-09 | 2006-11-02 | 2006-10-27 | 2006-11-02 | BOT | 2.00 | 9.75 | 29.25 |
| NEWSON,ROBERT D | 2006-11-22 | 2006-11-16 | 2006-11-03 | 2006-11-09 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-11-22 | 2006-11-16 | 2006-11-03 | 2006-11-09 | BOT | 14.00 | 9.75 | 204.75 |
| NEWSON,ROBERT D | 2006-11-22 | 2006-11-16 | 2006-11-10 | 2006-11-16 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-11-22 | 2006-11-16 | 2006-11-10 | 2006-11-16 | BOT | 13.50 | 9.75 | 197.44 |
| NEWSON,ROBERT D | 2006-11-22 | 2006-11-16 | 2006-11-10 | 2006-11-16 | UCO | 4.00 | 11.75 | 70.50 |
| NEWSON,ROBERT D | 2006-12-07 | 2006-11-30 | 2006-11-17 | 2006-11-23 | BST | 34.00 | 9.75 | 331.50 |
| NEWSON,ROBERT D | 2006-12-07 | 2006-11-30 | 2006-11-17 | 2006-11-23 | BOT | 3.50 | 9.75 | 51.19 |

ROBERT NEWSON PAY HISTORY

| Name | Check Dt | Pay Period End | Earns Begin | Earns End | Hrs Type * | Hours | Rate | Earns |
|------|----------|----------------|-------------|-----------|------------|-------|------|-------|
| NEWSON,ROBERT D | 2006-12-07 | 2006-11-30 | 2006-11-17 | 2006-11-23 | BDT | 6.00 | 9.75 | 117.00 |
| NEWSON,ROBERT D | 2006-12-07 | 2006-11-30 | 2006-11-24 | 2006-11-30 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-12-07 | 2006-11-30 | 2006-11-24 | 2006-11-30 | BOT | 24.00 | 9.75 | 351.00 |
| NEWSON,ROBERT D | 2006-12-21 | 2006-12-14 | 2006-12-01 | 2006-12-07 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2006-12-21 | 2006-12-14 | 2006-12-01 | 2006-12-07 | BOT | 10.00 | 9.75 | 146.25 |
| NEWSON,ROBERT D | 2006-12-21 | 2006-12-14 | 2006-12-08 | 2006-12-14 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2007-01-04 | 2006-12-28 | 2006-12-15 | 2006-12-21 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2007-01-04 | 2006-12-28 | 2006-12-22 | 2006-12-28 | BST | 30.00 | 9.50 | 285.00 |
| NEWSON,ROBERT D | 2007-01-04 | 2006-12-28 | 2006-12-22 | 2006-12-28 | BDT | 10.00 | 9.50 | 190.00 |
| NEWSON,ROBERT D | 2007-01-18 | 2007-01-11 | 2006-12-29 | 2007-01-04 | BST | 28.00 | 9.75 | 273.00 |
| NEWSON,ROBERT D | 2007-01-18 | 2007-01-11 | 2006-12-29 | 2007-01-04 | BDT | 10.00 | 9.75 | 195.00 |
| NEWSON,ROBERT D | 2007-01-18 | 2007-01-11 | 2007-01-05 | 2007-01-11 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2007-01-18 | 2007-01-11 | 2007-01-05 | 2007-01-11 | BOT | 2.00 | 9.75 | 29.25 |
| NEWSON,ROBERT D | 2007-02-01 | 2007-01-25 | 2007-01-12 | 2007-01-18 | BST | 32.00 | 9.75 | 312.00 |
| NEWSON,ROBERT D | 2007-02-01 | 2007-01-25 | 2007-01-12 | 2007-01-18 | BDT | 8.00 | 9.75 | 156.00 |
| NEWSON,ROBERT D | 2007-02-01 | 2007-01-25 | 2007-01-19 | 2007-01-25 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2007-02-01 | 2007-01-25 | 2007-01-19 | 2007-01-25 | BOT | 8.00 | 9.75 | 117.00 |
| NEWSON,ROBERT D | 2007-02-15 | 2007-02-08 | 2007-01-26 | 2007-02-01 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2007-02-15 | 2007-02-08 | 2007-01-26 | 2007-02-01 | BOT | 8.00 | 9.75 | 117.00 |
| NEWSON,ROBERT D | 2007-02-15 | 2007-02-08 | 2007-02-02 | 2007-02-08 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2007-02-15 | 2007-02-08 | 2007-02-02 | 2007-02-08 | BOT | 6.00 | 9.75 | 87.75 |
| NEWSON,ROBERT D | 2007-03-01 | 2007-02-22 | 2007-02-09 | 2007-02-15 | BST | 14.00 | 9.75 | 136.50 |
| NEWSON,ROBERT D | 2007-03-01 | 2007-02-22 | 2007-02-16 | 2007-02-22 | BST | 34.00 | 9.75 | 331.50 |
| NEWSON,ROBERT D | 2007-03-01 | 2007-02-22 | 2007-02-16 | 2007-02-22 | BOT | 24.00 | 9.75 | 351.00 |
| NEWSON,ROBERT D | 2007-03-01 | 2007-02-22 | 2007-02-16 | 2007-02-22 | UCS | 6.00 | 9.75 | 58.50 |
| NEWSON,ROBERT D | 2007-03-15 | 2007-03-08 | 2007-02-23 | 2007-03-01 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2007-03-15 | 2007-03-08 | 2007-02-23 | 2007-03-01 | BOT | 22.00 | 9.75 | 321.75 |
| NEWSON,ROBERT D | 2007-04-12 | 2007-04-05 | 2007-02-23 | 2007-03-01 | BOT | -6.00 | 9.75 | -87.75 |
| NEWSON,ROBERT D | 2007-03-15 | 2007-03-08 | 2007-03-02 | 2007-03-08 | BST | 26.00 | 9.75 | 253.50 |
| NEWSON,ROBERT D | 2007-03-15 | 2007-03-08 | 2007-03-02 | 2007-03-08 | BOT | 14.00 | 9.75 | 204.75 |
| NEWSON,ROBERT D | 2007-03-15 | 2007-03-08 | 2007-03-02 | 2007-03-08 | BST | 14.00 | 10.00 | 140.00 |

ROBERT NEWSON PAY HISTORY

| Name | Check Dt | Pay Period End | Earns Begin | Earns End | Hrs Type * | Hours | Rate | Earns |
|---|---|---|---|---|---|---|---|---|
| NEWSON,ROBERT D | 2007-03-15 | 2007-03-08 | 2007-03-02 | 2007-03-08 | BOT | 2.00 | 10.00 | 30.00 |
| NEWSON,ROBERT D | 2007-03-29 | 2007-03-22 | 2007-03-09 | 2007-03-15 | BST | 26.00 | 9.75 | 253.50 |
| NEWSON,ROBERT D | 2007-03-29 | 2007-03-22 | 2007-03-16 | 2007-03-22 | BST | 2.00 | 9.75 | 19.50 |
| NEWSON,ROBERT D | 2007-04-12 | 2007-04-05 | 2007-03-23 | 2007-03-29 | BST | 32.00 | 9.75 | 312.00 |
| NEWSON,ROBERT D | 2007-04-12 | 2007-04-05 | 2007-03-30 | 2007-04-05 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2007-04-26 | 2007-04-19 | 2007-04-06 | 2007-04-12 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2007-04-26 | 2007-04-19 | 2007-04-13 | 2007-04-19 | BST | 37.50 | 9.75 | 365.63 |
| NEWSON,ROBERT D | 2007-05-10 | 2007-05-03 | 2007-04-20 | 2007-04-26 | BST | 38.00 | 9.75 | 370.50 |
| NEWSON,ROBERT D | 2007-05-10 | 2007-05-03 | 2007-04-27 | 2007-05-03 | BST | 26.00 | 9.75 | 253.50 |
| NEWSON,ROBERT D | 2007-05-24 | 2007-05-17 | 2007-05-04 | 2007-05-10 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2007-05-24 | 2007-05-17 | 2007-05-11 | 2007-05-17 | BST | 22.00 | 9.75 | 214.50 |
| NEWSON,ROBERT D | 2007-06-07 | 2007-05-31 | 2007-05-18 | 2007-05-24 | BST | 33.50 | 9.75 | 326.63 |
| NEWSON,ROBERT D | 2007-06-07 | 2007-05-31 | 2007-05-25 | 2007-05-31 | BST | 38.00 | 9.75 | 370.50 |
| NEWSON,ROBERT D | 2007-06-07 | 2007-05-31 | 2007-05-25 | 2007-05-31 | BOT | 1.00 | 9.75 | 14.63 |
| NEWSON,ROBERT D | 2007-06-07 | 2007-05-31 | 2007-05-25 | 2007-05-31 | BDT | 2.00 | 9.75 | 39.00 |
| NEWSON,ROBERT D | 2007-06-21 | 2007-06-14 | 2007-06-01 | 2007-06-07 | BST | 32.00 | 9.75 | 312.00 |
| NEWSON,ROBERT D | 2007-06-21 | 2007-06-14 | 2007-06-01 | 2007-06-07 | BOT | 14.00 | 9.75 | 204.75 |
| NEWSON,ROBERT D | 2007-06-21 | 2007-06-14 | 2007-06-01 | 2007-06-07 | UCS | 8.00 | 9.50 | 76.00 |
| NEWSON,ROBERT D | 2007-07-05 | 2007-06-28 | 2007-06-22 | 2007-06-28 | BST | 18.00 | 9.75 | 175.50 |
| NEWSON,ROBERT D | 2007-07-19 | 2007-07-12 | 2007-06-29 | 2007-07-05 | BST | 32.00 | 9.75 | 312.00 |
| NEWSON,ROBERT D | 2007-07-19 | 2007-07-12 | 2007-06-29 | 2007-07-05 | BDT | 4.00 | 9.75 | 78.00 |
| NEWSON,ROBERT D | 2007-07-19 | 2007-07-12 | 2007-07-06 | 2007-07-12 | BST | 32.50 | 9.75 | 316.88 |
| NEWSON,ROBERT D | 2007-08-02 | 2007-07-26 | 2007-07-13 | 2007-07-19 | BST | 31.00 | 9.75 | 302.25 |
| NEWSON,ROBERT D | 2007-11-29 | 2007-11-29 | 2007-07-13 | 2007-07-19 | BST | -31.00 | 9.75 | -302.25 |
| NEWSON,ROBERT D | 2007-11-29 | 2007-11-29 | 2007-07-13 | 2007-07-19 | BST | 31.00 | 10.00 | 310.00 |
| NEWSON,ROBERT D | 2007-08-02 | 2007-07-26 | 2007-07-20 | 2007-07-26 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2007-11-29 | 2007-11-29 | 2007-07-20 | 2007-07-26 | BST | -40.00 | 9.75 | -390.00 |
| NEWSON,ROBERT D | 2007-11-29 | 2007-11-29 | 2007-07-20 | 2007-07-26 | BST | 40.00 | 10.00 | 400.00 |
| NEWSON,ROBERT D | 2007-08-16 | 2007-08-09 | 2007-07-27 | 2007-08-02 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2007-08-16 | 2007-08-09 | 2007-07-27 | 2007-08-02 | BOT | 10.50 | 9.75 | 153.56 |
| NEWSON,ROBERT D | 2007-08-16 | 2007-08-09 | 2007-07-27 | 2007-08-02 | VAC | 18.00 | 9.75 | 175.50 |

ROBERT NEWSON PAY HISTORY

| Name | Check Dt | Pay Period End | Earns Begin | Earns End | Hrs Type * | Hours | Rate | Earns |
|---|---|---|---|---|---|---|---|---|
| NEWSON,ROBERT D | 2007-08-16 | 2007-08-09 | 2007-08-03 | 2007-08-09 | BST | 18.00 | 9.75 | 175.50 |
| NEWSON,ROBERT D | 2007-08-16 | 2007-08-09 | 2007-08-03 | 2007-08-09 | BOT | 16.00 | 9.75 | 234.00 |
| NEWSON,ROBERT D | 2007-08-16 | 2007-08-09 | 2007-08-03 | 2007-08-09 | VAC | 22.00 | 10.75 | 236.50 |
| NEWSON,ROBERT D | 2007-08-30 | 2007-08-23 | 2007-08-10 | 2007-08-16 | BST | 40.00 | 9.75 | 390.00 |
| NEWSON,ROBERT D | 2007-08-30 | 2007-08-23 | 2007-08-10 | 2007-08-16 | BOT | 17.00 | 9.75 | 248.63 |
| NEWSON,ROBERT D | 2007-08-30 | 2007-08-23 | 2007-08-17 | 2007-08-23 | BST | 38.00 | 9.75 | 370.50 |
| NEWSON,ROBERT D | 2007-09-13 | 2007-09-06 | 2007-08-24 | 2007-08-30 | BST | 26.00 | 12.00 | 312.00 |
| NEWSON,ROBERT D | 2007-09-13 | 2007-09-06 | 2007-08-31 | 2007-09-06 | BST | 14.00 | 12.00 | 168.00 |
| NEWSON,ROBERT D | 2007-09-13 | 2007-09-06 | 2007-08-31 | 2007-09-06 | BDT | 2.00 | 12.00 | 48.00 |
| NEWSON,ROBERT D | 2007-09-27 | 2007-09-20 | 2007-09-07 | 2007-09-13 | BST | 36.00 | 10.00 | 360.00 |
| NEWSON,ROBERT D | 2007-09-27 | 2007-09-20 | 2007-09-14 | 2007-09-20 | BST | 30.00 | 9.75 | 292.50 |
| NEWSON,ROBERT D | 2007-09-27 | 2007-09-20 | 2007-09-14 | 2007-09-20 | BST | 8.00 | 10.00 | 80.00 |
| NEWSON,ROBERT D | 2007-10-11 | 2007-10-04 | 2007-09-21 | 2007-09-27 | BST | 16.00 | 10.00 | 160.00 |
| NEWSON,ROBERT D | 2007-10-11 | 2007-10-04 | 2007-09-28 | 2007-10-04 | BST | 25.50 | 10.00 | 255.00 |
| NEWSON,ROBERT D | 2007-10-25 | 2007-10-18 | 2007-10-05 | 2007-10-11 | BST | 36.00 | 10.00 | 360.00 |
| NEWSON,ROBERT D | 2007-10-25 | 2007-10-18 | 2007-10-12 | 2007-10-18 | BST | 22.00 | 9.75 | 214.50 |
| NEWSON,ROBERT D | 2007-10-25 | 2007-10-18 | 2007-10-12 | 2007-10-18 | BST | 4.00 | 10.00 | 40.00 |
| NEWSON,ROBERT D | 2007-10-25 | 2007-10-18 | 2007-10-12 | 2007-10-18 | BST | 1.00 | 10.00 | 10.00 |
| NEWSON,ROBERT D | 2007-11-29 | 2007-11-29 | 2007-10-12 | 2007-10-18 | BST | -18.00 | 9.75 | -175.50 |
| NEWSON,ROBERT D | 2007-11-29 | 2007-11-29 | 2007-10-12 | 2007-10-18 | BST | 18.00 | 10.00 | 180.00 |

*    BDT = Billable Double Time
     BOT = Billable Overtime
     BST = Billable Straight Time
     UCO = Unbillable Client Accomodation -- Overtime
     UCS = Non-Billable Client Accomodation -- Straight Time
     VAC = Vacation

# EXHIBIT R

## SECURITAS

# SAFES WEEKLY TIME RECORD

Contract # 0194441001

OFFCYCLE REQUEST - Email to : WOC PAYROLL OCR (WOCPAYROLL.OCR@SECURITASINC.COM) [X]

ONCYCLE REQUEST - Email to: MARY HARPRING (MARY.HARPRING@SECURITASINC.COM)

Client Name: CTA    Dept. 066MO    Region NC

Period Covered 7/13/2007   Through 7/19/07

| NAME - LAST, FIRST | | Hourly Rate | 13 FRIDAY | 14 SATURDAY | 15 SUNDAY | 16 MONDAY | 17 TUESDAY | 18 WEDNESDAY | 19 THURSDAY | S.T. | T&1/2 | DT | AMOUNT $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1st LINE Code | | | | | DATE | | | | | | On-cycle Holiday DT & 1/2 | |
| Newson, Robert | | 9.75 | -8.50 | -6.50 | | -2.00 | -8.00 | -6.00 | | -31.00 | | | -$302.00 |
| | | | | | | | | | | | | | $0.00 |
| SS: 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 | | 10.00 | 8.50 | 6.50 | | 2.00 | 8.00 | 6.00 | | 31.00 | | | $310.00 |
| | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | $0.00 |

MOT / IF WRONG RATE PAID

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| UNBILLABLE TRNG/BRK-IN | | | | | | | | | | | | |
| UNBILLABLE SUPERVISION | | | | | | | | | | | | |
| SERVICE HOURS | | | | | | | | | | | | |
| NUMBER OF MILES PER DAY | 0.405 | | | | | | | | Total Mileage $ | | | $7.70 |
| UNIFORM AMOUNT PER DAY | $ | | | | | | | | Total Uniform Allowance $ | | | $0.00 |

TOTAL WEEKLY HOURS: S.T. / T&1/2 / DT

TOTAL AMOUNT: MIN / UAN / $0.00

SERVICE CENTER INFORMATION - reason for request/explanation of issue/special mailing instructions

Par rate was not adjusted accordingly.

Branch Manager Approval: David Reese

| | SAFES BILL CAT | BILL RATE | ST | OT | DT |
|---|---|---|---|---|---|
| Complete this area | | | | | |
| and email to your | | | | | |
| Billing Rep. | | | | | |
| ONLY if you require | | | | | |
| a manual billing | | | | | |
| adjustment. | | | | | |
| TOTAL BILLABLE HOURS | | | 0.00 | 0.00 | 0.00 |

CLIENT INFORMATION - Type of hours: 0.00

Prepared By: Evelyn Cruz   Phone No. 773-826-0500   Date 11/27/07

DEPT 066MO990

Newson Robert correction for July 1.xls

Revision A 10:10 AM 7/1/2008

**SECURITAS**

# SAFES WEEKLY TIME RECORD

☒ OFFCYCLE REQUEST - Email to : WOC PAYROLL OCR (WOCPAYROLL.OCR@SECURITASINC.COM)

☐ ONCYCLE REQUEST - Email to: MARY HARPRING (MARY.HARPRING@SECURITASINC.COM)

| Contract # | 0194441001 | | Client Name | CTA | | Dept. | 066MO | | | Region NC |
|---|---|---|---|---|---|---|---|---|---|---|

Period Covered 7/20/2007 Through 7/28/07

| NAME - LAST, FIRST | 1st LINE | Straight Time Hourly Rate | FRIDAY 20 | SATURDAY 21 | SUNDAY 22 | MONDAY 23 | TUESDAY 24 | WEDNESDAY 25 | THURSDAY 26 | S.T. | DT | T&1/2 | DT & 1/2 | Correction Only | On-cycle Holiday | AMOUNT $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SSN # | 2nd LINE Code | | | | | DATE | | | | | TOTAL WEEKLY HOURS | | | | | |
| Newson, Robert | | 9.75 | -8.00 | -6.00 | | -2.00 | -8.00 | -8.00 | -8.00 | -40.00 | | | | | | -$390.00 |
| SS: 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 | | | | | | | | | | | | | | | | $0.00 |
| | | 10.00 | 8.00 | 6.00 | | 2.00 | 8.00 | 8.00 | 8.00 | 40.00 | | | | | | $400.00 |
| | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | $0.00 |

| | | | | | | | | | | | | | | | MOT / IF WRONG RATE PAID | |
| UNBILLABLE TRNG/BRK-IN | | | | | | | | | | | | | | | | |
| UNBILLABLE SUPERVISION | | | | | | | | | | | | | | | TOTAL AMOUNT | |
| SERVICE HOURS | | | | | | | | | | | | | | | | |
| NUMBER OF MILES PER DAY | 0.405 | | | | | | | | | Total Mileage $ | | | | | | $10.00 |
| UNIFORM AMOUNT PER DAY | $ | | | | | | | | | Total Uniform Allowance $ | | | | | MIN | $0.00 |
| | | | | | | | | | | | | | | | UAN | $0.00 |

SERVICE CENTER INFORMATION - reason for request/explanation of issue/special mailing instructions

| SAFES BILL CAT | BILL RATE | ST | OT | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Complete this area | | | | | | | | | | | | | | | | |
| and email to your | | | | | | | | | | | | | | | | |
| Billing Rep. | | | | | | | | | | | | | | | | |
| ONLY if you require | | | | | | | | | | | | | | | | |
| a manual billing | | | | | | | | CLIENT INFORMATION - Type of hours | | | | | | | | |
| adjustment. | | | | | | | | | | | | | | | | |

Par rate was not adjusted accordingly.

| | | | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL BILLABLE HOURS | | 0.00 | 0.00 | ST | 0.00 | OT | 0.00 | DT | 0.00 | Type of hours | | |

Prepared By: Evelyn Cruz

Branch Manager Approval: David Reese

Phone No. 773-826-0500   Date 11/27/07

DEPT OW990 / 066MO

Newson_Robert correction for July20 1.xls

Revision A  10:10 AM/7/1/2008

# SAFES WEEKLY TIME RECORD

**SECURITAS**

[X] OFFCYCLE REQUEST - Email to : WOC PAYROLL OCR (WOCPAYROLL.OCR@SECURITASINC.COM)

[ ] ONCYCLE REQUEST - Email to: MARY HARPRING (MARY.HARPRING@SECURITASINC.COM)

| Contract # | 0194441001 | Client Name | CTA | Dept. | 066MO | Region | NC | Period Covered | 10/12/2007 | Through | 10/18/07 |

NAME - LAST, FIRST

SS # 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

Newson, Robert

| | Code | Straight Time Hourly Rate | 12 FRIDAY | 13 SATURDAY | 14 SUNDAY | 15 MONDAY | 16 TUESDAY | 17 WEDNESDAY | 18 THURSDAY | S.T. | T&1/2 | DT | DT & 1/2 | Correction Only | On-cycle Holiday | AMOUNT $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pay Roll 1st LINE | | 9.75 | -6.00 | | | -6.00 | | | -6.00 | 18.00 | | | | | | $175.50 |
| | | | | | | | | | | | | | | | | $0.00 |
| Pay Roll 2nd LINE | | 10.00 | 6.00 | | | 6.00 | | | 6.00 | 18.00 | | | | | | $180.00 |
| | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | $0.00 |
| Use | | | | | | | | | | | | | | | | $0.00 |
| se | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | $0.00 |
| Only | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | $0.00 |
| | | | | | | | | | | | | | | | | $0.00 |

MOT / IF WRONG RATE PAID

TOTAL AMOUNT $355.50

| | | ST | OT | DT | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| UNBILLABLE TRNG/BRK-IN | | | | | | | | | | |
| UNBILLABLE SUPERVISION | | | | | | | | | | |

SERVICE HOURS

| | BILL RATE | | | Total Mileage $ | MIN |
|---|---|---|---|---|---|
| NUMBER OF MILES PER DAY | 0.405 | | | | |
| UNIFORM AMOUNT PER DAY | $ | | | Total Uniform Allowance $ | UAN |

| | SAFES BILL CAT | | ST | OT | DT | CLIENT INFORMATION - Type of hours |
|---|---|---|---|---|---|---|
| Complete this area | | | | | | |
| and email to your | | | | | | |
| Billing Rep. | | | | | | |
| ONLY if you require | | | | | | |
| a manual billing | | | | | | |
| adjustment. | | | | | | |
| TOTAL BILLABLE HOURS | | | 0.00 | 0.00 | 0.00 | 0.00 |

SERVICE CENTER INFORMATION - reason for request/explanation of issue/special mailing instructions

Par rate was not adjusted accordingly.

| Prepared By | Phone No. | Date | Branch Manager Approval | |
|---|---|---|---|---|
| Evelyn Cruz | 773-826-0500 | 11/27/07 | David Reese | |

DEPT 066MO OW990

Newson Robert correction for Oct18week .xls

Revision A 10:10 AM7/1/2008

# EXHIBIT S

# Suburban Chicago

# Security Agreement

Between

## Securitas Security Services USA, Inc.

And

## Service Employees International Union,

## Local 1

**Effective**

**March 1, 2006**

**Through**

**DECEMBER 31, 2007**

# AGREEMENT

## TABLE OF CONTENTS

|  |  | PAGE NUMBERS |
|---|---|---|
|  | Agreement | 1 |
|  | Witnesseth | 1 |
| Article I | Recognition and Union Security | 1, 2, 3 |
| Article II | Deductions | 3, 4 |
| Article III | Management | 4, 5 |
| Article IV | Vacations | 5, 6 |
| Article V | Leaves of Absence | 7 |
| Article VI | General Provisions | 8, 9, 10, 11, 12, 13 |
| Article VII | Holidays | 13, 14 |
| Article VIII | Health Funds | 15, 16, 17, 18, 19 |
| Article IX | Pension | 19 |
| Article X | Health & Welfare & Pension, Delinquencies | 20 |
| Article XI | Union Visitation and Inspection | 21 |
| Article XII | Grievance and Arbitration Procedure | 21, 22, 23, 24 |
| Article XIII | Seniority | 24, 25 |
| Article XIV | Representation | 26 |
| Article XV | Wages | 27, 28, 29 |
| Article XVI | Strike, Lockouts, Picketing | 29, 30 |
| Article XVII | Waiver | 30 |
| Article XVIII | No Discrimination | 30 |
| Article XIX | Funeral Pay | 30, 31 |
| Article XX | Hours of Work | 31 |
| Article XXI | Subcontracting | 32 |
| Article XXII | Equality | 33 |
| Article XXIII | Duration and Reopening | 34 |
|  | Appendix A | 35 |
|  | Local 25 Funds Collection Policy | 36, 37, 38, 39 |

## AGREEMENT

This Agreement is made and entered into this _____ day of _____ by and between the Service Employees International Union, Local 1, (hereinafter referred to as the "Union") and Securitas Security Services USA, Inc. (hereinafter referred to individually as the "Employer") and its successors, or assigns.

## WITNESSETH

That for the purpose of setting forth the collective bargaining relationship and the rates of pay, hours of work, and other terms and conditions of employment binding upon each Employer and the Union, the parties hereto contract and agree with each other as follows:

## ARTICLE I

## RECOGNITION AND UNION SECURITY

**Section 1.**      The Employer recognizes the Union as the sole and exclusive bargaining representative for all full-time and regular part-time security officers including working sergeants, working lieutenants, working captains, working dispatchers and supervisory personnel who are permanently assigned to a customer's premises excluding supervisors who have the authority, in the interest of the Employer, to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action , if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment and who do not man a full-time post or work a regular detail of (12) hours or more per week (except in emergency situations) and also excluding security employees in any commercial office building currently covered under the Local 1 Downtown Security Agreement bounded by Roosevelt Road, North Avenue, Racine Avenue, and Lake Michigan provided that during the first two years of that Agreement the western boundary of the Chicago central area shall be defined as Halsted Street in lieu of Racine Avenue and the northern boundary shall be defined as Division Street in lieu of North Avenue, but specifically including herein work separately contracted by a tenant.

1

A Security Officer is defined as an employee who is required by the State of Illinois to possess a Permanent Employee Registration Card (or Indiana equivalent) excluding office personnel, managers, messengers, and non-billable personnel.

The Employer agrees that upon being awarded any account currently serviced under a Local 1 Residential/Doorman Agreement, the Employer will continue to honor the standards of the Local 1 Residential/Doorman Agreement for those personnel who are retained using normal hiring practices. All such employees of the Employer signatory hereto shall be hired under and covered by this Agreement.

The term "regular part-time employee" shall mean one who works twelve (12) or more *Between 12 — 32 hpw* hours per week, but less than thirty-two (32) hours per week. Benefits provided under "Sick Days" and "Holidays" shall be prorated in the case of a regular part-time employee, based on the relationship which such employee's regular weekly schedule bears to forty (40) hours. In the case of other benefits, the provisions governing these benefits shall control.

**Section 2.**     The jurisdictional area covered by this Agreement is defined according to Appendix A, which is incorporated herein and made a part of this Agreement.

**Section 3.**     The term "sites" as used herein shall include public, private, commercial, residential, office, retail, and industrial facilities, buildings, developments, and factories of all types and any other job site where employees covered by this Agreement could be stationed within the geographical boundaries of Appendix A.

**Section 4.**     On or after the thirty-first (31st) day following the beginning of employment, or the effective date of this Agreement, or the execution date of this Agreement, whichever is later, every employee subject to the terms of this Agreement shall, as a condition of employment, become and remain a member of the union paying periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership or, if the employee objects to the payment of that fee, such employee shall as a condition of employment pay that portion of the fee related to representation costs.

## ARTICLE XI
## UNION VISITATION AND INSPECTION

**Section 1.** The Employer agrees that full-time paid representatives of the Union shall have the right at reasonable times upon advanced notice and with the Employer's permission to interview employees of the Employer upon the Employer's premises in the event that matters concerning such employee's working conditions or Union membership shall require such action. Employees so interviewed shall receive no reimbursement or pay from the Employer for time spent for such interviews.

**Section 2.** The Union's agents or representatives shall not go upon an Employer's client's property or premises without prior permission by the Employer.

**Section 3.** In order to determine the Employer's compliance with the provisions of this Agreement, the Union may, at reasonable times and upon prior request to the Employer, inspect records of covered employees relating to wages, hours of work, vacation benefits, sick leave benefits, dues deductions, Health Fund monies and Pension contributions. The Union shall give two (2) weeks notice to the Employer of the intent to spend time at the Employer's office to review the following documents: complete copies of Employer's last two (2) payroll periods, most recent quarterly remittance of the Illinois Report of Wages paid to each worker, and UC3-40 forms and continuation sheet (and, or the Indiana equivalent payroll form).

## ARTICLE XII
## GRIEVANCE AND ARBITRATION PROCEDURE

**Section 1.** For the purpose of this Agreement, a grievance is defined as a dispute between the Employer and an employee regarding the application of the Employer's rules and regulations or the meaning or application of any provision of this Agreement, but not involving any change in or addition to such provisions, which is reduced to writing and filed for processing through the Grievance Procedure.

**Section 2.**　　　Employees may consult directly with their supervisors on a matter which does not necessarily constitute a grievance. In any case where employees are not satisfied with respect to the disposition of a matter regarding the meaning or application or any provision of this Agreement, on which such employee has informally consulted with supervision, or where their supervisor was not available for such consultation within a reasonable period of time, they may submit their complaint as a grievance.

**Section 3.**　　　Any matter not resolved in the foregoing manner shall be submitted to the following grievance procedure:

**STEP 1:** A written statement of grievance must be furnished to the Branch Manager or his/her designee, within thirty (30) days following the occurrence of the subject matter of the grievance. The Branch Manager or his /her designee shall be required to answer the grievance in writing within fifteen (15) days of the receipt of the grievance.

**STEP 2:** If the grievance is not settled in Step One or if it is not answered on a timely basis by the Branch Manager, or his/her designee, the written grievance shall be filed with the Employer's Area Vice President, or his/her designee within fifteen (15) days of the date of the first step answer, or the date such answer was due, and a meeting shall be scheduled between the Area Vice President, or his/her designee, the grievant(s) and a representative of the Union. The Area Vice President, or his/her designee shall answer the grievance in writing within fifteen (15) days thereafter.

**STEP 3:**   If the grievance is not settled in Step 2 or if it is not answered in a timely manner, then the Union may appeal the grievance to the Employers Regional Vice President of Human Resources, or his/her designee and a meeting shall be scheduled between the Regional Vice President, or his/her designee, a representative of the Union and the grievant.  The Regional Vice President or his/her designee shall answer the grievance in writing within fifteen (15) days thereafter.

**STEP 4:**   If the grievance is not settled in Step 3 or is not answered in a timely manner, the Union may appeal the grievance to an impartial arbitrator by giving written notice of its desire to arbitrate to the Employer within ten (10) working days of the Step 3 answer, or the date such answer was due.

**Section 4.**   If the grievance is appealed to arbitration, representatives of the Employer involved and the Union shall meet to select an arbitrator.  If the parties are unable to agree on an arbitrator within ten (10) working days after the Union has served its written notice upon the Employer, the parties shall jointly request the Federal Mediation and Conciliation Service to submit a list of seven (7) arbitrators.  All arbitrators must be on the list must be members of the National Academy of Arbitrators Association. The Union shall strike the first name from the list and the Employer shall then strike one (1) name and thereafter the parties shall strike alternately.  The person whose name remains shall be the arbitrator, provided that either party, before striking any names, shall have the right to reject one (1) panel of arbitrators. The arbitrator shall be notified of his selection by a joint letter from the Employer and the Union requesting that he set a time and place for the hearing, subject to availability of the Employer and Union representatives, and the letter shall specify the issue to be presented to the arbitrator.

The award of the arbitrator shall be final and binding on the Employer, the Union, and the employee or employees involved.  The expense of the arbitrator, and the incidental expenses mutually agreed to, shall be shared equally by the Employer and the Union.  The impartial arbitrator shall not have the right to amend, modify, nullify, ignore, or add to the provisions of this Agreement.  They shall consider and decide only the particular issue presented to them in writing by the Employer and the Union, and their decision and award shall be based solely upon their interpretation of the meaning or application of the terms of this Agreement to the facts of the grievance presented.

**Section 5.**      The willful failure of either party to appear before the arbitrator will not serve to invalidate the proceedings nor will the willful failure of either party to present his case at the time of the hearing serve to delay the hearing or invalidate the decision of the arbitrator.

## ARTICLE XIII
## SENIORITY

**Section 1.**      Seniority shall be defined as an employee's length of service as an employee of the Employer from his most recent date of hire.

**Section 2.**      **Seniority Lists:** The Employer shall maintain at its office a seniority list showing employee's date of hire.  Seniority lists shall be current as of March 1st and September 1st of each year and shall be furnished to the Union upon request.  Seniority list shall consist of name, address, date of hire; hire date at site, pay rate, phone number, and name and address of account.

**Section 3.**      An employee shall not have seniority during the first ninety (90) days of employment, which shall be considered a probationary period.  During this period, the Employer may discharge the employee who shall have no recourse to the grievance procedure.  Upon completion of the probationary period, an employee's seniority will begin at the original date of hire. At the Employers request and with approval from the Union the Employer may extend this probation up to thirty (30) days.

A.  Employees will be allowed three (3) days funeral leave if funeral is over two hundred (200) miles one way.

**Section 2.**      An employee shall not receive pay under Section 1 for any day on which the employee would not have worked.

**Section 3.**      The "members" of the employee's immediate family covered by this Article are mother, father, sister, brother, spouse, child and grandparents. It is understood that the employees must provide a copy of the death certificate and proof of relationship (i.e. marriage license).

**Section 4.**      A day's pay shall be based on the number of hours which the employee would have worked on the day in question, up to a maximum of eight (8) hours.

## ARTICLE XX

## HOURS OF WORK

**Section 1.**      The workweek shall consist of seven (7) consecutive days.  This Section shall not be construed as a guarantee of any number of days work per week or hours work per day, and the parties recognize that certain types of service work may require a work schedule other than a normal full-time work schedule.  An employee will be granted a minimum of one (1) day off in each workweek.

**Section 2.**      Work in excess of forty (40) hours in any one workweek shall be paid for at one and one-half (1-1/2) times the regular rate of pay.  No hours shall be included in any calculation under this Section unless the employee has actually worked such hours, and hours paid for at any of the premiums provided for in this Section shall be excluded from any further calculation of premium pay.

31

Case 1:08-cv-02746    Document 38-3    Filed 07/09/2008    Page 26 of 29

# EXHIBIT T

# SEIU Local 1 Grievance Form

06-4006-S

## 111 E. Wacker Dr

## Chicago, IL 60601

## FAX (312) 233-8887

**Member Name:** ALVAN YOUNG

**Employer:** SECURITAS/WELLS FARGO GUARD SERVICE

**Home Address:** 1182 SOUTH CUYLER AVE
**City, State, Zip:** OAK PARK, IL 60304-___

**Work Location:** 500 N. Pulaski
**Home Phone:** (708) 848-5137x_____

**Date Filed:** 11/06/2006

**Filed By:** Laila Battaglia
(312) 233-8774

## Statement of Grievance:

I was terminated without just cause, I need my union's help in this matter

## If Applicable, Contract Article(s) and Section (s) Violated:

ARTICLE III, Section 9 plus all other pertinent articles and sections.

## Remedy Requested:

Reinstate Grievant with full back pay, seniority and benefits and make him/her whole in every way.

_____
Grievant's Signature

# EXHIBIT U

# SEIU Local 1 Grievance Form

## 111 E. Wacker Dr

## Chicago, IL 60601

## FAX (312) 233-8887

**Member Name :** **CRYSTAL HOWARD**          **Employer :**

**Home Address:** 1009 N LAVERGNE AVE          **Work Location :** Shop 15663

**City, State, Zip:** CHICAGO, IL 60651-3125          **Home Phone :** (773) 626-5953

**Date Filed:** 08/28/2007          **Filed By:** Rosy Tiscareno
(312) 233-8765

## Statement of Grievance:

Member states she was terminated with out just cause: as such this constitutes a violation of the Collective Bargaining Agreement.

## If Applicable, Contract Article(s) and Section (s) Violated:

Article VI, Section 9 plus all other pertinent articles and sections.

## Remedy Requested:

Reinstate Grievant with full back pay, seniority and benefits and make him/her whole in every way.

_Crystal Howard_
Grievant's Signature

# TAB 2
# SUPPLEMENTAL AFFIDAVIT OF DAVID REESE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL HOWARD, PAUL GALLOWAY, ROBERT NEWSON and ALVAN YOUNG | ) ) ) | |
| Plaintiffs | ) ) | Case No. 08 C 2746 |
| v. | ) ) | Judge Gottschall |
| SECURITAS SECURITY SERVICES USA, INC. | ) ) ) | Magistrate Judge Valdez |
| Defendant | ) | |

STATE OF ILLINOIS )
                  )  SS
COUNTY OF COOK    )

SUPPLEMENTAL AFFIDAVIT OF DAVID REESE

David Reese, being first duly sworn on oath, deposes and state as follows:

1.  I have personal knowledge of the matters sworn to herein.

2.  In the course of responding to the Collective Action Complaint of Plaintiffs Crystal Howard, Paul Galloway, Robert Newson and Alvan Young, I have reviewed the personnel files of Crystal Howard for the time period 2003 to 2005.  I have also reviewed documents and files related to Securitas' 100-Hour Basic K-9 Handler Course.

3.  Since 2003, Securitas K-9 has provided a K-9 security handler annual recertification test regarding proper canine handling procedures and related security officer duties to the K-9 security officers assigned to the Chicago Transit Authority ("CTA") account.  This test is taken during work hours, and

takes approximately 10 minutes to complete.   Only K-9 security officers who previously attended the pre-employment 100-Hour Basic K-9 Handler Course are re-tested.

4.   I have reviewed documents that indicate Crystal Howard took the K-9 security handler annual recertification test in December 2003.   A copy of the recertification test is attached hereto as Exhibit A.

5.   My review of Ms. Howard's personnel file documents and Securitas' documents related to the 100-Hour Basic K-9 Handler course indicates that Crystal Howard was re-hired by Securitas in January 2003, to work as a K-9 security officer.   According to our practices, Ms. Howard would have received the pre-employment 100-Hour Basic K-9 Handler Course training shortly prior to being rehired.   My belief that this training occurred is reinforced by the fact that Ms. Howard took the K-9 security officer annual recertification test in December 2003.

Further sayeth affiant not.

_____
David Reese

Subscribed and sworn to me
this 3rd day of July 2008

_____
Notary Public

OFFICIAL SEAL
SALLY BOETTCHER
Notary Public - State of Illinois
My Commission Expires Dec 3, 2009

2

# EXHIBIT A



*70%*

# SECURITAS K-9 HANDLER TEST

## TEST   #1 - WRITTEN TEST FOR K-9 HANDLER

Questions are from the material you have covered in your K-9 Handler Class. The answers to the questions are; True, False or multiple choice.  Only one answer per question will be accepted.  Un-answered questions will be marked wrong. Put an X through your answer. (see example below)

NAME: _Crystal HOWARD_
(PLEASE PRINT)

DATE 12/1/03

EXAMPLE:

1.    Each student is responsible for being available when training starts?

X True                    b. False

2.    Potential safety hazards will immediately be identified to

a. No one          X Securitas instructor          c. classmate

Page 1

## DOG CARE

1.  Dogs to be fed in their kennels only with the gate locked?

    X. True                    b. False

2.  Report injured/sick dog to supervisor immediately?

    X True                    b. False

3.  Dog does not have to be on a leash at all times while on job?

    X True                    b. False ✓

4.  Client patrons/employees have the right of way?

    X True                    b. False

5.  You do not have to keep the muzzle on the dog at all times when working?

    X. True                    b. False ✓

## POST PROCEDURES DURING SHIFT

6.  Notify K-9 supervisor of disturbances, requests or instructions from client personnel or CPD, fires, injuries to client patrons/personnel, etc?

    X True                    b. False

7.  You will report post status to K-9 supervisor how often?

    a. Every 8 hours      X Hourly       c. Every 4 hours

8.  Maintain high visibility at all times. If you or your dog need to rest, position yourself where?
    X. Out of patron's pathway      b. take dog back to kennel

## RULES AND DISCIPLINE

9.  Mistreatment/injury to dogs is reason for Discharge?

    X True                    b. False

10. Dog un-muzzled on client property is considered a first violation and reason for Discharge?

    X True                    X False

11. If the dog is loose and off lead, the following discipline action will be taken?

    a. Warning      b. Suspension      X Immediate Discharge

Page 2

12. The first warning you receive for forgetting to feed/water dogs, you will get a three-day suspension and the second time you will be discharged?

    a. True          X False ✓

13. For not cleaning up after your dog while on post, the following action will be taken. First violation-one day suspension, second violation-three day suspension, third violation-DISCHARGE

    a. True          X False ✓

14. The following is a violation of the K-9 Handlers Rules.

    X Tying dog with leash    b. Feed/water dog's    c. Reporting injured dog

15. Failure to clean truck cab/dog boxes is not a violation of the rules?

    a. True          X False

## C.T.A. RADIO PROCEDURES CALL CODES

16. Radio code 10 – 4 means what?

    X Message received and understood    b. What is your location?

17. Radio code 10-68 means what?

    X Police assistant required    b. Fire    c. Repeat message ✓

18. Radio code 10-99 means?

    a. Employee sick    X Dire emergency, stop all other transmission

19. Radio code 10-90 means?

    X Bomb threat    b. Fire    c. Weapon threat

20. Only K-9 supervisor will contact control by radio. You should relay all information to your supervisor?

    X True    b. False

## GENERAL RULES & SAFETY RULES

21. Drinking of Alcoholic beverages on Securitas property is prohibited?

    a. True          X False ✓

22.   Safety is of a prime concern to Securitas, so horseplay in or around the kennel or training area is prohibited?

     ✗ True         b. False

23.   Supervisors do not have to be notified if there is an injury to dog or handler?

     a. True         ✗ False

24.   Carrying a handgun or any dangerous weapon is not allowed by a Securitas K-9 handler?

     ✗ True         b. False

25.   The K-9 handler will only make an arrest if he/she actually witnesses a crime?

     a. True         ✗ False ✓

26.   In the case of a K-9 bite, a supplement report titled "_____" will accompany the arrest report.

     a. Necessary      ✗ b. Bite Report      c. Rabies Report

27.   The company and their instructors will do everything in our power to ensure that you and your dog are highly trained, but you must provide the _____

     ✗ Desire & Willingness      b. Uniform      c. Leash

28.   If somebody were bitten due to an unsafe practice on your part would it bother you?

     ✗ Yes         b. No

29.   When you exit a door or passageway, you should verbally warn "_____"

     a. "I have a dog"      ✗ "Dog Coming Out"      c "Loose Dog"

30.   When you are going around a corner, you verbally say "_____"

     ✗ "Dog coming around"      b. "Watch It"      c. "Coming UP"

31.   A safety leash is made by slipping the hand through the leash handle and pulling part of the leash through to make a loop.

     ✗ True         b. False

32.   A safe distance between your dog and others (people or dogs) is _____ feet unless otherwise instructed.

     ✗ 5 feet         b 10 feet      c. 20 feet ✓

33. When a wound occurs to the feet or legs of the dog, the first consideration is to stop the bleeding because the feet and legs are considered open bleeders?

    Ⓐ True       b. False

34. If a dog is left in a closed vehicle in extremely warm weather, it can die within 10 to 15 minutes?

    a. True       ⓧ False ✓

35. In a "Heel" position, the dog is on the handler's right side and parallel with the handler.

    a. True       ⓧ False

36. If a dog displays symptoms of gagging, coughing and difficulty swallowing, or pawing at mouth and might be drooling ropy saliva, this is a sign of

    ⓧ Bloat       b. Shock       c. Swallowed Foreign object ✓

37. When a dog ingests toxic agents (chemicals, Poisons) get a veterinary, sample of poison if possible, keep animal quiet and warm, call supervisor for further instructions.

    ⓧ True       b. False

38. First Aid treatment for a dog that has Alcohol Poisoning is: Induce vomiting with 2 tablespoons of salt in water and pour it down the dog's throat. Keep warm. Call Vet and Supervisor.

    ⓧ True       b. False

39. Fatigue decreases efficiency and increases aggression in dogs. If the handler notices fatigue or aggression in his dog, he should

    a. Call the police       b. Go home       ⓧ Call Supervisor

40. You should at all times, have your _____ on you.

    a. Stun gun       ⓧ Securitas Identification       c. mace

Page 5

41.  Training is an implementation of principles of conditioning through repetition to teach a dog a task.

        ✗. True        B. False

42.  The source is the point of origin of the stimulus.

        A. True        B. False

43.  A dog that is fatigued or bored will sit down on it's own.

        A. True        B. False

44.  Weather has no effect on the dogs ability to detect odor.

        A. True        B. False

45.  The greater the wind speed, the wider the scent cone will be.

        A. True        B. False

46.  When training the k-9, the quantity of odors should be varied.

        A. True        B. False

47.  Distractions do not confuse the dog, or cause the dog to ignore cues given by the handler.

        A. True        B. False

48.  Classical and Operant conditioning are two types of conditioning.

        A. True        B. False

49.  Associated learning is considered Classical Conditioning.

        A. True        B. False

50.  Positive and negative reinforcement is part of Operant conditioning.

        A. True        B. False

51.    List the productive areas on a vehicle.

*Doors, window, wheels*

52.    List the productive areas in a room.

*Doors*

53.    What happens if you reward your dog without finding an odor?

54.    During a search; Why is it important to search the seam of the closed door before opening and entering the room?    *to make sure their isn't n bomb there*

55.    Rule of thumb: if it's on it's on, if it's off it's off, leave your environment as you found it.   Why? (and give an example).

56.    Why is it advisable not to search with your radios and cell phones on?

*it could blast*

57.    What is the procedure if your k-9 has a final response?

58.    Give an example of an orientated response?

59.    Why should you always keep true and accurate maintenance records on your k-9?

60.    Draw an arrow in the direction the scent cone would be exiting the vehicle if the wind was blowing from the rear of the vehicle, and the bomb was under the hood.



# TAB 3
# DEPARTMENT OF LABOR
# WAGE AND HOUR OPINIONS



**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

**October 19, 2004**                                                          **FLSA2004-16**

Dear **Name\***,

This is in response to your letter concerning the 1969 Stipulation that your client, **Name\***, entered into with the Department of Labor. The Stipulation was also the subject of our meeting here in Washington, and we thank you for the helpful information you have provided.

The purpose of the Stipulation was to establish the conditions under which people attending training courses sponsored by **Name\*** would be considered employees under the Fair Labor Standards Act, 29 U.S.C. 201 et seq. ("FLSA"). The Stipulation also was intended to provide a standard for **Name\*** and its franchisees to insure that they were in compliance with the FLSA with regard to their trainees.

**Name\*** offers training in the tax code and the completion of tax returns for the company's customers in courses which are open to the public, including **Name\*** competitors. The trainees are not guaranteed employment with **Name\*** but a significant number are ultimately employed by **Name\***. **Name\*** franchisees conduct the same training under the same conditions as **Name\***. **Name\*** and its franchisees wish to screen applicants to its courses, and screening criteria would include the applicant's current or possible future employment with a competitor of **Name\***.

As you point out, since the Stipulation was signed, a number of cases have been decided concerning whether individuals engaged in pre-employment training may be considered employees under the FLSA. See , e.g, McLaughlin v. Ensley, 877 F.2d 1207 (4th Cir. 1989); Donovan v. Trans World Airlines, 726 F.2d 415 (8th Cir. 1984); Donovan v. American Airlines, 686 F.2d 267 (5th Cir. 1982).

Based on the holdings in these cases, the Wage and Hour Division issued an opinion letter dated January 30, 2001, 2001 WL 1558755 (DOL WAGE-HOUR), which you have cited in your letter. The opinion letter describes the circumstances under which trainees are considered to be employees, taking into account the changes that have occurred in this area of the law since 1969. In view of the guidance provided in the opinion letter, the 1969 Stipulation is no longer binding on **Name\*** or its franchises.

We do not believe that it is necessary to enter into a new stipulation. The January 30, 2001 opinion letter provides the guidance necessary to achieve FLSA compliance under these circumstances, stating the six conditions the Wage and Hour Division considers necessary for such trainees not to be considered employees (which are set out below).

The FLSA applies to individuals who are "employees", as that term is interpreted under the Act. The term "employ" is defined in section 3(g) of the Act, 29 U.S.C. 203(g), as "to suffer or permit to work." Ordinarily that term is defined broadly, but its reach is not unlimited. The Supreme Court has held that individuals working for another for their own benefit without expectation of compensation may not be employees. See Walling v. Portland Terminal Company, 330 U.S. 148 (1947). Whether trainees are employees under the FLSA will depend upon all of the circumstances surrounding their activities on the premises of the employer. If all six of the following criteria apply, the trainees are not employees within the meaning of the FLSA:

1. The training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school.
2. The training is for the benefit of the trainees.
3. The trainees do not displace regular employees, but work under their close observation.
4. The employer that provides the training derives no immediate advantage from the activities of the trainees; and on occasion operations may actually be impeded.
5. The trainees are not necessarily entitled to a job at the conclusion of the training period.
6. The employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.



**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

If **_Name_*** and its franchisees conduct their training operations in a manner consistent with these six criteria and the guidance in the January 30, 2001 opinion letter, their trainees will not be considered employees under the FLSA.

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, explicit or implied, that you have provided a full and fair description of all the facts and circumstances which would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your request might require a different conclusion than the one expressed herein.

I trust that the above information is responsive to your concerns.

Sincerely,

Alfred B. Robinson, Jr.
Acting Administrator

_Note: * The actual name(s) was removed to preserve privacy._

Westlaw.

2001 WL 1558755 (DOL WAGE-HOUR)                                                                    Page 1


2001 WL 1558755 (DOL WAGE-HOUR)

Wage and Hour Division
United States Department of Labor

Opinion LetterFair Labor Standards Act (FLSA)

January 30, 2001

\*\*\*

This is in response to your letter in which you ask whether the pre-employment
training provided by your client, \*\*\* its prospective telemarketing representat-
ives (TRs) is compensable "hours worked" under the Fair Labor Standards Act (FLSA).

\*\*\* a subsidiary of \*\*\* process incoming telephone orders generated by direct re-
sponse advertising, direct mail, print, and radio. The direct response operators
process orders for four to five hundred different clients and for over eight thou-
sand different products.

TR candidates, prior to employment, receive four days of unpaid training totaling
18  1/2 hours. The training is conducted at \*\*\* in classrooms equipped with com-
puters separate from the work premises. Basic transferable telemarketing skills
are taught; however, some of the training is tailored specifically to the needs of
\*\*\* and to teaching policies and practices of \*\*\*. TR candidates are provided
training in computer-automated systems, communications skills, sales skills and
customer service methodology. These candidates do not assist in receiving or mak-
ing calls, nor do they have contact with customers, except for a brief time (30-60
minutes) on the last day of the training. Acceptance for training by TR candidates
is not an offer of employment by \*\*\*, although there is a high probability of ul-
timate employment. \*\*\* makes known its needs and attempts to match these needs
with accepted candidates. TR candidates understand and agree in writing that wages
will not be paid during training, that they are employee candidates, and that fu-
ture employment depends upon successful completion of training. TR candidates also
acknowledge in writing that if they complete all training, pass all tests and
evaluations, and begin work on the production floor, they will receive a training
completion bonus.

In order for the FLSA to apply to a person engaged in work that is covered by the
FLSA, an employer-employee relationship must exist. Section 3(g) of the FLSA
defines the term "employ" as including "to suffer or permit to work." However, the
Supreme Court has held that persons who, without any express or implied compensa-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2001 WL 1558755 (DOL WAGE-HOUR)

tion agreement, may work for their own advantage on the premises of another are not necessarily employees. See Walling v. Portland Terminal Company 330 U.S. 148 (1947). Whether trainees are employees under the FLSA will depend upon all of the circumstances surrounding their activities on the premises of the employer. If all six of the following criteria apply, the trainees are not employees within the meaning of the FLSA:

(1) The training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school. Training of TR candidates at *** is conducted in classrooms equipped with computers away from the work site. Like vocational schools, training is offered to TR candidates in computer-automated systems, communication skills, sales skills, and customer service methodology.

(2) The training is for the benefit of the trainees. The TR candidates learn computer skills, keyboard skills, telephone skills, and sales techniques that qualify them for telemarketing and other telephone and/or sales-related jobs at any telemarketing agency and many other retail outlets. The skills taught are transferable skills beneficial to the trainees. *** provides the training at no cost to the candidates, and receives no benefit from the candidates until after the training period ends and productive paid work begins.

(3) The trainees do not displace regular employees, but work under close observation. TR candidates' training takes place in the classroom rather than on the production floor. No candidate replaces or supplements the work of any regular employee. Their training includes no contact with customers until the last day of their training, when under direct supervision of instructors, candidates handle a limited number of customer calls.

(4) The employer that provides the training derives no immediate advantage from the activities of the trainees; and on occasion his operations may actually be impeded. *** receives no immediate benefit from the training of TR candidates, since candidates only answer calls to customers 30 to 60 minutes the last day of their training. During this time, quality assurance personnel are removed from their regular functions to monitor and rate the candidates. Some benefit, however, is derived from the training. West is able to hire TRs that are minimally qualified after the training period. In Donovan v. American Airlines, Inc., 514 F. Supp 526, 534 (N.D. Texas 1981), the court recognized the benefit flowing from creating a trained labor pool; however, the court held that the product of training as merely a labor pool of potential employees offered the employer an insufficient benefit to bring the FLSA into play.

(5) The trainees are not necessarily entitled to a job at the conclusion of the training period. Acceptance of training by TR candidates is not an offer of employment by *** and *** on occasion has not employed successful graduates (such as when there are no vacancies). Nevertheless, successful completion of the training, histor-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ically, has resulted in employment of trainees as TRs. *** spends significant
amounts of money training TR candidates in hope that they will become a part of
its workforce. However, these trainees are not obligated to accept employment
with *** at the conclusion of their training nor is *** required to hire anyone
who does not meet its standards.
(6) The employer and the trainees understand that the trainees are not entitled
to wages for the time spent in training.
TR candidates acknowledge in writing that they are not employees while in
training and they do not receive hourly pay for the training time. Candidates
also acknowledge in writing that if they complete training, pass all tests and
evaluations, and begin work on the production floor, they will receive a train-
ing completion bonus. The training completion bonus was designed to recognize
achievement of completion of training, and to provide an incentive for TR can-
didates to use that training by becoming employees of ***. In the Walling v.
Portland Terminal Company case, trainees received no pay or allowance during
the training period, however, those trainees who proved their competency and
were listed as eligible for employment were given a retroactive allowance of $4
per day for their training period.

It light of the above, it is our opinion that your client's TR candidates would be
trainees rather than employees under the FLSA. Therefore, the time spent by them
in the pre-employment training provided by *** would not be compensable hours
worked under the FLSA.

This opinion is based exclusively on the facts and circumstances described in your
request and is given on the basis of your representation, explicit or implied,
that you have provided full and fair description of all the facts and circum-
stances that would be pertinent to our consideration and the questions presented.
Existence of any other factual or historical background not contained in your re-
quest might require a different conclusion than the one expressed herein.

We trust that the above information is responsive to your inquiry.

Sincerely,
Barbara R. Relerford
Office of Enforcement Policy
Fair Labor Standards Team

2001 WL 1558755 (DOL WAGE-HOUR)
END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.