UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CRYSTAL HOWARD, PAUL GALLOWAY, )
ROBERT NEWSON and ALVAN YOUNG )
                                       )
         Plaintiffs             )         Case No. 08 C 2746
                                         )
     v.                             )         Judge Gottschall
                                         )
SECURITAS SECURITY SERVICES      )         Magistrate Judge Valdez
USA, INC.                               )
                                         )
         Defendant            )

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO CONDITIONALLY CERTIFY CLASS AND ISSUE NOTICE

       Defendant, Securitas Security Services USA, Inc. (hereinafter "Securitas USA"), hereby

submits this Response Memorandum In Opposition to Plaintiffs' Motion to Conditionally Certify

Class and Issue Notice.

CASE HISTORY

       In May 2008, Plaintiffs, a group of terminated canine security guards who worked at a

specialized Securitas K-9 Branch with fewer than 40 employees (hereinafter "Securitas K-9"),

filed a lawsuit under the Fair Labor Standards Act alleging that they were not paid for pre-

employment training, that they were not paid overtime for post-shift holdovers, and that they

were not paid for time spent maintaining their uniforms. *See* Complaint, Count I. On June 23,

2008, Plaintiffs filed the present Motion to Conditionally Certify Class and Issue Notice (herein-

after "Motion to Conditionally Certify"), which contained additional contentions regarding pre-

shift dog care work as well as a new allegation regarding unpaid time spent training a canine

guard dog. *See* Motion to Conditionally Certify, Affidavits of named Plaintiffs, Ex. 3, Par. 11;

Ex. 5, Par. 20. The motion and the declarations that purport to support certification also confirm

that the pre-employment training of which Plaintiffs complain is canine-related, and that *all* of the Plaintiffs and their witnesses were or are employees of the Securitas K-9 Branch. *See* Motion to Conditionally Certify, Affidavits of named Plaintiffs, Exs. 2-5. However, Plaintiffs' Motion to Conditionally Certify seeks to represent a class of "All current or former Security Guards employed by Securitas in the State of Illinois at any time between May 12, 2005 and the present date." Motion to Conditionally Certify, Ex. 8. Such a class would constitute 7,690 current and former Securitas USA security guards who have worked in Illinois. *See* Ex. A hereto, Affidavit of Laura Rysavy, Par. 4. The class sought is well beyond the 125 current and former Securitas K-9 canine security guards employed since May 2005, or the 31 currently employed Securitas K-9 canine security guards. *Id*. at Pars. 5-6. These specific Securitas K-9 current and former employees are the only Securitas USA employees referenced in Plaintiffs' claims and declarations.

On July 8, 2008, Securitas USA filed its Answer denying the claims in Plaintiffs' Complaint (*see* Defendants' Answer to Complaint and Affirmative Defenses), and on the following day, July 9, Securitas USA filed its Motion for Partial Summary Judgment, establishing that Plaintiffs' pre-employment training claims and shift holdover claims are untenable as a matter of law. *See* Defendant's Motion for Partial Summary Judgment.

PRELIMINARY STATEMENT

Plaintiffs' Motion to Conditionally Certify must be denied, on a multitude of grounds, including: (1) Plaintiffs, who cannot withstand partial summary judgment, cannot serve as the named plaintiffs in an FLSA lawsuit. *Lance v. The Scotts Company*, Case No. 04-5270, 2005 U.S. Dist. LEXIS 14949, at *26 (N.D. Ill. July 21, 2005) ("An FLSA plaintiff that cannot withstand summary judgment 'may not assert a claim under the FLSA for similarly situated employees'"); (2) certification is not permissible because Plaintiffs' claims are premised on their pre-employment training to become *canine* security guards, and their subsequent allegations of *ca-*

*nine-related* work they performed as *canine* security guards, as well as upon policies that they do not allege are applicable beyond their specific *canine-related* work location. Plaintiffs wholly fail to allege, and cannot allege, that they are similarly situated to the *7,565 non-canine* security guards whom they broadly seek to represent. *See Pfaahler v. Consultants for Architects, Inc.*, 2000 WL 198888 at *2, Case No. 99 C 6700 (N.D. Ill 2000) ("A collective action under the FLSA is only appropriate where those in the pool of potential claimants perform the same duties as the plaintiff"); (3) conditional certification and notice issuance are premature while summary judgment is pending  and questions exist as to whether plaintiffs are similarly situated to the purported class. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72, 174, 110 S.Ct. 482 (1989) ("[a] trial court can better manage a major [opt-in] action if it ascertains the contours of the action at the outset"); and (4) pending proceedings involving certain of class counsel may impair counsel's ability to represent the class adequately. *See Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004) (adequacy of class counsel in FLSA class action can be relevant because "the court has an inherent interest in ensuring that opt-in plaintiffs are adequately represented").

*Named Plaintiffs Cannot Bring an FLSA Class Action*
*If Partial Summary Judgment Is Granted to Securitas USA*

In FLSA cases, courts should decline to issue notice or certify a class when the named plaintiffs cannot survive summary judgment. *Lance,* 2005 U.S. Dist. LEXIS 14949, at *26. In the *Lance* case, the employer lawn service company obtained summary judgment against the named plaintiff on his overtime pay claim by successfully presenting evidence in its summary judgment filing that it had complied with the fluctuating workweek method of overtime payment. *Id.* After ruling in favor of the employer on its summary judgment motion, the *Lance* court proceeded to deny plaintiff's motion to certify the class and issue notice, noting, "an FLSA plaintiff

that cannot withstand summary judgment 'may not assert a claim under the FLSA for "similarly situated" employees.'" *Id.*

Securitas USA's pending Motion for Partial Summary Judgment cites well-established case law and supporting affidavits demonstrating that: (1) Plaintiffs cannot bring FLSA claims for pre-employment training (*see* Memorandum of Law in Support of Partial Summary Judgment Motion, pp. 2-10); (2) two of the named Plaintiffs' training pay claims are barred by the FLSA statute of limitations (*Id.* at p. 10); and (3) Plaintiffs' blanket allegations of unpaid overtime due to shift holdovers cannot withstand summary judgment given Securitas USA's production of detailed overtime and pay records for each named Plaintiff. *Id.* at pp. 11-13. Given the strength of Securitas USA's pending Motion, this Court should determine that most of Plaintiffs' claims are untenable, rendering them unable to maintain a class action on behalf of others.[1]

> *Certification and Notice Are Not Warranted Because Plaintiffs*
> *Are Not Similarly Situated to the Class They Seek to Represent*

The Fair Labor Standards Act clearly requires potential plaintiffs to be "similarly situated" in order to proceed with an FLSA class action. 29 U.S.C. Sec. 216(b). Plaintiffs concede

---

[1]     Securitas USA also anticipates filing a motion for summary judgment regarding Plaintiffs' uniform maintenance pay claim. The Department of Labor's December 9, 1988 Field Operations Handbook provides:

> (2)     However, in those instances where uniforms are (a) made of "wash and wear" materials, (b) may be routinely washed and dried with other personal garments, and (c) do not *require* ironing or any other special treatment such as drycleaning, daily washing, or commercial laundering, WH will not require that employees be reimbursed for uniform maintenance costs. This position is not applicable where daily washing is required and the employer furnishes or reimburses the employee for a single uniform.

> * * *

> (5)     Where this enforcement position is followed, the time spent in washing uniforms will not be considered hours worked for either MW or OT pay purposes.

as much, stating throughout their brief that they must make a factual showing that they are similarly situated to the class they seek to represent, and that they and the potential class members must be "victims of a common policy or plan that violated the law." *See Briggs v. U.S.,* 54 Fed. Cl. 205, 2002 U.S. Claims LEXIS 300 at *8 (Ct. Claims Nov. 4, 2002).

Despite what Plaintiffs would have the Court believe, the burden of showing that one is "similarly situated" to potential FLSA plaintiffs is not a mere formality -- affidavits and other testimony must provide *specific evidence* to support certification and notice. *Bernard v. Household International, Inc.*, 231 F.Supp.2d 433, 435 (E.D. Va. 2002) ("Mere allegations will not suffice; some factual evidence is necessary"); *accord, Freeman v. Wal-Mart Stores, Inc.,* 256 F.Supp.2d 941, 945 (W.D. Ark. 2003) ("unsupported allegations of widespread [FLSA] violations are not sufficient" to meet a plaintiff's burden of showing that he or she is similarly situated to the class he or she seeks to represent).

Most importantly, Plaintiffs "must make a factual showing that extends beyond their own circumstances." *Lance*, 2005 U.S. Dist. LEXIS 14949, at *27 (*citing Levinson v. Primedia Inc.,* 2003 U.S. Dist. LEXIS 20010, No. 02 Civ. 2222 (S.D.N.Y. Nov. 6, 2003)). *See also Burns v. Village of Wauconda,* 1999 U.S. Dist. LEXIS 11230 at *8-9, No. 99 C 0800 (N.D. Ill. July 14, 1999) (denying motion to issue notice to class; broad allegation that defendants violated FLSA overtime provisions on a "general employee-wide basis" was insufficient to trigger notice to all village employees, where village offered an affidavit indicating policy was not applicable outside of public works department); *accord, Bernard*, 231 F.Supp.2d at 435-36 (denying nationwide class certification, citing lack of names of employees or supervisors at other locations, or evidence that violations existed elsewhere, noting, "The information provided by plaintiffs . . . is insufficient to support allegations that defendant has a company-wide policy resulting in poten-

tial FLSA violations. The incidents highlighted in the allegations and declarations instead focus on the acts of supervisors at the [two] individual offices in [Virginia]"); s*ee also Briggs,* 54 Fed. Cl. at 207 (denying certification and notice of nationwide census workers' FLSA action -- supporting affidavits offered no specific allegations regarding other census offices, such as "names, dates, places, types of unlawful action, etc."); *and also*, *Freeman*, 256 F.Supp.2d at 945 (employees are not similarly situated just because they claim FLSA violations by the same employer -- FLSA plaintiff must show that his or her job and duties are similar to those of the persons whom he or she seeks to represent).

Moreover, the mere existence of an alleged company-wide policy is not sufficient to establish that an FLSA class should be certified, particularly when employers present evidence that the policy is interpreted at a local, work-site specific level. *See Lance,* 2005 U.S. Dist. LEXIS 14949, at *27-28 (noting that defendant disseminated its pay method in a decentralized manner, leaving each of the branch managers with wide discretion to convey the information); *accord, Bernard* 231 F.Supp.2d at 435 (existence of management incentive plan that "on its face" did not encourage FLSA violations was insufficient; actions rest on individual supervisors' interpretations of the plan).[2]

---

[2]     Plaintiffs appear to claim -- in the instant motion but not in the Complaint -- that being required to report to work ready to work constitutes a requirement to arrive and work 15 minutes early. The policy language cited by Plaintiffs simply requires reporting to work on time. Motion to Conditionally Certify, Ex. 6. Because nothing on the face of this policy constitutes an FLSA violation, it cannot be used to show that Plaintiffs are similarly-situated to over 7,500 Illinois-based, non-canine security guards. *See Bernard,* 231 F.Supp.2d at 435. Plaintiffs also claim that schedule and time records sent to Securitas USA's "corporate payroll department" did not include all the time they worked. Motion to Conditionally Certify, Ex. 3, Par. 14. Even assuming that Securitas USA's payroll is processed centrally, payroll computations rely on each location's specific records, and thus this allegation is irrelevant to show that Plaintiffs are "similarly situated" to others. *Bernard*, 231 F.Supp.2d at 436.

Applying the above-referenced case law to the present case, Plaintiffs' attempt to claim that they are "similarly situated" to the other 7,565 Securitas USA guards who have worked or are working in Illinois is fatally flawed, and prevents this Court from conditionally certifying the class or issuing notice. To wit, Plaintiffs' pleading and accompanying declarations:

- **Establish that all of the named Plaintiffs are or were Securitas K-9 security officers who worked on the same account, the Chicago Transit Authority**. All of the named Plaintiffs admit that they worked at the Securitas K-9 location during their employment. Motion to Conditionally Certify, Ex. 2, Pars. 3 and 4 -- "I worked out of the Securitas branch located at 500 N. Pulaski Rd, Chicago, Illinois"; *Id.*, Ex. 3, Par. 3, same declaration; *Id.*, Ex. 4, Par. 3, same declaration; Ex. 5, Par. 3, same declaration. One of the Plaintiffs even admits that he was a "K-9 handler." *Id.*, Ex. 3, Par. 1. All of the Plaintiffs assert that they performed guard duties for the same client, the Chicago Transit Authority or "CTA." Motion to Conditionally Certify, Ex. 2, Par. 4 (a)-(d); Ex. 3, Par. 4 (a)-(d); Ex. 4, Par. 4 (a)-(d); Ex. 5, Par. 4 (a)-(d).

  In response, Securitas USA has provided affidavit evidence that establishes that the named Plaintiffs were K-9 security guards whose duties were to provide canine guard services. Defendants' Motion for Summary Judgment, Tab 1, Par. 4; Ex. A hereto -- Affidavit of Laura Rysavy, Par. 7.

- **Establish that all of the employees whom Plaintiffs identify as similarly situated were Securitas K-9 canine guards, who worked out of the same work location.** Plaintiffs claim they observed the daily activities, hours worked and the manner in which work hours were recorded of other Securitas USA employees, including Mark Ward (Motion to Conditionally Certify, Ex. 4, Par. 19), Felicia Carr, Corey Griffin, James Hill, and Marcus Long (*Id.*, Ex. 5, Par. 14), Margaret Brown and Robin Roberson (*Id.*, Ex. 2, Par. 15).

In response, Securitas USA has provided affidavit evidence that all of the afore-mentioned employees and all those who have filed Consents to Become Party Plaintiff worked out of the K-9 location at 500 N. Pulaski, as Securitas K-9 security guards, providing canine security services.  Ex. A hereto, Affidavit of Laura Rysavy, Pars. 7-8.  In fact, all of the employees or witnesses named in the Plaintiffs' affidavits are or were Securitas K-9 employees.  *Id.* at Par. 8.

- **Establish that the named Plaintiffs' pre-employment training claims involve canine guard training.**  Plaintiffs contend that they undertook unpaid training,  which consisted of the "Basic 80-Hour K9 Handler Course" (Motion to Conditionally Certify, Ex. 4, Par. 5) and the "K-9 handler's course that took two weeks and approximately 90-100 hours to complete and included classroom and extensive dog handling instruction." *Id.*, Ex. 3, Par. 5a.

   In response, Securitas USA has provided affidavit evidence that Securitas K-9 job applicants at the 500 N. Pulaski Securitas K-9 branch are the only Illinois-based Securitas USA applicants or employees who undertake K9 dog handling training.  Ex. A hereto, Affidavit of Laura Rysavy, Par. 11.  In fact, they are the only Securitas USA employees in the entire United States who take the K9 dog handling course.  *Id.*

- **Establish that their alleged pre-shift uncompensated work involved dog care and dog inspection.**  Plaintiffs' declarations allege:  "As part of its policy, Securitas required that I and other security guards arrive at its branch office 15 minutes prior to my scheduled shift so that I could prepare for work by inspecting the dogs, verifying the dogs were healthy and otherwise preparing for my shift."  Motion to Conditionally Certify, Ex. 3, Par. 11.  Similar allegations are made in the other affidavits, which allege pre-shift canine duties:  "inspecting

my dog to make sure it was healthy." Motion to Conditionally Certify, Ex. 4, Par. 11; Ex. 5, Par. 7.

> In response, Securitas USA has provided affidavit evidence that K-9 security guards are the only Illinois-based Securitas USA employees who utilize guard dogs in the performance of their job duties. Ex. A hereto, Affidavit of Laura Rysavy, Pars. 9-10. In fact, there are only four other canine dog handlers affiliated with Securitas USA in the entire United States. *Id.*, Par. 10.

- **Establish that Plaintiffs lack any knowledge of pre- or post-shift work or uniform maintenance requirements of any other Securitas USA employees**. Plaintiffs' pleadings and declarations are devoid of any allegations that they are aware that pre-shift work or shift holdover time without compensation is undertaken at any other Securitas USA location in Illinois. *See* Motion to Conditionally Certify, Exs. 2-5. Although Plaintiffs purport to attach a uniform maintenance policy, they do not allege that it is consistently applied to Securitas USA employees other than themselves and other Securitas K-9 guards at their specific work location in a manner that results in unpaid uniform maintenance time. *See* Motion to Conditionally Certify, Exs. 2-5.

> In response, Securitas USA has provided affidavit evidence that its appearance program is communicated and applied at a local level, on a branch-by-branch basis, at the local branch management's discretion. Ex. A hereto, Affidavit of Laura Rysavy, Par. 12; Defendant's Partial Summary Judgment Motion, Affidavit of D. Reese, Tab 1, Par. 28. It has also produced detailed records for each of the named Plaintiffs showing consistent and substantial overtime payments for overtime hours worked, and has provided detailed time and pay records belying any infer-

ence of company-wide practices to the contrary.  *See* Defendant's Partial Summary Judgment Motion, Tab 1, Exs. H-R.

Based on the foregoing, it is clear the named Plaintiffs do not make the required factual showing that they are "similarly situated" to the 7,565 *non-canine* security guards working throughout Illinois to justify certifying the present class action and issuing notice.  To the contrary, Plaintiffs' pleadings and declarations confirm that they have specific, canine-related training, pre-shift canine care, post-shift holdover, and uniform maintenance claims that are unique to the 125 present and former employees at the Securitas K-9 Branch.

*Class Certification and Notice Are Premature
While a Potentially Dispositive Motion Is Pending
and Class Members Are Not Similarly Situated*

Benefits to the class are maximized when putative plaintiffs receive "*accurate* and timely notice concerning the pendency of the collective action, so that they can make *informed decisions* about whether to participate," and when joinder of additional parties is accomplished "in an *efficient* and proper way."  *Hoffman*, 493 U.S. at 170 (emphasis added).  District courts have discretion *not* to authorize notice to potential class plaintiffs.  *Hoffman*, 493 U.S. at 169.  This is particularly true where notice would result in "the stirring up of litigation through unwarranted solicitation," *Freeman*, 256 F.Supp.2d at 944, or when issuing notice would "be a waste of judicial resources and raise unrealistic expectations in putative class members."  *Briggs,* 54 Fed. Cl. at 206; *see also Freeman*, 256 F.Supp.2d at 945 ("It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated").

Securitas USA has provided two strong arguments against conditional class certification and notice issuance:  a potentially dispositive motion is pending, and Plaintiffs have not met their

burden of showing they are similarly situated to the vast majority of Illinois-based non-canine security guards whom they seek to represent. This is truly a case of the proverbial "tail wagging the dog," as several K-9 employees at a very small specialized Branch seek to represent 7,565 non-canine security guard employees. Either argument justifies this Court in declining to issue notice. The scope of any class notice would change substantially if partial summary judgment is granted to Securitas USA, as training pay and shift holdover overtime pay claims would not be included in the action. Issuing notice at this stage prior to determining the "scope" of the lawsuit negatively impacts giving accurate notice that clearly informs potential plaintiffs of the cause of action and their potential claims related thereto. Alternatively, issuing notice to thousands of present and former Illinois-based Securitas USA employees who are not even subject to the pre-employment canine training, and pre- or post-shift work, or uniform maintenance policies that form the bases for Plaintiffs' lawsuit, would waste this Court's resources and unduly and unnecessarily confuse Securitas USA's employees. Plaintiffs appear to be engaged in a fishing expedition for additional plaintiffs, something this Court should be reluctant to assist.

*Class Counsel May Have Representation Issues*

Finally, prior to deciding the instant motion, the Court should be fully aware of potential issues that may prevent class counsel from adequately representing the class. *Brown*, 222 F.R.D. at 682 (adequacy of counsel is relevant in putative FLSA class action to ensure adequate representation of opt-in class members). Proposed class counsel James B. Zouras and Ryan F. Stephan and their law firm, Stephan Zouras LLP are embroiled in state court litigation, captioned *Touhy & Touhy, Ltd. v. Ryan F. Stephan, James B. Zouras, and Stephan & Zouras, LLP*, Case No. 07 CH 13552 (Cir.Ct.Ck.Cty. -- filed May 21, 2007), the original complaint in which is attached as Exhibit B. On May 23, 2007, the court issued a temporary restraining order against all

defendants, which is attached hereto as Exhibit C, finding that there was a reasonable basis to believe and conclude in fact and law that:

(1)    attorneys Stephan and Zouras formed a competing law firm, Stephan & Zouras, while employed by the Touhy firm;

(2)    Stephan and Zouras "engaged in a course of conduct in violation of their fiduciary duties owed to the Touhy firm, converted firm property for their own use and benefit, and have otherwise engaged in a scheme to deprive the Touhy firm of its property and client files";

(3)    Stephan and Zouras engaged in a course of conduct in violation of the Computer Fraud and Abuse Act, 18 U.S.C. Sec. 1030 et. seq.;

(4)    Stephan and Zouras possessed and were using Touhy firm client files;

(5)    Stephan and Zouras engaged in a course of conduct that would result in the disposal, waste, use and concealment of Touhy firm property;

(6)    Stephan and Zouras solicited Touhy firm clients without the firm's consent, using property taken from the firm to do so.

On this basis, Defendants Stephan, Zouras, and their law firm were enjoined from further activities related to Touhy clients and property. Allegations involving Stephan and Zouras and their firm also figure in a federal action in which they are not named as parties, and which was recently filed in federal court, captioned *Touhy & Touhy, Ltd. v. Erik H. Langeland and Erik H. Langeland, P.C.*, Case No. 08 CV 2950 (N.D. Ill. May 21, 2008) (Holderman, J.), attached hereto as Exhibits D and E.

Messrs. Stephan and Zouras now want this Court to certify and allow them to represent a class of 7,690 potential plaintiffs. Given the seriousness of the above findings and the restraints

placed on Messrs. Stephan and Zouras, and their law firm, Securitas USA submits that this Court

should inquire further into pending proceedings against class counsel prior to taking any action

in the present matter.[3]

CONCLUSION

WHEREFORE, for the reasons set forth herein and in the accompanying materials, there

is no basis for depriving Securitas USA of its due process right to defend against each individual

claim.  Plaintiffs' Motion to Conditionally Certify Class and Issue Notice should be denied in its

entirety.

Dated:  July 17, 2008                                    Respectfully submitted,

                                                        SECURITAS  SECURITY  SERVICES
                                                        USA, INC.


                                            By:     s/David M. Novak_____
                                                            One of Its Attorneys

---

[3]     Securitas USA opposes issuing any notice to any purported class.  If this Court decides otherwise, Securitas USA requests the opportunity to address significant deficiencies in the notice proposed by Plaintiffs, including but not limited to:

- informing potential class members of the proceedings against certain of class counsel (Exs. B-D hereto);

- informing potential class members of their right to be represented by other counsel;

- providing a more accurate statement of the allegations in the Complaint and available relief;

- providing a clearer statement that the Complaint merely contains allegations;

- providing a clearer statement of the right not to participate in this lawsuit, and a separate section on the effect of not joining the lawsuit;

- placing in a separate paragraph the statement that this Court takes no position regarding the merits of this case;

- deleting the reference to the content of the notice being approved by the Court -- only the issuance of notice should be deemed "authorized."

David M. Novak
John T. Roache
Melissa A. Siebert
Edward M. Graham
BELL, BOYD & LLOYD LLP
Three First National Plaza
70 W. Madison, Suite 3100
Chicago, Illinois  60602
(312) 372-1121

CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing Defendant's Response in Opposition to Plaintiffs' Motion to Conditionally Certify Class and Issue Notice was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing, on this 17th day of July 2008, to the following:

James B. Zouras
Ryan F Stephan
Stephan Zouras, LLP
205 N. Michigan, Suite 2560
Chicago, Illinois  60601

Marvin A. Miller
Matthew E. Van Tine
Miller Law LLC
115 S. LaSalle, Suite 2910
Chicago, Illinois  60603

Thomas M. Ryan
Law Offices of Thomas M. Ryan, P.C.
205 N. Michigan, Suite 2560
Chicago, Illinois  60601

s/David M. Novak
David M. Novak

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL HOWARD, PAUL GALLOWAY, | ) | |
| ROBERT NEWSON and ALVAN YOUNG | ) | |
| | ) | |
| Plaintiffs | ) | Case No. 08 C 2746 |
| | ) | |
| v. | ) | Judge Gottschall |
| | ) | |
| SECURITAS SECURITY SERVICES | ) | Magistrate Judge Valdez |
| USA, INC. | ) | |
| | ) | |
| Defendant | ) | |

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) SS |
| COUNTY OF LAKE | ) |

AFFIDAVIT OF LAURA RYSAVY

Laura Rysavy, being first duly sworn on oath, deposes and state as follows:

1.    Since February 2005, I have held the position of Vice President of Human Resources for the North Central Region of Securitas Security Services USA, Inc. (hereinafter "Securitas"). I have worked for Securitas since April 1, 1998, in a variety of human resources management positions. I have personal knowledge of the matters sworn to herein.

2.    My job duties as Vice President of Human Resources for the North Central Region include oversight of the following in Illinois, Missouri, Kansas, Nebraska, Iowa, Minnesota, North Dakota, South Dakota, and Wisconsin: establishing and implementing human resources strategy; developing and overseeing employee programs, benefits, compensation, recruitment, training, employee relations and policy implementation; and daily management of human resources professionals and other Securitas employees in the nine states in the Region.

3.      As part of my job duties, I also periodically review employee information, such as the Region's total employee count, recruitment levels, employee turnover, and other regularly kept and maintained data related to the workforce in the Region. I have reviewed some of Securitas' employee data and information to prepare this affidavit, as set forth below.

4.      As stated above, Illinois is one of the states included in the North Central Region. There are 11 Securitas Branches in Illinois. From the time period May 1, 2005 through June 1, 2008, Securitas has employed 7,690 people in Illinois in security guard positions. I am basing this employee count on the total number of security guards for whom Securitas paid unemployment insurance contributions during the time period stated above.

5.      The Securitas K-9 Branch (hereinafter "Securitas K-9") located at 500 N. Pulaski, Chicago, Illinois, is one of the Branches within my Region. From May 1, 2005 through June 1, 2008, Securitas K-9 has employed a total of 125 canine security guards. This number is based on a count of all employees of Securitas K-9 during the time period stated above, compiled from Securitas' records.

6.      As of June 2008, the Securitas K-9 Branch employed 31 canine security guards.

7.      I have reviewed the Declarations filed by Crystal Howard, Paul Galloway, Robert Newson and Alvan Young in this lawsuit. Ms. Howard and Messrs. Galloway, Newson, and Young were employed as Securitas K-9 canine security guards at the 500 N. Pulaski location. I have also reviewed the Consents to Become Party Plaintiff filed in this lawsuit.

8.      The Plaintiffs' Declarations and the Consents to Become Party Plaintiff name other employees, all of whom were or are employed as Securitas K-9 canine security guards, at the 500 N. Pulaski location, including: Margaret Brown, Felicia Carr, Corey Griffin, James Hill,

Marcus Long, Robin Roberson, Mark Ward, Armando Barraza, Samuel Ortiz, Jorge Sanchez, Khanita Nevilles, and one Securitas K-9 sergeant, Michael Davis.

9.    All of the security guards at Securitas K-9 are canine security officers, which means that they are specially trained in canine guard dog handling, and patrol with trained guard dogs. When the Securitas K-9 Branch was established in 2003, it was the only Branch providing canine security services in the country.

10.    The Securitas K-9 Branch is the only Branch in my 9-state North Central Region that has canine security guards, whom we also call canine dog handlers. In fact, I am aware of only 4 other canine dog handlers affiliated with Securitas in the entire United States.

11.    The Securitas K-9 Branch is the only Branch in my 9-state North Central Region that provides a 100-Hour Basic K9 Handler course, focused on canine guard dog handling and related security duties. My understanding is that this course is provided to persons applying for jobs at Securitas K-9, who have successfully completed the interview process. To my knowledge, no other Securitas employees undertake the 100-Hour Basic K9 Handler course. In fact, I am aware of no other Securitas Branch in the entire country that provides canine guard dog training, whether to applicants or employees.

12.    Securitas has a Uniform and Appearance Policy. The Policy is included in Securitas' Security Officer Handbook, which is disseminated by each local Branch. Generally, the goal of the Policy is to have security guards look professional and presentable, as expected by our clients and the public. How the Appearance Policy is actually implemented is up to the discretion of each Branch Manager -- there are no established guidelines in the North Central Region regarding how often and through what method uniforms are to be laundered, or how often shoes should be shined -- these matters are entirely up to the Branch Manager's discretion

to set, or not set, as he or she deems appropriate.  To my knowledge, the Branch Managers in my

Region do not set additional uniform or shoe maintenance standards.

    Further sayeth affiant not.

                _Laura Rysavy_

                Laura Rysavy

Subscribed  and  sworn  to  me  this
_15_ day of July 2008

_____
Notary Public

```
OFFICIAL SEAL
DEBORAH L. MORRIS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 6-26-2009
```

# EXHIBIT B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
COUNTY DEPARTMENT, CHANCERY DIVISION
INJUNCTION/TEMPORARY RESTRAINING ORDER

CIRCUIT COOK
COURT ILLINOIS
CHANCERY DIV.

_____CLERK

| | | |
|---|---|---|
| TOUHY and TOUHY, LTD., an Illinois Professional Corporation, | ) ) ) | **07CH13552** |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| RYAN F. STEPHAN, JAMES B. ZOURAS, and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership, | ) ) ) ) | |
| Defendants. | ) ) | Jury |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES Plaintiff, Touhy and Touhy, Ltd. ("Touhy" or the "Firm"), by its undersigned attorneys, with this action for injunctive and other relief against Defendants Ryan F. Stephan, James B. Zouras, and Stephan & Zouras, LLP ("S&Z"), and in support thereof, alleges as follows:

### THE PARTIES

1.     Plaintiff Touhy is an Illinois Professional Corporation engaged in the practice of law in Illinois. One of Touhy's specialties is representing plaintiffs in class action and collective action matters. The shareholders of Touhy and Touhy Ltd. are Timothy Touhy and Daniel Touhy. Touhy's offices are located at 161 North Clark, Suite 2210, Chicago, Illinois, 60601.

2.     Defendants Stephan and Zouras are licensed Illinois attorneys employed full-time by Touhy to practice law on behalf of Touhy, for which they receive salaries from the Firm.

Stephan currently resides at 1701 N. Damen, Unit #304, Chicago, and has worked for the Firm for approximately four years. Zouras currently resides at 431 S. Dearborn, Unit 1001, Chicago and has worked for the Firm for approximately ten years.

3.      Defendant S&Z is an Illinois limited liability partnership formed on March 14, 2007 for the purpose of practicing law, with offices at 205 North Michigan Ave, Chicago, and with a registered agent at 431 S. Dearborn, Unit 1001, Chicago. On information and belief, since the formation of S&Z, Defendants Stephan and Zouras have been partners and agents of S&Z, acting on their own behalf and on S&Z's behalf with respect to the action alleged herein.

## VENUE

4.      Venue is proper in this Circuit pursuant to 735 ILCS 5/2-101 because the transactions out of which these causes of action arose occurred in Cook County.

5.      Venue is proper in Chancery Court because Plaintiff Touhy seeks injunctive relief.

## DEFENDANTS' SURREPTITIOUS ACTIVITIES AND THEFT OF CONFIDENTIAL DATA

6.      At some point in the past several months, Defendants Stephan and Zouras decided to leave Touhy's employment and start their own law firm. In furtherance of these intentions, Stephan and Zouras established Defendant S&Z to compete with Touhy.

7.      After deciding to leave the employment of Touhy, Defendants Stephan and Zouras hatched a plan to stay employed with Touhy while they set up their new law firm, in order to use Touhy's resources and confidential data and solicit Touhy's current and prospective clients, all for the benefit of their new law practice, S&Z.

8.      While employed by Touhy, Defendants Stephan and Zouras secretly solicited and represented clients, purportedly on behalf of Touhy but without Touhy's knowledge or

2

authorization.  For example, on April 27, 2007, both Stephan and Zouras filed papers in the

matter of *Bouthner v. Amtrust Mortgage Corp.*, 07 CV 0566, in Federal Court in the Northern

District of Georgia, in their own *and Touhy's name*.  In doing so, they bypassed Firm procedures

that require all cases in which the Firm is representing a client to be entered promptly into the

Firm's computer system and assigned a matter number.  Defendants Stephan and Zouras also

failed to follow Firm procedures that require attorneys opening new matters to prepare Firm

paper files and to docket the case on the Firm's computer calendar system, so that the Firm can

monitor its cases.

9.      Dan Touhy recently learned about the Defendants' illicit representation of

Bouthner when the Firm received correspondence from the clerk of the court of the Northern

District of Georgia stating that the Defendants motions for admission *pro hac vice* had been

granted.  Upon receipt of the unauthorized filings, Dan Touhy asked Defendant Zouras if he had

heard of the "Bouthner" case; Defendant Zouras stated that he had not, in an attempt to conceal

his surreptitious representation of Bouthner.

10.      On information and belief, Defendants Stephan and Zouras were introduced to the

clients and prospective clients that they have secretly solicited by virtue of their employment

with Touhy.  For example, on October 1, 2006, a prospective client named Stephen Ferko filled

out a Firm new client intake form.  Mr. Ferko subsequently executed a Firm "Client

Representation Agreement", wherein he agreed to be represented by Touhy in a dispute with his

employer, and sent this form to Defendant Stephan.  A new matter for Mr. Ferko was never

opened up on the Firm's system, nor was a paper file created or the matter docketed with the

Firm.

11.     Touhy's financial data is kept in a Quicken software program on the Firm's server. Access to this confidential data is limited to shareholders Tim Touhy, Dan Touhy, and Dan's secretary, Sandy Robinson.   On or about April 12, 2007, Defendant Zouras obtained the password to access Touhy's secure client financial accounts on its computer system from Ms. Robinson and instructions on how to print "cost and expense" reports from the Firm accounts. Zouras obtained this information on the pretense that he wanted to print the cost and expense report for the "Michaels v. Dynaprop" case, a matter that Zouras was working on for the Firm. Because Defendant Zouras made the request at the end of the day as Ms. Robinson was exiting the offices she gave him the password for the limited purpose of printing the Michaels cost and expense report.

12.     Mr. Zouras violated Ms. Robinson's trust and used this password to print out confidential client expense data for at least 10 matters that Touhy attorneys, including Defendants Stephan and Zouras, have been working on. He did so without authorization from either the Firm or the respective clients. He did not print out the Michael's cost and expense report.

13.     As evidenced above, for the past several months Defendants Stephan and Zouras, while employed by Touhy, have used Touhy resources and confidential information to compete directly with Touhy.   Touhy only recently discovered the Defendants' duplicity, and its investigation continues; the Firm anticipates finding numerous other examples of the Defendants misappropriating Firm resources to solicit Firm clients and compete directly with the Firm, all while Defendants Stephan and Zouras were employed by the Firm and drawing a salary from the Firm.

4

14.     Touhy is in the process of investigating the Defendants' malfeasance.  The Firm recently retained an IT consultant to conduct a forensic analysis of the Firm's computers and server to determine the extent of the Defendants' misappropriation of the Firm's and its client's confidential data, and to secure the data on the computers against further theft.

15.     The IT consultant has found that, between May 15 and May 21, 2007, Defendants Zouras and Stephan downloaded onto separate and removable storage discs or external hard drives thousands of documents belonging to the Firm, including but not limited to case files, excel spread sheets with client names, addresses and emails, office forms, pleadings and correspondence in cases, co-counsel names and addresses and numerous other documents in the Firm's possession.     Upon information and belief, Zouras and Stephan have taken this information and secreted it at their homes or the offices of S&Z.

16.     Defendants Stephan and Zouras have never informed Touhy of their intention to leave Touhy's employment. Touhy only learned of these intentions recently, when the Defendants improper actions described above came to light.

## COUNT I
### Breach of Fiduciary Duty
### (Against Stephan and Zouras)

17.     Plaintiff Touhy, as and for paragraph 17 of Count I, re-allege paragraphs 1-16 as though fully set forth herein.

18.     As part of their responsibilities as attorneys employed by Touhy, Defendants Stephan and Zouras solicit and represent clients on behalf of and jointly with Touhy, and owe Touhy a fiduciary duty of loyalty and good faith.

19.     As described more fully above, Defendants Stephan and Zouras breached their fiduciary duties by soliciting for their own benefit and the benefit of Defendant S&Z current and

prospective Touhy clients with the intent of establishing an attorney-client relationship and then bringing these clients with them to S&Z.

20.     As described more fully above, Defendants breached their fiduciary duty by using Touhy's name and resources in their solicitation of Touhy clients, without informing Touhy of their actions or obtaining authorization for their actions.

21.     As described more fully above, Defendants Stephan and Zouras further breached their fiduciary duties toward Touhy by taking confidential data from Touhy, with the intent of assisting their efforts to bring Touhy clients with them to S&Z.

22.     Touhy has been and continues to be injured by these actions, the full extent of which is presently unknown but which includes the loss of current and prospective clients and confidential client and Firm information.

23.     Defendants Stephan and Zouras, unless enjoined, will continue to engage in the conduct that is alleged herein, including but not limited to using the confidential client and Firm information they obtained in breach of their fiduciary duties.

24.     For the reasons stated above, there is a likelihood that Touhy will prevail on the merits of this action.

25.     Should this Court grant injunctive relief to Touhy, the burden on Defendants would be slight compared to the injury to Touhy if it were not granted.  No legitimate injury to Defendants would result from an order requiring them to comport their actions with the law.

26.     The granting of an injunction will not disserve the public interest.  Indeed, injunctive relief would deter others from engaging in this kind of outrageous conduct.

WHEREFORE, for all the foregoing reasons, Plaintiff Touhy, respectfully requests that the Court grant the following relief:

A.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, against Defendants, enjoining them from destroying or disposing of any books, records or accounts or of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

B.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, against Defendants, enjoining them from withdrawing transferring or disposing of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

C.    Entry of a Preliminary Injunction and, upon final disposition, entry of a Permanent Injunction, against Defendants, directing that they turnover all property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest, including, but not limited to, client information and confidential Firm information and any copies of the same to Plaintiff, including the return and restoration of all computer data files that Defendants destroyed or removed from Touhy's computers and server;

D.    That a judgment be entered in favor of Touhy, and against Defendants, for compensatory damages in an amount to be proved at trial;

E.    That a judgment be entered in favor of Plaintiff, and against Defendants for punitive damages in an amount to be proved at trial;

F.    Such other and additional relief as this Court may deem appropriate.

## COUNT II
### Tortious Interference with Prospective Business Advantage
(All Defendants)

27.    Plaintiff Touhy, as and for paragraph 27 of Count II, re-allege paragraphs 1-16 as though fully set forth herein.

28.    Plaintiff Touhy had a valid business expectancy of representing the clients that Defendants are now secretly representing and/or soliciting.

29.    As described more fully above, Defendants have purposefully interfered with that expectancy by soliciting and representing these clients with the intent to bring them to S&Z.

30.    Defendants have not resigned from Touhy, and are currently employed by Touhy, and have had no legal right to interfere with Touhy's business expectation.

31.    Touhy has been and continues to be injured by these actions, the full extent of which is presently unknown but which includes the loss of current and prospective clients and confidential client and Firm information.

32.    Defendants, unless enjoined, will continue to engage in the conduct that is alleged herein, including but not limited to using the confidential client and Firm information they obtained by interfering with Touhy's valid business expectation.

33.    Based on the above, there is a likelihood that Touhy will prevail on the merits of this action

34.    Should this Court grant injunctive relief to Touhy, the burden on Defendants would be slight compared to the injury to Touhy if it were not granted.  No legitimate injury to Defendants would result from an order requiring them to comport their actions with the law.

35.    The granting of an injunction will not disserve the public interest.  Indeed, injunctive relief would deter others from engaging in this kind of outrageous conduct.

8

WHEREFORE, for all the foregoing reasons, Plaintiff Touhy, respectfully requests that the Court grant the following relief:

A.     Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, against Defendants, enjoining them from destroying or disposing of any books, records or accounts or of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

B.     Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, against Defendants, enjoining him from withdrawing transferring or disposing of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

C.     Entry of a Preliminary Injunction and, upon final disposition, entry of a Permanent Injunction, against Defendants, directing that they turnover all property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest, including, but not limited to, confidential client and Firm information and any copies of the same to Plaintiff, including the return and restoration of all computer data files that Defendants destroyed or removed from Touhy's computers and server;

D.     That a judgment be entered in favor of Touhy, and against Defendants, for compensatory damages in an amount to be proved at trial;

E.     That a judgment be entered in favor of Plaintiff, and against Defendants for punitive damages in an amount to be proved at trial;

F.     Such other and additional relief as this Court may deem appropriate.

## COUNT III
## <u>Violation of the Computer Fraud and Abuse Act</u>
## <u>(All Defendants)</u>

36.    Plaintiff Touhy, as and for paragraph 36 of Count III, re-allege paragraphs 1- 16

as though fully set forth herein.

37.    At all times relevant to this Complaint, there was in existence a certain statute, to-

wit:  The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et. seq.*    The CFAA

provides, in relevant part, as follows:

> Whoever … intentionally accesses a protected computer without
> authorization, and as a result of such conduct, causes damage, and …
>
> 18 U.S.C. §1030 (a)(5)(A)(iii).
>
> by conduct described in clause (i), (ii), or (iii) of subparagraph (A),
> caused…
> 18 U.S.C. § 1030 (a)(5)(B).
>
> loss to 1 or more person during any 1-year period (and, for purposes of an
> investigation, prosecution, or other proceeding brought by the United
> States only, loss resulting from a related course of conduct affecting 1 or
> more other protected computers) aggregating at least $5,000 in value;…
> 18 U.S.C. §1030 (a)(5)(B)(i).
>
> shall be punished as provided in subsection (c) of this section.
>
> 18 U.S.C. § 1030 (a)
>
> the term "computer" means an electronic, magnetic, optical,
> electrochemical, or other high speed data processing device performing
> logical, arithmetic, or storage functions, and includes any data storage
> facility or communications facility directly related to or operating in
> conjunction with such device, but such term does not include an
> automated typewriter or typesetter, a portable hand held calculator, or
> other similar device;
> 18 U.S.C. §1030 (e)(1).
>
> the term "protected computer" means…a computer which is used in
> interstate or foreign commerce or communication.…
> 18 U.S.C. §1030(e)(2)(B).

10

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and **injunctive relief or other equitable relief**. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B). Damages for a violation involving only conduct described in subsection (a)(5)(B)(i) are limited to economic damages.
>
> 18 U.S.C. §1030(g) (emphasis added).

38.    Touhy's computers and Quicken electronic files contain data regarding clients and pending cases throughout the United States, and the use or misuse of this data affects interstate commerce. Touhy's computers are also used for e-mal communications throughout the United States.

39.    Defendants intentionally accessed Touhy's computers and confidential client and Firm information that is a protected computer as that term is defined by the CFAA.

40.    Defendants' conduct had forced Touhy to quarantine its computers and hire an IT consultant to ascertain the amount of confidential data misappropriated by Defendants and establish new security for the computers, which has impaired Touhy's ability to use its computers and cost Touhy more than $5,000.

41.    At the time of the filing of this complaint, Defendants have used and continue to wrongfully use the confidential client and Firm information from the computer system of Touhy (their present employer) to compete with Touhy.

42.    As described above, Defendants violated both the criminal and civil provisions of the CFAA, pursuant to which Plaintiff is entitled to damages and injunctive relief or other equitable relief.

43.    Touhy has no adequate remedy at law. Money damages alone will not, and cannot, compensate Touhy for the loss of goodwill and business opportunities that it has suffered

as a result of Defendants' actions. Those actions have and will in the future continue to harm Touhy's business relationships. As a result of Defendants' actions, Touhy has and will have difficulty securing their current and targeted potential clients, which will in turn impact its ability to do business.

44. By his continuing conduct, Defendants have demonstrated his willingness to continue to engage in acts that violate the CFAA. The injury to Touhy is immediate and irreparable.

45. Defendants, unless restrained, will continue to engage in conduct that is alleged herein.

46. For the reasons described above, there is a likelihood that Touhy will prevail on the merits of this action.

47. Should this Court grant injunctive relief to Touhy, the burden on Defendants would be slight compared to the injury to Touhy if it were not granted. No injury to Defendants would result from an order requiring them to comport his actions with the law.

48. The granting of an injunction will not disserve the public interest. Indeed, injunctive relief would accomplish the objectives of the CFAA.

WHEREFORE, for all the foregoing reasons, Plaintiff Touhy respectfully requests that this Court grant the following relief:

A. Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, enjoining them from engaging in acts and practices in violation of the CFAA;

B. Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants,

12

enjoining them from destroying or disposing of any books, records or accounts or of any property, whether real, personal or mixed, owned by Touhy or in which Touhy has an interest;

C.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, enjoining them from withdrawing, transferring or disposing of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

D.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, directing that they turnover all Plaintiff's property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest, including, but not limited to, client information, confidential Firm information, and any copies of the same to Plaintiff, including the return and restoration of all computer data files that Defendants destroyed or removed from Touhy's computer and server;

E.    That a judgment be entered in favor of Plaintiff, and against Defendants, for compensatory damages in an amount presently unknown to Plaintiff to be proved at trial;

F.    An order awarding Plaintiff its costs and attorneys' fees; and

G.    Such other and additional relief as this Court may deem appropriate.

PLAINTIFF TOUHY AND TOUHY LTD. DEMANDS A JURY TRIAL ON ALL MATTERS SO TRIABLE

Respectfully submitted,

TOUHY & TOUHY LTD

By: _____
　　　One of Its Attorneys

William K. Kane
John M. O'Bryan
LOVELLS LLP
330 North Wabash Ave.
Suite 1900
Chicago, Illinois 60611
312-832-4400
Firm#32893

Michael V. Casey
Varga, Berger, Ledsky, Hayes
& Casey
224 South Michigan Ave.
Suite 350
Chicago, Illinois 60604
312-342-9400
Firm#33916

14

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
## COUNTY DEPARTMENT, CHANCERY DIVISION

TOUHY and TOUHY, LTD., an Illinois Professional
Corporation,

                  Plaintiff,

     v.

RYAN F. STEPHAN, JAMES B. ZOURAS, and
STEPHAN & ZOURAS, LLP, an Illinois
Limited Liability Partnership,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.

## VERIFICATION

I, Daniel K. Touhy, under penalties as provided by law pursuant to Section 1-109
of the Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set
forth in the Verified Complaint and that the same are true and correct, except as to
matters herein stated to be on information and belief and as to such matters I certify as
aforesaid that I verily believe the same to be true.

DANIEL K. TOUHY

# EXHIBIT C

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TOUHY & TOUHY, LTD., an Illinois Professional Corporation, | ) )<br>) |
| Plaintiff, | ) ) |
| v. | ) )<br>) Case No. 07 CH 13552 |
| RYAN F. STEPHAN, JAMES B. ZOURAS, and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership, | ) )<br>)<br>) |
| Defendants. | )<br>) |

## TEMPORARY RESTRAINING ORDER

Plaintiff, TOUHY & TOUHY, LTD., ("Touhy Firm") an Illinois Professional Corporation, by and through its undersigned attorneys, has filed on May 21st a verified complaint in this action seeking, *inter alia*, injunctive relief against defendants Ryan F. Stephan, ("Stephan") an Illinois licensed attorney, James B. Zouras ("Zouras") an Illinois licensed attorney, and their Illinois Limited Liability Partnership known as Stephan & Zouras, LLP. On May 22, 2007 the Plaintiff brought an Emergency Motion for a Temporary Restraining Order supported by the verified complaint and affidavits. Notice of the Motion was provided to the Defendants through counsel. This action has now been heard upon plaintiff's Motion for a Temporary Restraining Order and issuance of a Preliminary Injunction against the defendants. At the commencement of the hearing, counsel for Touhy & Touhy Ltd. was present along with counsel for the defendants Ryan Stephan, James Zouras and Stephan & Zouras, LLP.

The court having been fully advised in the premises; HEREBY FINDS THAT:

1.      This Court has jurisdiction over the parties and subject matter of this proceeding;

2.     The Court has reviewed the Touhy firm's Verified Complaint for Injunctive and Other Relief and the affidavits submitted in support of the same;  the Touhy firm has presented a *prima facia* case to establish, and there is a reasonable basis to believe and conclude in fact and law that:

(A)     On or before May 21, 2007, Defendants Stephan and Zouras were attorneys licensed to practice law in the state of Illinois and were employed with the law firm of Touhy & Touhy, Ltd.;

(B)     While employed with the Touhy Firm the defendants formed a competing law firm known as Stephan & Zouras, L.L.P. with offices in Chicago, Illinois;

(C )     Stephan and Zouras have engaged in a course of conduct in violation of their fiduciary duties owed to the Touhy firm, converted firm property for their own use and benefit, and have otherwise engaged in a scheme to deprive the Touhy firm of its property and client files;

(D)     Stephan and Zouras have engaged in a course of conduct in violation of the Computer Fraud and Abuse Act.  18 U.S.C. §1030 *et. seq. ;*

(E)     Stephan and Zouras have been, and possess and are using client files and information from the Touhy firm without its consent, or the consent of the Touhy firm clients;

(F)     Stephan and Zouras have been, and are engaged in a course of conduct that will result in the disposal, waste, use and concealment of Touhy Firm property;

(G)     Stephan and Zouras have been and are soliciting Touhy firm clients without the consent of the Touhy firm and are using property taken from the Touhy firm to do so and otherwise interfering with the Touhy Firm client relationships;

2

3.    Plaintiff has no adequate remedy at law.  If this Temporary Restraining Order is not granted, plaintiff will be irreparably injured by the conduct of the defendants in failing to comply with applicable Illinois law, failing to return or to deliver Touhy firm assets, misappropriating Touhy client files and Touhy Firm financial information, and concealment or dilution of the defendants' assets.

4.    Such threatened injury to plaintiff outweighs any harm the Temporary Restraining Order may have on the defendants.  If plaintiff does not prevail on its motion for preliminary injunction, defendants will have suffered little, if any, harm.

5.    For the reasons stated in Finding 2, plaintiff has demonstrated more than a likelihood of success on the merits of this action.

6.    There is no basis for considering that the granting of these Orders will disserve the public interest.

IT IS HEREBY ORDERED THAT:

1.    The defendants and each of them, their agents, officers, and employees, and all persons acting in concert or participation with any or all of the foregoing who receive actual notice of this Temporary Restraining Order by personal service or otherwise, are enjoined and restrained and ordered to cease and desist from:

> (A)    Using or possessing assets belonging to Touhy & Touhy Ltd., including but not limited to, physical assets, client files and data included therein, accounts receivable and payable information of the firm, telephone numbers, passwords, or anything else belonging to the Touhy firm;
>
> (B)    Unauthorized access to or alteration of any computers, voice mail systems, data streams, or any property of the Touhy firm;

3

(C)    Using or continuing to use Touhy firm data, property or client files and information;

(D)    Any representation that they are currently affiliated with the Touhy firm, including, the use of the Touhy firm name in any court filings or communications with clients of the Touhy firm;

(E)    The wasting or spoilation of physical assets belonging to the Touhy firm, this includes, but is not limited to, all the property that was formerly in the Touhy Firm in whatever form whether paper or electronic;

(F)    Using, destroying, altering, directly or indirectly, any books, records of the Touhy firm, including client information.  That includes paper documents and electronic information and any such information that resides in computers whether those computers belong to the Touhy firm or not, that information is to be preserved, not deleted, altered, or removed in any way;

(G)    From otherwise disposing, transferring or destroying property and information taken from the Touhy Firm *WITHOUT ORDER OF COURT;*

(H)    Withdrawing, transferring, or disposing of any Touhy assets.  Transfer of assets as used in this sense is to be given the broadest possible meaning as used under the United States Bankruptcy Code, including, encumbering assets whether real, personal or mixed; and


IT IS HEREBY FURTHER ORDERED THAT: this order is entered as of May *23*, 2007 at *11 50* a.m. central standard time.

4

IT IS HEREBY FURTHER ORDERED THAT:

The Court having considered the Verified Complaint for Injunctive and Other Relief and Motion for Temporary Restraining Order and Preliminary Injunction, and the representation of plaintiff's counsel, having considered the issuance of a bond, finds that no bond need be required of plaintiff pending a hearing on its Motion for Preliminary Injunction.

This Temporary Restraining Order will be effective until ~~May ___, 2007 at ____ p.m., and no longer~~, *hearing on Preliminary Injunction* without further notice of this Court. This case is set for a further status hearing on ~~May~~, *June* _11_, 2007 at _10:00_ *am*. Presentation of the Preliminary Injunction is set for *June 18* 2007 at _1:30_ *p.m.* at the Circuit Court of Cook County in the Richard J. Daley Center Chicago, Illinois.

ENTERED:

ENTERED
JUDGE KATHLEEN M.
MAY 23 2007

_____
Circuit Court of Cook County Judge

Dated: _____

Time: _____

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| TOUHY & TOUHY, Ltd.,<br>**a professional corporation,**<br><br>Plaintiff,<br><br>v.<br><br>**ERIK H. LANGELAND and**<br>**ERIK H. LANGELAND, P.C.**<br>**a professional corporation,**<br><br>Defendants. | FILED: MAY 21, 2008<br>08CV2950     TC<br>JUDGE HOLDERMAN<br>MAGISTRATE JUDGE ASHMAN<br><br>No. |

**TOUHY & TOUHY, Ltd.,**
**a professional corporation,**

      **Plaintiff,**

**v.**

**ERIK H. LANGELAND and**
**ERIK H. LANGELAND, P.C.**
**a professional corporation,**

      **Defendants.**

## COMPLAINT

### Jurisdiction

1.    This court has jurisdiction under 28 USC §1332. Plaintiff is a corporation incorporated under the laws of the State of Illinois having its principal place of business in the State of Illinois. Defendant Erik H. Langeland is a citizen of the State of New York and is a corporation incorporated under the laws of the State of New York having its principal place of business in the State of New York. The matter in controversy, exclusive of interest and costs, exceeds $75,000.00.

### Venue

2.    Venue is proper in the Northern District of Illinois, as a substantial part of the relevant acts of fiduciary breach giving rise to these claims, as well as the damage sustained by the plaintiff, occurred in the Northern District of Illinois; a substantial part of the property and contracts involved are found in the Northern District of Illinois; and the execution and performance of relevant agreements were to occur in this judicial district.

1

## The Parties

3.     That at all times mentioned herein, the plaintiff, TOUHY & TOUHY, LTD. (The

Touhy firm or Touhy & Touhy, Ltd.) was a professional corporation with its principal place of

business in Cook County, Illinois.  Its principals, Timothy J. Touhy and Daniel K. Touhy are

licensed attorneys practicing law in the State of Illinois.

4.     That at all times mentioned herein, the defendant ERIK H. LANGELAND was a

citizen of the State of New York and an attorney licensed in the state of New York. That at all times

mentioned herein, the defendant ERIK H. LANGELAND, P.C., was a professional corporation

incorporated in the state of New York with its principal place of business in New York.

("Langeland" refers to ERIK H. LANGELAND and ERIK H. LANGELAND, P.C.).

5.     Plaintiff does not allege that the combination of two or more persons in this case

occurred between Erik H. Langeland, individually and Erik H. Langeland, P.C.  This action is

brought against Langeland for tortious conduct performed by Langeland against the plaintiff for

conversion, interference with prospective economic advantage, aiding and abetting a breach of

fiduciary duty, Langeland's own fiduciary breach and fraud.

6.     Stephan, Zouras and StephanZouras, LLP, named in this complaint, are not made

parties to this action because they cannot be made parties without depriving this court of jurisdiction.

The absence of these persons will not prevent the court from providing complete relief nor impair

the interests of any named or unnamed party.

## Touhy Firm Employees

7.     On and before May 21, 2007 RYAN STEPHAN (Stephan) and JAMES ZOURAS

(Zouras) were employed as attorneys for the plaintiff, Touhy & Touhy, Ltd.  Stephan had been

2

employed by the plaintiff for not less than four years and Zouras had been employed for not less than 10 years.

### Stephan and Zouras' Scheme

8.    The Touhy firm is an Illinois Professional Corporation engaged in the practice of law in Illinois. One of the Touhy firm's specialties is representing plaintiffs in class action and collective action matters. The shareholders of the Touhy firm and Touhy & Touhy, Ltd. are Timothy J. Touhy and Daniel K. Touhy. The firm's offices are located at 161 North Clark, Suite 2210, Chicago, Illinois 60601.

9.    Stephan and Zouras are licensed attorneys, who were employed full-time up to May 21, 2007 by the Touhy firm to practice law on behalf of the Touhy firm, for which they received salaries from the Firm. Stephan and Zouras are both residents of Cook County and citizens of Illinois.

10.    STEPHANZOURAS, LLP is an Illinois limited liability partnership formed on March 14, 2007 for the purpose of practicing law, with offices at 205 North Michigan Ave., Chicago and with a registered agent at 431 S. Dearborn, Unit 1001, Chicago. The principals of STEPHANZOURAS, LLP. are Ryan Stephan and James Zouras.

11.    While working for the Touhy firm, Stephan and Zouras hatched a plan to stay employed with the Touhy firm while they set up their new law firm, using the Touhy firm's resources and confidential data to solicit the Touhy firm's current and prospective clients, all for the benefit of their new law firm, STEPHANZOURAS., LLP.

12.    Between November 2006 through April 2007 Langeland was aware that Stephan and Zouras were agents and fiduciaries of the plaintiff, Touhy & Touhy, Ltd. and that any referral of

3

clients or cases by them were made on behalf of their principal, the plaintiff, Touhy & Touhy, Ltd.

13.     While employed by the Touhy firm, Stephan and Zouras secretly solicited and represented clients, purportedly on behalf of the Touhy firm but without the Touhy firm principals' knowledge or authorization.  Stephan and Zouras committed one or more of the wrongful acts causing injury to the plaintiff as set forth in the Verified Third Amended Complaint and Verified Third Amended Count III, attached as Exhibits 1 and 2.  Stephan and Zouras enlisted Langeland, who assisted them in their scheme.

### Langeland's participation concerning Steven Yang

14.     On or about November 3, 2006 Steven Yang submitted an inquiry to the Touhy firm's website, TouhyLawcom. Stephan retrieved this email and responded to Yang 's inquiry using the Touhy firm's email and phones on November 6, 2006.

15.     Stephan used the Touhy firm's email and phones to call Langeland, send Langeland a Touhy firm questionnaire and a client agreement.  In this email to  Langeland Stephan stated, "Please find attached draft sign up forms and questionnaires for Steven Yang." Both Langeland and Stephan were aware that this prospective client contacted the Touhy firm through its website.

16.     Langeland and Stephan agreed to modify the Touhy firm questionnaire by changing the name of the firm on this questionnaire from"Touhy & Touhy, Ltd." to "Erik H. Langeland, P.C." and substituting Langeland's address for the Touhy firm's address.  Langeland then sent the Touhy firm questionnaire to this prospective client which document reflected the law firm as Langeland's firm rather than the Touhy firm.

4

17.    On December 13, 2006 Langeland filed an action on behalf of this prospective Touhy firm client, *Yang et al v. New York Mortgage Company, LLC.*, No. 1:06-cv-14429, which case was filed in the U.S. District Court in New York.

18.    Langeland, who had acted as co-counsel in other cases with the Touhy firm as set forth herein, knew that Stephan and Zouras were Touhy firm employees and, as such, had a fiduciary duty to the Touhy firm between 2004 and thereafter.  The prospective economic relationship with the Touhy firm was created between Yang and the plaintiff's fiduciary Stephan.

19.    Between November 2006 through April 2007 Langeland was aware of the existence of the agreement and the prospective economic advantage between the plaintiff and Yang. Langeland, Stephan and Zouras were all aware that this was a Touhy firm prospective client.

20.    At no time between November 21, 2006 through May 21, 2007 did Langeland have the permission of the plaintiff principals to represent Yang or act on behalf of the plaintiff Touhy & Touhy, Ltd., nor did Langeland disclose his involvement in this case to the Touhy firm principals.

21.    In fact, Langeland communicated with Stephan and Zouras through Stephan and Zouras' personal Yahoo email addresses rather than Stephan and Zouras' Touhy firm email at rstephan@touhylawcom and jzouras@touhylawcom.

### Langeland's participation concerning Steven Ferko

22.    On or about November 21, 2006 there was a valid, written contingent fee agreement for legal services between plaintiff and its client Steven Ferko which constituted a prospective economic advantage to the plaintiff.

23.    The prospective economic relationship between Ferko and the plaintiff existed in Cook County, Illinois.

5

24.     Langeland agreed with Stephan and Zouras to sign an attorney-client agreement with the Touhy firm to represent Ferko, which agreement was dated February 9, 2007 and signed by Langeland on or about March 29, 2007.

25.     By signing this agreement, Langeland knew that the Touhy firm was still entitled to 66% of the attorneys' fees from this client's claim. As co-counsel with the Touhy firm, Langeland owed a fiduciary duty to the Touhy firm of honesty, good faith and fair dealing.

26.     Langeland agreed with Stephan and Zouras to take the attorneys' fees due the Touhy firm from this case and give $40,716.16 to Stephan and Zouras from Langeland's client trust account.

27.     Between November 2006 through April 2007 Langeland was aware of the existence of the agreement and the prospective economic advantage between the plaintiff and Ferko.

28.     Langeland, Stephan and Zouras were all aware that this client was represented by the Touhy firm and that the attorneys' fees were Touhy firm property.

29.     Between November 2006 through April 2007 Langeland was aware that any attorneys' fees generated by the referral of cases from Stephan and Zouras were the property of the plaintiff, Touhy & Touhy, Ltd. Langeland was aware that any attorneys' fees recovered as a result of the representation of the Touhy firm client Steve Ferko were the property of the property of the plaintiff, Touhy & Touhy, Ltd..

30.     Between November 2006 and April 2007 Langeland, Stephan and Zouras agreed among themselves to take monies from the Ferko settlement proceeds and conceal this fact from the Touhy firm.

31.     Langeland agreed with Stephan and Zouras to negotiate a settlement in Steve Ferko's

6

case and withhold this information from the Touhy firm.  Langeland did not communicate with the Touhy firm client Ferko directly, but communicated with Ferko through Stephan.  Langeland knew Stephan was a Touhy firm employee and knew Ferko was a Touhy firm client.

32.     Langeland  took control, dominion and ownership of the personal property of the plaintiff, Touhy & Touhy, Ltd.. specifically, attorneys' fees from the Steve Ferko action in the approximate sum of $63,750.00, which Langeland deposited in his firm trust account at Green Point Bank.

33.     Langeland paid Touhy firm attorneys fees to Stephan and Zouras from the Ferko settlement, giving each of them a check in the amount of $20,358.08 drawn on Langeland's bank, Green Point Bank, which checks were dated April 23, 2007.  Langeland wrote these checks to Stephan and Zouras in their names and indicated on the face of these checks that these monies were payment from the Ferko case.

34.     Langeland did not have permission or authorization of the Touhy firm principals to exercise ownership or control over any attorneys' fees from the Steve Ferko action by depositing these funds in his account or paying these funds to Stephan and Zouras. Langeland knew that Stephan and Zouras were not authorized to take these Touhy firm monies at the time he issued the two checks to Stephan and Zouras in their own names.  Stephan and Zouras deposited these checks in bank accounts held in their names or the names of Stephan Zouras, LLP.

**Langeland's participation concerning Gerald Bouthner**

35.     On or about February 6, 2007 Gerald Bouthner submitted an inquiry to the Touhy firm's  website, TouhyLawcom. Stephan retrieved this inquiry and responded to Bouthner from the Touhy firm's email and phones on February 6, 2007.

36.     Stephan called Langeland in February 2007 and then used the Touhy firm email to send Langeland a Touhy firm questionnaire and client agreement. Both Langeland and Stephan were aware that this prospective client contacted the Touhy firm through its website.

37.     Both Langeland and Stephan modified the Touhy firm class representative agreement by adding Langeland's name to the Touhy & Touhy, Ltd. agreement and having the modified agreement signed by Bouthner.

38.     Langeland, as co-counsel under this agreement, owed a fiduciary duty to the Touhy firm of honesty, good faith and fair dealing.

39.     In or about March and April 2007 Langeland filed an appearance on behalf of this prospective Touhy firm client, *Bouthner et al v. Amtrust*, which case was filed in the U.S. District Court in Georgia. Langeland, who had acted as co-counsel in other cases with the Touhy firm, knew that Stephan and Zouras had concealed their actions involving Bouthner from the Touhy firm principals in violation of their fiduciary duty to the Touhy firm.

40.     Both Stephan and Zouras filed papers in the matter of *Bouthner v. Amtrust Mortgage Corp.,* 07 CV 0566, in Federal Court in the Northern District of Georgia, in their own names, naming the Touhy firm as their principal. The prospective economic relationship was created between Bouthner and the plaintiff's fiduciary, Stephan. In doing so, they bypassed Touhy firm procedures that require all cases in which the Touhy firm is representing a client to be entered promptly in the firm's computer system and a paper file and docket created. Stephan and Zouras also failed to follow Touhy firm procedures that require attorneys opening new matters to prepare firm open file memos and to docket the case on the Firm's computer calendar system, so that the firm can monitor its cases.

8

41.     Langeland, Stephan and Zouras were all aware that this client had signed an agreement with the Touhy firm and that Stephan and Zouras were acting as fiduciaries of the Touhy firm at the time the agreement was signed and to May 21, 2007.

42.     At no time did Langeland have the permission of the Touhy firm principals to represent Bouthner or act on behalf of the plaintiff Touhy & Touhy, Ltd., nor did Langeland disclose his involvement in this case to the Touhy firm principals, that he had signed an agreement with Bouthner, signed a co-counsel agreement with counsel in Georgia or that he intended to act as co-counsel for the purpose of assisting Stephan and Zouras in committing fiduciary breaches.

### Langeland's participation concerning other fiduciary breaches

43.     Not only was Langeland aware of Stephan and Zouras's fiduciary breaches in Ferko, Bouthner and Yang, but Langeland also assisted Stephan and Zouras in these wrongful acts by allowing them to convert Touhy firm funds in Ferko.  Langeland also aided and abetted Stephan and Zouras in their scheme in the cases of Jameel Shabazz v Morgan Funding, Marc Borowsky v. IBM, Colford/Wright v. H&R Block and other cases.  Langeland, Stephan and Zouras had reached an understanding among themselves to divide fees under an agreement in which each Langeland, Stephan and Zouras would receive one-third of the fees in the IBM overtime cases, Yang v. NYMC and Shabazz v Morgan Funding. Langeland furthered these fiduciary breaches by communicating with Stephan and Zouras by Yahoo email; modifying Touhy firm forms and contracts, concealing his representation in these cases, agreeing to file pro hac vice motions in IBM, Yang and Shabazz.

44.     During this time period, Langeland agreed with Stephan and Zouras, and, in fact,

9

provided substantial assistance to Stephan and Zouras in a number of cases, which cases or clients had been concealed from the Touhy firm by Langeland, Stephan and Zouras, including Borowsky v. IBM; Yang v. NYMC and Shabazz v Morgan Funding.

45.    The communication among Langeland, Stephan and Zouras disclosed that Langeland had acted in combination with Stephan or Zouras, or both, for the purpose of accomplishing an unlawful purpose, including conversion and fiduciary breach.  Langeland, Stephan and Zouras committed these acts of conversion, fiduciary breach and fraud in furtherance of their agreement to advance their common scheme.  For example, on February 15, 2007 Stephan used his personal Yahoo account to email Langeland concerning the Borowsky case, telling Langeland that "JZ and I will handle all the work on the Touhy end."  In this email, Stephan clarified that there was an agreement among Langeland, Stephan and Zouras, telling Langeland that "No matter what, I suggest that the triumvirate (EL; JZ; RS) captain the ship and keep the pressure on Lampe."

46.    Langeland was attempting to conceal the actions of Stephan and Zouras from the Touhy firm, as well as conceal Langeland's own actions.  On February 20, 2007 Stephan used his personal Yahoo account to email Langeland and state "Erik, please respond to the emails JZ and I sent you regarding the proposed agreements on WFI and our "global agreement." Langeland sent Stephan an email,  in reply, concerning the Borowsky matter, stating "As for the split, does it make sense to get an agreement simply between me and McInerney?"  It was Langeland's intention to conceal the participation of Stephan and Zouras by making an agreement with McInerney that did not disclose that Stephan and Zouras stood to profit from it.

47.    Between 2006 and May 2007 Langeland attempted to conceal his actions from the

Touhy firm principals and conceal the actions of Stephan and Zouras by sending emails to Stephan and Zouras at their Yahoo addresses.  Langeland, who was involved in cases with the Touhy firm and Touhy firm principal Daniel K. Touhy as co-counsel, was aware that Stephan and Zouras used Touhylaw email addresses in these cases.  Langeland was always aware that Stephan and Zouras were agents and fiduciaries of the plaintiff, Touhy & Touhy, Ltd. and that any referral of clients or cases was made on behalf of their principal, the plaintiff, Touhy & Touhy, Ltd.

48.     Langeland intentionally avoided sending any communications to the Touhy firm principals or Stephan and Zouras at the Touhylaw email. Langeland had been communicating with Daniel K. Touhy, Stephan and Zouras using their Touhylaw email addresses since 2004.  As of May 2007 Langeland had sent Stephan and Zouras hundreds of emails to them at their Touhylaw email addresses, only using their Yahoo addresses when Langeland was attempting to conceal matters from the Touhy firm principals.

49.     Langeland aided Stephan in January 2007 in Stephan's attempt to secretly subscribe to LegalMatch.com, without the consent or knowledge of the Touhy firm.  Langeland agreed with Stephan to price LegalMatch subscriptions on the eastern seaboard as part of the global agreement. Stephan did appropriate a LegalMatch.com subscription which was opened in 2006 and paid for by the Touhy firm, which account was returned to the Touhy firm by order of the Circuit Court of Cook County in February 2008.

50.     Langeland played an active role in Stephan and Zouras's overall scheme and tortious activity, which scheme was in progress at least from 2006 through May 21, 2007 and thereafter. Langeland knowingly and substantially assisted Stephan and Zouras in committing the fiduciary

breaches set forth in Exhibits 1 and 2. Langeland's assistance came in the form of agreements and overt acts of concealment calculated to keep these matters secret from the Touhy firm principals. To avoid disclosure of Stephan, Zouras and Langeland's acts of conversion and breaches of fiduciary duty to the Touhy firm principals, Langeland acted as a conduit to make direct payment of Touhy firm monies to Stephan and Zouras. Langeland attempted to conceal his actions from the Touhy firm principals after May 2007, refusing to provide the Touhy firm principals with emails, checks or disbursement statements involving Stephan and Zouras unless the Touhy firm released Langeland from liability.

51.     That the existence of the prospective economic relationships aforesaid imposed a duty on ERIK H. LANGELAND and ERIK H. LANGELAND, P.C and Stephan and Zouras not to interfere with the plaintiff's prospective economic advantage nor interfere with the relationship between the plaintiff and prospective clients or attempt to assist Stephan and Zouras for the purpose of competing with the plaintiff's law firm.

52.     By the acts and agreements described herein, Langeland combined with Stephan, or Zouras or both Stephan and Zouras, for the purpose of accomplishing, by concerted action, conversion, breach of fiduciary duty, interference with prospective economic advantage and fraud. Langeland, by his own acts, converted Touhy firm funds, breached his fiduciary duty to the Touhy firm, interfered with the firm's prospective economic advantage, and committed fraud.

53.     That as a direct and proximate result of one or more of the foregoing acts of Langeland, the plaintiff was deprived of its property and right to monies and otherwise injured as described herein.

12

54. The defendants' pecuniary gain was a significant motive for the solicitation of the plaintiff's client and the action aforesaid.

55. That all of the acts of Langeland aforesaid were committed without lawful justification or consent of the plaintiff and were committed knowingly, intentionally and with the malicious intent to convert the property of the plaintiff to their own use, permanently deprive the plaintiff of its property, prospective clients and honest services of its employees Stephan and Zouras.

56. Langeland, Stephan and Zouras made other agreements with each other involving WFI derivative cases, Equity One, and a case against IBM in California. Langeland agreed to provide Stephan case materials from Yang v. NYMC, Shabazz v Morgan Funding, Marc Borowsky v. IBM and Ferko to further this scheme. Langeland, Stephan and Zouras agreed to arrange a meeting together which was scheduled in February or March 2007 to accomplish their goal of concealing cases and clients from the Touhy firm and arranging to have the Touhy firm discharged by these clients and hire Langeland, Stephan and Zouras.

**Langeland's acts of Fraud and Misrepresentation while Fiduciary of Touhy Firm**

57. Langeland had acted as co-counsel in other cases with the Touhy firm from 2004 to May 21, 2007 pursuant to written co-counsel agreements or as c-counsel in which the Touhy firm and Langeland represented client jointly. Among these cases were *Casale v. Provident Bank and Home 1-2-3 Corporation*, No. 04-2006; *Armstrong v. Weichert*, 05-cv-3120; *Billman v. National City Bank*, 1:06cv138, and *Chemi v. Champion Mortgage*, No. 2:05-cv-238. The existence of these fiduciary relationships imposed a duty on Langeland to disclose any dealings with Stephan Zouras, or clients and disclose any misconduct by the Touhy firm's employees, division of attorneys' fees from Touhy firm cases, or Langeland own fiduciary breaches to the Touhy firm principals.

13

58.     The Touhy firm principals did not possess information sufficient to determine Langeland's participation in Touhy firm cases involving Ferko, Yang, and Bouthner.  This lack of knowledge of the Touhy firm principals was due in large part to Langeland's assistance and own actions in concealing these cases and the actions of Stephan, Zouras and himself from the Touhy firm as described in paragraphs 30 through 34 and 43 through 50.

59.     Langeland actively concealed from the Touhy firm principals the communications he was having with Stephan and Zouras using their Yahoo addresses, his execution of a co-counsel agreement and appearance in Bouthner, his 'global agreement' with Stephan and Zouras, participation and conversion of the Ferko attorneys' fees as described in paragraphs 29 to 34.

60.     Langeland, by his words and acts, misled the Touhy firm principals by one or more of the following:

A.  In July and August 2007 told the Touhy firm principals that he had not participated in the Ferko deception, telling the Touhy firm principals that he believed the Ferko attorneys' fees were the property of the Touhy firm although Langeland had already disbursed money to Stephan and Zouras;

B.  In July and August 2007 told the Touhy firm principals that he had not reached any agreement with Stephan and Zouras concerning Borowsky, Yang and Shabazz when in fact he had;

C.  In July and August 2007 told the Touhy firm principals that he had not executed any agreement involving Gerald Bouthner, when, in fact, Langeland had executed an agreement on March 14, 2007, which agreement had already been executed by Stephan on March 8, 2007 as agent and fiduciary of the Touhy firm;

14

D. Did not disclose to the Touhy firm principals that he had drafted or approved an agreement in which the attorneys' fees from Ferko would be paid directly to Langeland;

61. At no time did he disclose to the Touhy firm principals that he had filed an action on behalf of Steven Yang or that he knew Yang was a Touhy firm website inquiry;

62. Did not disclose to the Touhy firm principals that in December 2006 he had changed Touhy firm forms which Steven Yang completed and returned to Langeland for the purpose of Langeland representing Yang.

63. In July and August 2007 withheld information from the Touhy firm principals that he discussed or agreed with Stephan and Zouras to send them the case numbers on Shabazz and received 'general letters' from Stephan to send out on these cases.

64. In July and August 2007 withheld information from the Touhy firm principals that he had executed an agreement on March 29, 2007 in which Langeland was to receive 33% from Ferko;

65. Did not disclose to the Touhy firm principals that in February 2007 he had prepared, or agreed to provide Stephan and Zouras with pro hac vice appearances which they would file in IBM, Yang and Shabazz;

66. Did not disclose to the Touhy firm principals that in February 2007 he was scheduling a meeting with Stephan and Zouras in Miami to "hash out our ideas for the future."

67. At no time did Langeland disclose to the Touhy firm principals that he was sending Stephan copies of pleadings in NYMC, IBM, Ferko, Alyssa York, Shabazz, and H&R Block to Stephan's Yahoo email;

68. At no time, up to the present, did Langeland disclose to the Touhy firm principals

Case 1:08-cv-02850   Document 1-5   Filed 05/21/2008   Page 17 of 85

that he, Stephan and Zouras had reduced the amount of recoverable fees owed the Touhy firm by at least $15,000;

69.     At no time did Langeland disclose to the Touhy firm principals that he had received or sent a demand letter on Ferko which Stephan had sent to Langeland in December 2006 from Stephan's Yahoo email.

70.     It was Langeland's intent, by these acts of concealment, misrepresentations or omissions by silence by Langeland, a fiduciary, to prevent the Touhy firm principals from learning of the acts of fiduciary breach described herein.

71.     The Touhy firm and its principals relied on Langeland's statements and omission and therefore took no action to recoup the Ferko attorneys' fees or take action to prevent the continuing fiduciary breaches of Stephan, Zouras and Langeland.

72.     The Touhy firm and its principals relied on Langeland's acts of concealment, misrepresentations and omissions by silence in connection with the cases and conduct described in this complaint to their detriment, thereby sustaining damage based on such reliance as set forth herein.

73.     As a direct and proximate result of Langeland's misrepresentations, actions and omissions  the Touhy firm has incurred one or more of the following revenue, losses and consequential damages:

74.     Attorneys' fees recovered or generated by IBM, Ferko, Borowsky Alyssa York, Shabazz, Yang, Bouthner, H&R Block and other cases or prospective clients;

16

75.     Cost of computer technicians and consultants, forensic testing Touhy firm computers and installation of recovery programs for the purpose of identifying emails and  data which were deleted or removed concerning Ferko, Yang, Borowsky, Shabazz, Bouthner and other cases concealed from the Touhy firm.

76.     Cost of forensic computer services to restore concealed and deleted data including word processing documents and emails;

77.     Cost of security investigators for the purpose of restoring emails deleted by Stephan and Zouras and having these emails individually reviewed in order to reconstruct these data and information to its condition prior to the actions of Langeland, Stephan and Zouras.

78.     Attorneys' fees and court costs incurred by Plaintiff for the institution of legal proceedings to obtain injunctive relief, including impounding hardware containing Touhy firm data;

79.     The revenue and goodwill lost by the Touhy firm as a result of the fraud, fiduciary breaches and interference with prospective economic advantage in which Langeland participated.

WHEREFORE, the plaintiffs demand judgment against the defendants, ERIK H. LANGELAND and ERIK H. LANGELAND, P.C., jointly and severally, for compensatory and punitive damages and costs of this suit.

**Jury Demand**

Plaintiff demands a trial by jury of any issue triable of right by a jury by filing this demand

which is indorsed upon the plaintiff's complaint.


Date:   May 21, 2008                          Respectfully submitted,


                                              /s/E. Steven Yonover
                                              E. Steven Yonover
                                              161 North Clark Street
                                              Suite 2210
                                              Chicago, Illinois 60601
                                              (312) 236-9493
                                              (847) 205-0022

                                              Attorney for Plaintiff

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TOUHY & TOUHY, LTD., an Illinois Professional Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 07 CH 13552 |
| | ) |
| RYAN F. STEPHAN, JAMES B. ZOURAS and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership, | ) |
| | ) |
| | ) |
| Defendants. | ) |

### NOTICE OF FILING

TO:    Bradley K. Staubus
       134 N. LaSalle Street
       Suite 500
       Chicago, Illinois 60602

Please take notice that on December 5, 2007, the attached VERIFIED THIRD AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF were filed with the Clerk of the Circuit Court of Cook County at the Richard J. Daley Center, 50 West Washington Street, Chicago, Illinois.

_____
One of the Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

I, the undersigned, certify that a copy of the foregoing notice and attached were served upon the above-named attorney(s) of record on this 5th day of December, 2007, by: [] hand-delivery; [] facsimile; [X] email and/or [X] by placing a copy in pre-paid envelope and depositing the same in the U.S. Mail.

_____

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 5TH DAY OF
DECEMBER, 2007.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
Pamela D. Kilby
Notary Public, State of Illinois
My Commission Exp. 04/21/2009

**Plaintiff Exhibit 1_000001**

Michael J. O'Rourke
O'Rourke Katten & Moody
161 North Clark Street, Suite 2230
Chicago, Illinois  60601
(312) 849-2020
Attorney No.  42263

Robert Orman
Law Offices of Robert Orman
One North LaSalle Street
Suite 1775
Chicago, Illinois 60602
(312) 372-0515
Atty No.  22696

**Plaintiff Exhibt 1_000002**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TOUHY and TOUHY, LTD., an Illinois Professional Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    Case No. 07 CH 13552 |
| RYAN F. STEPHAN, JAMES B. ZOURAS, and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership, | ) |
| | ) |
| Defendants. | ) |

## VERIFIED THIRD AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES Plaintiff, Touhy and Touhy, Ltd., ("Touhy" or the "Firm"), by its undersigned attorneys, with this action for injunctive and other relief against Defendants Ryan F. Stephan, James B. Zouras and Stephan & Zouras, LLP ("STEPHANZOURAS"), and in support thereof, alleges as follows:

### THE PARTIES

1.    Plaintiff Touhy is an Illinois Professional Corporation engaged in the practice of law in Illinois. One of Touhy's specialties is representing plaintiffs in class action and collective action matters. The shareholders of Touhy and Touhy, Ltd. are Timothy Touhy and Daniel Touhy. Touhy's offices are located at 161 North Clark, Suite 2210, Chicago, Illinois 60601.

2.    Defendants Stephan and Zouras are licensed attorneys, who were employed full-time up to May 21, 2007 by Touhy to practice law on behalf of Touhy, for which they received salaries from the Firm. Stephan currently resides at 1701 N. Damen, Unit #304, Chicago, and

**Plaintiff Exhibt 1_000003**

has worked for the Firm for approximately four years. Zouras currently resides at 431 S. Dearborn, Unit 1001, Chicago and has worked for the Firm for approximately ten years.

     3.     Defendant STEPHANZOURAS is an Illinois limited liability partnership formed on March 14, 2007 for the purpose of practicing law, with offices at 205 North Michigan Ave., Chicago and with a registered agent at 431 S. Dearborn, Unit 1001, Chicago. On information and belief, since the formation of STEPHANZOURAS, Defendants Stephan and Zouras have been partners and agents of STEPHANZOURAS, acting on their own behalf and on STEPHANZOURAS's behalf with respect the action alleged herein.

**VENUE**

     4.     Venue is proper in the Circuit pursuant to 735 ILCS 5/2-101 because the transactions out of which these causes of action arose occurred in Cook County.

     5.     Venue is proper in Chancery Court because the Plaintiff Touhy seeks injunctive relief.

**DEFENDANTS' SURREPTITIOUS ACTIVITIES AND THEFT OF CONFIDENTIAL DATA**

     6.     At some point during between 2005 and May 2007, Defendants Stephan and Zouras decided to leave Touhy's employment, start their own law firm and solicit Touhy firm clients and contacts. In furtherance of these intentions, Stephan and Zouras established Defendant STEPHANZOURAS to compete with Touhy.

     7.     While working for the Touhy firm, Defendants Stephan and Zouras hatched a plan to stay employed with Touhy while they set up their new law firm, in order to use Touhy's resources and confidential data and solicit Touhy's current and prospective clients, all for the benefit of their new law practice, STEPHANZOURAS.

2

8.      While employed by Touhy, Defendants Stephan and Zouras secretly solicited and represented clients, purportedly on behalf of Touhy but without Touhy's knowledge or authorization.  For example, on April 27, 2007, both Stephan and Zouras filed papers in the matter of *Bouthner v. Amtrust Mortgage Corp.,*  07 CV 0566, in Federal Court in the Northern District of Georgia, in their own and *Touhy's name*.  In doing so, they bypassed Firm procedures that require all cases in which the Firm is representing a client to be entered promptly in the Firm's computer system and a paper file and docket created.  Defendants Stephan and Zouras also failed to follow Firm procedures that require attorneys opening new matters to prepare Firm open file memos and to docket the case on the Firm's computer calendar system, so that the Firm can monitor its cases.

9.      Dan Touhy learned about the Defendants' illicit representation of Bouthner when the Firm received correspondence from the clerk of the court of the Northern District of Georgia concerning the Defendants motions for admission *pro hac vice.* Subsequent to the receipt of the unauthorized filings, Dan Touhy asked Defendant Zouras if he had heard of the "Bouthner" case; Defendant Zouras stated that he had not, in an attempt to conceal his surreptitious representation of Bouthner.

10.      On information and belief, Defendants Stephan and Zouras were introduced to the clients and prospective clients that they have secretly solicited by virtue of their employment with Touhy.  For example, on October 1, 2006, a prospective client named Stephen Ferko executed two separate Firm "Client Representation Agreements", wherein he agreed to be represented by Touhy in a class action and in a second, individual claim involving a dispute with his employer. The Defendant Stephan was aware of this second claim and was overseeing it.  A

3

**Plaintiff Exhibt 1_000005**

file for Mr. Ferko's individual claim was never opened up on the Firm's system, nor was a paper file created or the matter docketed with the Firm.

11.     Touhy's financial data is kept in a Quicken software program on the Firm's server.  Access to this confidential data is limited to shareholders Tim Touhy, Dan Touhy and Dan's secretary, Sandy Robinson.  Access is permitted only for specific case related print-outs or information.  On or about April 12, 2007, Defendant Zouras accessed Touhy's secure client financial accounts on its computer system from Ms. Robinson and instructions on how to print "cost and expense" reports from the Firm accounts.  Zouras obtained this information on the pretense that he wanted to print the cost and expense report for the "Michaels v. Dynaprop" case, a matter that Zouras was working on for the Firm.  Because Defendant Zouras made the request at the end of the day Ms. Robinson was exiting the offices and gave him the password for the limited purpose of printing the Michaels cost and expense report.

12.     Mr. Zouras violated Ms. Robinson's trust and used the password to access the account to print out confidential client expense data for at least 10 matters that Touhy attorneys, including Defendants Stephan and Zouras, have been working on.  He did so without authorization from either the Firm or the respective clients.  He did not print out the Michaels' cost and expense report.

13.     As evidenced above, from 2005 to May 2007 Defendants Stephan and Zouras, while employed by Touhy, have used Touhy resources and confidential information to compete directly with Touhy.  Touhy discovered the Defendants' duplicity prior to May 21, 2007, and its investigation is ongoing; the Firm anticipates uncovering numerous other examples of the Defendants misappropriating Firm resources to solicit Firm clients and compete directly with the

4

Firm and other fiduciary breaches, all while Defendants Stephan and Zouras were employed by the Firm and drawing a salary from the Firm. The Defendants actions include:

A. Intercepting mail, faxes and documents delivered to the Touhy firm offices before these pleadings, correspondence and data could be entered in the firm files and data base

B. Copying confidential file data without the consent of the firm or the client onto an external hard drive and copying this data onto defendants' laptop and office server

C. Planning and orchestrating an ongoing to plan to limit or deprive Touhy firm employees from accessing or performing case work on clients and cases defendants intended to solicit from the Touhy firm.

D. Using Touhy firm computers, internet and on Touhy firm time conducted mapquest searches and legal research as a means of competing with the Touhy firm prior to defendants' termination

E. Falsifying reasons that defendants could not perform work on assigned firm cases in order to advance their own economic interest

F. Attempting to reach understandings with Touhy firm co-counsel on cases which defendants had concealed from the Touhy firm intended to solicit from the Touhy firm

G. Engaged in secret communications with Erik Langeland, Ken Levinson, John Tostrud, Hector Vargas, Mary Stecyna, William Slover, Jules Smith, Craig Fitzgerald and Michael Jibben for the purpose of referring, litigating or settling cases without the Touhy firm's knowledge.

H. Moved into the suite of their competing firm, Stephanzouras LLP, at 205 North Michigan on Touhy firm time and intended to work in their suite on firm time during May 2007

I. Modifying Touhy firm forms identifying Erik Langeland as co-counsel in order to divert Touhy firm client Gerald Bouthner to Langeland and conceal this fact from the Touhy firm.

14. Touhy has an ongoing investigation of the Defendants' malfeasance and fiduciary violations. The Firm retained an IT consultant to conduct a forensic analysis of the Firm's computers and server to determine the extent of the Defendants' misappropriation of the Firm's and its clients' confidential data, and to secure the data on the computers against further theft.

**Plaintiff Exhibt 1_000007**

15. The IT consultant has found that, between May 15 and May 21, 2007, Defendants Zouras and Stephan downloaded onto separate and removable storage discs or external hard drives thousands of documents belonging to the Firm, including but not limited to case files, excel spread sheets with client names, addresses and emails, office forms, pleadings and correspondence in cases, co-counsel names and addresses of numerous other documents in the Firm's possession. Zouras and Stephan took this information and copied it onto a laptop and server at the offices of STEPHANZOURAS on May 20, 2007.

16. Defendants Stephan and Zouras concealed cases and clients, concealed a settlement of Touhy firm clients David Darwin, Steven Ferko, Jules Smith and engaged in self-dealing by using internet sites to solicit clients, including Touhy & Touhy, Legal Match and Find Law. When Touhy learned of these improper actions the Defendants denied or concealed them.

## COUNT I
### Breach of Fiduciary Duty
(Against Stephan and Zouras)

1. Plaintiff Touhy, as and for paragraph 1 of Count I, re-allege paragraphs 1-16 as though fully set forth herein.

2. As part of their responsibilities during the time they were employed by Touhy, Defendants Stephan and Zouras owed the Touhy firm and its clients a fiduciary duty of loyalty and good faith.

3. As described more fully above, Defendants Stephan and Zouras breached their fiduciary duties by soliciting for their own benefit and the benefit of Defendant STEPHANZOURAS current and prospective Touhy clients with the intent of establishing an attorney-client relationship with these individuals and persuading these clients to discharge the Touhy firm and hire STEPHANZOURAS.

6

**Plaintiff Exhibit 1_000008**

4.     As described more fully herein, Defendants breached their fiduciary duty by using Touhy's name and resources in their solicitation of Touhy clients, without informing Touhy of their actions or obtaining authorization for their actions, not disclosing business appointments, competing with the Touhy firm and self-dealing.

5.     As described more fully herein, Defendants Stephan and Zouras further breached their fiduciary duties toward Touhy by taking confidential data from Touhy, with the intent of assisting their efforts to interfere with the Touhy firm prospective economic expectancy with these clients and bring Touhy clients with them to STEPHANZOURAS. This conduct included one or more of the following acts or omissions:

A.     Prior to May 21, 2007 Stephan and Zouras placed their own individual interests above that of the Touhy firm or its principals Prior to May 21, 2007 Stephan and Zouras placed their own individual interests above that of the Touhy firm or its principals on one or more occasions by engaging in one of more of the acts alleged herein.

B.     Subscribed to LegalMatch in April 2006 while they were employees and fiduciaries of the Touhy firm.

C.     Subscribed to LegalMatch in February 2007 while they were employees and fiduciaries of the Touhy firm.

D.     Secretly signed a subscription to LegalMatch for their own economic benefit on or about February 10, 2007.

E.     Communicating with LegalMatch in October and November 2006 to expand the subscription to LegalMatch without the knowledge or consent of the Touhy firm.

F.     Appropriating the account even though the Touhy firm reimbursed Stephan for all costs incurred in connection with the Legal Match internet service.

G.     Accessing the Touhy firm LegalMatch account before and after the entry of the TRO in this case.

H.     Changing the password to the account preventing the Touhy firm from accessing its account.

I.     On April 24, 2007 Stephan sent Jacobo Rodriguez at LegalMatch from his Yahoo

7

**Plaintiff Exhibt 1_000009**

account rstephan123@yahoo.com an email requesting Rodriguez not to give the Touhy firm information to the Legal match account.

J. Stephan and Zouras operated the LegalMatch account while employees and fiduciaries of the Touhy firm for their own economic benefit on and before May 21, 2007.

6. Touhy has been and continues to be injured by these actions, the full extent of which is presently unknown but which includes the loss of current and prospective clients and confidential client and Firm information.

7. Defendants Stephan and Zouras, unless enjoined, will continue to engage in the conduct that is alleged herein, including but not limited to using the confidential client and Firm information they obtained in breach of their fiduciary duties.

8. For the reasons stated above, there is a likelihood that Touhy will prevail on the merits of this action.

9. Should this Court grant injunctive relief to Touhy, the burden on Defendants would be slight compared to the injury to Touhy if it were not granted. No legitimate injury to Defendants would result from an order requiring them to comport their actions with the law.

10. The granting of an injunction will not disserve the public interest. Indeed, injunctive relief would deter others from engaging in this kind of outrageous conduct.

WHEREFORE, for all the foregoing reasons, Plaintiff Touhy, respectfully requests that the Court grant the following relief:

A. Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, against Defendants, enjoining them from destroying or disposing of any books, records or accounts or of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

Plaintiff Exhibt 1_000010

B.  Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, against Defendants, enjoining them from withdrawing transferring or disposing of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

C.  Entry of a Preliminary Injunction and, upon final dispositions, entry of a Permanent Injunction, against Defendants, directing that they turnover all property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest, including, but not limited to, client information and confidential Firm information and any copies of the same to Plaintiff, including the return and restoration of all computer data files that Defendants destroyed or removed from Touhy's computers and server:

D.  That a judgment be entered in favor of Touhy, and against Defendants, for compensatory damages in an amount to be proved at trial;

E.  That a judgment be entered in favor of Plaintiff, and against Defendants for punitive damages in an amount to be proved at trial;

F.  Such other and additional relief as this Court may deem appropriate.

## COUNT II
### Tortious Interference with Prospective Business Advantage
### (All Defendants)

1.  Plaintiff Touhy, as and for paragraph 1 of Count II, re-allege paragraphs 1-16 as though fully set forth herein.

2.  Plaintiff Touhy had a valid business expectancy of representing the clients that Defendants solicited while Touhy firm employees.  The Defendants caused these clients to discharge the Touhy firm as their attorneys and hire the Defendants.

9

**Plaintiff Exhibt 1_000011**

3.     As described more fully above, Defendants have purposefully interfered with that expectancy by soliciting and concealing these clients with the intent to bring them to STEPHANZOURAS. Prior to May 21, 2007 Stephan and Zouras placed their own individual interests above that of the Touhy firm or its principals on one or more occasions by referring cases or taking fees that were due the Touhy firm or opportunities of the Touhy firm including one or more of the following: Jules Smith, Borowsky v IBM; Bouthner v Amtrust; Hector Vargas; Mary Stecyna; Yang v NYMC; Shabazz; Jones and Marrs v Casey's General Store; William Slover; Tracy Kobel; and David Darwin.

4.     At the time of these actions, the Defendants were employed by the Touhy firm and its fiduciaries and had no legal right to interfere with Touhy's business expectation. Notwithstanding this fiduciary duty, the defendants committed one or more of the following acts:

A.  Stephan created a "To Do" list in which he intended to copy dockets, contact prospective plaintiffs and sign up plaintiffs.

B.  Stephan planned to have Touhy & Touhy fired by Schuering in the case Genebacher v. DTI and hire the firm of Stephan Zouras.

C.  While on Touhy firm time and computers, Stephan drafted substitutions of attorneys in cases he intended to solicit.

D.  Executed co-counsel agreements with Erik Langeland and Andrew Coffman on Bouthner and concealed this fact from the Touhy firm.

E.  Stephan diverted Touhy firm emails from his Touhylaw email to his Yahoo email account and deleted the Touhylaw emails.

F.  Stephan planned and was executing his plan to "finalize" and reach agreements with other attorneys to act as co-counsel on Touhy firm cases including Casey's and WFI spin-offs.

G.  Intended to add Touhy firm clients to Stephan's list of referred case, including Chemi, Huebner and Stuart.

H.  Concealed and took no action on pending Touhy firm cases and clients, intending to contact these individuals after leaving the Touhy firm, including

10

Mary Stecyna, *Rak v. Performance Management*, Jason Goldstein, Bouthner, Chabrier and Bochicchio.

I. On May 3, 2007 Zouras prepared and subsequently mailed at least 13 letters to potential class members in the case *Chabrier v. WFI* for the purpose of soliciting these individuals and having them hire the defendants.

5.      Touhy has been and continues to be injured by these actions, the full extent of which is presently unknown but which includes the loss of current and prospective clients and confidential client and Firm information.

6.      Defendants, unless enjoined, will continue to engage in the conduct that is alleged herein, including but not limited to using the confidential client and Firm information they obtained by interfering with Touhy's valid business expectation.

7.      Based on the above, there is a likelihood that Touhy will prevail on the merits of this action.

8.      Should this Court grant injunctive relief to Touhy, the burden on Defendants would be slight compared to the injury to Touhy if it were not granted.  No legitimate injury to Defendants would result from an order requiring them to comport their actions with the law.

9.      The granting of an injunction will not disserve the public interest.  Indeed, injunctive relief would deter others from engaging in this kind of outrageous conduct.

WHEREFORE, for all the foregoing reasons, Plaintiff Touhy, respectfully requests that the Court grant the following relief:

A.      Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, against Defendants, enjoining them from destroying or disposing of any books, records or accounts or of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

11

**Plaintiff Exhibt 1_000013**

B.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a

Permanent Injunction, against Defendants, enjoining him from withdrawing transferring or

disposing of any property, whether real, personal or mixed, owned by Plaintiff or in which

Plaintiff has an interest;

C.    Entry of a Preliminary Injunction and, upon final disposition, entry of a

Permanent Injunction, against Defendants, directing that they turnover all property, whether real,

personal or mixed, owned by Plaintiff or in which Plaintiff has an interest, including, but not

limited to, confidential client and Firm information and any copies of the same to Plaintiff,

including the return and restoration of all computer data files that Defendants destroyed or

removed from Touhy's computers and servers;

D.    That a judgment be entered in favor of Touhy, and against Defendants, for

compensatory damages in an amount to be proved at trial;

E.    That a judgment be entered in favor of Plaintiff, and against Defendants for

punitive damages in an amount to be proved at trial;

F.    Such other and additional relief as this Court may deem appropriate.

## COUNT III
### Violation of the Computer Fraud and Abuse Act
### (All Defendants)

1.    Plaintiff Touhy, re-alleges as and for paragraph 1 of Count III, paragraphs 1-16

as though fully set forth herein.

2.    At all times relevant to this Complaint, there was in existence a certain statute, to-

wit:  The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et. seq.*  The CFAA

provides, in relevant part, as follows:

12

**Plaintiff Exhibit 1_000014**

Whoever ... intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage, and ...

18 U.S.C. §1030 (a)(5)(A)(iii).

by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused...
18 U.S.C. § 1030 (a)(5)(B).

loss to 1 or more person during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;...
18 U.S.C. §1030 (a)(5)(B)(i).

shall be punished as provided in subsection (c) of this section.

18 U.S.C. § 1030 (a)

the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device;
18 U.S.C. §1030 (e)(1).

the term "protected computer" means...a computer which is used in interstate or foreign commerce or communication....
18 U.S.C. §1030(e)(2)(B).

the term "**damage**" means any impairment to the integrity or availability of data, a program, a system, or information; §1030(e)(8).

the term "**loss**" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service; §1030(e)(10).

Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and **injunctive relief or other equitable relief**. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or

13

**Plaintiff Exhibit 1_000015**

> (v) of subsection (a)(5)(B). Damages for a violation involving only
> conduct described in subsection (a)(5)(B)(i) are limited to economic
> damages.
> 18 U.S.C. §1030(g) (emphasis added).

3.      Touhy firm computers contain electronic files which files contain data regarding clients and pending cases throughout the United States, including Ohio, Pennsylvania, California and Georgia.  Touhy firm computers are also used for e-mail communications throughout the United States and are "protected computers" as that term is defined by the CFAA.  The use or misuse of this data affects interstate commerce.

4.      Defendants intentionally accessed the Touhy firm computers and email system and confidential client and Firm information without authorization prior to May 21, 2007.

5.      As a result of Defendants' conduct and intentional access of protected computers without authorization, the Touhy firm was damaged by being forced to undertake corrective measures.  The Touhy firm was forced to quarantine its computers, hire an IT consultant to ascertain the amount of confidential data misappropriated by Defendants, replace computers and establish new security for the computers, which has impaired Touhy's ability to use its computers and cost the Touhy firm more than $5,000.

6.      As set forth herein, Defendants' intentional access of protected computers without authorization impaired the integrity of Touhy firm clients and firm data because it prevented the usability of privileged and confidential information and rendered such information unavailable.

7.      As set forth herein, Defendants misappropriated passwords and misdirected confidential information to their personal email accounts, thereby completely eliminating Touhy firm access to this information.  This caused the Touhy firm a loss of availability and access to these business documents, client information and data as alleged herein.  Certain of these data

**Plaintiff Exhibt 1_000016**

cannot be retrieved, thus causing damage as defined by the CFAA, as alleged in paragraphs 10 to 36.

8. Defendant's intentional access of a protected computer without authorization impaired the availability of Touhy firm client and firm data because the quarantine of computers and establishment of corrective actions were necessary to correct virus threats, assess the amount of information misappropriated, and reestablish security which resulted in the Touhy firm's inability to use its computers and access its data, thus causing damage as defined by the CFAA as alleged in paragraphs 10 to 36.

9. Defendants have used and continue to wrongfully use the confidential client and firm information from the computer system of the Touhy firm. The Defendants have continued their wrongful use of confidential client and firm information which has caused the Touhy firm irretrievable and complete loss of the data and files concerned, causing damage as defined by the CFAA and alleged in paragraphs 10 to 36.

10. On May 21, 2007, May 18, 2007, May 17, 2007 and prior to these dates, the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, rstephan@touhylaw.com to Stephan's personal Yahoo account rstephan1234@yahoo.com and then deleted these Touhy firm emails from the Touhy firm email system as set forth in paragraphs 11 to 25 below.

11. The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: IMF, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

15

**Plaintiff Exhibit 1_000017**

12.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: WFI Mediation  May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

13.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Equity Mediation, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

14.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: David Rotman, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

15.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Amtrust, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

16.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Equity One -- status of opt -ins, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

17.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Stuart, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

18.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Prep conference: IMF, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

**Plaintiff Exhibit 1_000018**

19.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Mediation with Deborah Haude, Esq.   May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

20.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: BOCHICCHIO et al v. EQUITY ONE, INC. Mediation with Deborah Haude, Esq., May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

21.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Wachovia, May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

22.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: BOCHICCHIO et al v. EQUITY ONE, INC. May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

23.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: WFI Colorado,   May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

24.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Allendorfer, May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

25.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: BOCHICCHIO et al v.

17

**Plaintiff Exhibit 1_000019**

EQUITY ONE, INC., May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

26.     Through May 21, 2007 and prior thereto, Stephan deleted Touhy firm emails which emails contained client personal contact and update information from the Touhy firm email system involving one or more of the firm clients or parties' counsel as set forth in paragraphs A to U below.

    A.      Jennifer Stuart

    B.      John Huebner

    C.      Gerald Bouthner

    D.      Opal Charbrier

    E.      Donny Janevski

    F.      Steve Turner

    G.      Jack Manley

    H.      Marian Blidaru

    I.      Jason Bochicchio

    J.      Frank Pidoto

    K.      Brian Gagliardi

    L.      Anthony Casale

    M.      Craig Altieri

    N.      Christopher Chemi

    O.      Mary Foster

    P.      Scott Standel

    Q.      Brandon Farina

**Plaintiff Exhibit 1_000020**

R.      Andrew Coffman

S.      Ken Levinson

T.      Erik Langeland

U.      WFI Colorado, containing not less than 10 individuals who were potential plaintiffs or witnesses on or about May 21, 2007.

27.      On May 21, 2007 and for months prior to this date, Stephan deleted Touhy firm emails from the Touhy firm email system involving communications concerning the settlement and disbursement of monies of Touhy firm cases and clients as set forth in paragraphs A to D below.

A.      David Darwin

B.      Ken Levinson

C.      Jules Smith

D.      Steven Ferko

28.      On May 21, 2007 and for months prior to this date, Stephan deleted electronic files and data from the Touhy firm computer system which files contained Touhy firm client and case information and contacts for the purpose of making this data unavailable to the Touhy firm which clients and cases are as set forth in paragraphs A to E below.

A.      Borowsky v IBM

B.      Steven Yang NYMC

C.      Jones v. Casey's General Store

D.      Gerald Bouthner v. Amtrust

E.      Shabazz v. Morgan Funding

19

**Plaintiff Exhibt 1_000021**

29     On May 21, 2007 and prior to this date, Stephan and Zouras deleted data from the Touhy firm computers or the Touhy firm email containing data relating to one or more of the following Legal Match contacts for the purpose of making this data unavailable to the Touhy firm which clients and cases are as set forth in paragraphs A to U below.

    A.    Davin Cole

    B.    Peter Conrad

    C.    Lafayette Davis

    D.    Odeh Fanasheh

    E.    Craig Fitzgerald

    F.    Michael Jibben

    G.    Kirk Freundt

    H.    Tiffany Green

    I.    Veola Hankle

    J.    Paula Hardwick

    K.    Octavia Hernandez

    L.    Joseph Jergl

    M.    Tracy Kobel

    N.    Morad Laichev

    O.    Brian Lambert

    P.    Donna Lingafelt

    Q.    Erma Lowe

    R.    William Slover

    S.    Gregory Waring

**Plaintiff Exhibt 1_000022**

   T.  George Wright

   U.  Elicia Zimmerman

30. Prior to May 21, 2007, Stephan and Zouras changed the passwords on their Touhy firm desktop computers for the purpose of making these firm computers and the data contained thereon unavailable to the Touhy firm.

31. Through May 21, 2007 and for months prior to this date, Stephan deleted Touhy firm emails from the Touhy firm email system involving correspondence and emails sent to the Touhy firm through FindLaw and the Touhy and Touhy, Ltd. website involving one or more of the cases and clients as set forth in paragraphs A and B below.

   A.  Gerald Bouthner

   B.  Mary Stecyna

32. Prior to May 21, 2007 Stephan concealed the password to the LegalMatch account which had been paid for and controlled by the Touhy firm and its agents, thereby preventing the Touhy firm from accessing that account.

33. Subsequent to May 21, 2007 Stephan changed the password to the LegalMatch account which had been paid for and controlled by the Touhy firm and its agents, thereby preventing the Touhy firm from accessing that account.

34. Through May 21, 2007 and prior thereto, Zouras deleted Touhy firm data from his firm desktop computer and from the Touhy firm email system involving Touhy firm cases and clients for the purpose of making these data unavailable to the Touhy firm including the data on the cases and clients set forth in paragraphs A to G below.

   A.  Malaika Coleman

   B.  Ken Levinson

**Plaintiff Exhibit 1_000023**

    C.      Jules Smith

    D.     Steven Ferko

    E.     Gerald Bouthner

    F.     Erik Langeland

    G.    Craig Fitzgerald

35.    As described above, Defendants violated both the criminal and civil provisions of the CFAA, pursuant to which Plaintiff is entitled to damages and injunctive relief or other equitable relief, including:

    A.     Expenditure of time and money conducting a damage assessment of the firm computers and laptops;

    B.     Retrieving deleted files and data which were rendered unavailable by defendants' actions;

    C.     Retrieving deleted emails which were rendered inaccessible by defendants' actions;

    D.     Expenditure of time, money, expert fees and attorneys' fees in assessing the extent of the data loss with the data copied and subsequently impounded at Forensicon;

    E.     Expenditure of money, expert fees and attorneys' fees in restoring retrievable data from the firm computers and laptops;

    F.     Expenditure of money, expert fees and attorneys' fees in recovering access to the firm LegalMatch account;

    G.    Expenditure of money, expert fees and attorneys' fees in retrieving deleted or inaccessible emails and similar data from the firm email and website system;

**Plaintiff Exhibt 1_000024**

H.    Loss of revenue incurred by the Touhy firm and other consequential damages incurred in restoring the system to its condition prior to the offense and resulting from this interruption of service.

36.    Touhy has no adequate remedy at law.  Money damages alone will not, and cannot, compensate Touhy for the loss of goodwill and business opportunities that it has suffered as a result of Defendants' actions.  Those actions have and will in the future continue to harm Touhy's business relationships.  As a result of Defendants' actions, Touhy has and will have difficulty securing their current and targeted potential clients, which will in turn impact its ability to do business.

37.    By their conduct, Defendants have demonstrated their willingness to continue to engage in acts that violate the CFAA.  The injury to Touhy is immediate and irreparable.

38.    Defendants, unless restrained, will continue to engage in conduct that is alleged herein.

39.    For the reasons described above, there is a likelihood that Touhy will prevail on the merits of this action.

40.    Should this Court grant injunctive relief to Touhy, the burden on Defendants would be slight compared to the injury to Touhy if it were not granted.  No injury to Defendants would result from an order requiring them to comport his actions with the law.

41.    The granting of an injunction will not disserve the public interest.  Indeed, injunctive relief would accomplish the objectives of the CFAA.

WHEREFORE, for all the foregoing reasons, Plaintiff Touhy respectfully requests that this Court grant the following relief:

23

**Plaintiff Exhibit 1_000025**

A.     Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, enjoining them from engaging in acts and practices in violation of the CFAA;

B.     Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, enjoining them from destroying or disposing of any books, records or accounts or of any property, whether real, personal or mixed, owned by Touhy or in which Touhy has an interest;

C.     Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, enjoining them from withdrawing, transferring or disposing of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

D.     Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, directing that they turnover all Plaintiff's property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest, including, but not limited to, client information, confidential Firm information, and any copies of the same to Plaintiff, including the return and restoration of all computer data files that Defendants destroyed or removed from Touhy's computer and server;

E.     That a judgment be entered in favor of Plaintiff, and against Defendants, for compensatory  punitive damages in an amount in excess of $50,000;

F.     An order awarding Plaintiff its costs and attorneys' fees; and

G.     Such other and additional relief as this Court may deem appropriate.

**Plaintiff Exhibit 1_000026**

## COUNT IV
## Conversion and Constructive Trust Steven Ferko
## (All Defendants)

1.     Plaintiff Touhy, re-alleges as and for paragraph 1 of Count IV, paragraphs 1-16 as though fully set forth herein.

2.     Stephan and Zouras were employees of the Touhy firm during 2006 and up to and including May 21, 2007.  As part of their responsibilities as attorneys employed by Touhy, Defendants Stephan and Zouras solicit and represent clients on behalf of the Touhy firm, and owe Touhy a fiduciary duty of loyalty and good faith.  The acts of the defendants alleged herein constitute breaches of their fiduciary duty to the Touhy firm.

3.     That on or before May 21, 2007 Steven Ferko was a client of the law firm Touhy & Touhy, Ltd.

4.     That on or before May 21, 2007 Steven Ferko had signed an Attorney-Client Agreement with the law firm Touhy & Touhy, Ltd.,

5.     Prior to May 21, 2007  Zouras referred the Ferko case to attorney Erik Langeland.

6.     That at no time prior to May 21, 2007 did  Zouras disclose to Timothy J. Touhy or Daniel K. Touhy that he had received a portion of the monies paid as attorneys' fees from Erik Langeland as a result of settlement of Steven Ferko's claim.

7.     That during April 2007  Zouras was aware that Steven Ferko's case against his employer was settled pursuant to a confidential settlement agreement.

8.     Prior to April 30, 2007  Zouras received a check from attorney Erik Langeland which represented attorney's fees paid as part of the settlement of the Steven Ferko claim.

9.     The check  Zouras received from Erik Langeland was made payable to Zouras in his own name.

25

**Plaintiff Exhibit 1_000027**

10. Zouras did not deposit the check from attorney Erik Langeland from the proceeds of the Ferko case into a client fund account.

11. Zouras did not deposit the check from attorney Erik Langeland from the proceeds of the Ferko case into a Touhy firm client fund account or transfer these funds to the Touhy firm at any time.

12. Zouras deposited the check from Erik Langeland into Zouras' personal bank account.

13. That in no time prior to May 21, 2007 did Zouras have authorization from Timothy J. Touhy or Daniel K. Touhy to accept a portion of the monies paid as attorneys' fees from the Steven Ferko settlement in his own name.

14. The Touhy firm had an unconditional right to immediate possession of funds and attorneys' fees in the case of Steven Ferko.

15. The Touhy firm had an unconditional right to immediate possession of funds and attorneys' fees in the case of Steven Ferko by virtue of its attorney-client agreement with Ferko in the amount of not less than $61,074.24.

16. The Touhy firm had an unconditional right to immediate possession of funds and attorneys' fees in the case of Steven Ferko in the amount of not less than $61,074.24.

17. Stephan received $20,358.08 from the Ferko settlement proceeds in an account in his own name.

18. Stephan deposited the check for $20,358.08 received from Erik Langeland from the Ferko settlement proceeds in an account his own name at Private Bank between April 20, 2007 to May 6, 2007.

26

**Plaintiff Exhibt 1_000028**

19.     Upon information and belief, Stephan deposited the check for $20,358.08 received from Langeland from the Ferko settlement proceeds in an account in his own name or an account in the name of STEPHANZOURAS, LLP at Harris Bank between April 20, 2007 to May 6, 2007.

20.     Upon information and belief, Stephan deposited the check for $20,358.08 received from Langeland from the Ferko settlement proceeds in an account in his own name or an account in the name of STEPHANZOURAS, LLP at Private Bank between April 20, 2007 to May 6, 2007.

21.     Zouras received $20,358.08 from the Ferko settlement proceeds in his own name.

22.     Zouras deposited the check for $20,358.08 received from Erik Langeland from the Ferko settlement proceeds in an account in his own name at LaSalle Bank between April 20, 2007 to May 6, 2007.

23.     Upon information and belief, Zouras deposited the check for $20,358.08 received from Erik Langeland from the Ferko settlement proceeds in an account in his own name or an account in the name of STEPHANZOURAS, LLP at LaSalle Bank between April 20, 2007 to May 6, 2007.

24.     Upon information and belief, Zouras deposited the check for $20,358.08 received from Erik Langeland from the Ferko settlement proceeds in an account in his own name or an account in the name of STEPHANZOURAS, LLP at Harris Bank between April 20, 2007 to May 6, 2007.

25.     Stephan and Zouras exercised wrongful control and dominion over attorneys' fees in the case of Steven Ferko without authorization of the Touhy firm by depositing these monies in  bank accounts held in their own names.

27

26.     The monies from the case of Steven Ferko were, and are, the property of the Touhy firm.  Dominion and control of these funds were obtained by the defendants during the time period before May 21, 2007 and while they were fiduciaries of the Touhy firm.

27.     The Touhy firm has demanded the defendants to return these monies. Stephan and Zouras have refused to return these monies to the Touhy firm despite these demands.

28.     Between March 26-27, 2007 through May 21, 2007 it was it was Zouras and Stephan's intent to permanently deprive the Touhy firm of the $20,358.08.00 Stephan and Zouras each received from the Ferko settlement proceeds.

29.     From May 21, 2007 to the present it is it was Zouras and Stephan's intent to permanently deprive the Touhy firm of the $20,358.08.00 Stephan and Zouras each received from the Ferko settlement proceeds.

WHEREFORE plaintiff prays the imposition of a constructive trust on that portion of the funds from the Steven Ferko settlement that constitute attorney's fees, an order of Court directing defendants, and all those who have possession of the subject funds and all those acting in concert with defendants, to return those attorney's fees, in their entirety, to plaintiff, all costs incurred in pursuing this litigation, and for any other relief this Honorable Court deems appropriate.

## COUNT V
## Conversion and Constructive Trust Jules Smith
## (All Defendants)

1.     Plaintiff Touhy, re-alleges as and for paragraph 1 of Count V, paragraphs 1-16 as though fully set forth herein.

28

2. Stephan and Zouras were employees of the Touhy firm during 2006 and up to and including May 21, 2007. As part of their responsibilities as attorneys employed by Touhy, Defendants Stephan and Zouras solicit and represent clients on behalf of the Touhy firm, and owe Touhy a fiduciary duty of loyalty and good faith. The acts of the defendants alleged herein constitute breaches of their fiduciary duty to the Touhy firm.

3. That on or before May 21, 2007 Jules Smith was a client of the law firm Touhy & Touhy, Ltd.

4. That on or before May 21, 2007 Jules Smith had signed an Attorney-Client Agreement with the law firm Touhy & Touhy, Ltd.,

5. Prior to May 21, 2007 Zouras referred the Smith case to attorney Ken Levinson.

6. That at no time prior to May 21, 2007 did Zouras disclose to Timothy J. Touhy or Daniel K. Touhy that he had received a portion of the monies paid as attorneys' fees from Ken Levinson as a result of settlement of Jules Smith's claim.

7. That during April 2007 Zouras was aware that Jules Smith's case against his employer was settled pursuant to a confidential settlement agreement.

8. Prior to April 30, 2007 Zouras received a check from attorney Ken Levinson which represented attorney's fees paid as part of the settlement of the Jules Smith claim.

9. The check Zouras received from Ken Levinson was made payable to Zouras in his own name.

10. Zouras did not deposit the check from attorney Ken Levinson from the proceeds of the Smith case into a client fund account.

**Plaintiff Exhibt 1_000031**

11. Zouras did not deposit the check from attorney Ken Levinson from the proceeds of the Smith case into a Touhy firm client fund account or transfer these funds to the Touhy firm at any time.

12. Zouras deposited the check from Ken Levinson into Zouras' personal bank account.

13. That in no time prior to May 21, 2007 did Zouras have authorization from Timothy J. Touhy or Daniel K. Touhy to accept a portion of the monies paid as attorneys' fees from the Jules Smith settlement in his own name.

14. The Touhy firm had an unconditional right to immediate possession of funds and attorneys' fees in the case of Jules Smith.

15. The Touhy firm had an unconditional right to immediate possession of funds and attorneys' fees in the case of Jules Smith by virtue of its attorney-client agreement with Smith in the amount of not less than $27,000.00

16. The Touhy firm had an unconditional right to immediate possession of funds and attorneys' fees in the case of Jules Smith in the amount of not less than $27,000.00.

17. Stephan received $20,000.00 from the Smith settlement proceeds in an account in his own name.

18. Stephan deposited the check for $20,000.00 received from Ken Levinson from the Smith settlement proceeds in an account his own name at Private Bank between March 26-27, 2007.

19. Upon information and belief, Stephan deposited the check for $20,000.00 received from Ken Levinson from the Smith settlement proceeds in an account in the name of STEPHANZOURAS, LLP at Harris Bank between March 26-27, 2007.

30

**Plaintiff Exhibit 1_000032**

20.     Upon information and belief, Stephan deposited the check for $20,000.00 received from Ken Levinson from the Smith settlement proceeds in an account in his own name of the name of STEPHANZOURAS, LLP.

21.     Zouras received $7,000.00 from the Smith settlement proceeds in his own name.

22.     Zouras deposited the check for $7,000.00 received from Ken Levinson from the Smith settlement proceeds in an account in his own name at LaSalle Bank between March 26-27, 2007.

23.     Upon information and belief, Zouras deposited the check for $7,000.00 received from Ken Levinson from the Smith settlement proceeds in an account in the name of STEPHANZOURAS, LLP at Harris Bank between March 26-27, 2007.

24.     Upon information and belief, Zouras deposited the check for $7,000.00 received from Ken Levinson from the Smith settlement proceeds in an account in his own name of the name of STEPHANZOURAS, LLP.

25.     Stephan and Zouras exercised wrongful control and dominion over attorneys' fees in the case of Jules Smith without authorization of the Touhy firm by depositing these monies in bank accounts held in their own names.

26.     The monies from the case of Jules Smith were, and are, the property of the Touhy firm.  Dominion and control of these funds were obtained by the defendants during the time period before May 21, 2007 and while they were fiduciaries of the Touhy firm.

27.     The Touhy firm has demanded the defendants to return these monies.

28.     Stephan and Zouras have refused to return these monies to the Touhy firm despite these demands.

31

**Plaintiff Exhibit 1_000033**

29.     Between March 26-27, 2007 through May 21, 2007 it is, and was, Zouras and

Stephan's intent to permanently deprive the Touhy firm of the $20,000.00 Stephan received and

the $7,000.00 Zouras received from the Smith settlement proceeds.

30.     From May 21, 2007 to the present it is, and was, Zouras and Stephan's intent to

permanently deprive the Touhy firm of the $20,000.00 Stephan received and the $7,000.00

Zouras received from the Smith settlement proceeds.

WHEREFORE plaintiff prays the imposition of a constructive trust on that portion of the

funds from the Jules Smith settlement that constitute attorney's fees, an order of Court directing

defendants, and all those who have possession of the subject funds and all those acting in concert

with defendants, to return those attorney's fees, in their entirety, to plaintiff, all costs incurred in

pursuing this litigation, and for any other relief this Honorable Court deems appropriate.

Plaintiff Touhy & Touhy, Ltd. demands a jury trial on all matters so triable.


Respectfully submitted,


One of the Attorneys for Plaintiff

Robert Orman
Law Offices of Robert Orman
One North LaSalle Street
Suite 1775
Chicago, Illinois 60602
(312) 372-0515
Atty No.  22696

Michael O'Rourke
O'Rourke Katten & Moody
161 N. Clark St.
Chicago, IL 60601
312-849-2020
Attorney Code: 42263

32

**Plaintiff Exhibit 1_000034**

## VERIFICATION

I, Timothy J. Touhy, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the Verified Third Amended Complaint and that the same are true and correct, except as to matters herein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

TIMOTHY J. TOUHY

# IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TOUHY & TOUHY, LTD., an Illinois Professional Corporation, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )     Case No. 07 CH 13552 <br> ) |
| RYAN F. STEPHAN, JAMES B. ZOURAS and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership, | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## VERIFICATION

I, Daniel K. Touhy, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the aforementioned document and that the same are true and correct, except as to matters herein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

_____
DANIEL K. TOUHY

# EXHIBIT D
# CONTINUED

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TOUHY and TOUHY, LTD., an Illinois Professional Corporation,         Plaintiff, <br><br> v. <br><br> RYAN F. STEPHAN,  JAMES B. ZOURAS, and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership, <br><br>         Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) <br> **Case No. 07 CH 13552** |

## VERIFIED THIRD AMENDED COUNT III

### Violation of the Computer Fraud and Abuse Act
### (All Defendants)

NOW COMES Plaintiff, Touhy and Touhy, Ltd., ("Touhy" or the "Firm"), and in support of its Verified Third Amended Count III alleges as follows:

1.     Plaintiff Touhy, re-alleges as and for paragraph 1 of Count III, paragraphs 1-16 of Count I as though fully set forth herein.

2.     At all times relevant to this Complaint, there was in existence a certain statute, to-wit:  The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et. seq.*  The CFAA provides, in relevant part, as follows:

> Whoever … intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage, and …18 U.S.C. §1030 (a)(5)(A)(iii).
>
> by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused…
> 8 U.S.C. § 1030 (a)(5)(B).
>
> loss to 1 or more person during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only,

1

**Plaintiff Exhibit 2_000001**

loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;…18 U.S.C. §1030 (a)(5)(B)(i).

shall be punished as provided in subsection (c) of this section.18 U.S.C. § 1030

(a)the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device;
18 U.S.C. §1030 (e)(1).

the term "protected computer" means…a computer which is used in interstate or foreign commerce or communication…. 18 U.S.C. §1030(e)(2)(B).

the term "**damage**" means any impairment to the integrity or availability of data, a program, a system, or information; §1030(e)(8).

the term "**loss**" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service; §1030(e)(10).

Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and **injunctive relief or other equitable relief**. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B). Damages for a violation involving only conduct described in subsection (a)(5)(B)(i) are limited to economic damages.  18 U.S.C. §1030(g) (emphasis added).

3.    The Touhy firm computers contain electronic files which files contain data regarding clients and pending cases throughout the United States, including Ohio, Pennsylvania, California and Georgia.   Touhy firm computers are also used for e-mail communications throughout the United States and are "protected computers" as that term is defined by the CFAA. The use or misuse of this data affects interstate commerce.

4.    Defendants intentionally accessed the Touhy firm computers and email system and confidential client and firm information without authorization prior to May 21, 2007.

2

**Plaintiff Exhibit 2_000002**

5.     As a result of Defendants' conduct and intentional access of protected computers without authorization, the Touhy firm was damaged by being forced to undertake corrective measures. The Touhy firm was forced to quarantine its computers, hire an IT consultant to ascertain the amount of confidential data misappropriated by Defendants, replace computers and establish security for the computers, which has impaired Touhy's ability to use its computers and cost the Touhy firm more than $5,000 as more fully described herein.

6.     As set forth herein, Defendants' intentional access of protected computers without authorization impaired the integrity of Touhy firm clients and firm data because it prevented the usability of privileged and confidential information and rendered such information permanently unavailable as set forth in paragraphs 7 to 22 and 50 to 57.

7.     While employed by the Touhy firm Defendants misappropriated passwords and sent firm data to their personal email accounts. Certain of these data cannot be retrieved, rendering such data permanently unavailable and causing damage as defined by the CFAA.

8.     The various Touhy firm computer hard drives on its system were given letter designations. Individual desktop hard drives were designated as drive "C"; the office network server drive was designated as drive "F" and the individual desktop DVD/CD drives were designated as drive "D".

9.     Removable storage media or external hard drives which were connected to the Touhy firm computer system, would receive drive designations of "G", "H" or other sequential letters.

10.    Any drive bearing the designation "G" drive on a Touhy firm individual desktop computer is a removable storage media connected to an individual desktop.

3

**Plaintiff Exhibit 2_000003**

11.     During various days in May 2007, the "G" drive designations on Stephan and Zouras's Touhy firm individual desktop computers referred to a Western Digital removable storage media external hard drive that Defendants had connected to their individual desktop computers by a USB port.

12.     The defendants had obtained this Western Digital external hard drive ("WD external drive") and connected it to the Touhy firm computer system without the knowledge or consent of the Touhy firm principals.

13.     None of the data copied onto this WD external drive by defendants were copied for the purpose of Defendants working on these Touhy firm electronic files at their homes.

14.     None of the data copied onto this WD external drive by defendants were copied for the purpose of Defendants working on these Touhy firm electronic files on defendants' personal computers or the computers of non-employees of the Touhy firm.

15.     On May 18, 2007 Defendants received a delivery of computers purchased from CDW consisting of four HP desktop computers and on HP laptop computer.

16.     Other than the WD external drive,  and on information and belief, Stephan used other computers to create, modify, store or save data involving Touhy firm electronic files involving Touhy firm clients, cases, documents or forms, including the computers purchased from CDW.

17.     Other than the WD external drive, Zouras used other computers to create, modify, store or save data involving Touhy firm electronic files involving Touhy firm clients, cases, documents or forms, including the computers purchased from CDW.

4

**Plaintiff Exhibit 2_000004**

18.     On and before May 19, 2007 Stephan created and saved all computer related data concerning the formation of the firm StephanZouras, LLP by using the Touhy firm computers or a drive connected to the firm computers.

19.     On and before May 19, 2007 Zouras created and saved all computer related data concerning the formation of the firm StephanZouras, LLP by using the Touhy firm computers or a drive connected to the firm computers.

20.     The documents, files and folders set forth in paragraphs lajds through lajd;jf and contained on Exhibit 1 were data being created, modified or stored on a storage media designated as the "G" drive which media was connected to the Touhy firm desktop used by Stephan on or before May 21, 2007.

21.     At the time of Stephan's departure from the Touhy firm on or about May 21, 2007, no storage media was connected to Stephan or Zouras' Touhy firm desktop computers nor was this data saved in paper form or electronic form on any other Touhy firm electronic media.

22.     On or before May 21, 2007 both Stephan and Zouras had connected and then removed one or more of these electronic media storage devices containing Touhy firm data thereby making one or more of these data permanently unavailable to the Touhy firm.

### Use of Protected Computers by Defendants without Authorization

23.     Stephan and Zouras's authorization to access, or use, the Touhy firm computers and internet system was revoked by committing one or more of the fiduciary breaches set forth in paragraph 24 to 47. Stephan's fiduciary breach revoked any authorized access to the Touhy firm computers and internet system from April 2006 and thereafter.

**Plaintiff Exhibit 2_000005**

24.     Between April 2006 and February 2008 Stephan committed a fiduciary breach by accepting reimbursement for the LegalMatch subscription cost, and then treating the subscription as Stephan's personal LegalMatch account.

25.     On or about December 12, 2006, January 24, 2007 and January 29, 2007 Stephan breached his authorized access to the Touhy firm  computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm prospective client Steven Yang without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

26.     On or about February 20, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to communicate with Erik Langeland to reach a 'global agreement' concerning Langeland and Stephan representing Touhy firm cases and clients without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

27.     On or about February 20, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to communicate with Erik Langeland to reach an agreement' concerning Langeland and Stephan representing Touhy firm cases and clients in Amtrust, WFI and Equity One without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

28.     On or about December 7, 2006, January 30, 2007, February 20, 2007, March 5, 2007, March 9, 2007, March 14, 2007, March 27, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at

6

**Plaintiff Exhibit 2_000006**

rstephan123@yahoocom to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client Steven Ferko without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

29.    On or about March 29, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using the Touhy firm system to access his personal Yahoo account at rstephan123@yahoocom and communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client Gerald Bouthner without disclosing these communications to the Touhy firm principals prior to May 21, 2007.

30.    On or about February 20, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoo.com to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client or case Marc Borowsky without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

31.    On or about January 29, 2007 and January 24, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client or case Jameel Shabazz without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

32.    On and after November 28, 2006 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to communicate with LegalMatch to obtain a subscription to LegalMatch without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

7

**Plaintiff Exhibit 2_000007**

33.     On January 31, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to contact LegalMatch by email in which email Stephan stated "That $22,000 is a big # right now.  I am also going to have to sell this to Jim Zouras".  Neither Stephan nor Zouras ever disclosed this communication to the Touhy firm principals while employed by the Touhy firm.

34.     On and after November 3, 2006 Stephan breached his authorized access to the Touhy firm computers and internet system by failing to disclose to the Touhy firm principals that he had received a Touhy & Touhy, Ltd. website communication from Steven Yang, had opened a file on November 7, 2006 and signed a firm contract with Yang.

35.     On or about November 7, 2006 Stephan breached his authorized access to the Touhy firm  computers by creating or storing data on Stephan's Touhy firm computer desktop or on non-firm storage media concerning Steven Yang and not disclosing the existence of this matter to the Touhy firm principals

36.     On or about December 12, 2006 Stephan breached his authorized access to the Touhy firm computers and internet system by communicating with Erik Langeland concerning representation of Steven Yang by Ryan Stephan and James Zouras and failing to disclose these communications to the Touhy firm principals prior to May 21, 2007.

37.     That one or more of the documents listed in Exhibits 1 and 2 were made permanently unavailable because these emails were deleted by Stephan from the Touhy firm computers.  Despite attempts to recover these emails by employing various electronic software recovery programs this data is permanently unavailable to the Plaintiff and not recoverable by accessing Stephan's desktop, the Touhylaw email system or by employment of data recovery software or technical service assistance.

8

**Plaintiff Exhibit 2_000008**

38.    On and before May 21, 2007 Zouras breached his fiduciary duty by using Touhy firm computers and internet to conduct mapquest searches and legal research as a means of improving the ability of Defendants to contact Touhy firm clients to hire Defendants after Defendants left Touhy firm employment.

39.    On or about February 20, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Erik Langeland to reach a 'global agreement' concerning Langeland, Stephan and Zouras representing Touhy firm cases and clients without disclosing this information to the Touhy firm principals while Zouras was employed at the Touhy firm.

40.    On February 20, 2007, January 30, 2007 and thereafter, Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Stephan and Erik Langeland to reach an agreement' concerning Langeland and Zouras representing Touhy firm cases and clients in Amtrust, WFI and Equity One without disclosing this information to the Touhy firm principals while Zouras was employed at the Touhy firm.

41.    On and after January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Erik Langeland concerning Langeland and Zouras representing the Touhy firm client Steven Ferko without disclosing this information to the Touhy firm principals while Zouras was employed at the Touhy firm.

42.    On and after January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at

9

**Plaintiff Exhibit 2_000009**

jzouras@yahoo.com to communicate with Stephan and Erik Langeland concerning Langeland and Zouras representing the Touhy firm client or case Marc Borowsky without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

43.   On and after January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Stephan and Erik Langeland concerning Langeland and Zouras representing the Touhy firm client or case Shabazz without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

44.   On or about January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by communicating with Erik Langeland concerning Steven Yang v NYMC and failing to disclose these communications to the Touhy firm principals prior to May 21, 2007.

45.   On May 21, 2007 and prior to this date, Stephan forwarded Touhy firm emails from the Touhy firm email system to his personal Yahoo account involving communications concerning Touhy firm cases, clients and other counsel as set forth on Exhibit 1 attached hereto.

46.   On May 21, 2007 and prior to this date, Stephan did not disclose to the Touhy firm principals that email information had been received at Touhylaw concerning one or more of the individuals set forth on Exhibit 3 attached hereto.

47.   On and after November 28, 2006 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with LegalMatch to obtain a subscription to LegalMatch without disclosing these communications to the Touhy firm principals prior to May 21, 2007.

**Plaintiff Exhibit 2_000010**

### Data that is Permanently Unavailable

48.      Certain security software was installed on the Touhy firm computer server network before May 21, 2007. This security software recorded the computer activity on the Touhy firm desktop computers used by Stephan and Zouras.

49.      The security software recorded screenshots which depict some of the files, folders and documents created, modified, saved or stored on Stephan's and Zouras' Touhy firm computer desktop from the computer event register as set forth in Exhibit 1.

50.      Plaintiff has been able to identify some of the Touhy firm data created, modified, saved or stored on Stephan and Zouras's Touhy firm computer desktops from the computer event registers as set forth in Exhibit 1. Although these file names, dates and path names have been identified, these data cannot be retrieved and are permanently unavailable because of the removal of the storage media by Defendants.

51.      That one or more of the files, folders, documents or data listed are permanently unavailable because the external drives which had been connected by Defendants to the Touhy firm computers were removed by them.

52.      In excess of 400 files or folders were identified on Stephan's desktop computer activity log as being created, modified or viewed on Stephan's desktop computer identified on Exhibit 1 attached hereto were created, modified, stored or saved on a hard drive or other media by Stephan on or before May 21, 2007.

53.      The files, folders or documents identified on Exhibit 1 attached hereto were created, modified, stored or saved on Stephan's Touhy firm desktop computer as being created or stored by defendants on or about the dates following each file or folder as set forth on Exhibit 3 attached hereto.

11

**Plaintiff Exhibit 2_000011**

54.     Zouras used the Touhy firm computer system to create, modify, store or save numerous client "Election Forms" and letters to Touhy firm clients which data Zouras stored on an external drive. On and before May 21, 2007 Zouras created these forms and letters for delivery to one or more of the Touhy firm clients listed on Exhibit 2.

55.     One or more of the following files, folders or documents were identified on Stephan's desktop computer activity log as being created, modified or viewed on Stephan's desktop computer on or before May 21, 2007:

a)      A0039255 G:/Setup/2 Class Cases/3 Active/Casey's General Store

b)      A0039257 G:/Setup/2 Class Cases/3 Active/Casey's General Store

c)      A0039284 G:/Setup/2 Class Cases/3 Active/Casey's General Store

d)      A0039285 G:/Setup/2 Class Cases/3 Active/Casey's General Store

e)      A0039286 G:/Setup/2 Class Cases/3 Active/Casey's General Store

One of more of these files and folders were removed from the Touhy firm computer system. Despite multiple retrieval efforts these data are permanently unavailable.

### Unrecoverable Data which were Deleted

56.     In excess of 19,000 documents, files or folders were deleted by Stephan from his Touhy firm desktop on or before May 21, 2007. Although recovery software has retrieved millions of data bytes, there are 19,839 documents, files and folders which, although recovered, cannot be opened or accessed due to corruption, overwriting or other electronic impediment preventing the Touhy firm from accessing and reviewing these data.

57.     Stephan and Zouras removed one or more of these electronic media storage devices containing Touhy firm data or, on information and belief, stored these data on a web

12

based storage media thereby making one or more of these data permanently unavailable to the Touhy firm.

58.　　　As a direct and proximate result of the acts of the defendants described herein, one or more of these data are permanently unavailable to the Touhy firm.

## PLAINTIFF'S LOSS UNDER THE CFAA

### Loss – Directing Touhylaw emails to Yahoo and Deletion of Emails

59.　　　After Stephan forwarded these emails he deleted one or more of them from the TouhyLaw email system.　Although some or all of these emails may be retrievable and therefore not permanently deleted, the Touhy firm incurred loss and expense in recovering these data as set forth below.

60.　　　While employed by the Touhy firm Stephan received email inquiries through the Touhy & Touhy website at Touhylawcom from the following individuals through the Touhy firm server, computer and internet system concerning cases, clients, counsel or other individuals including Steven Yang; Gerald Bouthner; Casey's General Store; Mary Stecyna; Hector Vargas; David Darwin.

61.　　　While employed by the Touhy firm Stephan used Touhy firm computers and internet to communicate with the following individuals concerning representation of these individuals which contact had been made through LegalMatch and Findlaw:

　　　　a) Mary Stecyna;

　　　　b) Hector Vargas;

　　　　c) David Darwin;

　　　　d) William Slover;

　　　　e) Christopher Manning; and

13

**Plaintiff Exhibit 2_000013**

f) Tracy Kobel.

62.    Stephan and Zouras used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan123@yahoo.com and jzouras@yahoo.com to communicate between themselves and other attorneys in connection with the settlement of the Jules Smith case.

63.    Stephan and Zouras used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan123@yahoo.com and jzouras@yahoo.com to communicate between themselves and other attorneys in connection with the settlement of the Steve Ferko case.

64.    Stephan and Zouras used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan123@yahoo.com and jzouras@yahoo.com to communicate between themselves and other attorneys in connection with the settlement of the David Darwin case.

65.    Defendants used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan123@yahoo.com and jzouras@yahoo.com to commit one or more of the following acts:

a)      Engaged in communications with Erik Langeland, Ken Levinson, John Tostrud and other clients, counsel and individuals.

b)      Agreeing to send Touhy firm cases and fees in Darwin and Smith from the Touhy firm to other counsel.

c)      Agreeing with Erik Langeland to take attorney's fee of approximately $63,750 from the Ferko case and divide these monies.

14

**Plaintiff Exhibit 2_000014**

d) Receiving emails delivered to the Touhy firm email addresses and failing to have pleadings, correspondence and data from being entered in the firm files and database.

e) Copying Touhy firm data without the consent of the firm or the client onto an external hard drive and copying these data onto defendants' laptop and office server on or about May 19 and 20, 2007.

f) Deleted emails and data from the Touhy firm computer network in order to prevent the Touhy firm from accessing or performing case work on clients and cases defendants intended to have discharge the Touhy firm. Although some or all of these emails may be retrievable and therefore not permanently deleted, the Touhy firm incurred loss and expense in recovering this data.

66. On and before May 21, 2007 Stephan and Zouras used Touhylaw email and computers to provide other attorneys with Touhy firm client or case information or firm data for the purpose of assisting Touhy firm competitors by referring these matters to other attorneys involving one or more of the following:

a) David Darwin;

b) Craig Fitzgerald;

c) Michael Jibben;

d) William Slover;

e) Steven Yang;

f) Steven Ferko;

g) Gerald Bouthner;

h) Kim Jones; and

i) Kim Marrs.

15

**Plaintiff Exhibit 2_000015**

67. On and before May 21, 2007 Defendants received emails at their personal Yahoo accounts concerning the Darwin case, a LegalMatch client. Although some or all of these emails may be retrievable and therefore not permanently deleted, the Touhy firm incurred loss and expense in recovering this data.

68. On and before May 21, 2007 Stephan stored data relating to the LegalMatch account on a separate secure server to prevent the Touhy firm from accessing this information and to avoid disclosing information to the Touhy firm.

69. On and before May 21, 2007 Stephan used his Yahoo account to contact Julie Reynolds at LegalMatch from his Yahoo account stephan123@yahoo.com which was sent by Stephan from the Touhy firm offices at 161 N. Clark Street, Suite 2210 and from Touhy firm computers on one or more of the following dates: on November 28, 2006, February 4, 2007, February 7, 2007, February 8, 2007, February 10, 2007, February 12, 2007, February 27, 2007, April 12, 2007, April 24, 2007, May 1, 2007.

70. On and before May 21, 2007 Stephan used his Yahoo account at rstephan123@yahoocom to send Zouras copies of his communications with Legalmatch at jzouras@yahoocom on April 4, 2007, April 17, 2007 and other dates. On April 24, 2007 Stephan sent Jacobo Rodriguez at LegalMatch from his Yahoo account rstephan123@yahoocom an email requesting Rodriguez not to give the Touhy firm information to the Legal match account.

71. On before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: JMF, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

72. On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to rstephan123@yahoocom, subject:

16

**Plaintiff Exhibit 2_000016**

WFI Mediation  May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

73.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Equity Mediation, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

74.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: David Rotman, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

75.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Amtrust, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

76.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Equity One -- status of opt -ins, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

77.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Stuart, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

**Plaintiff Exhibit 2_000017**

78.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Prep conference: IMF, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

79.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Mediation with Deborah Haude, Esq.   May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

80.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: BOCHICCHIO et al v. EQUITY ONE, INC. Mediation with Deborah Haude, Esq., May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

81.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Wachovia, May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

82.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: BOCHICCHIO et al v. EQUITY ONE, INC. May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

83.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to rstephan123@yahoocom, subject:

**Plaintiff Exhibit 2_000018**

WFI Colorado, May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

84.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Allendorfer, May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

85.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: BOCHICCHIO et al v. EQUITY ONE, INC., May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

86.     Although some or all of these emails in paragraphs 69 through 85 may not be permanently deleted, the Touhy firm incurred loss and expense in recovering this data.

87.     On May 21, 2007 and for months prior to this date, Stephan and Zouras saved electronic files and data on a separate drive or drives which contained Touhy firm client, case information and contacts.  Defendants use of this drive prevented Touhy firm principals from learning of one or more the following clients, cases and other counsel:

        a)     Borowsky v IBM

        b)     Steven Yang NYMC

        c)     Jones v. Casey's General Store

        d)     Gerald Bouthner v. Amtrust

        e)     Shabazz v. Morgan Funding.

**Plaintiff Exhibit 2_000019**

88.     Between April 2006 and February 2008 Stephan denied the Touhy firm access to data relating to one or more of the following Legal Match contacts, which clients and individuals are as set forth below.

        a)      Davin Cole

        b)      Peter Conrad

        c)      Lafayette Davis

        d)      Odeh Fanasheh

        e)      Craig Fitzgerald

        f)      Michael Jibben

        g)      Kirk Freundt

        h)      Tiffany Green

        i)      Veola Hankle

        j)      Paula Hardwick

        k)      Octavia Hernandez

        l)      Joseph Jergl

        m)      Tracy Kobel

        n)      Morad Laichev

        o)      Brian Lambert

        p)      Donna Lingafelt

        q)      Erma Lowe

        r)      William Slover

        s)      Gregory Waring

        t)      George Wright

**Plaintiff Exhibit 2_000020**

u)      Elicia Zimmerman

89.     Prior to May 21, 2007, Stephan and Zouras changed the passwords on their Touhy firm desktop computers for the purpose of denying the Touhy firm access to these firm computers and the data contained thereon.  Neither Stephan nor Zouras ever disclosed these passwords to the Touhy firm principals.

90.     Prior to May 21, 2007 Stephan did not disclose the password to the LegalMatch account which had been paid for and controlled by the Touhy firm and its agents, thereby preventing the Touhy firm from accessing that account.  Subsequent to May 21, 2007 Stephan changed the password to the LegalMatch account thereby preventing the Touhy firm from accessing that account.

91.     Through May 21, 2007 and prior thereto, Zouras deleted Touhy firm data from his firm desktop computer and from the Touhy firm email system involving Touhy firm cases and clients for the purpose of making these data unavailable to the Touhy firm.

**Touhy Firm Financial Losses**

92.  As a direct and proximate result of the acts of the defendants described herein, the Touhy firm has incurred one or more of the following costs, losses or consequential damages under Section 1030(e)(10):

a)      Cost of computer technicians and consultants to quarantine the Stephan and Zouras firm desktop computers; Cost of computer technicians and consultants to quarantine two lap top computers used by one or more of the Defendants at the Touhy firm;

b)      Cost of computer technicians and consultants to test the Stephan and Zouras computers to run various recovery programs for the purpose of identifying the data which was deleted or inaccessible;

21

**Plaintiff Exhibit 2_000021**

c)  Cost of computer technicians and consultants to restore the deleted data including word processing documents and emails;

d)  Cost of security investigators to open, access, review and restore thousands of documents and files which were deleted or hidden from the Touhy firm desktop computers used by Stephan and Zouras for the purpose of restoring these data and information to its condition prior to Defendants' actions;

e)  Cost of security investigators for the purpose of restoring emails deleted by Stephan and Zouras and having these emails individually reviewed in order to reconstruct these data and information to its condition prior to the actions of the Defendants;

f)  Attorneys' fees and court costs incurred by Plaintiff for the institution of this action and obtaining injunctive relief, including impounding the hardware containing Touhy firm data;

g)  The costs of services rendered by Forensicon for the impoundment and testing of the hardware containing Touhy firm data;

h)  Attorneys' fees, court costs, court reporter transcripts and time expended by Touhy firm personnel in litigating the Rule to Show Cause filed against Defendants in connection with the recovery of the Touhy firm Legal Match account;

i)  The revenue lost as a result of Defendants denying the Touhy firm access to its Legal Match account after May 21, 2007;

j)  The revenue lost by the Touhy firm as a result of revenue lost in connection with attorneys' fees in the cases Steven Ferko, Jules Smith, David Darwin, Christopher Manning, John Huebner and other Touhy firm clients.

**Plaintiff Exhibit 2_000022**

k)      Expenditure of time, money, expert fees and attorneys' fees in assessing the extent of the data loss with the data copied and subsequently impounded at Forensicon;

l)      Expenditure of money, expert fees and attorneys' fees in recovering access to the firm LegalMatch account;

m)      Loss of revenue incurred by the Touhy firm and other consequential damages incurred in restoring the system to its condition prior to the offense and resulting from this interruption of service.

93.      These losses and consequential damages exceed $5,000.00.  As described above, Defendants violated both the criminal and civil provisions of the CFAA, pursuant to which Plaintiff is entitled to damages and injunctive relief or other equitable relief, including:

94.      Touhy has no adequate remedy at law.  Money damages alone will not, and cannot, compensate Touhy for the loss of goodwill and business opportunities that it has suffered as a result of Defendants' actions.  Those actions have and will in the future continue to harm Touhy's business relationships.  As a result of Defendants' actions, Touhy has and will have difficulty securing their current and targeted potential clients, which will in turn impact its ability to do business.

95.      Due to overwriting, corruption or removal of media, Touhy firm data accessed or used by Ryan Stephan at the Touhy firm cannot be accessed or reviewed as these data are corrupt and indecipherable.

96.      In excess of 90% of the recovered Word, Word Perfect and text documents from these computers are indecipherable.  Only a small percentage of these data are accessible and able to be reviewed.

**Plaintiff Exhibit 2_000023**

Plaintiff Touhy & Touhy, Ltd. demands a jury trial on all matters so triable.

Respectfully submitted,

_____
One of the Attorneys for Plaintiff

Robert Orman
Law Offices of Robert Orman
One North LaSalle Street, Suite 1775
Chicago, Illinois 60602
(312) 372-0515
Attorney No. 22696

Michael O'Rourke
O'Rourke & Moody
161 N. Clark Street, Suite 2230
Chicago, IL 60601
312-849-2020
Attorney No. 44216

**Plaintiff Exhibit 2_000024**

## VERIFICATION

I, Timothy J. Touhy, under penalties as provided by law pursuant to Section 1-109 of the

Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the

THIRD AMENDED COUNT III and that the same are true and correct, except as to matters herein

stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe

the same to be true.


_____
TIMOTHY J. TOUHY, individually and
on behalf of Touhy & Touhy, Ltd.


**Plaintiff Exhibit 2_000025**

## VERIFICATION

I, Daniel K. Touhy, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the THIRD AMENDED COUNT III and that the same are true and correct, except as to matters herein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

DANIEL K. TOUHY

**'Recent Documents' on Stephan desktop which are unavailable due to removal of storage device**

1      Amtrust potentials.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system in or about May 2007.

2      Bouthner et al v. Amtrust Mortgage Corporation was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system in or about May 2007.

3      Brandon Farina was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:32 PM.

4      Brian Gagliardi was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:28 PM

5      CaseLists was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 3/20/2007 10:10 AM

6      CaseLists (2)  was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:40 PM

7      ElectionForm.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 5:32 PM

8      ElectionFormCasale.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:24 PM

9      ElectionFormChemi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:24 PM



PLAINTIFF'S
EXHIBIT
1

Plaintiff Exhibit 2  000027

10    ElectionFormErlandson.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 3:08 PM

11    ElectionFormJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:20 PM

12    ElectionFormLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:49 PM

13    ElectionFormPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:43 PM

14    email list.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 10:47 AM

15    Email.NewContactInfo.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  3/14/2007 6:06 PM

16    FormClient Letter.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:31 PM

17    FormClient LetterCasale.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 3:25 PM

18    FormClient LetterGagliardi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 4:28 PM

**Plaintiff Exhibit 2_000028**

19      FormClient LetterJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 3:43 PM

20      FormClient LetterLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:29 PM

21      FormClient LetterPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:44 PM

22      FormClientEmail.doc  was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:32 PM

23      FormClientEmailChemi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:12 PM

24      FormClientEmailGagliardi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:04 PM

25      FormClientEmailJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:44 PM

26      FormClientEmailLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:40 PM

27      FormClientEmailPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:45 PM

**Plaintiff Exhibit 2_000029**

28      FormCorrespondencereTransfer was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 2:56 PM

29      Master List of Outside Referrals.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about5/8/2007 9:41 AM

30      MasterEmailList.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about4/21/2007 9:46 AM

31      sz_busicard.pdfFINAL.pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/4/2007 10:09 AM

32      sz_busicard[1].pdfFINAL.pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/3/2007 2:58 PM

33      sz_busicardFINAL[1].pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 2:24 PM

34      sz_logo.gif was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/6/2007 2:58 PM

35      _sz_letterhead.dot was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 4/4/2007 5:27 PM

a) Raphael and Magdalena DeLapaz;

b) Joel Rak;

c) Scott Baldwein;

d) Ryan James;

e) James Chiapetta;

f) Eric Graf;

g) Brian Brennan

h) Raymond Barlow,

i) Thomas Little;

j) William Delaney;

k) Horafi, Inc.;

l) Leon Livergood estate;

m) Christopher Manning;

n) Juana Melendez;

o) Alicia O'Connell;

p) Charese Patton;

q) James Peterson;

r) Peter Schram;

s) Angela Stachowiak

t) Nasser Tavakoly



PLAINTIFF'S
EXHIBIT
2

**Plaintiff Exhibit 2_000031**

**Sent Items - Microsoft Outlook**

File  Edit  View  Go  Tools  Actions  Help

Type a question for help

New | Reply | Reply to All | Forward | Send/Receive | Find | Type a contact to find

Duplicates

**Mail**

Favorite Folders
- Inbox
- Unread Mail
- For Follow Up
- Sent Items

All Mail Folders
- Personal Folders
  - Class Action General
  - Deleted Items
  - Drafts
  - Inbox
  - Junk E-mail [1]
  - Outbox
  - Personal
    - Christy
    - ISBA

Mail
Calendar
Contacts
Tasks

Look for:  Search In ▾ Sent Items  Find Now  Clear  Options ▾

**Sent Items**

| ! | From / To | Subject | Sent |
|---|---|---|---|
| | 'Sandy Robinson' | FW: Website General Contact Form Submission | Mon 12/4/2006 9:58 AM |
| | 'Kevin Dinsdale' | RE: Overtime vs Champion | Mon 12/4/2006 10:34 AM |
| | | | Mon 12/4/2006 10:35 AM |
| | | | Mon 12/4/2006 10:37 AM |
| | | | Mon 12/4/2006 10:42 AM |
| | | | Mon 12/4/2006 11:06 AM |
| | | | Mon 12/4/2006 11:09 AM |
| | | | Mon 12/4/2006 11:15 AM |
| | | | Mon 12/4/2006 11:17 AM |
| | | | Mon 12/4/2006 11:25 AM |
| | | | Mon 12/4/2006 11:28 AM |
| | | | Mon 12/4/2006 11:35 AM |
| | 'elidas@juno.com' | RE: Employment Claims | Mon 12/4/2006 11:58 AM |
| | 'Erik Langeland' | Wachovia | Mon 12/4/2006 1:26 PM |
| | 'Sandy Robinson' | RE: Website Class Action Contact Form Submission | Mon 12/4/2006 1:42 PM |
| | 'Bromet, Rebecca' | RE: Erlandson | Mon 12/4/2006 2:01 PM |
| | 'Bromet, Rebecca' | RE: Erlandson | Mon 12/4/2006 2:18 PM |
| | 'Steven Ferko' | Confidential Case Information | Mon 12/4/2006 2:49 PM |
| | 'Pam Kilby' | FW: Wachovia | Mon 12/4/2006 2:50 PM |
| | 'Jonathan L. Wren...' | RE: Welchert | Mon 12/4/2006 2:51 PM |
| | 'Bromet, Rebecca' | RE: Erlandson | Mon 12/4/2006 2:52 PM |

5199 Items

Microsoft Office Outlook
Deleting Items...  Cancel

---

File  Edit  View  Go  Tools  Actions  Help

Type a question for help

New | Reply | Reply to All | Forward | Send/Receive | Find | Type a contact to find

Duplicates

**Mail**

Favorite Folders
- Inbox
- Unread Mail
- For Follow Up
- Sent Items

All Mail Folders
- Personal Folders
  - Class Action General
  - Deleted Items
  - Drafts
  - Inbox
  - Junk E-mail
  - Outbox
  - Personal
  - Sent Items
  - ten-thirty
  - Touhy&Touhy
  - Webmail
  - Search Folders
  - Other Folders
  - Archive Folders
  - More...

Mail
Contacts
Tasks

Look for:  Search In ▾ Sent Items  Find Now  Clear  Options ▾

**Sent Items**

| ! | From / To | Subject | Sent |
|---|---|---|---|
| | | | |
| **Date: Older** | | | |
| | Pam Kilby | 5D | Sat 1/3/2004 11:11 AM |
| | Pam Kilby | 5D | Sat 1/3/2004 11:11 AM |
| | tonyknight_E@hotmail... | Re: Website General Contact Form Submission | Sat 1/3/2004 12:23 PM |
| | tonyknight_E@hotmail... | Re: Website General Contact Form Submission | Sat 1/3/2004 12:23 PM |
| | mrjo558@msn.com | Re: Website General Contact Form Submission | Sat 1/3/2004 12:24 PM |
| | mrjo558@msn.com | Re: Website General Contact Form Submission | Sat 1/3/2004 12:24 PM |
| | snagrgolin.com | Re: RadioShack Class Action Contact Form Submission | Sat 1/3/2004 12:25 PM |
| | snagrgolin.com | Re: RadioShack Class Action Contact Form Submission | Sat 1/3/2004 12:25 PM |
| | Dick & Sue Kobrin | Re: Your Website Contact Form | Sat 1/3/2004 12:27 PM |
| | Dick & Sue Kobrin | Re: Your Website Contact Form | Sat 1/3/2004 12:27 PM |
| | Ryan Stephen | Re: RadioShack | Sat 1/3/2004 12:37 PM |
| | Ryan Stephen | Re: RadioShack | Sat 1/3/2004 12:37 PM |
| | | | |
| | mbrown5107@sy... | Re: Website Class Action Contact Form Submission | Sat 1/3/2004 ... |
| | mbrown5107@sy... | Re: Website Class Action Contact Form Submission | Sat 1/3/2004 ... |
| | mbrown5107@sy... | Re: Website Class Action Contact Form Submission | Sat 1/3/2004 ... |
| | HOTGRAPHIXGSB... | Re: Website General Contact Form Submission | Sat 1/3/2004 ... |

4384 Items

PLAINTIFF'S
EXHIBIT

Plaintiff Exhibit 2 000032

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **TOUHY & TOUHY, Ltd.,**<br>**a professional corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.    08 cv 2950** |
| **v.** | ) | |
| | ) | **Judge Holderman** |
| **ERIK H. LANGELAND and** | ) | |
| **ERIK H. LANGELAND, P.C.** | ) | **Magistrate Judge Ashman** |
| **a professional corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### AMENDED COMPLAINT

#### Jurisdiction

1.      This court has jurisdiction under 28 USC §1332. Plaintiff is a corporation

incorporated under the laws of the State of Illinois having its principal place of business in the State

of Illinois.  Defendant Erik H. Langeland is a citizen of the State of New York and is a corporation

incorporated under the laws of the State of New York having its principal place of business in the

State of New York.   The matter in controversy, exclusive of interest and costs, exceeds $75,000.00.

#### Venue

2.      Venue is proper in the Northern District of Illinois, as a substantial part of the

relevant acts of fiduciary breach giving rise to these claims, as well as the damage sustained by the

plaintiff, occurred in the Northern District of Illinois; a substantial part of the property and contracts

involved are found in the Northern District of Illinois; and the execution and performance of relevant

agreements were to occur in this judicial district.

1

## The Parties

3.     That at all times mentioned herein, the plaintiff, TOUHY & TOUHY, LTD. (The Touhy firm or Touhy & Touhy, Ltd.) was a professional corporation with its principal place of business in Cook County, Illinois. Its principals, Timothy J. Touhy and Daniel K. Touhy are licensed attorneys practicing law in the State of Illinois.

4.     That at all times mentioned herein, the defendant ERIK H. LANGELAND was a citizen of the State of New York and an attorney licensed in the state of New York. That at all times mentioned herein, the defendant ERIK H. LANGELAND, P.C., was a professional corporation incorporated in the state of New York with its principal place of business in New York. ("Langeland" refers to ERIK H. LANGELAND and ERIK H. LANGELAND, P.C.).

5.     Plaintiff does not allege that the combination of two or more persons in this case occurred between Erik H. Langeland, individually and Erik H. Langeland, P.C. This action is brought against Langeland for tortious conduct performed by Langeland against the plaintiff for conversion, interference with prospective economic advantage, aiding and abetting a breach of fiduciary duty, Langeland's own fiduciary breach and fraud.

6.     Stephan, Zouras and StephanZouras, LLP, who are referred to in this complaint, are not made parties to this action because they cannot be made parties without depriving this court of diversity jurisdiction.  The absence of these persons will not prevent the court from providing complete relief nor impair the interests of any named or unnamed party.

7.     At all times before May 21, 2007 Erik Langeland was aware that RYAN STEPHAN (Stephan) and JAMES ZOURAS (Zouras) were employed as attorneys for the plaintiff, Touhy & Touhy, Ltd.

2

8.     Between November 2006 through April 2007 Langeland, who had acted as co-counsel in other cases with the Touhy firm, was aware that Stephan and Zouras were agents and fiduciaries of the plaintiff, Touhy & Touhy, Ltd., and that any referral of clients or cases by them were made on behalf of their principal, Touhy & Touhy, Ltd.

9.     Between 2004 to 2006 Langeland's email communications with the Touhy firm principals and its employees concerning Touhy firm cases and clients had been through the touhylawcom email addresses.

10.     Between November 2006 through April 2007 Langeland was aware that any attorneys' fees generated by the referral of cases from Touhy firm employees were the property of the plaintiff, Touhy & Touhy, Ltd.

**Count I**
**Interference with Prospective Economic Advantage and Fiduciary Breach**
**Steven Yang**

11.     Plaintiff realleges paragraphs 7 to 10 as part of Count I.

12.     On or about November 3, 2006 Steven Yang submitted an inquiry to the Touhy firm's website, TouhyLawcom. Langeland obtained this privileged prospective client information and Touhy firm client forms on or about November 6, 2006.

13.     Langeland was aware that this prospective client contacted the Touhy firm through its website and had consulted with a Touhy firm attorney. Langeland received the sign up forms from a Touhy firm employee.

14.     Langeland was aware the prospective economic relationship with the Touhy firm was created between Yang and an attorney of the Touhy firm.

3

15.     Langeland modified the Touhy firm questionnaire by changing the name of the firm

on this questionnaire from"Touhy & Touhy, Ltd." to "Erik H. Langeland, P.C." and substituting

Langeland's address for the Touhy firm's address.  Langeland then sent the Touhy firm questionnaire

to this prospective client which document reflected the law firm as Langeland's firm rather than the

Touhy firm.

16.     On December 13, 2006 Langeland filed an action on behalf of this prospective Touhy

firm client, *Yang et al v. New York Mortgage Company, LLC.*, No. 1:06-cv-14429, which case was

filed in the U.S. District Court in New York.

17.     Between November 2006 through April 2007 Langeland was aware of the existence

of the agreement and the prospective economic advantage between the plaintiff and Yang and was

aware that this was a Touhy firm prospective client.

18.     At no time between November 21, 2006 through May 21, 2007 did Langeland have

the permission of the plaintiff principals to represent Yang or act on behalf of the plaintiff Touhy &

Touhy, Ltd., nor did Langeland disclose his involvement in this case to the Touhy firm principals.

19.     Langeland's pecuniary gain was a significant motive for the solicitation of the

plaintiff's client and his actions aforesaid.

20.     That as a direct and proximate result of one or more of the foregoing acts of

Langeland as set forth in this Count, the plaintiff was deprived of its property and right to monies and

otherwise injured as described herein.

**Count II**
**Interference with Prospective Economic Advantage Fiduciary Breach**
**Ferko**

21.     On or about November 21, 2006 there was an attorney-client relationship and a valid, written contingent fee agreement for legal services between plaintiff and its client Steven Ferko which constituted a prospective economic advantage to the plaintiff.

22.     Between November 2006 through April 2007 Langeland was aware of the existence of the agreement and the prospective economic advantage between the plaintiff and Ferko.

23.     Langeland was aware that this client was represented by the Touhy firm and that any attorneys' fees recovered were Touhy firm property.

24.     The prospective economic relationship between Ferko and the plaintiff existed in Cook County, Illinois.

25.     As co-counsel with the Touhy firm on cases since 2004, Langeland owed a fiduciary duty to the Touhy firm of honesty, good faith and fair dealing. At all times, Langeland was aware that any attorneys' fees recovered as a result of the representation of the Touhy firm client Steve Ferko were the property of the property of the plaintiff, Touhy & Touhy, Ltd.

26.     Langeland signed an attorney-client agreement with one of the attorneys of the Touhy firm to represent Ferko, which agreement was dated February 9, 2007 and signed by Langeland on or about March 29, 2007.

27.     At the time Langeland signed this contract it was his intent to pay any attorney fees recovered to himself and other attorneys, but not pay the Touhy firm.

5

28.     By signing this agreement, Langeland nevertheless knew that the Touhy firm was still entitled to 66% of the attorneys' fees from this client's claim.

29.     On or about April 23, 2007 Langeland received approximately $60,000 in attorneys' fees due the Touhy firm from this case and gave $40,716.16 to attorneys not parties to the contract or attorneys for the client.

30.     Langeland knew Ferko was a Touhy firm client and knew at the time he signed the contract on March 29, 2007 that the case was being settled. Langeland had performed little or no services and had little or no communications with the Touhy firm client Ferko directly.

31.     Langeland's pecuniary gain was a significant motive for the solicitation of the plaintiff's client and his actions aforesaid.

32.     That as a direct and proximate result of one or more of the foregoing acts of Langeland as set forth in this Count, the plaintiff was deprived of its property and right to monies and otherwise injured as described herein.

**Count III**
**Conversion**
**Ferko**

33.     Plaintiff alleges paragraphs 7 to 10 and paragraphs 21 to 32 as part of this Count. Langeland took control, dominion and ownership of the personal property of the plaintiff, Touhy & Touhy, Ltd. Specifically, attorneys' fees from the Steve Ferko action in the approximate sum of $63,750.00, which Langeland deposited in his firm trust account at Green Point Bank.

34.     Langeland paid Touhy firm attorneys fees to attorneys who did not represent Ferko giving each of them a check in the amount of $20,358.08 drawn on Langeland's bank, Green Point Bank, which checks were dated April 23, 2007. Langeland wrote these checks to Stephan and

6

Zouras in their names and indicated on the face of these checks that these monies were payment from the Ferko case. These monies were the property of the Touhy firm.

35.     Langeland did not have permission or authorization of the Touhy firm principals to exercise ownership or control over any attorneys' fees from the Steve Ferko action and Langeland knew that the Touhy firm had not authorized disbursement of these monies at the time Langeland issued $60,000 in checks to himself and others.

36.     That as a direct and proximate result of one or more of the foregoing acts of Langeland as set forth in this Count, the plaintiff was deprived of its property and right to monies and otherwise injured as described herein.

## Count IV
### Interference with Prospective Economic Advantage Fiduciary Breach
### Gerald Bouthner

37.     On or about February 6, 2007 Gerald Bouthner submitted an inquiry to the Touhy firm's website, TouhyLawcom.

38.     The prospective economic relationship was created between Bouthner and the plaintiffs in Cook County, Illinois.

39.     Langeland was aware at that time that this prospective client contacted the Touhy firm through its website and had consulted with a Touhy firm attorney. Langeland received an email from the Touhy firm with a Touhy firm questionnaire and client agreement.

40.     Langeland modified the Touhy firm class representative agreement, adding Langeland's name to the Touhy & Touhy, Ltd. agreement and having the modified agreement signed by Bouthner.

7

41.    Langeland was aware that this client had signed an agreement with the Touhy firm.

42.    Langeland, as co-counsel under this agreement and other co-counsel agreements with the Touhy firm owed a fiduciary duty to the Touhy firm of honesty, good faith and fair dealing.

43.    In or about March and April 2007 Langeland filed an appearance on behalf of this prospective Touhy firm client, *Bouthner et al v. Amtrust*, which case was filed in the U.S. District Court in Georgia. Langeland concealed his actions involving Bouthner from the Touhy firm principals in violation of his fiduciary duty to the Touhy firm.

44.    At no time did Langeland have the permission of the Touhy firm principals to represent Bouthner or act on behalf of the plaintiff Touhy & Touhy, Ltd., nor did Langeland disclose his involvement in this case to the Touhy firm principals or disclose that he had signed an agreement with Bouthner or signed a co-counsel agreement with counsel in Georgia.

45.    Langeland's pecuniary gain was a significant motive for the solicitation of the plaintiff's client and his actions aforesaid.

46.    That as a direct and proximate result of one or more of the foregoing acts of Langeland as set forth in this Count, the plaintiff was deprived of its property and right to monies and otherwise injured as described herein.

## Count V
### Langeland's Fraud and Fiduciary Breach while Fiduciary of the Touhy Firm

47.    Plaintiff realleges paragraphs 7 to 10 and Counts I to IV as part of Count V. Langeland had acted as co-counsel in other cases with the Touhy firm from 2004 to May 21, 2007 pursuant to written co-counsel agreements or as c-counsel in which the Touhy firm and Langeland represented clients jointly. Among these cases were *Casale v. Provident Bank and*

8

*Home 1-2-3 Corporation*, No. 04-2006; *Armstrong v. Weichert*, 05-cv-3120; *Billman v. National City Bank*, 1:06cv138, and *Chemi v. Champion Mortgage*, No. 2:05-cv-238.  The existence of these fiduciary relationships imposed a duty on Langeland to disclose any self-dealings and disclose any misconduct by the Touhy firm's employees, division of attorneys' fees from Touhy firm cases, or Langeland's own fiduciary breaches to the Touhy firm principals.

48.    The Touhy firm principals did not possess information sufficient to determine Langeland's participation in Touhy firm cases involving Ferko, Yang, and Bouthner.  This lack of knowledge of the Touhy firm principals was due in large part to Langeland's own actions in concealing these cases from the Touhy firm as described in Counts I to V.

49.    Langeland actively concealed from the Touhy firm principals communications he was having concerning these cases by using his Yahoo email address, not disclosing that he had executed a co-counsel, client agreement and appearance in Bouthner, and converted the Ferko attorneys' fees as described in Counts II, III and IV.

50.    Between November 2006 and April 2007 Langeland intended to take monies from the Ferko settlement proceeds and conceal this fact from the Touhy firm.

51.    During this period Langeland was negotiating a settlement in Steve Ferko's case and withholding this information from the Touhy firm principals.

52.    Langeland also concealed other cases involving Equity One, case materials from Yang v. NYMC,  Shabazz v Morgan Funding, Marc Borowsky v. IBM and Steven Ferko.

53.    Langeland's actions misleading the Touhy firm principals included:

A. In July and August 2007 told the Touhy firm principals that he believed the Ferko attorneys' fees were the property of the Touhy firm although Langeland had already disbursed

money to himself and attorneys other than the Touhy firm.

   B.  In July and August 2007 told the Touhy firm principals that he had not executed any agreement involving Gerald Bouthner, when, in fact, Langeland had executed an agreement on March 14, 2007,

   C.  Did not disclose to the Touhy firm principals that he had drafted or approved an agreement in which the attorneys' fees from Ferko would be paid directly to Langeland.

   D.     At no time did he disclose to the Touhy firm principals that he had filed an action on behalf of Steven Yang or that he knew Yang was a Touhy firm website inquiry and prospective firm client.

   E.     Did not disclose to the Touhy firm principals that in December 2006 he had changed Touhy firm forms which Steven Yang completed and returned to Langeland for the purpose of Langeland representing Yang.

   F.     In July and August 2007 withheld information from the Touhy firm principals that he had executed an agreement on March 29, 2007 in which Langeland was to receive 33% from Ferko.

   G.     At no time did Langeland disclose to the plaintiff's principals that he had reduced the amount of recoverable fees owed the Touhy firm in Ferko by at least $15,000 or have its permission to do so.

   H.     At no time did Langeland disclose to the Touhy firm principals that he had received or sent a demand letter on Ferko

   54.     It was Langeland's intent, by these acts of concealment, misrepresentations or omissions by silence by him to prevent the Touhy firm principals from learning of the acts of

10

fiduciary breach described herein.

55.    The Touhy firm and its principals relied on Langeland's statements and omissions and therefore took no action to recoup the Ferko attorneys' fees or take action to prevent the continuing fiduciary breaches of Langeland.

56.    The Touhy firm and its principals relied on Langeland's acts of concealment, misrepresentations and omissions by silence in connection with the cases and conduct described in this complaint to their detriment, thereby sustaining damage based on such reliance as set forth herein.

57.    As a direct and proximate result of Langeland's misrepresentations, actions and omissions  the Touhy firm has incurred loss revenue and damages, including attorneys' fees recovered or generated by IBM, Ferko, Borowsky, Shabazz, Yang, Bouthner, H&R Block and other cases or prospective clients, revenue and goodwill lost by the Touhy.

58.    Langeland's pecuniary gain was a significant motive for the solicitation of the plaintiff's client and his actions aforesaid.

59.    That all of the acts of Langeland aforesaid were committed without lawful justification or consent of the plaintiff and were committed knowingly, intentionally and with the malicious intent to convert the property of the plaintiff to his own use, permanently deprive the plaintiff of its property, prospective clients and honest services of its employees.

            WHEREFORE, the plaintiffs demand judgment under Counts I through V against the defendants, ERIK H. LANGELAND and ERIK H. LANGELAND, P.C., jointly and severally, for compensatory and punitive damages and costs of this suit.

**Jury Demand**

Plaintiff demands a trial by jury of any issue triable of right by a jury by filing this demand

which is indorsed upon the plaintiff's complaint.


Date:   June 26, 2008                           Respectfully submitted,


                                                /s/E. Steven Yonover
                                                E. Steven Yonover
                                                55 West Wacker Drive
                                                14th Floor
                                                Chicago, Illinois 60601
                                                (312) 236-9493
                                                (847) 205-0022

                                                Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, the undersigned, certify that a copy of the foregoing **AMENDED COMPLAINT** was served on the following individuals, via electronic mail and/or ordinary U.S. mail, postage prepaid, this 26th day of June, 2008.

Kimberly E. Rients Blair
Tyler Mertes
Gordon & Rees, LLP
1 North Franklin Street, 1800
Chicago, Illinois 60606


/s/E. Steven Yonover
E. Steven Yonover
One of the Attorneys for Plaintiff


E. Steven Yonover
55 West Wacker Drive
14th Floor
Chicago, Illinois 60601
(312) 236-9493
(847) 205-0022