UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL HOWARD, PAUL GALLOWAY, ROBERT NEWSON, ALVAN YOUNG, and JOHN HUEBNER, Individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 2746 |
| v. | ) ) | Judge Joan B. Gottschall |
| SECURITAS SECURITY SERVICES, USA INC., | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the plaintiffs' Motion to Conditionally Certify the Class and Issue Notice.[1] For the reasons stated below, the motion is granted in part and denied in part.

### I. BACKGROUND[2]

The defendant, Securitas Security Services USA, Inc. ("Securitas"), provides security services to hundreds of businesses throughout the state of Illinois. It has eleven Illinois branches. The plaintiffs all worked, at various times, for Securitas as hourly non-exempt

---

[1] The parties have submitted an unusually high number of submissions relating to this motion, including supplements and a motion to strike. At the request of the court, the plaintiffs identified the documents with the following fifteen docket entries that should be considered in support of the motion: 23, 25, 26, 40, 43, 51, 57, 59, 62, 63, 65, 81, 82, 85, and 90 (docket numbers 23 and 25 appear to be identical submissions of the plaintiffs' memorandum in support of their motion). The defendant urges the court to consider also docket numbers 86, 87, 94 and 95. The court's review of the docket identified the following additional docket numbers that should be considered: 11, 21, 52, 72, 97, 98, and 100. Thus, the court considers 25 separate submissions in relation to the motion to conditionally certify the class, the last of which was filed on or around December 4, 2008.

[2] The facts are taken in part from the Amended Complaint and are admitted, in the defendant's answer, unless otherwise noted. Other facts are admissions of the defendant taken from affidavits and briefs submitted in opposition to the motion to certify.

uniformed security guards. Plaintiffs Crystal Howard ("Howard"), Paul Galloway ("Galloway"), Robert Newson ("Newson"), and Alvan Young ("Young") worked as canine unit security guards at the Securitas branch located at 500 N. Pulaski Road, Chicago, Illinois, providing security services for the Chicago Transit Authority. Plaintiff John Huebner ("Huebner") worked at the Rockford, Illinois branch, providing security services at the Exel Distribution Center in Elgin, Illinois.

The plaintiffs filed suit against Securitas alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"). Specifically, the plaintiffs allege that Securitas required them to complete extensive training without compensation, to work before and after their shifts without overtime payment, and to maintain their uniforms without compensation for the time spent. Am. Comp. ¶¶ 14-18.

## II. ANALYSIS

The plaintiffs ask the court to designate this case as a collective action under § 216(b) of the FLSA, to order Securitas to produce a list of potential opt-in class members, and to authorize notice to be sent to all putative class members. Securitas argues that conditional certification and its resulting notice would be inappropriate because the plaintiffs are not similarly situated to the more than 10,000 past and current employees they seek to represent.[3]

---

[3] Securitas makes two additional arguments that may be disposed of in short order. First, its argument that class certification is premature while summary judgment is pending is moot given that the court granted the plaintiffs' Rule 56(f) motion and denied Securitas's motion for partial summary judgment. *See* Order, *Howard v. Securitas Sec. Servs. USA, Inc.*, No. 08 C 2746 (N.D. Ill. Oct. 20, 2008) (docket no. 80). Second, Securitas argues that lawsuits filed against certain class counsel may impair counsel's ability to represent the class adequately. In support, it cites a single case, *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676 (D. Kan. 2004), where the court stated that "the adequacy of a class counsel or a class representative is not necessarily irrelevant in a putative FLSA § 16(b) collective action." *Id.* at 682. As an initial matter, the court in *Brown* was analyzing the adequacy of the putative class representative, not class counsel. *Id.* Its statement provides no legal reasoning regarding adequacy of class counsel upon

2

A.      **Legal Standard: Motion to Conditionally Certify the Class**[4]

Section 216(b) of the FLSA specifically authorizes collective actions by representative plaintiffs. 29 U.S.C. § 216(b). The statute provides that "[a]n action to recover . . . may be maintained . . . by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated." *Id.*; *see Vanskike v. Peters*, 974 F.2d 806, 812 (7th Cir. 1992) (noting that the FLSA allows class actions). Unfortunately, neither the FLSA nor its implementing regulations define or provide guidance on the meaning of the term "similarly situated." Courts have generally taken one of three approaches: (1) an *ad hoc* case-by-case approach, where the court employs a two stage approach to certification; (2) an approach that mirrors the requirements of Rule 23 class certification; and (3) an approach that incorporates the requirements of the pre-1966 Rule 23 for "spurious" class actions. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

The Seventh Circuit has yet to provide guidance on which of the three approaches should be followed; however, at least two Courts of Appeal have explicitly endorsed the two-stage, *ad hoc* approach. *See Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (explicitly adopting a two-stage procedure where the court, using a "fairly

___

which this court can rely, especially given the differences between § 216(b) and Rule 23. *See Vanskike v. Peters*, 974 F.2d 806, 812-13 (7th Cir. 1992). Moreover, Securitas has not demonstrated that a quarrel between former law partners over money has any impact on counsel's ability to represent the class adequately. The court consequently rejects Securitas's argument, along with its request to include the information about the existence of the lawsuits against counsel in the notice to the class.

[4] Many cases that discuss conditional certification involve claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-34 ("ADEA"). Because the ADEA requires plaintiffs to use the opt-in class mechanism of the FLSA, the analysis of those cases is equally applicable to the FLSA cases. *See, e.g.*, *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (adopting, in a FLSA case, a two-stage procedure for certifying a class following the reasoning of *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001), an ADEA case).

lenient standard," determines whether the evidence favors conditional certification of the class); *Thiessen*, 267 F.3d at 1105 (concluding that the *ad hoc* approach effectuates Congress's goals for the FLSA, but observing that "there is little difference in the various approaches"). This court now joins with the majority of district courts to have considered the issue and adopts the two-stage *ad hoc* approach. *See, e.g.*, *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (collecting cases that have adopted the two-stage approach).

Under the *ad hoc* approach, "a court typically makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" *Thiessen*, 267 F.3d at 1102 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). The determination requires only "'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Id.* (quoting *Vaszlavik*, 175 F.R.D. at 678). At the notice stage, the burden of proof is not heavy; nevertheless, the plaintiffs must demonstrate, through the pleadings and affidavits, a factual nexus between the plaintiff and the proposed class or a common policy that affects all the collective members.

After notice has been issued and discovery concluded, "the court then makes a second determination, utilizing a stricter standard of 'similarly situated.'" *Id.* at 1102-03 (citing *Vaszlavik*, 175 F.R.D. at 678). The *Thiessen* court noted that "[d]uring this 'second stage' analysis, a court reviews several factors, including '(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required by the [FLSA] before instituting suit.'" *Id.* at 1103 (citing *Vaszlavik*, 175 F.R.D. at 678).

Although the court agrees with the general two-stage, *ad hoc* approach of the Tenth

4

Circuit, it rejects the language in *Thiessen* that suggests that certain factors should be considered only at the second stage. *See United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) (explaining that a district court "owes no more than respectful consideration to the views of other circuits" and is bound "only within a vertical hierarchy"). As Judge Hart has explained, "The primary difference between the two stages of the litigation is the level of proof required," not the evidence that may be considered. *Molina v. First Line Solutions, LLC*, 566 F. Supp. 2d 770, 788 n.18 (N.D. Ill. 2007); *see also Ruehl v. Viacom, Inc.*, 500 F.3d 375, 389 n.17 (3d Cir. 2007) (approving a "balancing of factors" approach to the first step in the certification process that evaluates similarity of location, claims, relief sought, salaries and circumstances of employment). Thus, in conducting the notice stage determination at issue in this motion, the court will weigh the evidence in the record without any artificial bifurcation, giving due regard to the lenient burden of proof to which the plaintiffs are subject at this preliminary stage, to determine whether the factors favor a finding that the plaintiffs are "similarly situated."

**B.     Motion to Strike**

Before the court reaches the merits of the motion to certify the class, it must consider Securitas's motion to strike certain statements in supplemental declarations filed by former Securitas employees Hugh Meloche ("Meloche"), Robert Sanchez ("Sanchez"), Robert Creed ("Creed"), and John Huebner ("Huebner"). As detailed below, the motion is granted in part and denied in part.

Securitas argues that, pursuant to Federal Rule of Evidence 602, a court may consider only admissible evidence on a § 216(b) motion and that the plaintiffs' statements include inadmissible conjecture and conclusions and are not based on personal knowledge. The plaintiffs point out, correctly, that courts are split on whether it is appropriate to consider

5

inadmissible evidence, such as hearsay, at this stage. *See Adair v. Wis. Bell, Inc.*, No. 08 C 280, 2008 WL 4224360, at *8 (E.D. Wis. Sept. 11, 2008) ("The courts, including those in [the Seventh C]ircuit, are split as to whether a plaintiff may rely on inadmissible evidence to make the requisite factual showing for conditional certification."). *Compare Molina*, 566 F. Supp. 2d at 788 ("Even if this testimony is hearsay that could not be considered at trial, it may be considered in deciding whether to permit a collective action."), *with Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 555 (N.D. Ill. 2008) ("Despite the liberal standard applied at step one of conditional certification, courts still require plaintiffs to make factual allegations supported by admissible evidence.").

A strict application of the Federal Rules of Evidence does not comport with the court's understanding of relative evidentiary burdens imposed under the two-stage certification approach. *See Thiessen*, 267 F.3d at 1102-03 (distinguishing between the level of scrutiny applied during the two certification stages). On a § 216(b) motion, the case is at a preliminary stage, the motion is non-dispositive, and, typically, the plaintiff files without the benefit of discovery. *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006). These considerations suggest that "'plaintiffs need not come forward with evidence in a form admissible at trial.'" *Id.* (quoting *Coan v. Nightingale Home Healthcare, Inc.*, 1:05-CV-0101-DFH-TAB, 2005 WL 1799454, at *1 n.1 (S.D. Ind. June 29, 2005)). The most reasonable approach to the respective evidentiary burdens of the plaintiff during the two stages is one that requires a stricter standard of proof in the second stage, once the plaintiffs have had an opportunity for full discovery and to assess the shared factual bases of the class claims. Thus, the court concludes that the plaintiffs need not set forth evidence that would be admissible at trial in support of this preliminary § 216(b) motion but must do so to survive any motion to decertify

the class that Securitas files during the second stage. Consequently, the court denies Securitas's motion to the extent it seeks to strike hearsay evidence.

Of course, "[t]he court's determination that affidavits in support of motions for conditional certification need not meet *all* evidentiary standards for admissibility at trial does not mean that such affidavits need not meet *any* standards." *Id.* at 369 (emphasis in original). Thus, the statements in the plaintiffs' declarations must, at a minimum, be based on personal knowledge. The plaintiffs assert that the statements are matters that the declarant observed, "or which the declarants understand based upon evidence described in their respective declarations." Pls.' Opp'n to Def.'s Mot. to Strike at 3. Securitas disagrees and moves to strike three broad categories of statements.

First, Securitas moves to strike any references in the declarations to the experiences of persons other than the declarant. *See* Mem. of Law in Supp. of Def.'s Mot. to Strike at 5. The court agrees with the plaintiffs that the broad statements regarding "other" security guards made by three of the four declarants fall within the parameters of personal knowledge by virtue of the declarants' job titles and the duties associated therewith. Specifically, Meloche began work for Securitas as a security guard but also worked as a human resources manager for four months in 2005; Creed worked as a Site Leader from January 2006 until May 2007; and Sanchez worked as Shift Supervisor and Sergeant from approximately April 2006 to January 2007. All had the opportunity and obligation to oversee other guards, thus observing and coming to know information about their work experiences. Therefore, the statements by Meloche, Creed, and Sanchez as to "other" guards will not be stricken. However, Huebner worked only as a security guard and advances no tenable basis for personal knowledge regarding the activities and experiences of his coworkers. Therefore, the references to "other guards," in whatever form, are

stricken from paragraphs 8, 9, 12, 14, and 15 of Huebner's declaration only.

Next, Securitas moves to strike numerous statements that purport to disclose the knowledge or motivation of Securitas or its managers. *See* Mem. of Law in Supp. of Def.'s Mot. to Strike at 6-7. Meloche, a member of Securitas management whose duties included the preparation of both payroll and invoices and attending management meetings, is the only declarant who demonstrates that he has the requisite personal knowledge to comment on such matters. Therefore, Securitas's motion to strike is granted as to the following references to Securitas's or its managers' mental state: Huebner ¶ 17; Creed ¶¶ 11, 12, 17 (second sentence), 25 (first and third sentences), 26, 28; and Sanchez ¶¶ 12, 18 (second sentence), 30, 31, 35.

Finally, Securitas moves to strike statements as irrelevant, conclusory and/or speculative. *See* Mem. of Law in Supp. of Def.'s Mot. to Strike at 7-8. The court grants the motion as to the following statements only: Creed ¶ 18 (regarding inaccuracy of time clocks), Creed ¶ 26 (regarding bonus) and Sanchez ¶ 19 (regarding inaccuracy of time clocks). The remaining paragraphs are not stricken since they are reasonable inferences or opinions grounded in the declarants' personal knowledge.

In summary, the defendant's Motion to Strike Statements in Plaintiffs' Declarations in Support of Their Motion to Conditionally Certify the Class is granted in part and denied in part. Consequently, the plaintiffs' Motion For Leave to File Declaration of Robert Creed in Support of Their Motion to Conditionally Certify the Class and Issue Notice is granted, subject to certain paragraphs being stricken as stated above.

**C.      Whether The Plaintiffs Are "Similarly Situated" To Other Members Of The Class**

The plaintiffs have moved to have the case designated as a collective action pursuant to § 216(b) of the FLSA on the basis of Securitas's alleged common scheme that required non-

exempt, hourly employees to work time off-the-clock, including overtime, without pay. *See* 29 U.S.C. § 216(b) (allowing collective actions on behalf of "other employees similarly situated"). Securitas disputes that the plaintiffs are similarly situated to members of the class. Answer to Am. Compl. ¶ 23. The plaintiffs assert that their allegations and declarations show that they are similarly situated to "[a]ll individuals who were employed or are currently employed by the Defendant, its subsidiaries or affiliated companies, as security guards in Illinois at any time during the relevant statute of limitations." Am. Compl. ¶ 22.[5]

As a preliminary matter, the plaintiffs err when they assert that the court should not make even a preliminary inquiry into the merits of their case when deciding the § 216(b) motion. Their reading of *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974), has been explicitly rejected by the Seventh Circuit. *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675-77 (7th Cir. 2001) (allowing courts to look beyond the pleadings to ensure that the prerequisites and requirements for class certification are satisfied where factual disputes arise on a Rule 23 motion). The factual underpinnings of the plaintiffs' claims are disputed and the court is under no obligation, as it would be on a motion to dismiss, to accept all the plaintiffs' allegations as true. Rather, the court evaluates the record before it, including Securitas's oppositional affidavits, to determine whether the plaintiffs are similarly situated to other putative class members. Of course, in this first step of a § 216(b) certification, the determination "is made using a 'lenient interpretation' of the term 'similarly situated.'" *Jirak*, 566 F. Supp. 2d at 847-48. Thus, the court looks for no more than a "minimal showing" of similarity established by allegations and declarations that successfully engage those of the defendants to the contrary. *Id.*

After reading Securitas's briefs and declarations, the court finds that the ability of the

---

[5] At a hearing on November 12, 2008, the parties agreed that the court should consider the motion for class certification as it applies to the class defined in the Amended Complaint.

plaintiffs to obtain conditional certification for a class of individuals employed in the canine unit is not seriously in dispute. *See, e.g.*, Answer to Am. Compl. ¶ 23 (discussing how the canine unit plaintiffs differ from non-canine unit class members); Def.'s Resp. in Opp'n to Pls.' Mot. to Conditionally Certify Class at 7-10 (enumerating similarities of canine unit plaintiffs' claims and declarations). However, the plaintiffs are not seeking such a narrow class certification; they seek to conditionally certify a class comprised of *all* Securitas guards in Illinois, regardless of branch or location. This broader class definition changes the scope of the litigation considerably: between May 12, 2005 and June 24, 2008, Securitas employed just 128 canine unit security guards compared to a total of 10,375 people in all Illinois security guard positions. Aff. of Laura Rysavy ¶¶ 4-5 (Nov. 4, 2008), Ex. 3 to Def.'s Supp. Resp. in Opp'n to Pls.' Mot. to Conditionally Certify Class & Issue Notice.

Securitas points out that the vast majority of plaintiffs and opt-ins are drawn from the canine unit and that they cannot demonstrate that they are similarly situated to other guards. They argue that canine unit guards comprise only 1.23% of Securitas's Illinois workforce and they "differ from other [Securitas] security guards regarding how and where they report to work, how timesheets are completed, the types of duties they perform, the training they receive, union status, uniform provision and deposits, and other matters directly related to Plaintiffs' claims." Def.'s Supp. Resp. in Opp'n to Pls.' Mot. to Conditionally Certify Class & Issue Notice at 2. As of this date, twenty-five opt-in consent forms have been filed with the court,[6] including those for

---

[6] Opt-in forms have been filed by the following persons: Latrice Clay, Gabriella Collins, Robert Creed, David Diaz, Brandon Feggins, Paul Galloway, Lebron Hale III, Michael Hopkins, Crystal Howard, John Huebner, Paul Isackson, Lolita Johnson, Marcus Long, Joella Miller, Khanita Nevilles, Robert Newson, Cynthia Norman, Robin Roberson, Jorge Sanchez, Aimee Spangler, Brandon Tauer, Kenyata Washington, Jacqueline Weatherly, Alvan Young, and Demetrius Young. An additional two class members, Patrick English and Arlene Harris, filed but later withdrew opt-in forms.

10

the named plaintiffs. Five opt-in forms are from non-canine unit guards. In addition, declarations have been filed by named plaintiffs Howard, Galloway, Newson, Young, and Huebner, as well as by opt-in class members Creed and Sanchez. Only Huebner worked as a guard at a non-canine unit branch.

The court is not persuaded that the concentration of opt-ins from the canine unit is a matter for undue concern at this stage in the litigation. To be sure, district courts have determined that conditional certification is inappropriate where the plaintiff could not show that the same policies and procedures were followed at other offices or branches of a company. *See, e.g.*, *Adair*, 2008 WL 4224360, at *8 (questioning whether the plaintiffs had shown a policy and practice of allowing work off-the-clock where there was evidence that two supervisors in one branch allowed it but the company had four separate call centers); *Molina*, 566 F. Supp. 2d at 788-89 (restricting a class to the Chicago territory of a nationwide company because the plaintiff had put forward evidence only for that territory); *Sheffield v. Orious Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (denying certification where "the dissimilarities among the putative class members extend[ed] to geography, work sites, and payment systems"). On the other hand, courts have also granted certification despite the dispersal of workers at different locations. *See, e.g.*, *Jirak*, 566 F. Supp. 2d at 848 (granting certification of a class of pharmaceutical representatives who worked in six different franchises); *Jonites v. Exelon Corp.*, No. 05 C 4234, 2006 WL 2873198, at *3 (N.D. Ill. Oct. 4, 2006) (rejecting defendants argument that linemen or repairmen that worked at "different locations with different job classifications" were not similarly situated). The need for a factually-specific determination, and the lack of guidance from the Seventh Circuit about the outer parameters of an appropriate finding of "similarly situated," means that opinions from other courts, while useful for informational purposes, are ultimately not

dispositive as to the result of the inquiry in this case. The issue for the court to decide is whether the plaintiffs have established a sufficient factual nexus to demonstrate that the allegedly illegal policies and practices exist beyond the walls of the canine unit. *See Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, at *5 (N.D. Ill. Dec. 22, 2005) ("If individual business units adopt similarly unlawful policies and operate in materially similar ways as to materially similar workers, then a 'common policy or plan' would appear to exist.").

Four of the named plaintiffs (Howard, Galloway, Newson, and Young) worked at the canine unit at 500 N. Pulaski in Chicago. Howard Aff. ¶ 3, Ex. 2 to Pls.' Mot.; Galloway Aff. ¶ 3, Ex. 3 to Pls.' Mot.; Newson Aff. ¶ 3, Ex. 4 to Pls.' Mot.; Young Aff. ¶ 3, Ex. 5 to Pls.' Mot. Huebner, in contrast, worked at the Rockford branch. Huebner Aff. ¶ 2, Ex. A to Pls.' Supp. Decls. The plaintiffs' declarations, which are identical in many respects, confirm that they shared certain basic job responsibilities such as inspections, surveillance, patrolling, and preparing logs and incident reports. Howard Aff. ¶ 4; Galloway Aff. ¶ 4; Newson Aff. ¶ 4; Young Aff. ¶ 4; Huebner Aff. ¶ 4. They all aver that they were required to arrive at work before the time of their scheduled shift to conduct pre-shift tasks, which for the canine unit plaintiffs included certain procedures with their dogs. Howard Aff. ¶ 6; Galloway Aff. ¶ 11; Newson Aff. ¶ 11; Young Aff. ¶ 7; Huebner Aff. ¶ 13.[7] They state that some of their worked hours, including pre-shift preparatory time, were not recorded on the sign-in sheets and consequently were

---

[7] Securitas's Rockford branch site supervisor disputes that Huebner arrived early for his shifts and submits printouts of key card entries as proof. *See* Peabody Aff. ¶ 16, Ex. 7 to Def.'s Supp. Resp.; *id.* ¶ 18 (noting that on eleven out of 59 occasions, Huebner arrived at the parking lot three or fewer minutes before his shift start time); *id.* Ex. F (key card entry log). The court agrees that the records seem to belie Huebner's claim that he arrived at work 15-20 minutes before his scheduled shift. *See* Huebner Aff. ¶ 13. However, the actual time Huebner arrived and began work is a matter to be sorted out via discovery and merits rulings. At this point, the court is concerned with whether Huebner has sufficiently demonstrated that he and the other plaintiffs are similarly situated in regard to alleged policies and procedures.

12

uncompensated. *See, e.g.*, Howard Aff. ¶¶ 8, 10; Galloway Aff. ¶ 14; Newson Aff. ¶¶ 13, 17; Young Aff. ¶¶ 5, 12; Huebner Aff. ¶ 14. All five plaintiffs declare that they spent time off-the-clock maintaining their uniforms to comply with Securitas's appearance requirements. Howard Aff. ¶¶ 16-19; Galloway Aff. ¶¶ 16-19; Newson Aff. ¶¶ 20-23; Young Aff. ¶¶ 15-18 Huebner Aff. ¶¶ 8-12. Furthermore, Galloway, Newson, Young, and Huebner[8] declare that they were not paid for training they received. Galloway Aff. ¶¶ 5-9; Newson Aff. ¶¶ 5-8; Young Aff. ¶ 20; Huebner Aff. ¶¶ 6-7.

The plaintiffs therefore assert that there is a factual nexus between them and the putative class and that they are all subject to Securitas's standard policies and procedures that result in them not being fully compensated because work is completed off-the-clock. The declarations of Meloche, Creed, and Sanchez support the plaintiffs' suggestion that common procedures existed in the canine unit branch. *See* Meloche Aff. ¶¶ 1-2 (Meloche was canine unit human resources manager), 5 (unpaid training), 7-8 (uniform policies), 11-12 (time-keeping), Ex. C to Pls.' Supp. Decls.; Creed Aff. ¶¶ 2 (Creed was site leader in canine unit), 9-10 (unpaid training), 13-17 (uniform policies), 18-19 (time-keeping), Ex. D to Pls.' Supp. Decls.; Sanchez Aff. ¶¶ 2 (Sanchez was shift supervisor in canine unit), 11 (unpaid training), 14-18 (uniform policies), 19-21 (time-keeping).

Securitas submits affidavits from various members of its management team disputing the factual accuracy of the plaintiffs' declarations. However, David Reese ("Reese"), the branch manager for the canine unit, does not dispute that: (1) the guards were all required to wear and

---

[8] Securitas disputes that Huebner was not paid for four days of training as he declares. A close reading of the various affidavits reveals that Securitas's position is that Huebner was paid for two days of training, but it does not dispute that he was not paid for the other two. *See* Peabody Aff. ¶ 7. Thus, Huebner's claim that he was required to undertake unpaid employment-related training in violation of the FLSA is not compromised by the factual discrepancy.

13

maintain uniforms, Reese Aff. ¶¶ 26-27, Ex. 1 to Def.'s Supp. Resp.; (2) the canine guards had duties relating to the dogs and other logistical matters, *id.* ¶ 31; (3) training was required and unpaid, *id.* ¶¶ 11, 13; and (4) handwritten sign-in sheets were used to record times submitted to payroll, *id.* ¶ 31. Similarly, supervisors from the Rockford, Downers Grove, and downtown Chicago branches do not dispute that guards are expected to participate in some measure of unpaid training (Newcomb Aff. ¶ 16, Ex. 4 to Def.'s Supp. Resp.; Lauer Aff. ¶¶ 9, 13, Ex. 5 to Def.'s Supp. Resp.; Brown Aff. ¶ 13, Ex. 6 to Def.'s Supp. Resp.), and to wear and maintain uniforms (Newcomb Aff. ¶¶ 15-16; Lauer Aff. ¶¶ 19-24; Brown Aff. ¶¶ 22-26).

Securitas contends that the canine unit's dog-related duties make canine guards not similarly situated to other guards for two primary reasons: (1) they require additional training; and (2) they have additional dog-related preparatory duties. In regard to the first point, Securitas's argument that the fact that canine guards undergo additional training does not affect the plaintiffs' basic allegation that the training they received, however much there was, should have been compensated. In regard to the second reason, while the court agrees that this may affect the type and amount of preparatory work that guards need to accomplish before actually beginning their surveillance duties, it fails to see how it affects the basic claim that Securitas has a policy and procedure of not paying workers for all worked hours. The plaintiffs allege that Securitas accomplishes this by having guards sign in using their shift start times, irrespective of when they actually begin work, and that this practice constitutes a common policy or procedure throughout the branches. Securitas disputes that it has such a policy, instead asserting that its employees log in upon arrival and leaving. *See* Reese Aff. ¶ 31 (stating that the employee's "time of arrival" and time of return are recorded on the sign in sheet). However, a review of sign-in sheets provided by Securitas supports the plaintiffs' claims. Sheets from three different

14

branches show that the times that employees signed in and out coincide, without exception, with the exact minute that the scheduled shifts began and ended. *See* Ex. H to Reese Aff. (showing canine guards, including Howard, signing in and out at exactly 06:00, 14:00, 22:00, and 00:00); Ex. F to Newcomb Aff., Ex. 4 to Def.'s Supp. Decls. (showing Rockford employees, including Huebner, repeatedly signing in and out at exactly 08:00, 12:00, 16:00, 18:00, 24:00, and 00:00); Exs. A, C to Lauer Aff., Ex. 5 to Def.'s Supp. Decls. (showing employees at the Downers Grove branch signing in on the hour at the start and end of shifts, but recording a variety of minutes throughout the hour for lunch breaks). Such across-the-board promptness calls into doubt any contention that the times of arrival and return are recorded on the sign in sheet and lends credibility to the plaintiffs' assertion that Securitas has a policy that requires all employees to enter the shift times on the sign in sheet regardless of whether time was spent before the shift, preparing for work, or after the shift, covering for late arrivals. Given that, at least in some branches, guards are expected to provide "face-to-face relief" between shifts to ensure no break in coverage at the customer site, *see* Brown Aff. ¶ 8, some overlap in sign-in and sign-out times would be expected absent such an alleged policy. Thus, the court concludes that the plaintiffs' averments demonstrate a factual nexus with other Securitas employees, irrespective of location.

Securitas presents for consideration numerous facts that contest or contradict those of the plaintiffs. However, none of them challenge that the plaintiffs' allegations, if true, would state a claim upon which relief might be granted, an issue that could require further investigation before any determination about certification. *See Mirfasihi v. Fleet Mortgage Corp.*, ___ F.3d ___, 2008 WL 5401454, at *4 (7th Cir. Dec. 30, 2008) (commenting, in dicta, that "[a]t the very outset of the case, before certifying the class, the district court should have required the parties . . . to demonstrate the existence of a colorable claim."). Additionally, most of Securitas's

declarants' facts and the reasonable inferences that can be drawn therefrom, such as suggestions that the unpaid training may be exempt from the FLSA requirements and that the amount of time required to maintain uniforms varies but is always *de minimis*, raise issues of fact and law that are more suitable for consideration in relation to the merits of the plaintiffs' claims and do nothing to cast doubt on the plaintiffs' assertions that they are similarly situated to other non-canine unit employees.[9] *See Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (noting that the proper focus of the conditional certification inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated"). The court therefore concludes that the plaintiffs have made a "modest factual showing" to support their allegations of common policies that violate the FLSA such that the court may conclude that collective action is appropriate. *See Adair*, 2008 WL 4224360, at *3 (cautioning that the standard is "not a mere formality"); *see, e.g.*, *Jirak*, 566 F. Supp. 2d at 848-49 (certifying a class of pharmaceutical representatives who had the same essential job responsibilities and were subject to a common policy classifying them as exempt).

Although the court appreciates that conditional certification considerably expands the scope and costs of the litigation for the defendant,[10] *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982), where the plaintiffs have made a minimal showing that they are similarly situated to other employees who are subject to a common policy or plan that may violate the

---

[9] Securitas presents evidence regarding the plaintiffs' work histories and reasons for termination, presumably to persuade the court that the plaintiffs are not similarly situated to other class members rather than simply to besmirch the plaintiffs' reputations. None of the evidence presented demonstrates that the plaintiffs were not subject to the same policies and practices as other guards during their employment, nor does the length of service or manner in which they left employment necessarily affect the validity of their FLSA claims.

[10] The plaintiffs are not immune from the enhanced risk also.

FLSA, the putative class has a right to know of the lawsuit so that they can consider whether it is in their interests to join, *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The court therefore grants the plaintiffs' motion to conditionally certify the class as follows: All individuals who were employed or are currently employed by the Defendant, its subsidiaries or affiliated companies, as security guards in Illinois at any time within the period of the relevant statute of limitations.

D.     **Notice/Discovery**

The plaintiffs ask the court to require Securitas to produce a computer-readable data file containing the names, addresses, and telephone numbers of all potential opt-in members and to authorize notice of the lawsuit to be mailed to all of those on the list and posted in all Securitas branches in Illinois.

The FLSA collective action certification differs from class certification under Federal Rule of Civil Procedure 23 in that "under § 216(b) the class member must opt in to be bound, while under Rule 23 the class member must opt out in order not to be bound." *Vanskike*, 974 F.2d at 812-13 (citing *Woods*, 686 F.2d at 580); *see* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). In order to effectuate the opt-in provision, the court has discretion to facilitate notice to potential plaintiffs. *Hoffmann-La Roche, Inc.*, 493 U.S. at 169-70. In appropriate cases, a court may allow discovery of the names and addresses of potential plaintiffs. *Id*. at 170; *Woods*, 686 F.2d at 580. However, the court knows of no authority requiring phone numbers to be turned over and, in consideration of the privacy rights of the putative class members, it declines to order Securitas to turn over any more information than is required by *Hoffman-La Roche*. Thus, Securitas shall turn over a list

of names and last-known addresses of the putative class members (in a computer-readable format) within ten (10) working days of this order.

The court authorizes notice to be mailed to the putative class; however, it will not order Securitas to post the notice in its branches as, absent evidence that the mailing of notices is ineffective, such a method of notice is unnecessary and overly intrusive. Moreover, changes are required in the notice as proposed given the change in class definition, *supra* at 17, and Securitas's objections to the notice as proposed. *See* Pls.' Mot. to Conditionally Certify Class, Ex. 8 (draft notice); Def.'s Resp. in Opp'n to Pl.'s Mot. at 13 n.3. In general, Securitas's suggestions are reasonable, except that notice of any lawsuit against class counsel is irrelevant and shall not be included.

The court emphasizes that the notice should not appear to be a judicial endorsement of the action or suggest judicial sponsorship of the notice. *Hoffman-La Roche, Inc.*, 493 U.S. at 174; *Woods*, 686 F.2d at 581. Thus, a statement regarding the court's lack of position on the merits of the suit and that inquiries should not be directed to the clerk *or* the court should appear on page one of the notice, immediately above the introduction. Plaintiffs' counsel should consider placing the notice on its letterhead to ensure that no putative class member is misled as to the origin of the document. *See, e.g.*, *King v. ITT Cont'l Baking Co.*, No. 84 C 3410, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986). Also, the court encourages a reworking of the language explaining: (1) the preliminary status of the case; (2) that this is an "opt in" class that class members can elect not to join and can instead choose to pursue their own suits; and (3) the timeliness and statute of limitations concerns. *See, e.g.*, Pls.' Reply, Exs. A-C (notices approved in other FLSA lawsuits that contain clearer statements on these issues).

The plaintiffs should confer with Securitas to draft a revised notice that addresses the

issues identified above, as well as those objected to by Securitas in its response. The plaintiffs are directed to move for approval of the revised notice within 15 working days of this order, including with the motion a proposed notice schedule[11] and specifying whether Securitas continues to object to the notice. If the form and content of the notice is not agreed, the court will resolve the remaining disputes upon presentment of the motion.

### III. CONCLUSION

The defendant's Motion to Strike Statements in Plaintiffs' Declarations in Support of Their Motion to Conditionally Certify the Class [86] is granted in part and denied in part. The plaintiffs' Motion For Leave to File Declaration of Robert Creed in Support of Their Motion to Conditionally Certify the Class and Issue Notice [52] is granted. The plaintiffs' Motion to Conditionally Certify the Class and Issue Notice [26] is granted in part and denied in part. The defendant shall provide a list of putative class members' names and addresses within 10 working days. The plaintiffs shall move for approval of the revised notice within 15 working days.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 20, 2009

---

[11] Plaintiffs should include a date by which they will file with the clerk of the court a single appendix of all opt-in forms received, including an index of names for the court's reference. All opt-in forms must comply with Federal Rule of Civil Procedure 5.2(a).