# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL HOWARD, PAUL GALLOWAY, ROBERT NEWSON, ALVAN YOUNG, and JOHN HUEBNER, Individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 2746 |
| v. | ) ) | Judge Joan B. Gottschall |
| SECURITAS SECURITY SERVICES, USA INC., | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant's Emergency Motion for a Protective Order and the plaintiffs' Motion for a Protective Order. For the reasons stated below, the defendant's motion is granted in part and denied in part and the plaintiffs' motion is granted.

### I. PROCEDURAL POSTURE

The plaintiffs have filed a collective action lawsuit, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"). Specifically, the plaintiffs allege that the defendant, Securitas Security Services USA, Inc. ("Securitas"), required them to complete extensive training without compensation, to work before and after their shifts without overtime payment, and to maintain their uniforms without compensation for the time spent. Am. Comp. ¶¶ 14-18 (doc. no. 90). On January 20, 2009, the court conditionally certified the class. (Doc. no. 104.) On February 6, 2009, the court approved the notice to the class and the opt-in consent form.

(Doc. no. 106.) The opt-in period concluded on April 27, 2009.[1] On May 7, 2009, the plaintiffs filed an Appendix of Opt-in Plaintiffs, which provided an alphabetical listing of 1,216 opt-in plaintiffs (additional opt-ins were filed on May 9, 2009 and May 15, 2009, bringing the total number to 1,218). (Doc. nos. 227-2, 228-2, 232-2.)

## II. ANALYSIS

A.  **Securitas's Emergency Motion for a Protective Order**

Securitas objects to the content of websites maintained by counsel for the plaintiffs, which it claims is misleading. It seeks an order:

> (1) requiring Plaintiffs' attorneys to immediately remove from the public domain any references that they or their agents have posted regarding this litigation, including, but not limited to, the website located at: http://www.securitasovertime.com and references to this litigation located at http://www.millerlawllc.com, http://www.stephanzouras.com, and http://www.tomryanlaw.com; (2) invalidating the consents filed by all opt-in Plaintiffs; (3) decertifying the conditional collective action; (3) [sic] preventing Plaintiffs'' attorneys affiliated with Stephan Zouras, LLP, Miller Law, LLC, and Ryan Law, LLC from representing any current or putative Plaintiff against [Securitas] in relation to the claims asserted in this litigation; (4) [sic] requiring Plaintiffs' attorneys to reimburse [Securitas] for its reasonable fees and costs incurred in defending this action, to date; and (5) [sic] for such other and further relief as the Court deems proper.

Def.'s Emergency Mot. for Protective Order at 1. The court held an initial hearing on the motion on April 9, 2009 and took the matter under advisement pending full briefing.

It is beyond dispute that, in a FLSA action, the court has "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989). One of the primary ways the court ensures that notice is "timely, accurate, and informative" is by monitoring preparation and distribution of the notice as early in the case as is practicable. *Id.* at

---

[1] The fact that the opt-in period has closed does not moot Securitas's motion in light of the broad remedies sought.

171. Court-approved notice ensures that putative class members receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170. Further, it limits any "opportunities for abuse[,]" including misleading communications, in the class action process. *Id.* at 171.

In support of its argument that that the plaintiffs' counsel's websites constitute an inappropriate attempt to communicate with putative class members outside of the court-approved notice, Securitas relies primarily on *Jones v. Casey General Stores*, 517 F. Supp. 2d 1080 (S.D. Iowa 2007), where two of plaintiffs' counsel in this case represented the plaintiff, Jones. In relevant part, *Jones* addresses a website, published by plaintiffs' counsel, that contained details of the FLSA lawsuit against the defendant. *Id.* at 1087. The court reviewed the website and concluded that the presentation of the "goals" of the litigation and "updates" on the case inappropriately implied that liability had already been settled. *Id.* at 1088. It further concluded that the absence of information regarding a putative class member's ability to retain other counsel or choose not to opt-in was misleading. *Id.* The court reasoned that, pursuant to *Hoffmann-La Roche Inc.*, where the "case ha[d] not yet been conditionally certified[,]" any attempt at "one-sided, misleading communications with putative opt-in collective members" risked tainting the entire putative class. *Id.* at 1088-89. Thus, it ordered plaintiffs' counsel to "substantially" modify the website and provided suggestions for wording to ensure that the presentation of the case was "factual, accurate, and balanced." *Id.* at 1089.

Securitas argues that plaintiffs' counsel in this case is using the same language as was faulted in *Jones*. It contends that this conduct is made even more egregious where the plaintiffs' counsel was on notice, through *Jones*, that the language it was using on the websites was inappropriate and misleading. Although Securitas repeatedly raises the fact that the same

3

lawyers were involved in the *Jones* case as here, as the court noted at the hearing, it will not impute wrongdoing from one case to another, nor is it bound by the decision of another district court. *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987). Thus, only the facts of this case are relevant.

In this case, unlike in *Jones*, the plaintiffs moved to conditionally certify the class about a month after filing suit. The court conditionally certified the class, after considering exhaustive briefing, in January 2009 and approved the notice a few weeks later. The notice, which was agreed by both sides, disclosed the website addresses of plaintiffs' counsel. It was mailed to over 10,000 Illinois employees of Securitas on or around February 11, 2009. It is likely that, even if some addresses were no longer valid, many of the eligible putative class members received the fair and balanced notice approved by the court in the mail shortly thereafter. Almost two months later, Securitas filed this emergency motion, alleging taint of the entire class as a result of misrepresentations and inappropriate solicitation of putative class members.

Unfortunately, research has uncovered no authority that addresses the precise scenario at issue here, namely communications that are alleged to be misleading and in conflict with the court-approved notice. The cases cited by both sides involve pre-certification disputes over contact with putative class members via websites. *See, e.g.*, *Self v. TPUSA, Inc.*, No. 2:08cv395, 2008 WL 4372928, at *1 (D. Utah Sept. 19, 2008) (discussing a website published by plaintiffs' counsel where "Plaintiffs have yet to move the court to certify a class"); *Frye v. Baptist Mem'l Hosp., Inc.*, No. 07-2708 Ma/P, 2008 WL 2117264, at *1 (W.D. Tenn. May 20, 2008) (noting that the plaintiffs "filed their motion for conditional certification and notice to putative collective action members" in February 2008 and discussing the appropriateness of a website launched in August of 2007); *Jones*, 517 F. Supp. 2d at 1088 (noting that the class had yet to be certified).

Although the parties give short shrift to the distinction between communications with putative class members before and after the court has approved notice, the difference is important. *See Hoffmann-La Roche, Inc.,* 493 U.S. at 171 n.2 (noting that its decision regarding court-approved notice to the class "do[es] not address any conflicts between court-authorized notice and communications with potential plaintiffs by counsel as these issues are not implicated in the case before us"). Consequently, the court finds the reasoning of *Jones* inapplicable to the instant case due to the different procedural postures.

There is no evidence before the court that any putative class members who did not receive court-approved notice visited the website or that any who received the notice also visited the site and were influenced by the misleading information to join the collective action. Indeed, Securitas offers nothing more than a suspicion of taint based on the number of opt-ins received. In contrast, evidence of misconduct and taint is replete in the cases cited by Securitas where severe sanctions were imposed for inappropriate communications with the putative class. *See, e.g., Hamm v. TBC Corp.*, 597 F. Supp. 2d 1138, 1344 (S.D. Fla. 2009) (evidentiary hearing with multiple witnesses held on allegedly improper solicitation of putative class members); *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 501-02 (E.D. Pa. 1995) (submission by thousands of putative class members of documents that were not included in the court-approved packet was evidence of misleading communications impacting the number of opt-outs in a Rule 23 class). Absent evidence, the court will not presume that the entire case has been tainted and will not impose the drastic sanctions requested. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 103 (1981) (finding an abuse of discretion where a district court limited communications with putative class members in the absence of any evidence).

The court now turns to the content of the website itself to determine whether there is any

conflict with the court-approved notice. At the initial hearing on the motion, held on April 9, 2009, the court declined to enjoin the plaintiffs' counsel from operating the websites, but expressed some concern regarding certain language contained therein. It issued an order requiring plaintiffs' counsel to "within 48 hours, review all material contained on the websites and correct any statements regarding the lawsuit that are presented as proven facts rather than as allegations." (Doc. no. 204.) Plaintiffs' counsel made limited changes to the website language that satisfies this order, although they claim to have done so "voluntarily," notwithstanding the court order requiring such action. *See* Pls.' Opp'n to Def.'s Em. Mot. for Protective Order at 3.

After a more thorough review of the website content and consideration of the cases cited by the parties, the court reaffirms that the only parts of plaintiffs' counsel's websites that are objectionable are those where allegations are presented as facts. The court does not agree with the reasoning of the *Jones* court that "goals" and case updates are misleading or imply that liability has been established. Further, Securitas fails to persuade the court to find misleading the lack of disclosure that putative class members could choose not to opt-in or to retain other counsel where that information was included in the class notice, which was both mailed and available through a link on the websites. Thus, Securitas's motion is granted to the extent already expressed in the court's April 9, 2009 order and is otherwise denied. (Doc. no. 204.)

Securitas also appears to rely on the existence of the website as proof of a violation of the ethical constraints on a lawyer's solicitation of clients. The primary basis for sanctioning counsel for such violations arises under state ethical rules. *See, e.g.*, *Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338, 1341 (S.D. Fla. 2009) (noting that direct solicitation of putative class members violated the Rules Regulating the Florida Bar); *Jones*, 517 F. Supp. 2d at 1087 (discussing Iowa Rule of Professional Conduct 32:7.8(c), which concerns solicitation of putative class members).

Securitas has provided insufficient briefing on applicable Illinois rules.[2] Moreover, its arguments rest on speculation of improper conduct by plaintiffs' counsel, to which, when unsupported by evidence, the court gives no credence. *See Gulf Oil Co.*, 452 U.S. at 104 n.18 (agreeing with the court of appeals that grounding a decision to bar communications on charges of misconduct alleged by the opposing party would be "procedurally improper and without evidentiary support"). If Securitas uncovers evidence of improper solicitation, it may raise the issue again. The court now turns to the second motion at issue, which concerns precisely Securitas's quest for evidence of improper communications and solicitation.

**B.     Plaintiffs' Motion for a Protective Order**

The plaintiffs move, pursuant to Federal Rule of Civil Procedure 26(c), for a protective order in connection with a subpoena served by Securitas on Irene Weber ("Weber"), a law firm administrator at the firm of Stephan Zouras, LLP, which is one of the law firms representing the plaintiffs. The plaintiffs argue that the subpoena seeks documents that are covered by the attorney work-product doctrine and the attorney-client privilege. They also argue that Securitas has not established grounds to conduct a deposition of plaintiffs' counsel.[3] The plaintiffs attach copies of emails between counsel relating to the subpoena, presumably to demonstrate that the parties were unable to resolve the dispute. *See* Fed. R. Civ. P. 26(c)(1) (requiring the movant to certify that it has "in good faith conferred or attempted to confer . . . in an effort to resolve the

---

[2] Securitas raises, in a footnote, Illinois Rule of Professional Conduct 7.3, but it does so in its response to the plaintiffs' motion for a protective order and not in support of its own motion. *See* Resp. to Mot. for Protective Order at 4 n.1 (doc. no. 189).
[3] The parties fail to address adequately whether it makes a difference that the subject of the subpoena is not an attorney herself, but functions in an administrative capacity in a law firm. In the absence of sufficient briefing, the court assumes, without deciding, that the distinction is of no import where Securitas seeks documents, through Weber, that relate to each communication and conversation by any person acting on behalf of Stephan Zouras, LLP, which would necessarily include lawyers.

7

dispute without court action").

Securitas argues that it seeks to depose Weber and review non-privileged documents relating to communications with putative class members to determine whether plaintiffs' counsel has been inappropriately soliciting putative opt-in class members. Securitas's response brief largely mirrors its motion for emergency relief in that it discusses, at length, the content of plaintiffs' counsel's websites as providing evidence of improper communication and solicitation. In addition, Securitas points to a letter and opt-in form sent by Weber to named plaintiff John Huebner ("Huebner") before this lawsuit was filed. Finally, Securitas expresses suspicion that plaintiffs' counsel is improperly communicating with putative class members because: (1) a large number of security guards have opted in to the lawsuit; and (2) plaintiffs' counsel refuses to confirm or deny whether they have communicated with putative class members outside of the court-authorized notice.

The plaintiffs cite the rule stated in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), that the taking of an opposing counsel's deposition "should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.* at 1327 (internal citation omitted). The Seventh Circuit has not adopted the test and the district courts in this circuit are split as to its propriety. *Compare Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*, No. 08 C 526, 2008 WL 2364610, at *9 (N.D. Ill. June 6, 2008) (Nolan, M.J.) (applying the *Shelton* factors to the issue at bar), *with qad.inc. v. ALN Assocs., Inc.*, 132 F.R.D. 492, 494 (N.D. Ill. 1990) (Shadur, J.) (stating that the *Shelton* rule, "stated as a rule of law . . . must be viewed as wrong"). Notwithstanding the dispute in this district, the circuit courts considering this issue

seem to hold generally that a deposition of opposing counsel should not proceed unless there is a strong showing of need and evidence that all other discovery avenues have been exhausted. *See, e.g.*, *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) (noting that lawyer depositions require "a flexible approach," including consideration of the need to depose the lawyer, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted, including interrogatories); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (adopting the *Shelton* rule); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1112 (10th Cir. 2001) (finding no abuse of discretion in lower court's application of the *Shelton* rule to bar a deposition of defendant's corporate counsel where the lower court found, in part, that the plaintiff had failed to demonstrate that the information sought was unavailable elsewhere). The court therefore adopts this approach to determining whether Securitas should be allowed to depose Weber.

To be sure, evidence of improper communications or the tainting of a collective action by unethical solicitation is "crucial" to the case since it could provide grounds for decertification of the collective action. Unfortunately for Securitas, this is the only part of the *Shelton* test upon which it prevails. Securitas argues that the material it seeks is not protected by attorney-client privilege or work-product doctrine, but even assuming, *arguendo*, that this is correct, the argument puts the cart before the horse. First, the request for documents was issued as a rider to the subpoena directed to Irene Weber commanding her to appear for a deposition. More importantly, the relevant issue is why Securitas should be allowed to seek information directly from plaintiffs' counsel rather than from other sources. Securitas has not set forth any evidence that it has no other way to access this information. It has not, for example, explained why it is unable to issue interrogatories, request documents, or depose Huebner himself, as a named

plaintiff. It seems that Huebner, just as well as plaintiffs' counsel, could tell Securitas whether Huebner had a pre-existing attorney-client relationship with Stephan Zouras, LLP before he received the opt-in notice. *See, e.g.*, 1 McCormick on Evidence § 90 (6th ed. 2006) (stating the general rule that "the fact of consultation or employment, including the component facts of the identity of the client" are not covered by the attorney-client privilege).[4]

Turning now to the need for discovery relating to solicitation of putative class members, Securitas has not sufficiently established a likelihood that inappropriate communications occurred to make such discovery relevant to the case. For example, Securitas points to Weber's pre-lawsuit letter to Huebner wherein she included an opt-in form as evidence of solicitation and improper communications. But the parties dispute whether Huebner was a pre-existing client of Stephan Zouras, LLP at the time the letter was sent, and, absent rebuttal evidence, the court must accept the representations of plaintiffs' counsel that he was. Next, Securitas offers the content of the websites as evidence. However, as the court noted above, most of the websites' content is unobjectionable and, moreover, there is no evidence that the websites had any affect on putative opt-in class members' decision-making process. Securitas also argues that the high number of opt-ins is suspicious and surmises that it must have resulted from improper contact. The final tally for opt-ins in this case is 1,218, which is approximately 12% of the total eligible opt-in class. Securitas provides no law or evidence to justify its assertion that this number is so high as to place it beyond question that plaintiffs' counsel is engaged in shady solicitation of collective action members. To the contrary, plaintiffs' counsel suggests that 12% is not out of the pale. *See Ellis v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439, 444 (W.D. Pa. 2007) (citing secondary sources for the fact that the "opt-in rate in a FLSA collective action not backed by a

---

[4] This is not meant to suggest that Huebner is not allowed to assert his attorney-client privilege in appropriate circumstances.

union is generally between 15 and 30 percent"). Finally, Securitas urges the court to find it "telling" that plaintiffs' counsel's refuses to deny that they are initiating contact with putative class members outside of the class notice. It declines to do so.

In sum, Securitas has failed to provide sufficient grounds to demonstrate that is seeks information necessary to the case or that it has no other source for that information. The court will not allow the deposition to proceed, or the requested documents to be produced, absent a showing sufficient under *Shelton*. Consequently, Securitas's subpoena is quashed and the plaintiff's motion is granted.

### III. CONCLUSION

The defendant's Emergency Motion for a Protective Order (doc. no. 196) is granted in part and denied in part, as specified above. The plaintiffs' Motion for a Protective Order (doc. no. 183) is granted and the subpoena is quashed.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 18, 2009

11