THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL HOWARD, JOHN HUEBNER, PAUL GALLOWAY, ROBERT NEWSON AND ALVAN YOUNG, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Hon. Gary Feinerman |
| v. | ) ) | Magistrate Judge Young B. Kim |
| SECURITAS SECURITY SERVICES, USA INC., | ) ) ) | Case No. 08 C 2746 |
| Defendant. | ) ) ) | |
| STEPHANIE HAWKINS and DARSEMIA JACKSON Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Hon. Gary Feinerman |
| v. | ) ) | Case No. 09 C 3633 |
| SECURITAS SECURITY SERVICES, USA INC. | ) ) ) | |
| Defendant. | ) ) ) | |

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

I. INTRODUCTION

The Court should preliminarily approve the Parties' Settlement Agreement because it is fair, reasonable and adequate under the governing legal standards and provides full and complete relief to the Participating Class Members. The Parties respectfully request the Court (1) grant preliminary approval of the proposed Settlement; (2) authorize mailing of the class notice in a manner consistent with the Settlement; (3); schedule a final approval hearing; and, (4) enter the

[Proposed] Order Certifying the Class for Settlement Purposes Only and Granting Preliminary Approval of Class Action Settlement filed contemporaneously herewith.

## II. BACKGROUND

### A.  The Parties

Securitas provides security officer services to a wide variety of clients in many different settings throughout the state of Illinois.  The named Plaintiffs, Crystal Howard, John Huebner, Paul Galloway, Robert Newson, Alvan Young, Stephanie Hawkins, and Darsemia Jackson were employed by Securitas in the state of Illinois during the applicable statute of limitations period.

### B.  Procedural History

This settlement involves two cases – *Howard et al v. Securitas Security Services USA, Inc.,* Case No. 08 C 2746 (the *Howard* Lawsuit) and *Hawkins et al v. Securitas Security Services USA, Inc.,* Case No. 09 CH 17579 (the *Hawkins* Lawsuit) both pending in the United States District Court for the Northern District of Illinois.

The *Howard* FLSA collective action was filed on May 12, 2008, by the named plaintiffs Crystal Howard, Paul Galloway, Robert Newson and Alvan Young.  The *Howard* plaintiffs alleged that they and others whom they sought to represent were required to work off-the-clock during their employment with Defendant in violation of the FLSA.   On or about January 20, 2009, the Court granted plaintiffs' motion for conditional certification. (Dkt. No. 104) Thereafter, 1,215 individuals submitted their signed opt-in consent forms.  On or about March 13, 2012, this Court decertified all of plaintiffs' claims except for their claim for unpaid introductory training and orientation.  (Dkt. No. 451)  As a result and by applying a three (3) year statute of limitations period, there are 703 remaining opt-in plaintiffs with non-time barred claims for unpaid introductory training and orientation.

2

The *Hawkins* class action was filed in the Circuit Court of Cook County, Illinois on May 29, 2009, by the named plaintiffs Stephanie Hawkins, Darsemia Jackson and Merija Wallace. Shortly thereafter, Defendant removed plaintiffs' complaint to the U.S. District Court for the Northern District of Illinois and the case was assigned number 09 C 3633. The *Hawkins* plaintiffs alleged that they and others whom they sought to represent were required to work off-the-clock during their employment with Defendant in violation of Illinois law, and the named Plaintiffs also brought individual claims for alleged violations of the FLSA. On or about November 16, 2011, this Court certified a class of individuals who attended introductory training and orientation without pay, but did not certify plaintiffs' other claims as a class action.

Defendant has denied and continues to deny any liability, wrongdoing, or legal violations of any kind related to the claims and contentions asserted in the *Howard* and *Hawkins* Lawsuits, has asserted a multitude of defenses to the lawsuits, has denied that any injuries or damages exist, and has denied that these matters can be decided on a class-wide basis. Defendant submits that it has complied with all applicable laws at all times.

In June 2011, Defendant implemented a dispute resolution program ("DRA") nationwide. Among other things, the DRA provides that Securitas' security officers are required to arbitrate any claims, including claims for unpaid wages, on an individual basis. In light of the DRA, the Parties seek to have all class members who completed introductory training and orientation after June 30, 2011, excluded from the terms of this Settlement Agreement.

On March 28, 2013, this Court denied Defendants' motion for summary judgment on Plaintiffs' training claims. Shortly thereafter, with the dedicated assistance of Magistrate Judge Kim, the Parties were able to settle their claims. This settlement includes the Named Plaintiffs, 703 FLSA Participating Class Members and 9,190 "IMWL" Class Members up to June 30, 2011.

3

### C. **Discovery Completed**

The Parties have conducted extensive discovery during the pendency of the Actions, including: (a) the exchange of tens of thousands of pages of written discovery, including voluminous production of electronically stored information; (b) over 30 depositions; (c) review of payroll and training records, policies and procedures; and (d) the investigation by counsel regarding the applicable law as applied to the facts discovered regarding the alleged claims in the Actions.

### D. **The Parties Dispute Whether New Hire Orientation Is Compensable**

During the time period at issue, Defendant alleges its new hire orientation was the last phase of its application process for security officer applicants, was pre-employment and was mandated by state law. The orientation consisted of instructional videos, handling hazardous materials, and in some instances, safe driving; multiple choice tests to assess the individual's comprehension of the material; the state-mandated fingerprinting process; filling out paperwork; and being issued uniform items, amongst other things. Plaintiffs claim that new hire orientation was compensable time under the FLSA and Illinois wage and hour law, and should have been paid. Plaintiffs further argue that the failure to pay for the time prior to January 2010 caused their wages to fall below minimum wage or pushed them into overtime (which was not paid) during the workweek at issue. Defendant disputes that it was required to pay individuals for time spent in new hire orientation under the applicable FLSA regulations and governing state law.

### E. **The Monetary Terms of the Parties' Settlement**

The Parties recognized that the attorney's fees and costs incurred in this five year litigation have been significant and that significant additional fees and expenses would be incurred should these cases proceed to trial. Accordingly, in order to avoid the time and

expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties arrived at settlement totaling $1,275,000 and an additional amount to be determined by the Settlement Administrator in accordance with applicable tax law (subject to verification by Defendant) for Defendant's employer share of all payroll taxes associated with the wages portion of the payments to the Settlement Class and Named Plaintiffs, which is memorialized in the Stipulation of Settlement filed concurrently herewith. The Settlement consists of payment to FLSA Participating Class Members (703 individuals) totaling $40,211.60; payments to IMWL Participating Class Members (9,190 individuals) totaling an amount of up to $269,944.30; payments to the seven Named Plaintiffs ($5,000 each) totaling $35,000; and a payment to Plaintiffs' attorneys for fees and costs in the amount of up to $929,844.10. The Parties arrived at these amounts through arms-length negotiation based on underlying data exchanged, as follows:

#### i. Payments to FLSA Participating Class Members

Back wages for FLSA Participating Class Members were computed by multiplying the number of class members (703) (x) the number of estimated hours spent in new hire orientation (4) (x) the average minimum wage in effect at that time ($7.15) (x) two for FLSA liquidated damages: 703 class members (x) 4 hours x $7.15 (x) 2 = $40,211.60.

#### ii. Payments to IMWL Participating Class Members

Back wages for IMWL Participating Class Members were computed by multiplying the number of class members (x) the number of estimated hours spent in new hire orientation (x) the average minimum wage in effect at that time. Because Defendant started paying officers for a portion of time spent in introductory training beginning on January 1, 2010, there are two calculations as follows:

**1.** Class members who completed training before December 31, 2009 = 5,552

class members (x) 4 hours x $8.15 = $180,995.20

2. Class members who completed training after December 31, 2009 = 3,638 class members (x) 3 hours (x) $8.15 = $88,949.10

### iii. Payments to the Seven Named Plaintiffs

The named Plaintiffs are being paid a total of $5,000 each to compensate them for the time they spent, and the risk they undertook, in prosecuting this action on behalf of the Class, including responding to written discovery, giving their depositions and participating in settlement efforts and in return for his full and complete release of all claims, in the form of a fully executed Named Plaintiff General Release.

### iv. Plaintiffs' Attorney's Fees and Costs

The Parties vigorously contested the portion of Plaintiff's attorney's fees that should be paid under the settlement. During settlement negotiations, Plaintiffs' counsel represented that they spent a total of $235,000 in recoverable costs by their legal team and a lodestar of approximately $2,700,000 based on their court approved hourly rates.

The settlement agreement allows Plaintiffs' counsel to seek reimbursement for their costs of $235,000 (inclusive of all Administrative Fees) and seek approval of an attorney's fee award of $694,844.10, which is approximately 25% of the total fees that Plaintiffs' counsel initially claimed. Plaintiffs' counsel believes that this amount is reasonable given the extensive history of this case and that Plaintiffs were successful in certifying their introductory training claims and successful opposing Defendant's motions to dismiss and motions for summary judgment. The Parties believe that this is a fair compromise and Defendant has agreed not to oppose Plaintiffs' requests for costs to the extent it is consistent with the Settlement Agreement. Plaintiffs' counsel's request for costs and attorney fees award will be made and justified in a separate

motion submitted by Plaintiffs' counsel.

**F. The Procedural Elements of Settlement**

The Settlement Administrator will mail to each Class Member a *Notice Regarding Proposed Settlement of Class Action For Members of the Settlement Class* (*See* Exhibit 1 - "Class Notice"), an *Election to Opt Out of Settlement and Class Action Form* (*See* Exhibit 2), and a *Change of Name and/or Address Information Form* (*See* Exhibit 3). The Class Notice describes the nature of the litigation, the terms of the Settlement, as well as the Class Members' options with regard to participating in the proposed Settlement, objecting to the Settlement, or opting out (*See* Exhibit 1). The Settlement Documents will be sent, postage pre-paid, via first class mail to the last-known address of each Class Member. *Id.* Prior to mailing the Class Notices, the Settlement Administrator will make reasonable efforts to obtain valid, current addresses for Class Members, including validating Contact Information through the U.S. Postal Service's National Change of Address database or other third party change of address databases and update as necessary. If any Settlement Documents are returned as undeliverable, the Settlement Administrator will promptly undertake reasonable steps to determine the Class Member's current address and, if an additional address is located, to send the materials to the additional address.

Class Members will have a deadline of forty five (45) days from initial mailing to object to the Settlement, or opt out. *Id.*

Class Members do not need to do anything to participate in the settlement. *Id.* FLSA Participating Class Members will receive a check for $57.20 to compensate them for claims related to unpaid introductory training and orientation. IMWL Participating Class Members will receive a check for $32.60 or $24.45 depending on whether they attended introductory training

before or after December 31, 2009 to compensate them for claims related to unpaid introductory training and orientation.

All Class Members who do not opt out of the Settlement will be deemed members of the Settlement Class and subject to this Court's judgment and, once the judgment becomes final, be deemed to have released, and to have covenanted and agreed not to file, prosecute, participate in, authorize, or cooperate in the filing or prosecution of any action or proceeding on the basis of any claims for unpaid introductory training. Notwithstanding the above, IMWL Participating Class Members shall not be deemed to have released any FLSA claims.

Finally, the Settlement provides for a final approval hearing on the fairness and adequacy of the proposed Settlement, on Class Counsel's request for attorneys' fees and litigation expenses, the administration costs, and the service payments to the Class Representatives. The Class Notice will advise Class Members of the final approval hearing and their right to object to the Settlement. At the final approval hearing, the parties will address any issues raised by Class Members, and the Court will have a second opportunity to review the Settlement before deciding whether to issue final approval.

Once this Court has ruled on the motion for preliminary approval, the deadlines for providing notice, opting out of the Settlement and submitting objections or comments to the proposed Settlement will begin to run. The schedule set forth below, which is subject to the timing of actions to be taken by the Parties and the Court in this case, provides the Court with an approximate time-line of the various steps in the settlement approval process under the Settlement.

|  | *Event* | *Timing* |
|---|---|---|
| 1. | Motion for Preliminary Approval Filed | |

| 2. | Hearing on Motion for Preliminary Approval | |
|---|---|---|
| 3. | Defendant to Provide Class List with Addresses and Social Security Numbers to Claims Administrator | Within 7 Days After Preliminary Approval |
| 4. | Claims Administrator to Run NCOA Search and Issue Notice | Within 14 Days After Receiving Class List from Defendant |
| 5. | Deadline for Opting Out or Objecting to Settlement | 45 Days After the Issuance of Notice by the Settlement Administrator |
| 6. | Final Approval Fairness Hearing | Approximately 100 Days After Preliminary Approval |
| 7. | Defendant to Fund the QSF | Within 7 Days After Final Approval |
| 8. | Final Judgment and Claims Dismissed with Prejudice | Within 7 Days After the Funding of the QSF |
| 9. | Effective Date Occurs | See Paragraph 17 of the Parties' Settlement Agreement |
| 10. | Settlement Administrator to Distribute Funds to Class Members and Plaintiffs' Counsel | At Least 10 Days After Effective Date |

## III. LEGAL AUTHORITY

### A. The Court Should Approve The Settlement Of Plaintiffs' State Law Claims Under F.R.C.P. 23(e) Because It Is Fair, Reasonable And Adequate.

Under Fed. R. Civ. P. 23(e), class claims may be settled only with court approval. During the preliminary approval stage, the district court decides whether the proposed settlement falls "within the range of possible approval." *Cook v. McCarron*, 1997 WL 47448, at *7 (N.D. Ill. 1997) (citation omitted); *Manual for Complex Litigation, Third*, § 30.41, p. 237 (1995). If so, the court should grant preliminary approval of the settlement, authorize the parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce*, 690 F.2d 616, 621 (7th Cir. 1982). Settlements that are reached as a result of arm's-length bargaining between experienced and well-informed counsel are entitled to a presumption of fairness. *Manual for Complex Litigation, Third*, § 30.42, p. 240; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

Here, the Parties Settlement is fair, reasonable and adequate under the governing multi-

9

factor test:

(1)  The settlement is fair, reasonable and adequate given the merits of the case weighed against the settlement terms.  The settlement provides full recovery to the Class Members without the risks inherent in continuing what would prove to be lengthy litigation and the possibility that Defendant would prevail on its arguments that new hire orientation was not compensable time.

(2)  The settlement is fair, reasonable and adequate given the financial condition of Defendant.  Defendant is agreeing to provide full recovery on the new hire orientation claim in exchange for a release, and no discount was taken to reflect the financial condition of Defendant.

(3)  The settlement is fair, reasonable, and adequate given the complexity and expense of further litigation because the Parties agree that the cost of continuing litigation will likely exceed the value of the claims at issue (which amount is being paid under the settlement).  Plaintiffs believe the attorneys' fees portion of the settlement is reasonable given the results obtained, the hours spent, and the rates previously approved by this Court.

(4)  The settlement is fair, reasonable and adequate given the potential for opposition to the settlement.  Because the new hire orientation claims are being paid in full, there should be little or no opposition to the settlement.

In sum, the settlement is within the range of reasonableness in light of the best possible recovery.  Further, the Parties have agreed to a claims process that is more than reasonable and allows individuals to object or opt out.  Plaintiffs will use an experienced settlement administrator to handle the process and will use reasonable efforts to locate class members.  For all of these reasons, the Court should preliminarily approve the settlement of the state law new hire orientation claim under Rule 23(e).

**B. The Court Should Also Approve The Settlement Of Plaintiffs' FLSA Claim Because The Settlement Is Fair And Reasonable.**

An employee may compromise a claim under the FLSA pursuant to a court-authorized settlement of an action alleging a violation of the FLSA. *E.g. Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). With respect to a court-authorized settlement, the court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* If a settlement in an employee FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

In determining whether a settlement is fair and reasonable, courts have considered factors such as: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the strength of the plaintiff's case and the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See King v. My Online Neighborhood*, Case No. 6:06-cv-435-Orl-22JGG, 2007 WL 737575 (M.D. Fla. March 7, 2007) (citing *Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n. 6 (11th Cir. 1994)); *see also Trinh v. JPMorgan Chase & Co.*, Case No. 07-CV-01666 W(WMC), 2009 WL 532556 (S.D. Cal. March 3, 2009). "When considering these factors, the Court should keep in mind the 'strong presumption' in favor of finding a settlement fair." *King*, 2007 WL 737575, *3 (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Moreover, "a 'settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'" *King*, 2007 WL 737575 *3 (quoting *In re Gen. Motors Corp.*

11

*Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) (other internal citations omitted)).

The Parties' settlement is fair and reasonable and meets all of the factors considered by courts:

(1) The settlement was not fraudulent or collusive. The settlement was the result of a highly contested, arms-length negotiation with the assistance of a federal magistrate judge. The terms of the settlement represent a true compromise by both sides: it provides complete relief to the Class Members, including full liquidated damages, and required Plaintiffs' counsel to take a significant discount on their attorneys' fees.

(2) The settlement appropriately factored in the complexity, risk, expense, and likely duration of the litigation. The Parties recognized that dollar value exposure for back wages on the new hire orientation claim was likely less than the attorney's fees that would be required to continue to litigate the claim. Plaintiffs also recognized the risks inherent in proceeding with the litigation in light of Defendant's arguments on the merits of the claim.

(3) The settlement was appropriate at this stage of the proceedings and given the amount of discovery completed. Defendant provided videos, agendas, data and other documents regarding the content of new hire orientation and extensive electronically stored information, produced payroll records showing the number of individuals hired and their first week of pay during the Class Period, and also produced timesheets and payroll records demonstrating the hours paid for new hire orientation beginning on January 1, 2010. The Parties thus had all of the information necessary to assess the compensability of the new hire orientation program during the relevant time period, as well as the possible exposure for back pay.

(4) In Defendant's view, the settlement overly estimates the strength of the plaintiff's

case and the probability of success on the merits; however, Defendant was able to negotiate an appropriate discount on Plaintiffs' attorney's fees and by settling, was able to avoid incurring additional defense fees and costs.

(5) The settlement covers the range of possible recovery. The payments to the Class Members make them whole, and include liquidated damages.

(6) Attorneys for the Parties, who are experienced in wage and hour collective and class actions, believe that settlement is fair and reasonable.

For all of these reasons, the Parties jointly request the Court to preliminarily approve the Settlement Agreement.

### III. <u>THE TERMS OF THE PROPOSED SETTLEMENT</u>

The terms of the Settlement are contained in the Class Action Settlement Agreement, filed herewith. There are no undisclosed side agreements between the Named Plaintiff and Defendants. (*See* Exhibit 4 - Declaration of Ryan F. Stephan).

Defendants have agreed to pay the gross sum total of up to $1,275,000 to satisfy: (1) the timely and valid claims of the Class Members; (2) the attorneys' fees and litigation expenses (including the Administrative fees of the Settlement Administrator to be paid by Class Counsel) of Class Counsel; and (3) the proposed enhancements to the Named Plaintiffs. (*See* Exhibit 5 – Class Action Settlement Agreement). The Settlement Amount shall be deposited into a Qualified Settlement Fund for distribution by the Settlement Administrator. The Settlement Administrator shall return all funds remaining in the Qualified Settlement Fund (with interest, if any) to the Defendant after complying with all the requirements of the Settlement Agreement.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A. The Legal Standards for Court Approval of Class Action Settlements

The dismissal or compromise of any class action requires the court's approval. FED. R. CIV. P. 23(e). The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 236 (1995). Although the legal standards for preliminary and final approval overlap, preliminary approval requires only a threshold finding that the settlement could be approved as fair and adequate after notice to the class.

In the first step, the court makes a preliminary determination as to whether the settlement falls "within the range of possible approval." *Cook v. McCarron*, 1997 WL 47448, at *7 (N.D. Ill. 1997) (citation omitted); Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.25 (3d ed. 1993) ("NEWBERG"). "The purpose of the initial hearing is to ascertain whether there is any reason to notify the class members of the proposed settlement and proceed with a fairness hearing." *Id*. Once the settlement is found to be "within the range of possible approval" at the initial fairness hearing, the final approval hearing is scheduled and notice is provided to the class. *Id.*

The second step of the approval process is the final determination, following a hearing at which time any objections by class members may be considered. The court then determines whether the settlement is fair, reasonable and adequate from the standpoint of the Class. *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996); NEWBERG, § 11.41. Courts consistently favor settlements of disputed claims. *E.g.*, *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("the law strongly favors settlements ... [and][c]ourts should

hospitably receive them.")  "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."  NEWBERG, §11.41 at 11-88; *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F.Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Little Rock Sch. Dist.*, 921 F.2d at 1391 (same).  Indeed, when experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight.  *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983).  In contrast, "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (citation omitted); *Grove v. Principal Mutual Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001).

As stated, the standard for granting preliminary approval of the proposed settlement is a determination of whether the proposed settlement is "within the range of possible approval." *Cook v. McCarron*, 1997 WL 47448, at *7 (N.D. Ill. 1997) (citation omitted); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994).  The purpose of the preliminary approval process is for the court to ascertain whether reason exists to proceed by notifying the class members of the settlement and to hold a fairness hearing.  *Horton*, 855 F. Supp. at 827.  In considering whether to grant a motion of preliminary approval of a proposed settlement agreement, the court utilizes a "threshold inquiry" intended merely to realize conspicuous defects.  *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337-38 (N.D. Ohio 2001).  Thus, preliminary approval is appropriate:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval . . . .

MANUAL FOR COMPLEX LITIGATION §30.41 at 265 (3d ed. 2000).  Unless the court's initial

examination "disclose[s] grounds to doubt its fairness or other obvious deficiencies," the court should order that notice of a formal fairness hearing be given to Class Members under Rule 23(e). *Id.* Considering the issues, evidence and nature of the settlement negotiations, preliminary approval is proper in this case.

## B. The Settlement Meets the Standards for Preliminary Approval

A court generally will preliminarily approve a proposed class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). In making such a determination, courts consider the following factors: (1) the strength of the plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel*, 463 F.3d at 653; *Isby*, 75 F.3d at 1199. Further, a court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199. Finally, as detailed below, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County,* 988 F. Supp. at 1149 n.6.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and meets the standard for preliminary approval.

### 1. Strength of Plaintiff's Case as Compared to the Terms of the Proposed Settlement

One of the key considerations in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendant's offer. *Isby*, 75 F.3d at 1199. Courts, however, "have been admonished 'to refrain from resolving the merits of the controversy of making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram*

16

*Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, when deciding whether to preliminarily approve the Settlement, this Court must focus on general principles of fairness and reasonableness but not the substantive law governing the plaintiffs' claims. *Id.*

The outcome of this litigation is far from certain. When the Parties agreed to settle, Class Counsel generally believed that many aspects of this case were strong, but that there was a clear risk that, despite the strength of the Named Plaintiffs' and Class Members' claims, the class action is not guaranteed to prevail at trial. Even some of the stronger aspects of the case were subject to ultimate rejection. Bona fide disputes exist as to whether Named Plaintiffs and the Class Members were employees at the time of introductory training and whether Defendants were liable for wages related to introductory training. Thus, as in any complex action, the Named Plaintiffs and Class Members generally faced uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

Determining a "reasonable" settlement amount is never simply a mathematical calculation that yields a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement..." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). This case is no different in that there was a range of potential settlements that would have been reasonable.

The Settlement, though not providing a maximum value that might be awarded at trial at a later date, provides substantial monetary benefits now, without the time, difficulties, expense, and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a

17

settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker & Sons*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

The proposed Settlement thus ensures that the Class Members will receive significant monetary relief and, for practical purposes, means that those Class Members who do not opt-out will receive a settlement amount that is equal to or exceeds the total amount to which the members of the Settlement Class could reasonably believe to have received in litigation under any law or contract for the time spent in Introductory Training and Orientation.

"District courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 179, 181 (2d Cir. 1987) (internal quotes and citation omitted). The allocation of a settlement fund among competing claimants is one of the court's traditional equitable functions. *Curtiss-Wright Corporation v. Helfand*, 687 F.2d 171, 174 (7th Cir. 1982). In exercising its equitable power, a court has the discretion to favor those class members who have relatively stronger legal claims. *See Equity Funding Corp. of America Securities Litigation*, 603 F.2d 1353, 1366-67 (9th Cir. 1979) (upholding a plan of allocation in which those class members with stronger claims received more than those with weaker claims).

In determining the allocation, the parties considered the applicable minimum wages, class members' dates of employment, the information obtained via discovery and Defendant's decision to start paying class members for one hour of pay related to introductory training starting January 1, 2010.

### 2. Complexity, Length and Expense of Further Litigation

Avoiding the delay and risk of protracted litigation is another reason why counsel

frequently recommends, and the courts approve, settlements. *See, e.g.*, *Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration" of the litigation); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). This consideration applies to this case.

Further litigation would require further motion practice and the risk, time, and expense associated with trial. These costs of further litigation are considerable in terms of both time and money with uncertain results.

Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976).

### 3. There is No Opposition to the Settlement

The Named Plaintiffs support the settlement, as do Plaintiffs' counsel and Defendant and its counsel. At this preliminary stage, Plaintiffs' counsel is unaware of any opposition to the settlement. *See* Exhibit 4.

### 4. Opinion of Counsel

The proposed Settlement is the product of arm's-length, non-collusive negotiations conducted by counsel experienced in class actions, and who are intimately familiar with the strengths and weaknesses of the claims and defenses. Using that litigation experience, counsel were capable of making, and did make, well informed judgments about the adequacy of the Settlements reached. *Id.*

Counsel exercised that experience and their intimate knowledge of the facts of the case and the legal issues facing the Named Plaintiffs and Class Members to conduct an independent

analysis of the strengths, weaknesses, and value of the claims, and the time, costs and expense of protracted litigation, discovery, and appeals.

### 5. The Stage of Proceedings and Discovery Completed

As explained above, this complex class action was resolved approximately 5½ years after it was initiated. That 5½-year period involved extensive research, analysis, protracted written discovery, approximately 30 depositions, class certification motions, summary judgment motions and other extensive motion practice, amongst other things. The stage of litigation has advanced to a state that Plaintiffs' counsel could fairly and fully evaluate the value of the settlement. *Id*.

### 6. The Settlement was the Result of Arm's Length Negotiations, Without Any Hint of Collusion

There is plainly no collusion or fraud with respect to this proposed Settlement, which was reached after several failed settlement conferences and after intense negotiation with the dedicated assistance of Magistrate Judge Kim. As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.
>
> *            *            *

The initial presumption of fairness of a class settlement may be established by showing:

> a.    That the settlement has been arrived at by arm's-length bargaining;
>
> b.    That sufficient discovery has been taken or investigation completed to enable counsel and the Court to act intelligently; and,
>
> c.    That the proponents of the settlement are counsel experienced in similar litigation.

Newberg §11.41 at 11-88, 11-91; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the Settlement

20

were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, analysis and motion practice. Therefore, this Court should find that an initial presumption of fairness exists to support preliminary approval of the Settlement.

In sum, the foregoing demonstrates that the proposed settlement is fair and reasonable. Moreover, for purposes of preliminary approval, these factors establish that the proposed settlement is "within the range of possible approval," and should be submitted to class members for their consideration. *Horton*, 855 F. Supp. at 827. While the Parties believe the Settlement merits final approval, the Court need not make that determination at this time. The Court is being asked only to permit notice of the terms of the Settlement to be sent to the Class and to schedule a hearing, under Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members of the fairness of the Settlement and the Plan of Distribution, the benefits to be received by Class Members, and Plaintiff's counsel's request for an award of attorneys' fees and expenses. *See* 5 James Wm. Moore, Moore's Federal Practice ¶ 23.80[1], at 23-336 (3d ed. 2001).

## V. <u>CONCLUSION</u>

For the foregoing reasons, Named Plaintiff respectfully requests that the Court:

     a.   Preliminarily approve the Settlement subject only to the objections of Class Members and final review by the Court.

     b.   Approve as to form and content the proposed Notice Regarding Proposed Settlement of Class Action for Members of the Settlement Class;

     c.   Approve as to form and content the proposed Election to Opt Out of Settlement and Class Action Form and Change of Name and/or Address Information Form;

     d.   Direct the mailing of the Notice Regarding Proposed Settlement of Class Action for Members of the Settlement Class, Election to Opt Out of Settlement and Class Action Form and Change of Name and/or Address Information Form by first class mail to the Settlement Class Members; and,

     e.  Schedule a fairness hearing on the question of whether the proposed settlement, including without limitation payment of attorneys' fees and costs, and the incentive award, should be finally approved as fair, reasonable, and adequate as to the Members of the Settlement Class.

Dated: January 14, 2014              */s/ Ryan F. Stephan*
                                  Ryan F. Stephan
                                  James B. Zouras
                                  Stephan Zouras, LLP
                                  205 North Michigan Avenue
                                  Suite 2560
                                  Chicago, IL 60601
                                  Telephone: (312) 233-1550

                                  **ATTORNEYS FOR PLAINTIFFS**