# EXHIBIT 5- Class Action Settlement Agreement

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| CRYSTAL HOWARD, JOHN HUEBNER, PAUL GALLOWAY, ROBERT NEWSON AND ALVAN YOUNG, Individually, and on Behalf of All Others Similarly Situated, ) ) ) ) ) | |
| Plaintiffs, ) | Hon. Gary Feinerman |
| ) | Magistrate Judge Young B. Kim |
| v. ) | Case No. 08 C 2746 |
| ) | |
| SECURITAS SECURITY SERVICES USA, INC., ) ) | |
| Defendant. ) ) ) | |
| STEPHANIE HAWKINS and DARSEMIA JACKSON Individually, and on Behalf of All Others Similarly Situated, ) ) ) ) | |
| Plaintiffs, ) | Hon. Gary Feinerman |
| v. ) | |
| ) | Case No. 09 C 3633 |
| SECURITAS SECURITY SERVICES USA, INC. ) ) | |
| Defendant. ) ) | |

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered by and between the Named Plaintiffs Crystal Howard, John Huebner, Paul Galloway, Robert Newson, Alvan Young, Stephanie Hawkins, and Darsemia Jackson on behalf of themselves and each member of the Settlement Class and Securitas Security Services USA, Inc.

## I.    RECITALS

1.  On or about May 12, 2008, named plaintiffs Crystal Howard, Paul Galloway, Robert Newson and Alvan Young filed an FLSA collective action captioned *Howard et al v. Securitas Security Services USA, Inc.*, Case No. 08 C 2746 (*Howard* Lawsuit), in the United States District Court for the Northern District of Illinois.  The *Howard* plaintiffs alleged that they and others whom they sought to represent were required to work off-the-clock during their employment with Defendant in violation of the FLSA.   On or about January 20, 2009, the Court granted plaintiffs' motion for conditional certification. (Dkt. No. 104)   Thereafter, 1,215 individuals submitted their signed opt-in consent forms.  On or about March 13, 2012, this Court decertified all of plaintiffs' claims except for their claim for unpaid introductory training and orientation. (Dkt. No. 451)  As a result and by applying a three (3) year statute of limitations period, there are 703 remaining opt-in plaintiffs with non-time barred claims for unpaid introductory training and orientation.

2.  On or about May 29, 2009, named plaintiffs Stephanie Hawkins, Darsemia Jackson and Merija Wallace filed their wage and hour class action captioned *Hawkins et al v. Securitas Security Services USA, Inc.*, Case No. 09 CH 17579 (*Hawkins* Lawsuit) in the Circuit Court of Cook County, Illinois.  Shortly thereafter, Defendant removed plaintiffs' complaint to the U.S. District Court for the Northern District of Illinois and the case was assigned Case No. 09 C 3633.[1]  The *Hawkins* plaintiffs alleged that they and others whom they sought to represent were required to work off-the-clock during their employment with Defendant in violation of Illinois law, and the named plaintiffs also brought individual claims for alleged violations of the FLSA. On or about November 16, 2011, this Court certified a class of individuals who attended

---

[1] Merija Wallace was dismissed with prejudice from the case on July 18, 2011. (Dkt. No. 139)

introductory training and orientation without pay, but did not certify plaintiffs' other claims as a class action.

3.   Defendant has denied and continues to deny any liability, wrongdoing, or legal violations of any kind related to the claims and contentions asserted in the *Howard* and *Hawkins* Lawsuits, has asserted a multitude of defenses to the lawsuits, has denied that any injuries or damages exist, and has denied that these matters can be decided on a class-wide basis.  Defendant submits that it has complied with all applicable laws at all times.   By entering into this settlement, Defendant does not admit any liability or wrongdoing and expressly denies the same.  Nothing in this settlement, the various settlement proposals exchanged by the Parties, or any motions filed or Orders entered pursuant to the Settlement Agreement are to be construed or deemed as an admission by Defendant of any liability, culpability, negligence or wrongdoing, and the Settlement Agreement, each of its provisions, its execution, and its implementation, including any motions filed or Orders entered, shall not in any respect be construed as, offered, or deemed admissible in any arbitration or legal proceedings for any purpose except in an action or a proceeding to approve, interpret, or enforce the Settlement Agreement.

4.   In June 2011, Defendant implemented a dispute resolution program ("DRA") nationwide. Among other things, the DRA provides that Securitas' security officers are required to arbitrate any claims, including claims for unpaid wages, on an individual basis.  In light of the DRA, the Parties seek to have all class members who completed introductory training and orientation after June 30, 2011, excluded from the terms of this Settlement Agreement.

5.   The Parties have conducted extensive discovery during the pendency of the Actions, including: (a) the exchange of tens of thousands of pages of written discovery, including voluminous production of electronically stored information; (b) over 30 depositions; (c) review

of payroll and training records, policies and procedures; and (d) the investigation by counsel regarding the applicable law as applied to the facts discovered regarding the alleged claims in the Actions.

6. Throughout the course of this litigation, there have been several settlement conferences. Most recently, on June 28, 2013, with the dedicated assistance of Magistrate Judge Kim, the Parties were able to settle their claims. This settlement includes the Named Plaintiffs, 703 FLSA Participating Class Members and 9,190 Illinois Minimum Wage Law "IMWL" Class Members up to June 30, 2011.

7. Named Plaintiffs and the other FLSA Participating Class Members recognize the expense, burden and risk associated with litigating this action through trial and any possible appeals. In light of these considerations, the Named Plaintiffs, and FLSA Participating Class have concluded that the Settlement Payments described in this Settlement Agreement are equal to the amount to which the members of the Settlement Class could reasonably believe to have received in litigation.

8. Class Counsel represents that they have conducted a thorough investigation into the facts of the Actions and has diligently pursued an investigation of the Settlement Classes` claims against Defendant. Based on their own investigation and evaluation, Class Counsel is of the opinion that the Settlement Agreement with Defendant is fair, reasonable, and adequate, and in the best interest of the Settlement Class in light of all known facts and circumstances. For purposes of this Settlement Agreement, Class Counsel also has determined that the Settlement Agreement procedures described herein are superior to all other available methods for the fair and efficient resolution of this controversy.

9. The Parties desire to fully and finally resolve any and all disputes regarding the Named Plaintiffs, and the Settlement Class without the expense of further litigation, and to set forth their agreement and release of claims.

10. The Parties agree to cooperate and take all reasonable steps necessary and appropriate to obtain preliminary and final approval of the Settlement Agreement, to effectuate all aspects of the Settlement Agreement, and to dismiss the Actions with prejudice upon final approval and payment to the QSF.

## II. SETTLEMENT TERMS

## A. DEFINITIONS

11. "Actions" means the civil actions *Howard et al v. Securitas Security Services USA, Inc.* Case No. 08 C 2746 (the *Howard* Lawsuit) and *Hawkins et al v. Securitas Security Services USA, Inc.*, Case No. 09 C 3633 (the *Hawkins* Lawsuit), pending in the U.S. District Court for the Northern District of Illinois.

12. "Administrative Fees" refers to the Settlement Administrator's fees arising from its administration of the settlement.

13. "CAFA Notice" means the notice of proposed settlement pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, substantially in the form attached as Exhibit B hereto.

14. "Class Counsel" refers to: Ryan Stephan, James Zouras and Stephan Zouras, LLP, 205 N. Michigan Ave., Suite 2560, Chicago, IL 60601; Marvin Miller, Matthew Van Tine and Miller Law LLC, 115 S. LaSalle Street, Suite 2910, Chicago, IL 60603; and Thomas Ryan and the Law Offices of Thomas M. Ryan P.C., 35 East Wacker Drive, Suite 650, Chicago, Illinois 60601.

15. "Court" means the United States District Court for the Northern District of Illinois.

16. "Defendant" or "Securitas" means Securitas Security Services USA, Inc., and its subsidiaries, parents, affiliates, predecessors, successors and assigns, and the present or former directors, officers, shareholders, employees agents and employee benefit plans of any of them, whether in their individual or official capacities.

17. "Effective Date" means the first business day after the date on which the Final Judgment becomes final. For purposes of this definition, the Final Judgment "becomes final" upon the later of (a) the expiration of the time for filing an appeal from the Final Judgment, or (b) if an appeal is timely filed or other appellate review is sought, the date that the Final Judgment is finally affirmed and all other means of appellate review have been exhausted or have expired. In the event that the Court does not approve the Settlement Agreement and/or does not enter a Final Judgment, or in the event that entry of the Final Judgment is reversed on appeal, then there shall be no Effective Date and this Settlement Agreement shall become null and void.

18. "Final Approval Hearing" means the hearing contemplated by the Parties, at which the Court will grant final approval of the settlement and make such other final rulings as are contemplated by the Settlement.

19. "Final Approval Order" means the Court's order granting final approval of this Settlement Agreement on the terms provided herein or as those terms may be modified by subsequent written agreement of the Parties.

20. "Final Judgment" refers to the judgment entered by the Court in conjunction with the Final Approval Order dismissing the Actions with prejudice. The Parties shall submit an order of Final Judgment setting forth the terms of this Settlement Agreement, by incorporation or otherwise, for approval by the Court at the time of the Final Approval Hearing. Within seven (7)

calendar days of the funding of the QSF by Defendant in accordance with Paragraph 47 below, the parties shall submit the Final Judgment order for execution and entry by the Court.

21. "FLSA" means the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

22. "FLSA Participating Class Members" mean the 703 individuals who opted in to the FLSA collective action before or during the opt-in period and who have timely claims for introductory training and orientation. (*See* Exhibit C – FLSA Participating Class Member List)

23. "IMWL" means the Illinois Minimum Wage Law, 820 ILCS §105 *et seq.*

24. "IMWL Class Members" mean all 9,190 class members who attended introductory training and orientation at Securitas between May 29, 2006 and June 30, 2011. (*See* Exhibit D – IMWL Class Member List)

25. "IMWL Participating Class Members" mean all 9,190 class members who attended introductory training and orientation at Securitas between May 29, 2006 and June 30, 2011, who do not request to be excluded from the settlement in full compliance with the procedures described below.

26. "Introductory Training and Orientation" means the time spent by class members receiving training and testing, studying, reviewing materials, preparing for classes, filling out paperwork, receiving uniforms, and/or meeting with the scheduler regarding their initial assignment to a client worksite.

27. "Named Plaintiffs" means Crystal Howard, John Huebner, Paul Galloway, Robert Newson, Alvan Young, Stephanie Hawkins and Darsemia Jackson.

28. "Notice of Settlement" means the notice of class action settlement to be directed to the Settlement Class. The Notice of Settlement shall be substantially in the form of Exhibit A attached hereto.

29. "Parties" means Named Plaintiffs (on behalf of themselves and those whom they seek to represent) and Defendant.

30. "Preliminary Approval Order" refers to the Court's order pursuant to Rule 23 of the Federal Rules of Civil Procedure and Section 216(b) of the FLSA granting preliminary approval of this Settlement on the terms provided herein or as those terms may be modified by subsequent mutual written agreement of the Parties.

31. "Qualified Settlement Fund" or "QSF" means the qualified settlement fund established by the Settlement Administrator with the Settlement Amount.

32. "Settlement Administrator" refers to Kurtzman Carson Consultants "KCC", the settlement administrator agreed to by the Parties. When retained, the Settlement Administrator must acknowledge that it has a fiduciary obligation to the Named Plaintiffs, the Settlement Class Members, Class Counsel and Defendant and attest that it will not distribute any disbursements from the QSF except as expressly authorized by this Settlement Agreement or as ordered by the Court.

33. "Settlement Agreement" means this class action settlement agreement entered into between the Parties.

34. "Settlement Amount" means the payment by Defendant of (i) up to One Million and Two Hundred Seventy-Five Thousand Dollars and No Cents ($1,275,000.00) and (ii) an additional amount to be determined by the Settlement Administrator in accordance with applicable tax law (subject to verification by Defendant) for Defendant's employer share of all payroll taxes associated with the wages portion of the payments from the QSF to the Settlement Class and Named Plaintiffs as described in subparagraphs 48 (a-c) below, which amounts set forth in subpart (i) and (ii) of this paragraph shall be in complete settlement of this matter. The

Settlement Amount will be the sole source and maximum payment by Defendant under this Settlement Agreement, including for (1) all approved attorneys' fees and costs in connection with all of Class Counsel's representation of Named Plaintiffs, class members in the *Hawkins* Lawsuit, and collective action members in the *Howard* Lawsuit, including all attorneys' fees and costs that may arise in the future in connection with this Settlement Agreement, including, without limitation, seeking Court approval of the Settlement Agreement, and the notice process; (2) all fees and costs of the settlement administration activities by the Settlement Administrator; (3) all Settlement Payments (defined below) to the Settlement Class; (4) all payments to the Named Plaintiffs; and (5) Defendant's share of all payroll taxes associated with the payments from the Settlement Amount, including without limitation any deductions for Social Security, FICA, FUTA, and Medicare. Under no circumstances will Defendant pay, be required to pay or be responsible to pay any amount in connection with this Settlement Agreement exceeding the Settlement Amount.

35. "Settlement Class" includes the FLSA Participating Class Members and IMWL Participating Class Members.

36. "Settlement Payment" means the gross payment that each individual member of the Settlement Class shall be eligible to receive as set forth in paragraph 48 below.

**B.     NO ADMISSION OF LIABILITY**

37. Nothing contained herein, nor the consummation of this Settlement Agreement, is to be construed as or deemed an admission of liability, culpability, negligence or wrongdoing on the part of the Defendant or Named Plaintiffs. Each of the Parties has entered into this Settlement Agreement with the intention to avoid further disputes and litigation based on disputed facts and allegations, and to avoid the costs and risks of further litigation to all Parties. This Settlement

Agreement is a settlement document and shall be inadmissible in evidence in any proceeding. The preceding sentence shall not apply to an action or proceeding to approve, interpret or enforce this Settlement Agreement.

## C.     STATUS OF PROCEEDINGS

38. The Parties agree that all proceedings in these Actions other than those related to the review, approval and processing of this Settlement Agreement should be stayed during the pendency of the Court's consideration of the Settlement Agreement and related motions.

39. The participants in the FLSA collective action in the *Howard* Lawsuit have already been identified as notice was sent and the opt-in period has concluded.  The consent forms provide Class Counsel with the authority to settle the matter on behalf of each and every Participating FLSA Class Member.

40. The participants for the IMWL action in the *Hawkins* Lawsuit have also been identified as that case was certified in relation to the introductory training and orientation claim on November 16, 2011.  As to the IMWL state law claim, for purposes of this Settlement Agreement, the Parties agree that the Settlement Class is limited to the period from May 26, 2006 to June 30, 2011, when Defendant implemented the DRA.  The Parties agree that there are 9,190 members of the IMWL Settlement Class.

41. Solely for the purposes of this Settlement Agreement, Defendant stipulates and agrees that the certification of the Settlement Class is appropriate.  Defendant expressly reserves its right to oppose class certification, renew its motion to decertify, and oppose the merits of the Actions should the Settlement Agreement not become final. For purposes of this Settlement, the Parties agree that there will be no difficulty in the management of this settlement on a class basis.

**D.     RELEASES**

42. (a) Except as provide in Subsection (b), as of the Effective Date, every member of the Settlement Class on behalf of themselves and their respective agents, representatives, predecessors, successors and assigns by this Settlement Agreement hereby fully, finally, and forever releases, relinquishes and discharges Securitas, to the fullest extent permitted by law, from any and all claims, whether under federal, state and/or local statute, regulation, ordinance, common law or contract, relating to any claim for the payment of any compensation (including without limitation wages) for the time that each respective class member spent in Introductory Training and Orientation and any related penalties, liquidated damages, interest, compensatory damages, punitive damages, or any other item of damages, and attorney's fees and costs.

(b)   Notwithstanding the provisions of Subsection (a), the IMWL Participating Class Members shall not be deemed to have released any FLSA claims.

43. As of the Effective Date, the Named Plaintiffs on behalf of themselves and their respective agents, representatives, predecessors, successors and assigns by this Settlement Agreement hereby fully, finally and forever release, relinquish and discharge Securitas from any and all claims under federal, state and/or local statute, regulation, ordinance, common law, or contract relating to the releasing party's employment with Securitas, payment of wages, penalties, liquidated damages, interest, compensatory damages, punitive damages, or any other item of damages, and attorney's fees and costs and as further defined in their general releases. The Named Plaintiffs shall execute the individual general releases of their claims as a condition of receiving payment hereunder.

44. Class Counsel, Named Plaintiffs and every member of the Settlement Class, on behalf of themselves and their respective agents, representatives, predecessors, successors and assigns by this Settlement Agreement release Defendant from any and all rights and claims for attorneys' fees and costs (other than those awarded by the Court in accordance with ¶48 (d) this Agreement) in connection with the Actions or the settlement of the Actions.

45. It is agreed that it is impossible or impracticable to have each Settlement Class member execute this Settlement Agreement. The Notice of Settlement will advise all Class Members of the binding nature of the release and such shall have the same force and effect as if each Class Member executed this Settlement Agreement.

46. Except as to such rights and claims as may be created by the Settlement Agreement, and to the fullest extent permitted by law, Named Plaintiffs and every member of the Settlement Class agree not to sue Defendant for any claims covered by the release in this Settlement Agreement.

## E. SETTLEMENT AMOUNT AND PAYMENTS

47. Within seven (7) calendar days of entry of the Final Approval Order, Defendant shall wire the Settlement Amount in complete settlement of this matter to the Settlement Administrator, which shall be deposited into an interest-bearing escrow account to be opened, administered and controlled by the Settlement Administrator. The account shall be opened and administered by the Settlement Administrator as a "Qualified Settlement Fund" under Section 468B of the IRC and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1, et seq. While held in the QSF, the funds in the QSF shall accrue interest at the then-current T-bill rate. The Settlement Administrator shall be expressly prohibited from disbursing any funds from the QSF until at least ten (10) calendar days after the Effective Date.

48. Ten (10) calendar days after the Effective Date, provision of all necessary forms, and satisfaction of all other requirements outlined herein, the Settlement Administrator shall disburse the QSF as follows:

    a.  <u>Payments to FLSA Participating Class Members</u>. The Settlement Administrator shall distribute a total of $40,211.60 to FLSA Participating Class Members (703 individuals), which will be in individual equal amounts of $57.20, computed as 4 hours at $7.15 (average minimum wage in effect), and multiplied by 2 for liquidated damages, by mailing a check to each FLSA Participating Class Member. These are gross amounts, subject to applicable tax withholdings and deductions, as discussed below. The Parties agree that the Settlement Payments represent full payment of the state and/or federal claims of the FLSA Participating Class members relating to Introductory Training and Orientation. Settlement Payment checks shall remain valid and negotiable for 120 days from the date of their issuance and if not cashed within that time period shall become null and void by their terms and a FLSA Participating Class Member shall be prohibited from cashing such check after that time period, with no right of reversion of such un-cashed check amounts to FLSA Participating Class Members. The Settlement Administrator will issue the appropriate tax forms to each FLSA Participating Class Member. The Settlement Administrator shall have the exclusive responsibility, subject to verification by Class Counsel and Defendant's counsel, for determining the gross and net amounts of any settlement payment to FLSA Participating Class Members. FLSA Participating Class Members acknowledge that the Settlement Administrator must report to the IRS (as well as state and local taxing authorities where applicable) the payments made to them under this Agreement, and that it is each FLSA Participating Class Member's individual responsibility to make tax payments on these amounts, if applicable. Fifty percent (50%) of the $57.20 for each individual payment to the FLSA Participating Class Members constitutes wages, and fifty percent (50%) of the $57.20 for each individual payment to the FLSA Participating Class Members constitutes liquidated damages. The Settlement Administrator shall (i) withhold legally required income and payroll taxes from the wages portion of each settlement payment, (ii) issue each FLSA Participating Class Member an IRS Form W-2 indicating those amounts, and (iii) pay the appropriate tax authorities the employer share of the payroll taxes for the wages portion of each settlement payment. Other than the employer portion of any payroll taxes, FLSA Participating Class Members shall be solely responsible for all tax liabilities, assessments and penalties, if any, relating to individual payments to them.

    b.  <u>Payments to IMWL Participating Class Members</u>. The Settlement Administrator shall distribute a total of up to $269,944.30 to IMWL Participating Class Members (which could number up to 9,190 individuals), which will be in individual equal amounts of: $32.60, computed as 4 hours @ $8.15 (average minimum wage in effect) for class members who attended introductory training

and orientation before December 31, 2009 (5,552 class members); and $24.45, computed as 3 hours at 8.15 (average minimum wage in effect) for class members who attended introductory training and orientation between December 31, 2009 and June 30, 2011 (3,638 class members), by mailing a check to each IMWL Participating Class Member.[2]  These are gross amounts, subject to applicable tax withholdings and deductions, as discussed below.  The Parties agree that the Settlement Payments represent full payment of the state claims of the IMWL Participating Class members relating to Introductory Training and Orientation. Should anyone exercise their right to opt out of the IMWL Settlement Class, the Settlement Administrator shall not issue a check to such individual in any amount. Settlement Payment checks shall remain valid and negotiable for 120 days from the date of their issuance and if not cashed within that time period shall become null and void by their terms and an IMWL Participating Class Member shall be prohibited from cashing such check after that time period, with no right of reversion of such un-cashed check amounts to IMWL Participating Class Members.  The Settlement Administrator will issue the appropriate tax forms to each IMWL Participating Class Member.  The Settlement Administrator shall have the exclusive responsibility, subject to verification by Class Counsel and Defendant's counsel, for determining the gross and net amounts of any settlement payment to IMWL Participating Class Members.  IMWL Participating Class Members acknowledge that the Settlement Administrator must report to the IRS (as well as state and local taxing authorities where applicable) the payments made to them under this Agreement, and that it is each IMWL Participating Class Member's individual responsibility to make tax payments on these amounts, if applicable.  One hundred percent (100%) of the individual payment to each IMWL Participating Class Member (either $32.60 or $24.45) constitutes wages. The Settlement Administrator shall (i) withhold legally required income and payroll taxes from the wages portion of each settlement payment, (ii) issue each IMWL Participating Class Member an IRS Form W-2 indicating those amounts, and (iii) pay the appropriate tax authorities the employer share of the payroll taxes for the wages portion of each settlement payment.  Other than the employer portion of any payroll taxes, IMWL Participating Class Members shall be solely responsible for all tax liabilities, assessments and penalties, if any, relating to individual payments to them.

c.  <u>Payments to Named Plaintiffs</u>.  In exchange for and subject to the terms of a general release of all claims, the Settlement Administrator shall distribute a total of up to $35,000 computed as $5,000 to each of the (7) Named Plaintiffs for their remaining individual claims and for their efforts on behalf of the class. These are gross amounts, subject to applicable tax withholdings and deductions, as discussed below. These amounts include (and are not in addition to) any amounts due to the Named Plaintiffs under the immediately preceding subparagraphs. Named Plaintiffs will be required to execute a full and complete release of any and all claims, known and unknown, against Defendant, and the Settlement

---

[2] Beginning on January 1, 2010, Defendant began paying applicants for a portion of the time spent in introductory training and orientation.

Administrator shall not distribute any funds to a Named Plaintiff until Defendant has received a fully executed copy of the general release. The Settlement Administrator will issue the appropriate tax forms to each Named Plaintiff. The Settlement Administrator shall have the exclusive responsibility, subject to verification by Class Counsel and Defendant's counsel, for determining the gross and net amounts of any settlement payment to the Named Plaintiffs. Named Plaintiffs acknowledge that the Settlement Administrator must report to the IRS (as well as state and local taxing authorities where applicable) the payments made to them under this Agreement, and that it is Named Plaintiffs' individual responsibility to make tax payments on these amounts, if applicable. Twenty-five percent (25%) of the $5,000 for each individual payment to the Named Plaintiffs constitutes wages, twenty-five percent (25%) of the $5,000 for each individual payment to the Named Plaintiffs constitutes liquidated damages, and fifty percent (50%) of the $5,000 for each individual payment to the Named Plaintiffs constitutes an incentive award. The Settlement Administrator shall withhold legally required income and payroll taxes from the wages portion of each settlement payment, shall issue each Named Plaintiff an IRS Form W-2 indicating those amounts, and shall pay the appropriate tax authorities the employer share of the payroll taxes for the wages portion of each settlement payment. Other than the employer portion of any payroll taxes, Named Plaintiffs shall be solely responsible for all tax liabilities, assessments and penalties, if any, relating to individual payments to them.

d.  <u>Payment of Plaintiffs' Attorney's Fees and Costs</u>. Following preliminary approval of this Settlement Agreement, Class Counsel will submit a petition to the Court for their attorneys' fees and costs. Class Counsel agrees that any recovery for attorneys' fees and costs shall not exceed Nine Hundred and Twenty-Nine Thousand and Eight Hundred and Forty-Four Dollars and Ten Cents ($929,844.10) broken down as follows: Two Hundred and Thirty Five Thousand Dollars and No Cents ($235,000.00) to Class Counsel for their recoverable costs (including, without limitation, the Administrative Fees) and Six Hundred and Ninety Four Thousand, Eight Hundred and Forty-Four Dollars and Ten Cents ($694,844.10) for their incurred attorney fees. Defendant will not oppose Class Counsel's petition so long as it is consistent with the provisions of this Settlement Agreement. Attorneys' fees and costs approved by the Court up to $929,844.10 shall be paid in the form of one check to Stephan Zouras LLP by the Settlement Administrator. In the event that the Court awards a lesser amount of fees and costs to Class Counsel, the Settlement Agreement shall remain in full force and effect and be binding on the Parties. If the Court rules that any amount requested by Class Counsel for attorneys' fees, expenses or costs is excessive and reduces the same, only the reduced amount shall be paid by the Settlement Administrator to Class Counsel. Such check shall not be issued or released until Defendant's counsel has received waivers of attorney's liens attached hereto as Exhibit E from all Class Counsel. The Settlement Administrator shall issue Class Counsel an IRS Form 1099 for their award of attorneys' fees. Class Counsel is responsible for all

federal, state and local tax liabilities that may result from the payment of such award and Defendant shall bear no responsibility for such tax liabilities.

e. <u>Tax Advice</u>. The Notice of Settlement will advise IMWL Class Members to seek their own tax advice and the Parties agree that each IMWL Class Member will have sufficient opportunity to seek such advice after receiving the Notice of Settlement. Class Counsel agrees and acknowledges that each Named Plaintiff and FLSA Participating Class Member had sufficient opportunity to seek tax advice relating to the payments under this Settlement Agreement.

f. <u>Tax Forms</u>. Named Plaintiffs and Class Counsel shall provide the Settlement Administrator with completed and fully executed IRS Form W-9s; and Class Counsel shall facilitate the provision of any other necessary tax information in relation to the payments in this section. All payments are conditioned upon the timely completion of required tax forms.

g. <u>Tax Withholdings and Payments by the Settlement Administrator</u>. The Settlement Administrator will report all payments to government authorities including the IRS as required by law, and shall make all deductions, withholdings and/or income and payroll tax payments out of the QSF as required by law.

49. Class Counsel shall be responsible for and pay all of the Settlement Administrator's Administrative Fees.

50. The Settlement Administrator will return to Defendant the amount, if any, that remains in the QSF (with interest) after complying with the requirements of Paragraph 48 above.

51. It is the intention of the Parties and by this Settlement Agreement that unless the Named Plaintiffs and members of the Settlement Class cash their settlement payment checks within the 120-day period provided for doing so, they do not hold any property right to or interest in the funds represented by the checks and, therefore, the funds represented by the checks will not escheat to any applicable jurisdiction.

52. Prior to the Final Approval Hearing, Class Counsel will file a motion seeking approval of the agreed-upon award of attorneys' fees and costs relating to their representation of Named Plaintiffs, class members in the *Hawkins* Lawsuit, and collective action members in the *Howard*

Lawsuit. Defendant will not oppose Class Counsel's application so long as it is consistent with the provisions of this Settlement Agreement.

53. Class Counsel and every member of the Settlement Class agree and acknowledge that the settlement amount that each Settlement Class member will receive pursuant to Paragraph 48 is equal to or exceeds the total amount to which the members of the Settlement Class could reasonably believe to have received in litigation under any law or contract for the time spent in Introductory Training and Orientation.

54. Class Counsel, the Parties and every member of the Settlement Class understand, acknowledge and agree that Defendant's settlement of the IMWL claim offsets any damages that could be recovered pursuant to a claim for unpaid time spent in Introductory Training and Orientation under the FLSA.

55. Only the Named Plaintiffs and member of the Settlement Class who do not request to be excluded from the Settlement Agreement in full compliance with procedures herein shall be entitled to participate in the settlement and receive a Settlement Payment.

56. If the Effective Date does not occur, the Court does not grant the Final Approval Order and Final Judgment, or this Settlement Agreement is otherwise nullified pursuant to its terms, this Settlement Agreement shall be null and void, and Defendant shall have no obligations to provide the Settlement Amount.

**F.     SETTLEMENT APPROVAL PROCEDURE**

57. The Settlement Agreement requires the occurrence of the all of the following events: (a) execution of the Settlement Agreement by the Parties; (b) submission of the Settlement Agreement by the Parties to the Court for preliminary approval; (c) entry of the Preliminary Approval Order by the Court granting preliminary approval of the Settlement Agreement under

Rule 23 of the Federal Rules of Civil Procedure and FLSA Section 216(b); (d) Court approval of the method of distribution and the form and content of the Notice of Settlement; and (e) filing by Class Counsel, on or before the date of the Final Approval Hearing, the Court-approved Settlement Administrator's declaration, in writing, that the Settlement Notice to the Settlement Class has been disseminated in accordance with the Court's order.

58. The Settlement Agreement will become final and effective only upon the occurrence of the following events: (a) the Court enters the Final Approval Order and Final Judgment; and (b) the Effective Date occurs.

59. If the Effective Date does not occur, the Court does not grant the Final Approval Order and Final Judgment, or this Settlement Agreement is otherwise nullified pursuant to its terms, this Settlement Agreement shall be null and void, and the agreements described above and elsewhere in this Settlement Agreement shall be of no effect and inadmissible in this or any other action or proceeding.

## G. CAFA NOTICE

60. Pursuant to CAFA, within ten calendar days after the Parties file the joint motion for preliminary approval of the Settlement Agreement, Defendant will mail the CAFA Notice to the Attorney General of the United States, the Attorney General of the State of Illinois, and the Attorney General of each other State where FLSA Participating and IMWL Class Members reside according to Defendant's records. The Parties intend and believe that the CAFA Notice pursuant to the procedures described herein comply with the CAFA requirements; will seek approval of these procedures for CAFA Notice in the joint motion for preliminary approval of the Settlement Agreement; and will request the Court to adjudicate the validity of the CAFA Notice in the motion for final approval of the Settlement Agreement and bar any FLSA

Participating Class Members' and IMWL Class Members' claim to void or avoid the Settlement Agreement under CAFA.

**H. MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

61. Within ten calendar days of this Settlement Agreement being executed, the Parties shall file with the Court a Joint Motion for Preliminary Approval of Settlement ("Preliminary Approval Motion") to be prepared and agreed upon by the Parties.

62. In their Preliminary Approval Motion, the Parties shall request that the Court: (a) grant preliminary approval to the Settlement Agreement described herein; (b) approve the Settlement Notice and the proposed plan of settlement administration described herein; and (c) schedule a tentative date for a Final Approval Hearing approximately 100 calendar days after the date of preliminary approval.

**I. PLAN OF SETTLEMENT ADMINISTRATION**

63. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement Agreement.

64. Within seven calendar days after the Court grants preliminary approval of the Settlement Agreement described herein, Defendant shall provide the Settlement Administrator with a list of Settlement Class members, their social security numbers (which shall be securely maintained and used exclusively to assist in administering the settlement) and their last known address according to Defendant's business records.

65. Within fourteen calendar days after receiving the above mentioned list of Settlement Class members, the Settlement Administrator shall run the names and last known addresses through the NCOA database to locate the most current addresses for Settlement Class members

and send the Notice of Settlement attached hereto as Exhibit A to the members of the Settlement Class *via* first class U.S. Mail, postage prepaid. If any such mailing is returned as undeliverable with an indication of a more current address, the Settlement Administrator will mail the Notice of Settlement to the new address. If any such mailing is returned as undeliverable without any indication of a more current address, the Settlement Administrator will undertake reasonable efforts to identify a current address and, if one is so identified, will mail the Notice of Settlement to the new address.

66. IMWL Class Members who want to become IMWL Participating Class Members do not have to take any action to participate in the Settlement Agreement. Those who do not want to participate in the Settlement Agreement may opt out by following the instructions on the Notice of Settlement. *See* Exhibit A hereto. In order to be valid, the requests for exclusion must be filled out completely, signed, and mailed to the Settlement Administrator whose address is listed on the Notice of Settlement, by the date specified in the Notice of Settlement (45 calendar days after the initial mailing of the Notice of Settlement). Within five (5) business days after receiving a request for exclusion, the Settlement Administrator must notify counsel for the Parties *via* electronic mail of the name of the IMWL Class Member who submitted the request for exclusion. The Settlement Administrator shall retain the requests for exclusion and the envelopes showing the postmark of the request for exclusion and permit inspection and copying of same by counsel for the Parties at their request. Requests for exclusion shall be disregarded if they are not post-marked on or before the applicable deadline. IMWL Class Members who do not submit a timely and valid request for exclusion in the manner described herein shall be deemed IMWL Participating Class Members for purposes of this Settlement Agreement. In the event the procedures in the preceding paragraph are followed and an intended recipient of the

Notice of Settlement who is subject to this paragraph does not receive the Notice of Settlement, the intended recipient shall nevertheless be deemed an IMWL Participating Class Member and will be bound by all terms of the Settlement Agreement.

67. No person shall have any claim against Securitas, Securitas' counsel, the Named Plaintiffs, Class Counsel, or the Settlement Administrator based on any claim that a request for exclusion was not received in a timely manner.

68. At no time shall any of the Parties or their counsel: (a) discourage any member of the Settlement Class from becoming a participating class member; or (b) encourage any member of the Settlement Class to object to the Settlement Agreement or request exclusion from the Settlement Agreement.

69. Members of the Settlement Class may object to the Settlement Agreement by following the instructions on the Notice of Settlement. *See* Exhibit A hereto. In order to object to the Settlement Agreement or any terms of it, the person making the objection must be a member of the Settlement Class, must not have opted out of the Settlement Agreement, and must send to the Settlement Administrator and file with the Court a written statement of the grounds of objection, signed by the Class Member or his or her attorney, by the date specified in the Notice of Settlement (45 calendar days after the initial mailing of the Notice of Settlement). Any objection that does not meet the requirements of this paragraph shall not be considered by the Court, unless otherwise ordered by the Court. IMWL Class Members and FLSA Participating Class Members who fail to serve timely and proper written objections shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement. Counsel for the Parties may file a response to any objections filed no later than ten calendar days before the Final Approval Hearing.

70. No later than ten calendar days after the opt-out and objection deadline, the Settlement Administrator shall provide the Parties' counsel with a declaration that includes a complete list of all individuals who have timely requested exclusion from the Settlement Class (Opt-Outs), and all IMWL Class Members and FLSA Participating Class Members who have timely objected to the Settlement (the "Administrator's Declaration").

## J.    MOTION FOR FINAL APPROVAL OF SETTLEMENT

71. Promptly after receiving the Administrator's Declaration, the Parties shall confirm the date for the Final Approval Hearing or confer about and schedule an alternative date.  At least five calendar days prior to the Final Approval Hearing, the Parties shall file with the Court: (a) a joint motion for final approval of settlement; and (b) a copy of the Administrator's Declaration.

72. At the Final Approval Hearing, the Parties will ask the Court to finally approve the Settlement Agreement; to consider any objections thereto; to approve the amounts allocated for Class Counsel's fees and costs (including, without limitation, the administrative fees) and the enhanced awards for Named Plaintiffs; and to approve entry of a Final Judgment dismissing the Actions with prejudice.  Only counsel for the Parties, and IMWL Class Members and FLSA Participating Class Members who have filed timely objections to the Settlement Agreement may participate in the hearing.  Counsel for the Parties shall jointly present the Court with a proposed Final Judgment and Final Approval Order to accomplish that purpose.

## K.    TERMINATING THE SETTLEMENT AGREEMENT

73. If the Court does not approve any material condition of this Settlement Agreement that effects a fundamental change to the terms of the settlement hereunder, the entire Settlement Agreement will be voidable and unenforceable.  A material condition or fundamental change of this Settlement Agreement shall include, but not limited to, Defendant having to pay any amount

in excess of the Settlement Amount. An award of Class Counsel's attorneys' fees, costs and expenses in an amount less than that sought by Class Counsel will not constitute a failure to grant final approval of the Settlement Agreement or a material modification of the Settlement Agreement.

74. If more than 15% of the IMWL Class Members opt-out of the proposed Settlement Agreement, then the Settlement Agreement is voidable at Defendant's option.

75. Defendant may terminate this Settlement Agreement as provided in Paragraphs 73 and 74 by giving notice, in writing, to Class Counsel and the Court at any time before final approval of the Settlement Agreement by the Court.

76. The Parties agree that, in the event that the Court does not grant preliminary or final approval of the Settlement Agreement, or if Defendant lawfully exercises its option to terminate the Settlement Agreement, Defendant's agreement to this settlement in principle will not preclude it from re-filing its motion to decertify, motion to exclude class members subject to the DRA, or otherwise contesting class certification under Rule 23 of the Federal Rules of Civil Procedure in the *Hawkins* Lawsuit or certification under Rule 216(b) of the FLSA in the *Howard* Lawsuit.

77. If the Settlement Agreement is terminated, the Settlement Agreement shall have no force or effect, and no party shall be bound by any of its terms.

78. If the Settlement Agreement is terminated, Defendant shall have no obligation to make any payments to the QSF, any Named Plaintiff, Class Member, Class Counsel or anyone else.

79. If the Settlement Agreement is terminated, the Preliminary Approval Order, Final Approval Order and Final Judgment, shall be vacated.

80. If the Settlement Agreement is terminated, the Settlement Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the Actions prior to the settlement.

81. If the Settlement Agreement is terminated, neither this Settlement Agreement, nor any ancillary documents, actions, statements or filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the Actions or any other action for any purpose whatsoever.

## L.    PARTIES' AUTHORITY

82. The signatories represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties to its terms and conditions.

## M.   NOTICES

83. Unless otherwise specifically provided, all notices, demands or other communications in connection with this Settlement Agreement shall be: (1) in writing; (2) deemed given on the third business day after mailing; and (3) sent by United States registered or certified mail, return receipt requested, addressed as follows:

> To Named Plaintiffs or Class Members:
>
> Ryan F. Stephan
> Stephan Zouras, LLP
> 205 N. Michigan, Suite 2560
> Chicago, Illinois 60601
>
> To Defendant:
>
> John T. Roache
> K&L GATES LLP
> 70 West Madison Street, Suite 3100
> Chicago, Illinois 60602

## N.    MISCELLANEOUS

84. Neither this Settlement Agreement, nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, is, or may be construed as, or may be used as an admission, concession or indication by or against Securitas of any fault, wrongdoing or liability whatsoever.

85. The Parties and Class Counsel represent, covenant and warrant that they have not directly or indirectly, assigned, transferred, encumbered or purported to assign, transfer or encumber to any person or entity any portion of any claims, causes of actions, demands, rights and liabilities of every nature and description released under this Settlement Agreement.

86. Provided that the Final Approval Order and Final Judgment are consistent with the terms and conditions of this Settlement Agreement in all material respects, the Named Plaintiffs, FLSA Participating Class Members, IMWL Participating Class Members, Class Counsel and Defendant all hereby waive any and all rights to appeal from the Final Approval Order and Final Judgment, including all rights to any post-judgment proceedings, such as a motion to vacate or set-aside judgment, a motion for a new trial, and any extraordinary writ, and the Final Approval Order and Final Judgment will become final and non-appealable at the time they are entered. The waiver does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings.

87. The Parties and their counsel agree that they will not issue any press release or have any communication with the press or third parties regarding the settlement of this Action or any portion thereof, except that the Parties shall have the right to disclose the Settlement Agreement as may be required under federal or state securities laws or under generally accepted accounting principles.

88. As part of this Agreement, Defendant shall not be required to enter into any consent decree, nor shall Defendant be required to agree to any provision for injunctive or prospective relief.

89. This Agreement shall be construed and enforced under the laws of the State of Illinois.

90. The Parties agree that the terms and conditions of this Settlement Agreement are the result of intensive, arms'-length negotiations between the Parties and that this Settlement Agreement shall not be construed in favor or against any of the Parties by reason of their participation in the drafting of the Settlement Agreement.

91. Paragraph titles and headings are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any of its provisions. Each term of this Settlement Agreement is contractual and not merely a recital.

92. This Settlement Agreement may not be changed, altered, or modified, except in writing and signed by counsel for the Parties, and approved by the Court.

93. This Settlement Agreement contains the entire agreement between the Parties relating to any and all matters addressed in the Settlement Agreement (including settlement of the Actions), and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by one of the Parties or such Parties' legal counsel, with respect to such matters are extinguished. No rights hereunder may be waived or modified except in a writing signed by all Parties and approved by the Court.

94. The Parties agree that they will continue to comply with all terms of the Agreed Protective Order entered in the above-referenced cases, including those terms requiring the return and destruction of documents at the conclusion of the case, and limiting use of information to the case in which it was produced.

95. Upon completion of its duties, the Settlement Administrator shall return to the Parties all documents related to this case, including all documents it received in connection with this case from the Parties, Class Members, or any other individuals, third parties or other source.

96. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

97. This Agreement may be executed in multiple counterparts with each constituting an original.

98. Any disputes related to this Settlement Agreement that arise prior to the entry of Final Judgment shall be referred to the Court.

IN WITNESS WHEREOF, the undersigned duly executed this Agreement as of the date indicated below:


Dated: _____          Dated: _____

Ryan F. Stephan                   John T. Roache
James B. Zouras                   K&L GATES LLP
Stephan Zouras, LLP               **Defendant's Counsel**
**Class Counsel**


Dated: _____

Marvin A. Miller
Matthew E. Van Tine
Miller Law LLC
**Class Counsel**


Dated: _____

Thomas M. Ryan
Law Offices of Thomas M. Ryan, P.C.

**Class Counsel**

Dated: _____

Crystal Howard
**Plaintiff**

Dated: _____

John Huebner
**Plaintiff**

**Dated:** _____

Paul Galloway
**Plaintiff**

**Dated:** _____

Robert Newson
**Plaintiff**

**Dated:** _____

Alvan Young
**Plaintiff**

**Dated:** _____

Stephanie Hawkins
**Plaintiff**

**Dated:** _____

Darsemia Jackson
**Plaintiff**

**Dated:** _____

Securitas Security Services USA, Inc.
**Defendant**

By:_____

Title_____

95. Upon completion of its duties, the Settlement Administrator shall return to the Parties all documents related to this case, including all documents it received in connection with this case from the Parties, Class Members, or any other individuals, third parties or other source.

96. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

97. This Agreement may be executed in multiple counterparts with each constituting an original.

98. Any disputes related to this Settlement Agreement that arise prior to the entry of Final Judgment shall be referred to the Court.

IN WITNESS WHEREOF, the undersigned duly executed this Agreement as of the date indicated below:

Dated: 1/9/14

Ryan F. Stephan
James B. Zouras
Stephan Zouras, LLP
Class Counsel

Dated: _____

John T. Roache
K&L GATES LLP
Defendant's Counsel

Dated: 1/10/14

Marvin A. Miller
Matthew E. Van Tine
Miller Law LLC
Class Counsel

Dated: Dec. 27, 2013

Thomas M. Ryan
Law Offices of Thomas M. Ryan, P.C.

95. Upon completion of its duties, the Settlement Administrator shall return to the Parties all documents related to this case, including all documents it received in connection with this case from the Parties, Class Members, or any other individuals, third parties or other source.

96. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

97. This Agreement may be executed in multiple counterparts with each constituting an original.

98. Any disputes related to this Settlement Agreement that arise prior to the entry of Final Judgment shall be referred to the Court.

IN WITNESS WHEREOF, the undersigned duly executed this Agreement as of the date indicated below:


_____          _John Roache_____

Dated: _____                 Dated: _1/10/2014_

Ryan F. Stephan                           John T. Roache
James B. Zouras                           K&L GATES LLP
Stephan Zouras, LLP                       **Defendant's Counsel**
**Class Counsel**


_____

Dated: _____

Marvin A. Miller
Matthew E. Van Tine
Miller Law LLC
**Class Counsel**


_____

Dated: _____

Thomas M. Ryan
Law Offices of Thomas M. Ryan, P.C.

**Class Counsel**

_____          _____

Dated: _____                Dated: _____

Crystal Howard                        John Huebner
**Plaintiff**                         **Plaintiff**


_____          _____

Dated: _____                Dated: _____

Paul Galloway                         Robert Newson
**Plaintiff**                         **Plaintiff**


_____          _____

Dated: _____                Dated: _____

Alvan Young                           Stephanie Hawkins
**Plaintiff**                         **Plaintiff**


_____          _____

Dated: _____                Dated: 1-10-14

Darsemia Jackson                      Securitas Security Services USA, Inc.
**Plaintiff**                         **Defendant**

                                      By: M. Page

                                      Title VP legal

**Class Counsel**

_Crystal R. Howard_
Dated: 12/30/13

Crystal Howard
**Plaintiff**

_____
Dated: _____

John Huebner
**Plaintiff**

_P. Galloway_
Dated: 01·06·14

Paul Galloway
**Plaintiff**

_____
Dated: _____

Robert Newson
**Plaintiff**

_Alvan Young_
Dated: 12/27/13

Alvan Young
**Plaintiff**

_____
Dated: _____

Stephanie Hawkins
**Plaintiff**

_____
Dated: _____

Darsemia Jackson
**Plaintiff**

_____
Dated: _____

Securitas Security Services USA, Inc.
**Defendant**

By:_____

Title_____

**Class Counsel**

Dated: _____

Crystal Howard
**Plaintiff**

Dated: _____

John Huebner
**Plaintiff**

Dated: _____

Paul Galloway
**Plaintiff**

Dated: _____

Robert Newson
**Plaintiff**

Dated: _____

Alvan Young
**Plaintiff**

Dated: _____

Stephanie Hawkins
**Plaintiff**

Dated: 01/07/14

Darsemia Jackson
**Plaintiff**

Dated: _____

Securitas Security Services USA, Inc.
**Defendant**

By:_____

Title_____

Class Counsel

Dated: _____

Crystal Howard
**Plaintiff**

*John C. Huebner*
Dated: *12/20/2013*

John Huebner
**Plaintiff**

Dated: _____

Paul Galloway
**Plaintiff**

Dated: _____

Robert Newson
**Plaintiff**

Dated: _____

Alvan Young
**Plaintiff**

Dated: _____

Stephanie Hawkins
**Plaintiff**

Dated: _____

Darsemia Jackson
**Plaintiff**

Dated: _____

Securitas Security Services USA, Inc.
**Defendant**

By: _____

Title _____

**Class Counsel**

Dated: 12/30/13

Crystal Howard
**Plaintiff**

Dated: _____

John Huebner
**Plaintiff**

Dated: 01·06·14

Paul Galloway
**Plaintiff**

Dated: 1-8-14

Robert Newson
**Plaintiff**

Dated: 12/27/13

Alvan Young
**Plaintiff**

Dated: _____

Stephanie Hawkins
**Plaintiff**

Dated: _____

Darsemia Jackson
**Plaintiff**

Dated: _____

Securitas Security Services USA, Inc.
**Defendant**

By: _____

Title_____

Class Counsel

Dated: _____

Crystal Howard
Plaintiff

Dated: _____

John Huebner
Plaintiff

Dated: _____

Paul Galloway
Plaintiff

Dated: _____

Robert Newson
Plaintiff

Dated: _____

Alvan Young
Plaintiff

Dated: 12-19-2013

Stephanie Hawkins
Plaintiff

Dated: _____

Darsemia Jackson
Plaintiff

Dated: _____

Securitas Security Services USA, Inc.
Defendant

By:_____

Title_____