## THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| CRYSTAL HOWARD, JOHN HUEBNER, PAUL GALLOWAY, ROBERT NEWSON AND ALVAN YOUNG, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Hon. Gary Feinerman |
| v. | ) ) | Magistrate Judge Young B. Kim |
| SECURITAS SECURITY SERVICES, USA INC., | ) ) ) ) | Case No. 08 C 2746 |
| Defendant. | ) ) ) | |
| STEPHANIE HAWKINS and DARSEMIA JACKSON Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Hon. Gary Feinerman |
| v. | ) ) | Magistrate Judge Young B. Kim |
| SECURITAS SECURITY SERVICES, USA INC. | ) ) | Case No. 09 C 3633 |
| Defendant. | ) ) ) | |

### PLAINTIFFS' UNOPPOSED PETITION FOR FEES

### INTRODUCTION

### THE REQUESTED AWARD OF FEES AND EXPENSES IS REASONABLE AND WARRANTED AND SHOULD BE APPROVED

When fee-shifting statues such as the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL") are involved,[1] parties may negotiate settlements that encompass

---

[1] The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of action." 29 U.S.C. § 216(b).

a defendant's total liability for damages, attorney fees, and costs. *See Evans v. Jeff D.*, 475 U.S. 717, 733-34, 738 n.30 (1986); *see also Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees"); *Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398, 1427-28 (D. Minn. 1987); 5 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 15:32 (4th ed. 2002). In this case, the parties negotiated a settlement which caps Defendant's total obligation for settlement payments to Plaintiffs, costs of notice and settlement administration, separate enhancement awards to Named Plaintiffs and Court-approved attorney fees and litigation costs.

The Named Plaintiffs initiated the litigation, contributed to the complaint, answered written discovery, appeared for deposition, communicated with class counsel on a regular basis in the process leading to settlement negotiations and participated in subsequent discussions that resulted in the final settlement and proposed allocation of the Settlement Fund. The proposed allocation specifically includes $929,844.10 for attorney fees and litigation expenses and a total of $35,000.00 for separate awards of $5,000 to each of the seven (7) Named Plaintiffs sought in recognition of their efforts in support of the litigation and also based on additional claims they released against Defendant by signing general releases.

Notice sent pursuant to the Court's preliminary approval order fully described the settlement terms and proposed allocation to the Settlement Fund, including proposed settlement payments to class members, separate awards to Named Plaintiffs, attorney fees and costs. The Notice also informed members of the classes of their rights to object, and described the procedures for asserting any such objections. Not a single member of the class objected. *See* Memo in Support of the Parties' Joint Motion for Final Approval of Class Settlement at 6. (Dkt.

No. 547-3).

As contemplated by the Settlement Agreement, and as stated in the Court Approved Notice and without objection by class members, Plaintiffs now seek the Court's approval of awards of $5,000 for each of the Named Plaintiffs, $235,000.00 for reimbursement of litigation costs and expenses, and $694,844.10 in attorney fees. As discussed below, the amount requested for attorney fees is significantly less than the fees actually incurred by Plaintiffs' counsel in this six (6) year litigation.

### A. An Award of Fees and Costs is Mandatory

An award of fees and costs to prevailing Plaintiffs under the FLSA and IMWL is mandatory. See 29 U.S.C. § 216(b) (the court "shall, in addition to any judgment awarded to the plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of action."); 820 ILCS § 105/4(a) (comparable fee-shifting provision under Illinois wage law); *see also Singer v. Waco*, 324 F.3d 813, 829 n.10 (5th Cir. 2003) (§ 216(b) "requires" a fee award), *cert. denied*, 540 U.S. 1177 (2004); *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (a fee award is "mandatory"), *cert. denied*, 513 U.S. 875 (1994); *Falica v. Advanced Tenant Servs., Inc.*, 384 F. Supp. 2d 75, 77 (D.D.C. 2005) ("The award of counsel fees to an employee's attorney in FLSA cases is mandatory and unconditional."); *Lawson v. Lapeka, Inc.*, Civ. A. No. 87-4018-S., 1991 WL 49775, *4 (D. Kan. Mar. 19, 1991) (mandatory); *Fields v. Luther*, No. JH-84-1875, 1988 WL 121791, *1 (D. Md. July 12, 1988) (mandatory).[2] Accordingly, Plaintiffs are entitled to reimbursement of fees and costs.

---

[2] The purpose of mandatory fee awards under the FLSA is to help ensure that Plaintiffs with wage and hour grievances have "effective access to the judicial process[.]" *Fegley*, 19 F.3d at 1134 (internal citation omitted).

### B. The "Lodestar" Method Is Used to Determine Attorney Fees in Wage Cases

To determine "reasonable" awards in FLSA and IMWL cases, courts use the "lodestar" method. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001); *Heidtman v. El Paso County*, 171 F.3d 1038, 1043 (5th Cir. 1999); *see also, e.g.*, *West v. Border Foods, Inc.*, No. 05-2525 (DWF/RLE), 2007 WL 1725760, *2-4 (D. Minn. June 8, 2007) (applying lodestar method in FLSA case). The lodestar method involves calculating the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate. *Small*, 264 F.3d at 707; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "There is a 'strong presumption' that the lodestar figure represents the reasonable fee to be awarded." *Hixon v. City of Golden Valley*, No. 06-1548 (RHK/JSM), 2007 WL 4373111, *2 (D. Minn. Dec. 13, 2007) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). Nevertheless, adjustments to the lodestar sum "may be made as necessary in the particular case." *Blum v. Stenson*, 465 U.S. 886, 888 (1984).[3]

#### 1. Hours Reasonably Expended

Counsel must use "billing judgment" by making good-faith efforts to exclude from a fee request hours that are "excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434. Plaintiffs' counsel have made good-faith efforts to use good billing judgment in their fee request by taking several steps to exclude any hours that might be excessive, redundant, or

---

[3] A variety of factors may be considered in making adjustments to the lodestar figure, including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitation imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the "undesirability" of the case: (11) the nature and length of the professional relationship with the client; (12) awards in similar cases; (13) the significance of the legal issue on which the plaintiff prevailed; and (14) the public purpose served. *Flowers v. City of Minneapolis*, No. 05-2349 ADM/JSM, 2008 WL 927940, *2 (D. Minn. Apr. 7, 2008). However, it is not necessary for the Court to explicitly examine all of these factors in determining reasonable attorney fees. *Id.* (citing *Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997 (8th Cir. 1999)).

otherwise unnecessary. Exhibit A, Declaration of Ryan F. Stephan ("Stephan Decl.") at ¶ 8. *Cf. Hixon*, 2007 WL 4373111 at *3 (reducing hours by a percentage, instead of line-by-line, to account for redundancies and vagueness).[4]

Even after eliminating all of the hours described above, Plaintiffs' counsel and non-lawyer billing staff have worked more than 6817 hours litigating, settling and administering the settlement of this case for Plaintiffs' benefit. See Ex. A, Stephan Decl. at ¶ 8; Exhibit B, Declaration of Thomas M. Ryan in Support of the Parties' Motion and Memorandum for Final Approval of Class Settlement ("Ryan Decl.") at ¶ 13; Exhibit C, Declaration of Marvin A. Miller in Support of Final Approval of Settlement and Petition for Attorneys' Fees and Reimbursement of Expenses Filed on Behalf of Miller Law LLC ("Miller Decl.") at ¶ 5. Further, Plaintiffs' counsel will necessarily continue expending time implementing the Settlement and in connection with distribution of the Settlement Fund.

### 2. Reasonable Hourly Rates

The hourly rates for the attorneys and non-lawyer billing staff for whom time is submitted are set forth in the attached declarations. *See* Ex. A, Stephan Decl. at ¶ 6; Ex. B, Ryan Decl. at ¶ 13; Ex. C, Miller Decl. at ¶¶ 3-4. These hourly rates have been accepted and approved in other contingent litigation and are comparable to rates charged by counsel in similar cases. *See* Ex. A, Stephan Decl. at ¶¶ 6-7; Ex. B, Ryan Decl. at ¶ 9; Ex. C, Miller Decl. at ¶ 4; *see also Roussel v. Brinker Intern., Inc.*, No. H-05-3733, 2010 WL 1881898, *3 (S.D. Tex. Jan. 13, 2010) (approving $500 and $450 hourly rates in FLSA case); *West*, 2007 WL 1725760 at *2 (approving $550 and $400 hourly rates in FLSA case); *cf. Hixon*, 2007 WL 4373111 at *3 (approving $400

---

[4] Post-judgment hours, including time spent preparing a fee application, are recoverable and may be included in the lodestar calculation. *See Hixon*, 2007 WL 4373111 at *4.

hourly rates in § 1983 case).

### 3. Plaintiffs' Counsel's Lodestar

Multiplying the hours that all attorney and non-lawyer billing staff have worked on this case (and which remain after the exercise of billing judgment described above) by their respective hourly rates yields a lodestar figure of over $3,024,769.00. *See* Ex. A, Stephan Decl. at ¶ 8; Ex. B, Ryan Decl. at ¶ 13; Ex. C, Miller Decl. at ¶ 5. This lodestar figure is entitled to a strong presumption of reasonableness. *See Hixon*, 2007 WL 4373111 at *2.

### C. No Downward Adjustment Is Warranted

Plaintiffs' request for $694,844.10 to compensate their attorneys for 6817 hours plus extensive settlement efforts and administration satisfies all standards of reasonableness. The amount requested is only a fraction of Plaintiffs' counsel's lodestar. In fact, it is only 23% of the requested lodestar. In effect, the request incorporates any reasonable reduction in the number of lodestar hours and/or hourly rates that the Court might be inclined to consider. Further, as discussed below, numerous other factors weigh against downward adjustment and, under different circumstances, would weigh in favor of enhancement.

### 1. Results Obtained

Lodestar may be adjusted based on "results obtained." *Hensley*, 461 U.S. at 434. However, because mandatory fee awards in wage cases are intended to "encourage[] the vindication of [legislatively] identified policies and rights[,]" courts frequently grant and uphold "substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Fegley*, 19 F.3d at 1134-35 (internal citation omitted); *see also Singer*, 324 F.3d at 829-30 (limited monetary success does not require a reduction in lodestar); *cf. Fields v. Luther*, JH-84-1875, 1988 WL 121791, *3 (D. Md. July 12, 1988) (proportionality between the amount

recovered and the amount of the attorney's fees awarded is not required); *accord Roussel*, 2010 WL 1881898 at *11-14 (awarding attorney fees of several times the amount of the judgment awarded to class members).

This litigation has resulted in the creation of a $1,275,000 Settlement Fund. From this Settlement Fund, a total of over 10,000 class members will receive checks totaling $310,155.90, which represents significant monetary relief and, for practical purposes, means that those Class Members who have not opted-out will receive a settlement amount that is equal to or exceeds the total amount to which the members of the Settlement Class could reasonably believe to have received in litigation under any law or contract for the time spent in introductory training and orientation. In addition, the Settlement Fund will pay all costs of settlement administration, costs and expenses of litigation, and attorneys' fees. This result is substantial, especially in light of the complexity of Plaintiffs' claims, the inherent risks of trial, and the further risks of appeal.

### 2. Time and Labor Required

Plaintiffs first contacted counsel over six years ago. *See* Ex. A, Stephan Decl. at ¶ 5. As noted above, Plaintiffs' counsel and staff have worked more than 6817 hours to bring claims against Defendant to a successful conclusion against experienced and qualified opponents. Plaintiffs' counsel conducted extensive legal and factual research into the claims, engaged in protracted written discovery, including the exchange of Rule 26 disclosures, service of formal document requests and interrogatories, the exchange of thousands of pages of documents, participated in thirty depositions, and attended court and communicated with opposing counsel. Plaintiffs' counsel also engaged in extensive motion practice, including fully briefed class certification motions and summary judgment motions.[5] Plaintiffs' counsel also individually

---

[5] Plaintiffs' counsel has successfully opposed motions to dismiss and motions for summary judgment and has also successfully obtained Section 216(b) certification of Plaintiffs' FLSA claims and Rule 23

- 8 -

reviewed and analyzed extensive data produced by the Defendant including rates of pay, hours recorded and actual hours worked for each member of the putative class during the class period. They created computer formulas and prepared Excel spreadsheets to estimate damages for the putative class members based upon a number of different assumptions and scenarios. Plaintiffs' counsel participated in multiple settlement conferences and achieved a favorable settlement. Additionally, Plaintiffs' counsel took all the steps necessary to effectuate the settlement including the drafting of the settlement agreement; the drafting of the motion for preliminary approval and attachments (class notice, claim forms, requests for exclusion etc.); worked with the claims administrator before and during the claims process to timely provide accurate notice and field questions; and prepared all the materials necessary for final approval. All of these tasks were performed at a high level, without compensation and with the risk of no compensation.

### 3. Novelty and Difficulty of Issues

From a procedural standpoint, this is a not a run-of-the-mill wage and hour case. It presented difficult and complex issues of law and fact that required sophisticated investigation, analysis, research and strategizing. Given the significant size of the class (over 10,000 individuals) Plaintiffs' counsel expended great effort in developing strong evidence of common themes and arguments to support class and collective action certification. Matters were further complicated by the fact that there were two cases pending at once at different stages of litigation.

### 4. Skill Required to Perform Legal Services Properly

The difficulty and complexity of the issues in this case required high-level nationwide research, analysis and advocacy. The skill, resolve, and tenacity displayed by Plaintiffs' counsel

---

certification of Plaintiffs' claims for unpaid training and orientation. In both the *Howard* and *Hawkins* cases together, there were more than 800 docket entries.

were particularly important given that Defendant was represented by skilled, experienced and resourceful attorneys.

### 5. Preclusion of Other Employment

The prosecution of this action consumed the attention and time of Plaintiffs' counsel, sometimes totally to the exclusion of other matters. Plaintiffs' counsel have active legal practices and other endeavors they could have and would have pursued but for their commitment to this litigation. See Ex. A, Stephan Decl. at ¶¶ 2-4; Ex. B, Ryan Decl. at ¶¶ 6-8.

### 6. Customary Fee

As noted above, the hourly rates charged by Plaintiffs' counsel and staff are comparable to rates charged by class action counsel in similar cases and have been accepted and approved in other contingent litigation. See Ex. A, Stephan Decl. at ¶¶ 6-7; Ex. B, Ryan Decl. at ¶ 9; Ex. C, Miller Decl. at ¶ 4.

### 7. Whether the Fee Is Fixed or Contingent

The fee in this case is contingent. All of the Plaintiffs are of modest means and would not have been able to obtain counsel to pursue their claims on a fixed-fee basis. Because the fee is contingent, Plaintiffs' counsel bore the time costs and out-of-pocket costs of litigation without any compensation and with the risk of no compensation.

### 8. Time Limitations Imposed by Clients or Circumstances

No particular time limitations were imposed by Plaintiffs or circumstances.

### 9. Experience, Reputation, and Ability of Attorneys

Plaintiffs' counsel are highly-experienced, successful lawyers whose reputations for quality are among the highest in the wage and hour field. *See* Exhibit D, Stephan Zouras, LLP Firm Profile; Ex. B, Ryan Decl. at ¶¶ 3-9.

### 10. Undesirability of the Case

The undesirability of this case is reflected by the fact that none of the other numerous local and national law firms that regularly file wage and hour actions intervened or filed separate actions on behalf of any Plaintiffs. This lack of interest is understandable given the significant legal, procedural and practical hurdles this case presented.

### 11. Nature and Length of Professional Relationship with Clients

There was no pre-existing relationship between Plaintiffs' counsel and their clients in this case. However, Plaintiffs' counsel developed a strong working relationship with their clients, who actively participated by communicating with other Plaintiffs and other witnesses, suggesting areas and avenues of obtaining information, educating Plaintiffs' counsel regarding Defendant's practices and procedures, participating in the process leading to the Settlement, and crafting the Settlement and proposed plan of allocation.

### 12. Awards in Similar Cases

Plaintiffs' counsel has received fee awards in a number of comparable matters in the pursuit of wage claims on behalf of classes of security guards and other low wage workers. *See* Ex. D, Stephan Zouras, LLP Firm Profile; Ex. B, Ryan Decl. at ¶ 9.

### 13. Public Purpose Served

Plaintiffs' success serves the purpose of the FLSA and state wage laws by vindicating rights these statutes were enacted to protect. It serves notice to employers that there is a cost for paying lip-service to their wage and hour obligations and that employers who fail to strictly adhere to federal and state wage laws do so at their peril.

### 14. No Objections

Not a single person objected to the Settlement.

In sum, an award of attorney fees in this case is mandatory. The amount requested, $694,844.10 for attorney fees, is reasonable in light of Plaintiffs' counsel's lodestar, which significantly exceeds the request. *See* Ex. A, Stephan Decl. at ¶ 8; Ex. B, Ryan Decl. at ¶ 13; Ex. C, Miller Decl. at ¶ 5. Further, no downward adjustment is warranted in light of the results obtained, the benefits to Plaintiffs, and all of the other pertinent factors that bear on such an award. Therefore, Plaintiffs and Plaintiffs' counsel request an award of attorney fees in the amount of $694,844.10.

### D. Plaintiffs' Counsel Are Entitled To Reimbursement of Costs and Expenses

As noted above, the award of costs, as well as fees, is mandatory under the FLSA and IMWL. See 29 U.S.C. § 216(b); 820 ILCS §105/12(a); *West*, 2007 WL 1725760 at *4 ("The Court shall also award reasonable costs to the prevailing party.").[6]

Plaintiffs' counsel has advanced litigation costs and expenses that normally would be charged to clients. *See* Ex. A, Stephan Decl. at ¶¶ 9-11; Ex. B, Ryan Decl. at ¶ 13; ; Ex. C, Miller Decl. at ¶¶ 6-8. In addition, costs include the Administrative Fees incurred by the Settlement Administrator arising from its administration of the Settlement. All of these costs and expenses were reasonably and necessarily incurred in the course of this litigation. *See* Ex. A, Stephan Decl. at ¶ 10; Ex. B, Ryan Decl. at ¶ 13; Ex. C, Miller Decl. at ¶¶ 7-8. Therefore, Plaintiffs and Plaintiffs' counsel request an award of costs and expenses to Plaintiffs' counsel in the amount of $235,000.00.

---

[6] In this context, "costs" includes all costs and expenses that firms in the area normally charge to their clients, including expert fees. *See Lawson*, 1991 WL 49775 at *2-3.

### E. The Named Plaintiffs Are Entitled To Separate Awards for Their Efforts In This Litigation

Courts may make separate awards to class representatives in recognition of their risks, time expended and benefits to the class. *See In Re US Bancorp Litig.*, 291 F.3d 1035, 1037 (8th Cir. 2002), *cert. denied*, 537 U.S. 823 (2002).

The role of the Named Plaintiffs in this litigation was crucial. Each sacrificed their time to prosecute this lawsuit on behalf of their fellow current and former employees. Each met, conferred and corresponded with Plaintiffs' counsel on a regular basis. Each submitted to extensive interviews, produced records and documents and provided invaluable information and assistance to Plaintiffs' counsel without which they could not have brought this matter to a successful conclusion. Each responded to written discovery, sat for their depositions and attended certain Defendant depositions. And all were actively involved in subsequent discussions that shaped and finalized the settlement and proposed plan of allocation.

In addition, the Named Plaintiffs released any other claims they had against Defendant by signing Named Plaintiff general releases.

Therefore, Named Plaintiffs and Plaintiffs' counsel request separate awards of $5,000 to each of the seven (7) Named Plaintiffs in addition to any pro rata shares of the Settlement Fund to which they may be entitled.

### CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an order:

(i) Awarding Plaintiffs' counsel attorney fees in the amount of $694,844.10;

(ii) Awarding Plaintiffs' counsel reimbursement of costs and expenses in the amount of $235,000.00; and

(iii) Granting separate awards in the amount of $5,000 to each of the Named Plaintiffs in addition to any pro rata share of the Settlement Fund to which they may be entitled.

Dated: April 23, 2014

Respectfully submitted,

 /s/ Ryan F. Stephan
Ryan F. Stephan
James B. Zouras
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Tel: 312.233.1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com

Marvin Miller
Matthew Van Tine
MILLER LAW, LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Tel: 312.332.3400
mmiller@millerlawllc.com
mvantine@millerlawllc.com

Thomas M. Ryan
Law Offices of Thomas M. Ryan, PC
35 E. Wacker Drive, Suite 650
Chicago, IL 60601
Tel: 312.726.3400
tom@tomryanlaw.com

**Attorneys for Plaintiffs**